# EXHIBIT B

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



**Report Mortgage Fraud**
**844-768-1713**

Doc# 1814206153 Fee $96.00

RHSP FEE:$9.00 RPRF FEE: $1.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/22/2018 01:14 PM  PG:  1 OF 30

---

The property identified as:   **PIN:** 13-35-319-002-0000

**Address:**
**Street:**   1750 N Lawndale Ave
**Street line 2:**
**City:** Chicago          **State:** IL          **ZIP Code:** 60647

**Lender:** Greenlake Real Estate Fund LLC

**Borrower:** Platform II Lawndale, LLC

**Loan / Mortgage Amount:** $6,250,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is commercial property.

FIRST AMERICAN TITLE
FILE # 2919093
2 of 2

**Certificate number:** BC2EAC8E-03EA-4956-A55F-1E75BB04A04C          **Execution date:** 5/18/2018





**PREPARED BY**
**RECORDING REQUESTED BY,**
**AND WHEN RECORDED MAIL TO:**

Anthony J. Soukenik
Sandberg Phoenix & von Gontard P.C.
600 Washington Ave., 15th Floor
St. Louis, Missouri 63101

_____

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

**OPEN-END MORTGAGE, SECURITY AGREEMENT,**
**ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING**
**By and from**

**PLATFORM II LAWNDALE, LLC, an Illinois limited liability company**
**("Mortgagor")**

**for the benefit of**

**GreenLake Real Estate Fund LLC,**
a California limited liability company and/or Assignees
**("Mortgagee")**

**Dated as of May 18, 2018**

| | |
|---|---|
| Address: | 1750 N. Lawndale Ave. |
| Municipality/City: | Chicago |
| County | Cook County |
| State: | Illinois |

**THIS OPEN-END MORTGAGE**
**SECURES A PROMISSORY NOTE WHICH REQUIRES A BALLOON PAYMENT ON**
**MATURITY**

**ATTENTION: RECORDER OF DEEDS OR REGISTRAR OF TITLES:** This Open-End Mortgage covers goods which are or are to become affixed to or fixtures on the land described in **Exhibit A** attached hereto and is to be filed for record in the records where real estate mortgages are recorded. Additionally, this instrument should be appropriately indexed, not only as an Open-End Mortgage, but also as a Financing Statement covering goods that are or are to become fixtures on the real property described herein. The mailing addresses of the Mortgagor (Debtor) and Mortgagee (Secured Party) are set forth in the **Preamble** of this Open-End Mortgage. This Open-End Mortgage secures a Promissory Note and all indebtedness, obligations and liabilities of any kind whatsoever related thereto, which is secured by the Mortgaged Property.

FIRST AMERICAN TITLE
FILE # 2919093

2 of 2

Loan No. 1744LawndaleIL
GreenLake/Platform II Lawndale, LLC
Mortgage

9692414.5

OPEN-END MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF
RENTS AND LEASES AND FIXTURE FILING

THIS OPEN-END MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING (this "**Mortgage**") is dated as the date written above by and from **PLATFORM II LAWNDALE, LLC**, an Illinois limited liability company, having an address at 600 WAUKEGAN ROAD SUITE 129, NORTHBROOK, IL 60062, Attn: Scott Krone, Co-Manager (the "**Mortgagor**") for the benefit of **GREENLAKE REAL ESTATE FUND LLC**, a California Limited Liability Company and its successors and assigns ("**Mortgagee**"), having an address at 1416 El Centro Street, Suite 200, South Pasadena, California 91030.

ARTICLE 1
DEFINITIONS

Section 1.1    **Definitions**. All capitalized terms used herein without definition shall have the respective meanings ascribed to them in that certain Promissory Note (as defined below). As used herein, the following terms shall have the following meanings:

(a)    "**Affiliate**": shall mean with respect to any party: (i) any entity in which such party or the owners of the party has an ownership or other financial interest, (ii) any entity controlled by the party or the owners of the party, (iii) any person who is an owner or has a financial interest in such party or (iv) any relative by blood or marriage to such party or any entity owned by such relative.

(b)    "**Bankruptcy Code**": means Title 11 of the United States Code.

(c)    "**Borrower**": means Mortgagor and any other borrower executing the Promissory Note and any other Loan Documents in favor of Mortgagee (other than any Guarantor, defined below) and obligated and liable to Mortgagee under or in connection therewith.

(d)    "**Business Day**": means any day other than a Saturday, Sunday or other day on which banks located in the States of California and/or Illinois are closed or are authorized to close.

(e)    "**Indebtedness**": (1) All indebtedness of any kind whatsoever of Mortgagor (and/or any other Borrower) to Mortgagee, including, without limitation, the sum of all (a) principal, interest and other amounts of any kind whatsoever evidenced or secured by the Loan Documents as they may be amended, extended or otherwise changed from time to time, and (b) principal, interest and other amounts of any kind whatsoever which may hereafter be loaned by Mortgagee under or in connection with the Promissory Note or any of the other Loan Documents, whether evidenced by a promissory note or other instrument of any kind whatsoever which, by its terms, is secured hereby, and (2) all other indebtedness, obligations and liabilities of any kind whatsoever now or hereafter existing of any kind of Mortgagor (and/or any other Borrower) to Mortgagee under documents which recite that they are intended to be secured by this Mortgage.

(f)    "**Mortgagor**": means party or parties named in the first paragraph of this Mortgage as Mortgagor and any subsequent owner of all or any portion of the Mortgaged Property. This definition shall not limit or negate the due on sale clause and restrictions against transfer of the Mortgaged Property contained in this Mortgage.

(g)    "**Guarantor**": means any Person guaranteeing any of the Indebtedness or Obligations of Mortgagor (and/or any other Borrower) to Mortgagee under or in connection with the Promissory Note and/or any other Loan Documents.

(h)    "**Hazardous Materials**": means all materials defined as Hazardous under applicable

Hazardous Materials Laws.

(i)    "**Hazardous Materials Laws**": means all laws, ordinances and regulations relating to Hazardous Materials including, without limitation: the Clean Air Act, as amended, 42 U.S.C. Section 7401 et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 et seq.; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. Section 6901 et seq.; the Comprehensive Environment Response, Compensation and Liability Act of 1980, as amended (including the Superfund Amendments and Reauthorization Act of 1986, "CERCLA"), 42 U.S.C. Section 9601 et seq.; the Toxic Substances Control Act, as amended, 15 U.S.C. Section 2601 et seq.; the Occupational Safety and Health Act, as amended, 29 U.S.C. Section 651, the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. Section 11001 et seq.; the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. Section 801 et seq.; the Safe Drinking Water Act, as amended, 42 U.S.C. Section 300f et seq.; and all comparable state and local laws, laws of other jurisdictions or orders and regulations.

(j)    "**Loan Documents**": means (i) The Promissory Note, (ii) this Mortgage, (iii) any documents defined as Loan Documents in the Promissory Note and (iv) other documents delivered by Mortgagor, any other Borrower or any Guarantor in connection therewith.

(k)    "**Mortgaged Property**": All of Mortgagor's interest in:

(1)    the fee interest in the real property described in **Exhibit A** attached hereto and incorporated herein by this reference, together with any greater estate therein as hereafter may be acquired by Mortgagor (collectively, the "**Land**") together with all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, hereditaments, rights-of-way, riparian rights, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting any of the Premises (defined below), and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated and all timber, oil, gas, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under and on any of the Premises and other oil, gas and mineral interests with which any of the foregoing interests or estates are pooled or unitized;

(2)    all improvements now owned or hereafter acquired by Mortgagor, now or at any time situated, placed or constructed upon any of the Land (the "**Improvements**"; the Land and Improvements are collectively referred to as the "**Premises**");

(3)    all items of personal property now owned or hereafter acquired by Mortgagor and now or hereafter attached to, installed in or used in connection with any of the Improvements or the Land, including without limitation machinery, equipment, engines, boilers, incinerators, and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring, and conduits used in connection with radio, television, security, fire prevention, or fire detection, or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers, and other appliances; light fixtures, awnings, storm windows, and storm doors; pictures, screens, blinds, shades, curtains, and curtain rods; mirrors, cabinets, paneling, rugs, and floor and wall coverings; fences, trees, and plants; swimming pools; (the "**Fixtures**"),

(4)    all tangible and intangible personal property which is used now or in the future in connection with the ownership, management, or operation of any of the Premises or are located on any of the Premises and all goods, accounts, general intangibles, instruments, documents, chattel paper, accounts receivable and all other tangible or intangible personal property of any kind or character, including such items of

personal property as defined in the UCC (defined below), now owned or hereafter acquired by Mortgagor and now or hereafter placed upon, used in connection with, arising from or otherwise related to any of the Premises, including without limitation, inventories, tools, books and records, websites, URLs, blogs, all intellectual property (including without limitation, patents, trademarks, service marks and trade secrets) and social network pages, permits, licenses operating agreements, surveys, plans and specifications (the "**Personalty**"),

(5)    All earnings, inventory, accounts, cash receipts, deposit accounts, accounts receivable, credit card receivables, payment intangibles, chattel paper (whether electronic or tangible), instruments, documents, promissory notes, royalties, issues, and profits from any of the Premises, the Fixtures, the Personal Property (defined below), or any other part of any of the Premises and all reserves, escrows or impounds required under the Promissory Note and all deposits placed by Mortgagor with any utility or service provider to any of the Premises (the "**Income**"),

(6)    all leases, licenses, concessions, occupancy agreements or other agreements (written or oral, now or at any time in effect) which grant to any Person a possessory interest in, or the right to use, all or any part of any of the Premises, together with all related security and other deposits all guaranties, letters of credit and any other supporting obligation given in connection with any of the foregoing (the "**Leases**"),

(7)    all of the rents, revenues, royalties, income, proceeds, profits, receivables and other benefits paid or payable to Mortgagor for using, leasing, licensing possessing, operating from, residing in, selling or otherwise enjoying any of the Premises or any other assets owned by Mortgagor (the "**Rents**"),

(8)    all contracts, options or other agreements, including without limitation construction contracts, architects' agreements, engineers' contracts, utility contracts, maintenance agreements, management agreements, service contracts, listing agreements, guaranties, warranties, permits, licenses, certificates and entitlements in any way relating to the construction, use, occupancy, operation, maintenance, enjoyment or ownership of any of the Premises (the "**Property Agreements**");

(9)    All rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages and appurtenances appertaining to the foregoing,

(10)    All property tax refunds or rebates (the "**Tax Refunds**");

(11)    All insurance policies, unearned premiums therefor and proceeds from such policies covering any of the above property now or hereafter acquired by Mortgagor (the "**Insurance**"),

(12)    All awards, payments, and other compensation made or to be made by any municipal, state or federal authority with respect to any of the Premises, the Fixtures, the Personal Property, or any other part of any of the Premises, including any awards or settlements resulting from any action or proceeding, however characterized or named, relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of any of the Premises, whether direct or indirect, any damage to any of the Premises caused by governmental action that does not result in any Condemnation Awards, or the total or partial taking of any of the Premises, the Fixtures, the Personal Property, or any other part of any of the Premises under the power of eminent domain or otherwise and including any conveyance in lieu thereof (the "**Condemnation Awards**");

(13)    the Tax Impound (as defined in the Promissory Note) and any other deposits held by the Mortgagee (the "**Imposition Deposits**") to pay when due (a) any water and sewer charges which, if not paid, may result in a lien on all or any part of any of the Premises, (b) the premiums for fire and other casualty insurance, liability insurance, rent loss insurance, and such other insurance as Mortgagee may require,

(c) taxes, assessments, vault rentals, and other charges, if any, general, special, or otherwise, including assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien on any of the Premises and (d) amounts for other charges and expenses which Mortgagee at any time reasonably deems necessary to protect any of the Premises, to prevent the imposition of liens on any of the Premises or otherwise to protect Mortgagee's interests, all as reasonably determined from time to time by Mortgagee; and

(14)    All accessions, replacements and substitutions for any of the foregoing and all proceeds thereof (the "**Proceeds**").

As used in this Mortgage, the term "Mortgaged Property" shall mean all or, where the context permit or requires, any portion of the above or any interest therein.

(l)    "**Obligations**": All of the Indebtedness, and all agreements, covenants, conditions, warranties, representations and other obligations of any kind whatsoever of Mortgagor (and/or any other Borrower) (including, without limitation, the obligation to repay the Indebtedness) under the Promissory Note and the other Loan Documents and any and all Loan Advances (defined below) being made pursuant to the Promissory Note, which, pursuant to applicable law, constitutes a commercial future advance loan agreement as contemplated in Illinois Compiled Statutes Section 735 ILCS 5/15-1301, as amended or modified from time to time; and

(m)    "**Permitted Encumbrances**" means the encumbrances approved by Mortgagee in writing as of the date of this Mortgage and specified in the Title Policy pursuant to Section 3.6 hereof.

(n)    "**Person**" shall mean any individual, partnership, corporation, limited liability company, trust, association, joint venture, joint stock company, or non-incorporated organization or government or any department or agency thereof, or any other entity.

(o)    "**Personal Property**" shall mean any of the Fixtures, Personalty, Income, Leases, Rents, Property Agreements, Tax Refunds, Proceeds, Insurance and Condemnation Awards and all other Mortgaged Property which is personal property.

(p)    "**Promissory Note**" or "**Note**": that certain Promissory Note Secured by this Mortgage with Mortgagee as lender and Mortgagor as borrower dated as of even date herewith in the maximum principal amount of $6,250,000.00, ,  together with all additional amounts, interest and charges thereon, as amended, supplemented or otherwise modified from time to time, which Promissory Note entails advances of all or part of the proceeds of the loan therein contemplated (the "**Loan Advances**") and repayments of all or part of the outstanding balance of said loan from time to time, all on the terms and conditions therein contained, so that the Promissory Note, pursuant to applicable law, constitutes a commercial future advance loan, , and, without limiting the generality of the foregoing or otherwise and in connection therewith, such Promissory Note (i) specifically permits, provides for, and authorizes, and this Mortgages secures the maximum principal loan amount of $6,250,000.00, together with interest and fees thereon, as contemplated herein and in the Loan Documents; and (ii) if not paid or demanded earlier, is payable on the Maturity Date as defined in the Promissory Note.

(q)    "**Single Purpose Entity**" - means a limited liability company, general partnership or limited partnership or corporation which, at all times since its formation and thereafter: (a) was and will be organized solely for the purpose of owning and operating the Mortgaged Property, (b) has not and will not engage in any business unrelated to the ownership of its interest in the Mortgaged Property, (c) has not and will not have any assets other than those related to the Mortgaged Property, (d) has maintained and will maintain its accounts, books and records separate from any other Person, (e) has not commingled and will not commingle its funds or assets with those of any other person or entity, (f) has held and will hold its assets only

in its own name, (g) has conducted and will conduct its business only in its own name, (h) has maintained and will maintain its financial statements, accounting records and other entity documents separate from any other Person; (i) has paid and will pay its own liabilities only out of its own funds and assets, (j) has observed and will observe all corporate formalities, (k) has maintained and will maintain an arms'-length relationship with its Affiliates, (l) has held and identified itself and will hold itself out and identify itself as a separate and distinct entity under its own name and not as a division or part of any other person or entity, (m) has maintained and will maintain adequate capital in light of its contemplated business operations.

(r)    "UCC": The Uniform Commercial Code of the State in which the Mortgaged Property is located, as amended or modified from time to time.

ARTICLE 2
GRANT

Section 2.1    Grant. In order to secure the full and timely payment of the Indebtedness and the full and timely performance of the Obligations, Mortgagor irrevocably and unconditionally gives, grants, bargains, sells, warrants, aliens, demises, releases, conveys, assigns, transfers, mortgages, hypothecates, deposits, pledges, sets over and confirms unto Mortgagee and its successors and assigns, forever, the Mortgaged Property, subject, however, to the Permitted Encumbrances, TO HAVE AND TO HOLD unto Mortgagee and its successors and assigns forever, all of Mortgagor's estate, right, title and interest in, to and under the Mortgaged Property, and Mortgagor does hereby covenant and warrant to Mortgagee that Mortgagor is lawfully seised of the Mortgaged Property and hereby binds itself, its successors and assigns to WARRANT AND FOREVER DEFEND the title to the Mortgaged Property against all claims and demands unto Mortgagor.

ARTICLE 3
WARRANTIES, REPRESENTATIONS, AND COVENANTS

Mortgagor warrants, represents, and covenants to Mortgagee as follows:

Section 3.1    Various Representations and Warranties. Mortgagor represents and warrants that (a) except as previously or concurrently disclosed in writing to Mortgagee, there are no actions, suits or proceedings pending or threatened against or affecting any Mortgagor or any portion of the Mortgaged Property or involving the validity or enforceability of this Mortgage or the priority of its lien, before any court of law or equity or any tribunal, administrative board or governmental authority, and no Mortgagor is in default under any other indebtedness or with respect to any order, writ, injunction, decree, judgment or demand of any court or any governmental authority; (b) the execution and delivery of this Mortgage and all other Loan Documents do not and shall not (i) violate any provisions of any law, rule, regulation, order, Writ, judgment, injunction, decree, determination or award applicable to any Mortgagor, nor (ii) result in a breach of, or constitute a default under, any indenture, bond, mortgage, Lease, instrument, credit agreement, undertaking, contract or other agreement to which any Mortgagor is a party or by which any of them or their respective properties may be bound or affected;  this Mortgage and all other Loan Documents constitute valid and binding obligations of the Mortgagor(s) executing the same, enforceable against such Mortgagor(s) in accordance with their respective terms; (d) all financial statements of the Mortgagor(s) previously delivered to Mortgagee have been prepared on a consistent basis and fairly present the correct respective financial conditions of the Mortgagor(s) as of their respective dates, and the foregoing shall be true with respect to all financial statements of the Mortgagor(s) delivered to Mortgagee hereafter; (e) there is no fact that the Mortgagor(s) have not disclosed to Mortgagee in writing that could materially adversely affect their respective properties, businesses or financial conditions or the Mortgaged Property or any other Personal Property for the Obligations; (f) the Mortgagor(s) has or have duly obtained all permits, licenses, approvals and consents from, and made all filings with, any governmental authority (and the same have not lapsed nor been rescinded or revoked) which are necessary in connection with the execution or delivery or enforcement of this Mortgage or any other Loan Document or the performance of any Mortgagor's obligations thereunder; provided that the Mortgagor has not

yet obtained a building permit and shall do so in accordance with the construction schedule approved by the Mortgagee pursuant to the Note; (g) except as set forth on Exhibit D of the Note, the Land and Improvements fully comply with all applicable restrictive covenants, zoning ordinances, subdivision and building codes, applicable health and environmental laws and regulations and, to the best of Mortgagor's knowledge, all other ordinances, orders and requirements issued by any state, federal or municipal authorities having jurisdiction over the Mortgaged Property; (h) the Land is served by electric, gas, sewer, water, telephone and other utilities required for its intended use and final certificates of occupancy have been or prior to occupancy will be issued by such governmental authorities as have jurisdiction over the construction and use of the Mortgaged Property; (i) the proceeds of the Obligations are not being used to purchase or carry any "margin stock" within the meaning of Regulation "U" of the Board of Governors of the Federal Reserve System, nor to extend credit to others for that purpose; and (j) each extension of credit secured by this Mortgage is exempt from the provisions of the Federal Consumers Credit Protection Act (Truth-in-Lending Act) and Regulation "Z" of the Board of Governors of the. Federal Reserve System, because Mortgagor is a person fully excluded therefrom, and/or because said extension of credit is only for business or commercial purposes of Mortgagor and is not being used for personal, family, household or agricultural purposes; (k) except for the security interest granted hereby, Mortgagor is, and as to portions of the Personal Property to be acquired after the date hereof will be, the sole owner (or lessee in the case of Personal Property leased by Mortgagor) of the Personal Property free from any adverse lien, security interest, encumbrance or adverse claim thereon of any kind whatsoever; (l) the Personal Property will be kept on or at the Land and Improvements; (m) Mortgagor has its principal place of business in the State where the Land is located at the address set forth at the beginning of this Mortgage and Mortgagor will not change in its principal place of business as set forth in the beginning of this Mortgage without Mortgagee's prior consent, which consent will not be unreasonably withheld; and (n) Mortgagor will not enter into any easements, leases or management agreements without the prior written consent and approval of Mortgagee, including but not limited to easements, leases or management agreements with CubeSmart.

**Section 3.2**   **Title to Mortgaged Property and Lien of this Instrument.** Mortgagor owns the Mortgaged Property free and clear of any liens, claims or interests, except the Permitted Encumbrances. This Mortgage creates valid, enforceable lien and security interest against the Mortgaged Property.

**Section 3.3**   **First Lien Status.** Mortgagor shall preserve and protect the lien and security interest in the Mortgaged Property under this Mortgage and the other Loan Documents. If any lien or security interest other than the Permitted Encumbrances is asserted against the Mortgaged Property, Mortgagor shall promptly, and at its expense, (a) give Mortgagee a detailed written notice of such lien or security interest (including origin, amount and other terms), and (b) pay the underlying claim in full or take such other action so as to cause it to be released or contest the same in compliance with the requirements of the Promissory Note (including the requirement of providing a bond or other security satisfactory to Mortgagee). Mortgagor shall give Mortgagee a perfected first lien security interest in all proceeds of the Mortgaged Property.

**Section 3.4**   **Payment and Performance.** Mortgagor shall pay the Indebtedness when due under the Loan Documents and shall perform the Obligations in full when they are required to be performed.

**Section 3.5**   **Replacement of Fixtures and Personalty.** Mortgagor shall not, without the prior written consent of Mortgagee, permit any of the Fixtures or Personal Property to be removed at any time from the Land or Improvements, unless the removed item is removed temporarily for maintenance and repair or, if removed permanently, is replaced by an article of equal or better suitability and value, owned by Mortgagor subject to the liens and security interests of this Mortgage and the other Loan Documents, and free and clear of any other lien or security interest except such as may be permitted under the Promissory Note or first approved in writing by Mortgagee.

**Section 3.6**   **Insurance.** Mortgagor shall, while any of the Obligations of Mortgagor under any Loan Document remains outstanding, maintain at Mortgagor's sole expense, with licensed insurers approved by Mortgagee, the following policies of insurance in form and substance reasonably satisfactory to Mortgagee:

(a)      Title Insurance. A Title Policy, together with any endorsements which Mortgagee may reasonably require (including, without limitation zoning), insuring Mortgagee, its successors and assigns, in the aggregate principal amount of the Loan, of the validity and the priority of the lien of the Mortgage upon the Mortgaged Property, subject only to matters approved by Mortgagee in writing. During the term of the Loan, Mortgagor shall deliver to Mortgagee, within five (5) days of Mortgagee's written request, such other endorsements to the Title Policy as Mortgagee may reasonably require with respect to the Mortgaged Property.

(b)      Property Insurance. A Builders All Risk/Special Form Completed Value (Non-Reporting Form) Hazard Insurance policy, for the full replacement value of the Mortgaged Property, including without limitation, theft coverage and such other coverages and endorsements as Mortgagee may deem reasonably necessary, insuring Mortgagee against damage to the Mortgaged Property and the improvements thereon. Such coverage should adequately insure any and all Loan collateral, whether such collateral is onsite, stored offsite or otherwise.

(c)      Flood Hazard Insurance. A policy of flood insurance, as required by applicable governmental regulations, or as deemed necessary by Mortgagee, in an amount required by Mortgagee, but in no event less than the amount sufficient to meet the requirements of applicable law and governmental regulation.

(d)      Liability Insurance. A policy of Commercial General Liability insurance on an occurrence basis, with a limit of no less than $2,000,000.00 per occurrence and $4,000,000 in the aggregate, insuring against liability for injury and/or death to any person and/or damage to any property occurring on the Mortgaged Property and/or in the improvements thereon.

(e)      Dram Shop Insurance. If alcoholic beverages are to be served at the Mortgaged Property, Mortgagor shall care dram shop insurance with coverage of at least $5,000,000.00 per occurrence.

(f)      Other Coverage. Mortgagor shall provide to Mortgagee evidence of such other reasonable insurance in such reasonable amounts as Mortgagee may from time to time request against such other insurable hazards which at the time are commonly insured against for property similar to the subject Mortgaged Property located in or around the region in which the subject Mortgaged Property is located. Such coverage requirements may include but are not limited to coverage for earthquake, acts of terrorism, business income, delayed business income, rental loss, sink hole, soft costs, tenant improvements or environmental.

(g)      Insurance Certificates. Mortgagor shall provide to Mortgagee insurance certificates or other evidence of coverage in form acceptable to Mortgagee, with coverage amounts, deductibles, limits and retentions as required by Mortgagee. All insurance policies shall provide that the coverage shall not be cancelable or materially changed without thirty (30) days prior written notice to Mortgagee. Mortgagee shall be named under a Mortgagee's Loss Payable Endorsement (form #438BFU or equivalent) on all property insurance policies which Mortgagor is required to or actually maintains with respect to the Mortgaged Property and the improvements thereon. Mortgagor shall provide a certificate of liability insurance naming Mortgagee as an additional insured on all liability policies maintained by Mortgagor including any umbrella coverage. All insurance policies shall be issued and maintained by insurers approved to do business in the state in which the Mortgaged Property is located and must have an A.M. Best Company financial rating and policyholder surplus acceptable to Mortgagee.

(h)      Impounds. After exhaustion of the Working Capital Holdback Account maintained pursuant to the Note, at Mortgagee's option, Mortgagee may require Mortgagor to deposit 1/12th of the estimated annual insurance premiums with Mortgagee each month, which sum Mortgagee shall use to pay such premiums when due directly to the insurer. Without limiting the generality of the foregoing or otherwise, the determination of the amount so payable and of the fractional part thereof to be deposited with Mortgagee, so

that the aggregate of such deposits shall be sufficient for this purpose, shall be made by Mortgagee in its sole discretion. Such deposited amounts shall be held by Mortgagee without interest and, except as otherwise provided herein, applied to the payment of the obligations in respect of which such amounts were deposited or, at Mortgagee's sole option, to the payment of said obligations in such order or priority as Mortgagee shall determine, on or before the respective dates on which the same or any of them would become delinquent. Such deposited amounts may also be commingled with the Mortgagee's other funds and the Mortgagor further acknowledges and agrees that no trust relationship of any kind whatsoever shall exist between the Mortgagor and the Mortgagee as to any such amounts or funds deposited and/or paid. If one month prior to the due date of any of the aforementioned obligations the amounts then on deposit therefor shall be insufficient for the payment of such obligation in full, Mortgagor within ten (10) days after demand shall deposit the amount of the deficiency with Mortgagee. Nothing herein contained shall be deemed to affect any right or remedy of Mortgagee under any provisions of this Mortgage or of any statute or rule of law to pay any such amount and to add the amount so paid, together with interest at the Default Rate provided in the Promissory Note, to the indebtedness hereby secured. Without limiting the generality of the foregoing, upon the occurrence of any Event of Default under this Mortgage, the Mortgagee, at its sole option, may apply any amounts or sums held by, or deposited with, the Mortgagee (or in the Mortgagee's possession or control) against any indebtedness of the Mortgagor due or payable to the Mortgagee, or any Obligations secured, under this Mortgage, the Promissory Note, any other Loan Documents or otherwise, in such manner as the Mortgagee may determine in its sole discretion.

   Section 3.7    **Hazardous Materials Covenants**.

   (a)    <u>Representation re Hazardous Materials</u>. Except as discussed in the Limited Subsurface Investigation report prepared by ETS Environmental & Associates, LLC and dated January 5, 2018 (the "ETS Report"), the Mortgaged Property has not been used as a site for the use, generation, manufacture, storage, treatment, release, discharge, disposal, transportation or presence of any Hazardous Materials; and the Mortgaged Property and the improvements thereon comply with all Hazardous Materials Laws and there has been no release of Hazardous Substances in, on about or under the Mortgaged Property.

   (b)    <u>No Hazardous Activities</u>. Mortgagor shall immediately commence hazard mitigation measures and site investigation and assessment through a licensed environmental engineer or licensed environmental geologist and shall submit a permit for removal of all underground storage tanks located on the Property with the City of Chicago's Department of Public Health Underground Storage Tank Unit no later than ten days after the date hereof. Thereafter, Borrower shall diligently prosecute remediation of the Property and removal of all underground storage tanks in accordance with all applicable laws and regulations; and shall provide a no further remediation letter and confirmation of removal of all tanks to Mortgagee no later than one (1) year after the date hereof. Mortgagor shall not cause or permit the Mortgaged Property or the improvements thereon to be used as a site for the use, generation, manufacture, storage, treatment, release, discharge, disposal, transportation or presence of any Hazardous Materials at any time after the date hereof. Mortgagor shall comply and cause the Mortgaged Property and the improvements thereon to comply with all Hazardous Materials Laws. Mortgagor shall promptly notify Mortgagee in writing of: (i) any knowledge by Mortgagor of the discovery of any Hazardous Materials on, under or about the Mortgaged Property in violation of any Hazardous Materials Law (ii) any knowledge by Mortgagor that the Mortgaged Property does not comply with any Hazardous Materials Laws in any respect; (iii) any claim that any Hazardous Materials Law has been violated whether by a governmental authority or a third party; and (iv) any knowledge by Mortgagor of the discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could negatively affect the Mortgaged Property. In response to the presence of any Hazardous Materials on, under or about the Mortgaged Property or the improvements thereon, Mortgagor shall promptly take, at Mortgagor's sole expense, all remedial action required by any Hazardous Materials Laws or any judgment, consent decree, settlement or compromise in respect to any Hazardous Materials Claims as reasonably determined by Mortgagee. Upon reasonable prior notice to Mortgagor, Mortgagee, its employees

and agents, may from time to time (whether before or after the commencement of a nonjudicial or judicial foreclosure proceeding) enter and inspect the Mortgaged Property and the improvements thereon for the purpose of determining the existence, location, nature and magnitude of any past or present release or threatened release of any hazardous substance into, onto, beneath or from the Mortgaged Property or the improvements thereon. Any inspections or tests made by Mortgagee are for Mortgagee's purposes only and shall not be construed to create any responsibility or liability on the part of Mortgagee to Mortgagor or any other Person.

(c)    Hazardous Materials Indemnity. Mortgagor hereby agrees to defend, indemnify and hold harmless Mortgagee, its directors, officers, employees, agents, successors and assigns from and against any and all losses, damages, liabilities, claims, actions, judgments, court costs and legal or other expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively "**Hazardous Materials Claims**") which Mortgagee may incur as a direct or indirect consequence of the use, generation, manufacture, storage, disposal, threatened disposal, transportation or presence of Hazardous Materials in, on, under or about the Mortgaged Property. Mortgagor shall immediately pay to Mortgagee upon demand any amounts owing under this indemnity, together with interest from the date the indebtedness arises until paid at the rate of interest applicable to the principal balance of the Note. MORTGAGOR'S DUTY AND OBLIGATIONS TO DEFEND, INDEMNIFY AND HOLD HARMLESS MORTGAGEE SHALL SURVIVE (a) THE CANCELLATION OF THE NOTE AND THE RELEASE, DISCHARGE, RECONVEYANCE OR PARTIAL RELEASE, DISCHARGE OR RECONVEYANCE OF THE MORTGAGE, (b) ANY FORECLOSURE UNDER THE MORTGAGE OR TRANSFER OF THE MORTGAGED PROPERTY IN LIEU THEREOF, AND (c) THE SATISFACTION OF ALL OF MORTGAGOR'S OBLIGATIONS.

**Section 3.8**    **Leasing**. Mortgagor shall at all times maintain either a management agreement or a lease for all space intended to be leased in the Mortgaged Property, at fair market rates and in a form approved by Mortgagee. Any new managament agreement or lease or material amendment or termination for any portion of the Mortgaged Property shall be subject to Mortgagee's prior written approval. Upon the request of Mortgagee, Mortgagor shall use its diligent, commercially reasonable efforts to obtain and deliver to Mortgagee, a subordination, non-disturbance and attornment agreement in form and substance satisfactory to Mortgagee from any direct tenant of Mortgagor's and/or a collateral assignment of any such lease or managament agreement.

**Section 3.9**    **Liens & Indebtedness**. Mortgagor will not create or permit to exist any lien upon or with respect to any of the property that secures the Loan (including, without limitation, the Mortgaged Property) other than (i) the exceptions approved by Mortgagee in writing and set forth in the Title Policy, (ii) liens for Taxes not yet due and payable or which are being contested in good faith by Mortgagor in accordance with the requirements of this Agreement, (iii) judgment liens securing judgments which are bonded or released within thirty (30) days after the date the judgment is filed, or (iv) mechanics' or materialmen's liens contested by Mortgagor in good faith and with diligence and which are bonded, canceled or discharged of record within thirty (30) days after recording. No indebtedness other than the Indebtedness may be secured by the Mortgaged Property.

**Section 3.10**    **Required Notices**. Mortgagor covenants and agrees to notify Mortgagee, within five (5) Business Days from the occurrence of any event known to it (or the receipt of any notice by Mortgagor) that could have a material adverse effect on, or the financial condition of, Mortgagor, Guarantor or the Mortgaged Property (or any portion thereof), including, but not limited to (a) the filing or threatening in writing of any action or proceeding affecting Mortgagor, Guarantor or the Mortgaged Property, (b) the occurrence of any damage to the Mortgaged Property, (c) any condemnation offer or action affecting the Mortgaged Property, (e) notices regarding violations of laws affecting Mortgagor, Guarantor or the Mortgaged Property, or (f) notices alleging a default (by any party thereto) under any agreement to which Mortgagor is a party

**Section 3.11**    **Amendment of Organizational Documents**. To the extent the party or parties constituting Mortgagor is an entity rather than a natural person such party shall not amend, or permit or suffer

the amendment of, the organizational documents of such party with the prior written consent of Mortgagee.

**Section 3.12**    <u>Further Assurances</u>. Upon Mortgagee's request and at Mortgagor's sole cost and expense, Mortgagor shall execute, acknowledge and deliver any other instruments and perform any other acts reasonably necessary, desirable or proper, as reasonably determined by Mortgagee, to carry out the purposes of this Agreement and the other Loan Documents or to perfect and preserve any liens created by the Loan Documents.

**Section 3.13**    <u>Maintenance of Property</u>. Mortgagor shall preserve and protect the Mortgaged Property and shall ensure that the Mortgaged Property is maintained in good condition and repair.

**Section 3.14**    <u>Alterations.</u> Mortgagor shall not make any material alterations or improvements to the Mortgaged Property without the prior written consent of Mortgagee; provided, however, that Mortgagor's renovation pursuant to the plans and specifications attached as Exhibit J to the Note is hereby approved. Mortgage shall not change the use of the Mortgaged Property without the prior written consent of Mortgagee.

**Section 3.15**    <u>Transactions With Affiliates</u>.    Mortgagor shall not permit or suffer, without Mortgagee's prior written approval, (a) any direct or indirect payment by Mortgagor to any Affiliate of Mortgagor except for distributions of cash, or (b) any other transaction involving Mortgagor and any Affiliate of Mortgagor; provided, however, that the foregoing restriction shall not apply to transactions relating to reasonable and customary costs charged to Mortgagor by Affiliates of Mortgagor incurred in connection with asset management and administration of Mortgagor and/or the Mortgaged Property nor to the construction management fee set out in the construction budget approved by Mortgagee pursuant to the Note; and, provided, further, that such asset management and administration costs are reasonably determined based on their actual allocated cost.

**Section 3.16**    <u>Americans With Disabilities Act Compliance</u>. Mortgagor shall maintain the Mortgaged Property and the improvements thereon in strict accordance and full compliance with all of the requirements of the Americans with Disabilities Act of 1990.

**Section 3.17**    <u>Due on Sale</u>. Without the prior written consent of Mortgagee, Mortgagor shall not sell, assign or otherwise transfer the Mortgaged Property (or any portion thereof, including without limitation the right to receive the revenues therefrom) to any other Person. Mortgagor shall not (i) merge into or consolidate with any corporation or other entity, or (ii) sell, lease, assign, transfer or otherwise dispose of all or substantially all of its assets or (iii) allow any change in management, control or ownership of Mortgagor or (iv) allow any transfer of any ownership interest in Mortgagor or (v) issue any new shares or membership or partnership interests or allow any new shareholders, members or partners, in each case without Mortgagee's prior written consent, which consent may be withheld in Mortgagee's sole and absolute discretion. Any violation of this section shall be an Event of Default and result in the Indebtedness being accelerated and due and payable.

**Section 3.18**    [This <u>Section 3.18</u> Intentionally Left Blank].

**Section 3.19**    <u>Taxes</u>.  Mortgagor shall pay and discharge or cause to be paid and discharged when due all taxes and assessments, including, without limitation, all real estate, ad valorem, sales, use, single business, gross receipts or similar assessments assessed in connection with the Mortgaged Property. Following exhaustion of the Working Capital Holdback Account, at Mortgagee's option, Mortgagee may require Mortgagor to deposit 1/12th of the estimated annual property tax liability with Mortgagee each month, which sum Mortgagee shall use to pay taxes directly to the taxing authority. Without limiting the generality of the foregoing or otherwise, the determination of the amount so payable and of the fractional part thereof to be deposited with Mortgagee, so that the aggregate of such deposits shall be sufficient for this purpose, shall be made by Mortgagee in its sole discretion. Such deposited amounts shall be held by Mortgagee without interest and, except as otherwise provided herein, applied to the payment of the obligations in respect of which such

amounts were deposited or, at Mortgagee's sole option, to the payment of said obligations in such order or priority as Mortgagee shall determine, on or before the respective dates on which the same or any of them would become delinquent. Such deposited amounts may also be commingled with the Mortgagee's other funds and the Mortgagor further acknowledges and agrees that no trust relationship of any kind whatsoever shall exist between the Mortgagor and the Mortgagee as to any such amounts or funds deposited and/or paid. If one month prior to the due date of any of the aforementioned obligations the amounts then on deposit therefor shall be insufficient for the payment of such obligation in full, Mortgagor within ten (10) days after demand shall deposit the amount of the deficiency with Mortgagee. Nothing herein contained shall be deemed to affect any right or remedy of Mortgagee under any provisions of this Mortgage or of any statute or rule of law to pay any such amount and to add the amount so paid, together with interest at the Default Rate provided in the Promissory Note, to the indebtedness hereby secured. Without limiting the generality of the foregoing, upon the occurrence of any Event of Default under this Mortgage, the Mortgagee, at its sole option, may apply any amounts or sums held by, or deposited with, the Mortgagee (or in the Mortgagee's possession or control) against any indebtedness of the Mortgagor due or payable to the Mortgagee, or any Obligations secured, under this Mortgage, the Promissory Note, any other Loan Documents or otherwise, in such manner as the Mortgagee may determine in its sole discretion.

**Section 3.20** __Guarantees.__ Without the prior written consent of Mortgagee, Mortgagor shall not guarantee or become liable in any way as a surety, endorser (other than as endorser of negotiable instruments in the ordinary course of business) or accommodation endorser or otherwise for debt or obligations of any other person or entity.

**Section 3.21** __Single Purpose Entity.__ To the extent the party or parties comprising Mortgagor is an entity rather than a natural person such entity shall be at all times a Single Purpose Entity.

**Section 3.22** __Books and Records/Inspections.__ Mortgagor shall keep, or cause to be kept, complete and accurate books of account for the Mortgaged Property in accordance with generally accepted accounting principles, consistently applied. Without limiting the generality of any other provision hereof, Mortgagor shall upon reasonable notice, permit representatives of Mortgagee, from time to time, as often as may be reasonably requested, to visit and inspect the assets of Mortgagor, inspect and make extracts from its books and records, and discuss with its members, its employees and its independent accountants, Mortgagor's business, assets, liabilities, financial condition, business prospects and results of operations.

**Section 3.23** __Physical Inspections.__ Mortgagee shall have the right at any time upon prior written notice to inspect any of the Premises including the interior portions of the Improvements.

**Section 3.24** __Compliance with Laws.__ Mortgagor shall comply in all material respects with all laws, ordinances, governmental rules and regulations to which it is subject, and obtain and keep in force any and all licenses, permits, franchises, or other governmental authorizations necessary to the ownership of its assets or to the conduct of its business.

**Section 3.25** __Reporting Covenants.__ Mortgagor shall deliver to Mortgagee, as soon as available, but in no event later than ninety (90) days after each calendar year end, a current financial statement (including, without limitation, an income and expense statement and balance sheet) certified by an executive officer of Mortgagor as being true and correct in all material respects, together with any other financial information (which may include bank statements, quarterly financial statements, quarterly operating statements and cash flow projections) reasonably requested by Mortgagee. If audited financial information is prepared, Mortgagor shall deliver to Mortgagee copies of such information within fifteen (15) days of its final preparation. All such financial information shall be prepared on a consistent basis from period to period. In addition to the foregoing, Mortgagor shall deliver to Mortgagee within 10 days or request such other information pertaining to the Mortgaged Property, Mortgagor, Guarantor or constituent members of Mortgagor as Mortgagee may reasonably request.

**Section 3.26     Financial Condition.** All financial and other information provided to Mortgagee with regard to Mortgagor and Guarantor is true, accurate and complete in all respects. There shall be no material adverse change in the financial condition of Mortgagor or Guarantor which may adversely affect their ability to fulfill their obligations under the Loan Documents. There shall be no action, proceeding, or investigation pending or threatened or affecting Mortgagor or Guarantor, which may adversely affect their ability to fulfill his obligations under the Loan Documents. There are no judgments or orders for the payment of money rendered against- Mortgagor Guarantor for an amount in excess of $10,000 that have been un-discharged for a period of ten (10) or more consecutive days and the enforcement of which is not stayed by reason of a pending appeal or otherwise. Except as set forth in Exhibit E to the Note, there is no litigation pending against the Mortgagor.

**Section 3.27     Other Covenants.** All of the covenants in the Promissory Note are incorporated herein by reference and, together with covenants in this Article 3, shall be covenants running with the land unless and until this Mortgage is duly released by Mortgagee pursuant to the terms and provisions of this Mortgage.

**Section 3.28     Condemnation Awards.** Mortgagor assigns all awards and compensation to which it is entitled for any condemnation or other taking, or any purchase in lieu thereof, to Mortgagee and authorizes Mortgagee to collect and receive such awards and compensation and to give proper receipts and acquittances therefor, subject to the terms of the Promissory Note.

**Section 3.29     Use of Property.** The Mortgaged Property may not be used as a residence of Mortgagor.

**Section 3.30     Utility Charges.** Mortgagor shall pay when due all utility charges for the Mortgaged Property, including without limitation, water, electricity, sewer and gas.

ARTICLE 4
DEFAULT AND FORECLOSURE

**Section 4.1     Event of Default.** Any failure to perform any obligation under this Mortgage or any of the Loan Documents after any express cure period has elapsed shall be an "**Event of Default**".

**Section 4.2     Remedies.** If an Event of Default exists, Mortgagee may, at Mortgagee's exercise any or all of the following rights, remedies and recourses:

(a)     Acceleration. Declare the Indebtedness to be immediately due and payable, without further notice, presentment, protest, notice of intent to accelerate, notice of acceleration, demand or action of any nature whatsoever (each of which hereby is expressly waived by Mortgagor), whereupon the same shall become immediately due and payable. At the Mortgagee's option, Mortgagee may bring suit therefor and take any and all steps and institute any and all other proceedings that Mortgagee deems necessary or advisable in its sole discretion to enforce its rights, to collect the Indebtedness and to enforce the Obligations, including without limitation all amounts due under the Note and other Loan Documents, and to protect and/or foreclose, as the case may be, the lien of this Mortgage.

(b)     Entry on Mortgaged Property. Enter the Mortgaged Property, in person or by agent or by court-appointed receiver and take exclusive possession thereof and of all books, records and accounts relating thereto or located thereon. If Mortgagor remains in possession of the Mortgaged Property after an Event of Default and without Mortgagee's prior written consent, Mortgagee may invoke any legal remedies to dispossess Mortgagor.

(c)     Operation of Mortgaged Property. Hold, lease, develop, manage, operate or

otherwise use the Mortgaged Property upon such terms and conditions as Mortgagee may deem reasonable under the circumstances (making such repairs, alternations, additions and improvements and taking other actions, from time to time, as Mortgagee deems necessary or desirable). Further, Mortgagee may collect and receive all of the income, rents, profits, issues, revenues and accounts of or related to the Mortgaged Property, including those past due as well as those accruing thereafter, and Mortgagee may apply any monies and proceeds received by Mortgagee in such order and priority as Mortgagee in its sole discretion may determine to all expenses of taking, holding, managing and operating the Mortgaged Property (including compensation for the services of all persons employed for such purposes), to the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions, to the cost of such insurance, to such taxes, assessments and other charges as Mortgagee may determine to pay, to other proper charges upon the Mortgaged Property or any part thereof, to the reasonable compensation and expenses of attorneys and agents of the Mortgagee, to accrued interest, to deposits for taxes, insurance and similar items required hereunder, and to overdue installments of principal. For the purposes of carrying out the provisions of this subsection (c), Mortgagor hereby irrevocably constitutes and appoints Mortgagee as Mortgagor's agent and attorney in fact to do and perform, from time to time, any and all actions necessary or incidental to such purpose and does, by these presents, ratify and confirm any and all actions of said attorney in fact in the Mortgaged Property, which agency and attorney-in-fact is coupled with an interest and with full power of substitution. Whenever all defaults have been cured and satisfied, Mortgagee shall surrender possession of the Mortgaged Property to Mortgagor, provided that the right of Mortgagee to take possession, from time to time, pursuant to this Section shall exist if any subsequent default shall occur and be continuing.

　　　　(d)　　Foreclosure and any Sale of the Mortgaged Property as a result of a Foreclosure by Sale. Institute or commence proceedings or suits for the complete foreclosure of this Mortgage by judgment of foreclosure (whether by foreclosure sale or strict foreclosure), and in the case of any judgment of foreclosure by foreclosure sale, to the extent permitted by applicable law, the Mortgaged Property may be sold for cash or credit in one or more parcels as Mortgagee may determine. With respect to any notices required or permitted under the UCC, to the extent permitted by applicable law, Mortgagor agrees that five (5) business days' prior written notice shall be deemed commercially reasonable. At any such foreclosure sale or by virtue of any other legal right, remedy or recourse, the title to and right of possession of any such property shall pass to the purchaser thereof, and to the fullest extent permitted by law, Mortgagor shall be completely and irrevocably divested of all of its right, title, interest, claim, equity, equity of redemption, and demand whatsoever, either at law or in equity, in and to the property sold and, to the extent permitted by applicable law, such sale shall be a perpetual bar both at law and in equity against Mortgagor, and against all other Persons claiming or to claim the property sold or any part thereof, by, through or under Mortgagor. Mortgagee may be a purchaser at such sale and, to the extent permitted by applicable law, if Mortgagee is the highest bidder, Mortgagee may credit the portion of the purchase price that would be distributed to Mortgagee against the Indebtedness in lieu of paying cash. To the extent permitted by applicable law, in the event this Mortgage is foreclosed, appraisement of the Mortgaged Property is waived.

　　　　(e)　　Receiver. Make application to a court of competent jurisdiction for, and, to the extent permitted by applicable law, obtain from such court as a matter of strict right, to the extent permitted by applicable law, ex parte and without notice to Mortgagor and without regard to the adequacy of the Mortgaged Property for the repayment of the Indebtedness, the appointment of a receiver of the Mortgaged Property, and Mortgagor irrevocably consents to such appointment. Any such receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Mortgaged Property upon such terms as may be approved by the court, and shall apply such Rents in accordance with the provisions of this Mortgage. In addition, any costs incurred, or advances made, by Mortgagee in connection with the implementation or operation of the receivership, to the extent permitted by applicable law, shall be added to the obligations secured hereby, bear interest at the Default Rate, be guaranteed by any guarantee(s) now or thereafter relating to the obligations secured hereby and be secured by this Mortgage.

(f)    Other.  Exercise all other rights, remedies and recourses granted under the Loan Documents or otherwise available at law or in equity.

Section 4.3    Separate Sales.  To the extent permitted by applicable law, the Mortgaged Property may be sold in one or more parcels and in such manner and order as Mortgagee in its sole discretion may elect; the right of sale arising out of any Event of Default shall not be exhausted by any one or more sales.

Section 4.4    Remedies Cumulative, Concurrent and Nonexclusive.  Mortgagee shall have all rights, remedies and recourses granted in the Loan Documents and available at law or equity (including the UCC), which rights (a) shall be cumulated and concurrent, (b) may be pursued separately, successively or concurrently against Mortgagor or others obligated under the Loan Documents, or against the Mortgaged Property, or against any one or more of them, at the sole discretion of Mortgagee, as the case may be, (c) may be exercised as often as occasion therefor shall arise, and the exercise or failure to exercise any of them shall not be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be, nonexclusive. No action by Mortgagee in the enforcement of any rights, remedies or recourses under the Loan Documents or otherwise at law or equity shall be deemed to cure any Event of Default.

Section 4.5    Release of and Resort to Collateral.  Mortgagee may release, regardless of consideration and without the necessity for any notice to or consent by the holder of any subordinate lien on the Mortgaged Property, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interest created in or evidenced by the Loan Documents or their status as a lien and security interest in and to the Mortgaged Property. For payment of the Indebtedness, Mortgagee may resort to any other security in such order and manner as Mortgagee may elect.

Section 4.6    Waiver of Redemption, Notice and Marshalling of Assets.  To the fullest extent permitted by law, Mortgagor hereby irrevocably and unconditionally waives and releases (a) all benefits that might accrue to Mortgagor by virtue of any present or future statute of limitations or law or judicial decision exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any stay of execution, exemption from civil process, redemption or extension of time for payment, (b) all notices of any Event of Default or of any election by Mortgagee to exercise or the actual exercise of any right, remedy or recourse provided for under the Loan Documents, and (c) any right to a marshalling of assets or a sale in inverse order of alienation and, without limiting the generality of the foregoing or otherwise, all right to have any of the Mortgaged Property marshaled upon any foreclosure hereof.

Section 4.7    Discontinuance of Proceedings.  If Mortgagee shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Mortgagee, as the case may be, shall have the unqualified right to do so and, in such an event, Mortgagor and Mortgagee shall be restored to their former positions with respect to the Indebtedness, the Obligations, the Loan Documents, the Mortgaged Property and otherwise, and the rights, remedies, recourses and powers of Mortgagee shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Mortgagee thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

Section 4.8    Allocation of Proceeds.  To the extent permitted by applicable law, the proceeds of any sale of, and the Rents and other amounts generated by the holding, leasing, management, operation or other use of the Mortgaged Property, shall be applied by Mortgagee (or the receiver, if one is appointed) in the following order unless otherwise required by applicable law:

(a)    to the payment of the costs and expenses of taking possession of the Mortgaged Property and of holding, using, leasing, repairing, improving and selling the same, including, without limitation (1) receiver's fees and expenses, including the repayment of the amounts evidenced by any receiver's

certificates, (2) court costs, (3) attorneys' and accountants' fees and expenses, and (4) costs of advertisement;

(b)    to the payment of the Indebtedness and performance of the Obligations in such manner and order of preference as Mortgagee in its sole discretion may determine; and

(c)    the balance, if any, to the payment of the Persons legally entitled thereto.

**Section 4.9    Occupancy After Foreclosure.** To the extent permitted by applicable law, any sale of the Mortgaged Property or any part thereof will divest all right, title and interest of Mortgagor in and to the property sold. Subject to applicable law, any purchaser at a foreclosure sale will receive immediate possession of the property purchased. If Mortgagor retains possession of such property or any part thereof subsequent to such sale, Mortgagor will be considered a tenant at sufferance of the purchaser, and will, if Mortgagor remains in possession after demand to remove, be subject to eviction and removal, forcible or otherwise, with or without process of law (to the extent permitted by applicable law).

**Section 4.10    Additional Advances and Disbursements; Costs of Enforcement.**

(a)    If any Event of Default exists, Mortgagee shall have the right, but not the obligation, to cure such Event of Default in the name and on behalf of Mortgagor. All sums advanced and expenses incurred at any time by Mortgagee under this Section 4.10, or otherwise under this Mortgage or any of the other Loan Documents or applicable law, shall bear interest from the date that such sum is advanced or expense incurred, to and including the date of reimbursement, computed at the rate or rates at which interest is then computed on the Indebtedness, and all such sums, together with interest thereon, shall be secured by this Mortgage.

(b)    Mortgagor shall pay all expenses (including reasonable attorneys' fees and expenses) of or incidental to the perfection and enforcement of this Mortgage and the other Loan Documents, or the enforcement, compromise or settlement of the Indebtedness or any claim under this Mortgage and the other Loan Documents, and for the curing thereof, or for defending or asserting the rights and claims of Mortgagee in respect thereof, by litigation or otherwise.

**Section 4.11    No Mortgagee in Possession.** Neither the enforcement of any of the rights or remedies under this Article 4, the assignment of the Rents and Leases under Article 5, the security interests under Article 6, nor any other rights or remedies afforded to Mortgagee under the Loan Documents, at law or in equity shall cause Mortgagee to be deemed or construed to be a mortgagee in possession of the Mortgaged Property, to obligate Mortgagee to lease the Mortgaged Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

**Section 4.12    Indemnification.** Mortgagor shall indemnify, defend, protect, and hold harmless Mortgagee its partners, members and their respective officers, agents, servants, employees, and independent contractors from any and all loss, cost, damage, expense and liability (including without limitation court costs and reasonable attorneys' fees) incurred in connection with or arising from (i) any cause in, on or about the Mortgaged Property, and (ii) any acts, omissions or negligence of Mortgagor or of any person claiming by, through or under Mortgagor, or of the contractors, agents, servants, employees, invitees, guests or licensees of Mortgagor or any such person, in, on or about the Mortgaged Property, (iii) any claims by any third parties against Mortgagor, Guarantor or against the Mortgaged Property; (iv) any release of any Hazardous Material in, on or about the Mortgaged Property or (iv) any breach of this Mortgage or any of the Loan Documents or the obligations thereunder. The provisions of this Section 4.12 shall survive the maturity of the Obligations.

**Section 4.13    No Offset.** Under no circumstances shall Mortgagor fail or delay to perform (or resist the enforcement of) any of its obligations in connection with any of the Loan Documents because of any alleged

offsetting claim or cause of action against Mortgagee (or any indebtedness or obligation of Mortgagee) which has not been confirmed in a final judgment of a court of competent jurisdiction (sustained on appeal, if any ) against Mortgagee, and, to the extent permitted by applicable law, Mortgagor hereby waives any such rights of setoff (or offset) which it might otherwise have with respect to any such claims or causes of action against Mortgagee (or any such obligations or indebtedness of Mortgagee), unless and until such right of setoff is confirmed and liquidated by such a final judgment.

ARTICLE 5
**ASSIGNMENT OF RENTS AND LEASES**

Section 5.1          **Assignment.**

(a)          As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Leases and Rents. It is the intention of Borrower to establish present, absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Borrower and Lender intend the assignments of Leases and Rents to be effective immediately and to constitute absolute present assignments, and not assignments for additional security only. Only for purposes of giving effect to these absolute assignments of Leases and Rents, and for no other purpose, the Leases and Rents shall not be deemed to be a part of the Mortgaged Property. However, if these present, absolute and unconditional assignments of Leases and Rents are not enforceable by their terms under the laws of Illinois, then each of the Leases and Rents shall be included as part of the Mortgaged Property, and it is the intention of Borrower, in such circumstance, that this Security Instrument create and perfect a lien on each of the Leases and Rents in favor of Lender, which liens shall be effective as of the date of this Security Instrument.

(b)          Until an Event of Default has occurred and is continuing, but subject to the limitations set forth in the Loan Documents, Borrower shall have a revocable license to exercise all rights, power and authority granted to Borrower under the Leases (including the right, power and authority to modify the terms of any Lease, extend or terminate any Lease, or enter into new Leases, subject to the limitations set forth in the Loan Documents), and to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, and to apply all Rents to pay the principal, interest, and/or fees and costs then due and owing under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities and Impositions (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing (and no event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing), the Rents remaining after application pursuant to the preceding sentence may be retained and distributed by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Security Instrument.

(c)          If an Event of Default has occurred and is continuing, without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of Illinois, the revocable license granted to Borrower pursuant to Section 5(b) shall automatically terminate, and Lender shall immediately have all rights, powers and authority granted to Borrower under any Lease (including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease) and, without notice, Lender shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid. During the continuance of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender, and Borrower shall, upon Borrower's receipt of any Rents from any sources, pay the total amount of such receipts to Lender. Although the foregoing rights of Lender are self-effecting, at any time during the continuance of an Event of Default, Lender may make demand for all Rents, and Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the

Mortgaged Property instructing them to pay all Rents to Lender. No tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts that are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit.

(d) If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower, and even in the absence of waste, enter upon, take and maintain full control of the Mortgaged Property, and may exclude Borrower and its agents and employees therefrom, in order to perform all acts that Lender, in its discretion, determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents (including through use of a lockbox, at Lender's election), the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing this assignment of Rents, protecting the Mortgaged Property or the security of this Security Instrument and the Mortgage Loan, or for such other purposes as Lender in its discretion may deem necessary or desirable.

(e) Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 5. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this security agreement, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte and without the need to post a bond, if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver. Lender or the receiver, as applicable, shall be entitled to receive a reasonable fee for managing the Mortgaged Property and such fee shall become an additional part of the Indebtedness. Immediately upon appointment of a receiver or Lender's entry upon and taking possession and control of the Mortgaged Property, possession of the Mortgaged Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the receiver, as applicable. If Lender or receiver takes possession and control of the Mortgaged Property, Lender or receiver may exclude Borrower and its representatives from the Mortgaged Property.

(f) The acceptance by Lender of the assignments of the Leases and Rents pursuant to this Section 5 shall not at any time or in any event obligate Lender to take any action under any Loan Document or to expend any money or to incur any expense. Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in, on or about the Mortgaged Property. Prior to Lender's actual entry upon and taking possession and control of the Land and Improvements, Lender shall not be:

(1) obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease);

(2) obligated to appear in or defend any action or proceeding relating to any Lease or the Mortgaged Property; or

(3) responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property.

The execution of this Security Instrument shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking possession and control by Lender of the Land and

Improvements.

(g)        Lender shall be liable to account only to Borrower and only for Rents actually received by Lender.  Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property by reason of any act or omission of Lender under this <u>Section 5</u>, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law, provided that Lender shall not be released from liability that occurs as a result of Lender's gross negligence or willful misconduct as determined by a court of competent jurisdiction pursuant to a final, non-appealable court order.  If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall be added to, and become a part of, the principal balance of the Indebtedness, be immediately due and payable, and bear interest at the Default Rate from the date of disbursement until fully paid.  Any entering upon and taking control of the Mortgaged Property by Lender or the receiver, and any application of Rents as provided in this Security Instrument, shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Security Instrument or any Loan Document.

**Section 5.2** <u>**Perfection Upon Recordation**</u>. Mortgagor acknowledges that Mortgagee has taken all actions necessary to obtain, and that upon recordation of this Mortgage Mortgagee shall have, to the extent permitted under applicable law, a valid and fully perfected, present assignment of the Rents arising out of the Leases and all security for such Leases. Mortgagor acknowledges and agrees that upon recordation of this Mortgagee's interest in the Rents shall be deemed to be fully perfected, "choate" and enforced as to Mortgagor and all third parties, including, without limitation, any subsequently appointed trustee in any case under the Bankruptcy Code without the necessity of commencing a foreclosure action with respect to this Mortgage, making formal demand for the Rents, obtaining the appointment of a receiver or taking any other affirmative action.

**Section 5.3** <u>**Bankruptcy Provisions**</u>. Without limitation of the absolute nature of the assignment of the Rents hereunder, Mortgagor and Mortgagee agree that (a) this Mortgage shall constitute a "security agreement" for purposes of Section 552(b) of the Bankruptcy Code, (b) the security interest created by this Mortgage extends to property of Mortgagor acquired before the commencement of a case in bankruptcy and to all amounts paid as Rents and (c) such security interest shall extend to all Rents acquired by the estate after the commencement of any case in bankruptcy. Notwithstanding this provision, the Mortgagor acknowledges that upon an Event of Default, the Rents shall constitute property of the Mortgagee and shall not constitute property of the Mortgagor's bankruptcy estate in any subsequently commenced case under the Bankruptcy Code.

**Section 5.4** <u>**No Merger of Estates**</u>. So long as part of the Indebtedness and the Obligations secured hereby remain unpaid and undischarged, the fee and leasehold estates to the Mortgaged Property shall not merge, but shall remain separate and distinct, notwithstanding the union of such estates either in Mortgagor, Mortgagee, any tenant or any third party by purchase or otherwise.

**Section 5.5** <u>**Nuisance and Waste**</u>. Mortgagor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Mortgaged Property or any portion of the Mortgaged Property. Without limiting the generality of the foregoing, Mortgagor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Mortgagee's prior written consent. The failure of Mortgagor to pay taxes or assessments assessed or levied against the Mortgaged Property, or any insurance premiums for a policy covering the Mortgaged Property as provided herein, shall constitute waste, and shall further constitute an Event of Default hereunder and under the Note and Agreements. To the extent permitted by applicable law, Mortgagee shall be entitled to and Mortgagor consents to the appointment by a court of competent jurisdiction of a receiver of the Mortgaged Property for the purposes of preventing the waste. Subject to the order of the court, the receiver may collect the rents and income from the Mortgaged Property and shall exercise control over the Mortgaged Property to the extent ordered by the court. A court may also appoint a receiver for the Mortgaged Property in

any other circumstances permitted by law or as provided in this Mortgage (to the extent permitted by applicable law). Mortgagee shall have the right to have a receiver appointed to take possession of all or any part of the Mortgaged Property, with the power to protect and preserve the Mortgaged Property, to operate the Mortgaged Property preceding foreclosure or sale, and to collect the rents from the Mortgaged Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness in such order as Mortgagee may elect. The receiver may serve without bond if permitted by law. To the extent permitted by applicable law, Mortgagee's right to the appointment of a receiver shall exist whether or not the apparent value of the Mortgaged Property exceeds the Indebtedness by a substantial amount. Employment by Mortgagee shall not disqualify a person from serving as a receiver.

ARTICLE 6
**SECURITY AGREEMENT**

   **Section 6.1**  **Uniform Commercial Code**. This Mortgage is a "security agreement" and creates a "security interest" in favor of Mortgagee as a "secured party" with respect to all property included in the Mortgaged Property which is covered by the UCC, including but not limited to the Personal Property and Mortgagor hereby grants a security interest therein to Mortgagee to secure payment and performance of the Obligations. Upon default under this Mortgage or any other Loan Document, Mortgagee may at its option pursue any and all rights and remedies available to a secured party with respect to any portion of the Mortgaged Property so covered by the UCC, or Mortgagee may at its option proceed as to all or any part of the Mortgaged Property in accordance with Mortgagee's rights and remedies in respect of real property to the extent permitted by law. Mortgagor and Mortgagee agree that the mention of any portion of the Mortgaged Property in a financing statement filed in the records normally pertaining to personal property shall never derogate from or impair in any way their declared intention that all items of Personal Property described in this Mortgage are part of the real estate encumbered hereby to the fullest extent permitted by law, regardless of whether any such item is physically attached to the Improvements or whether serial numbers are used for the better identification of certain items of Personal Property. Specifically, the mention in any such financing statement of (a) the rights to proceeds of any insurance policy, (b) any award in eminent domain proceedings for a taking or for loss of value, (c) Mortgagor's interest as lessor in any present or future Lease or right to income growing out of the use or occupancy of the Land or Improvements, whether pursuant to Lease or otherwise, or (d) any other item included in the definition of the Mortgaged Property shall never be construed to alter any of the rights of Mortgagee as determined by this Mortgage or to impugn the priority of Mortgagee's lien and security interest with respect to the Mortgaged Property; such mention in a financing statement is declared to be for the protection of Mortgagee in the event any court shall hold that notice of Mortgagee's priority of interest with respect to any such portion of the Mortgaged Property must be filed in the UCC records in order to be effective against or to take priority over any particular class of persons, including but not limited to the federal government and any subdivision or instrumentality of the federal government. To the extent permitted by applicable law, any notice of sale, disposition or other intended action by Mortgagee with respect to the Personal Property sent to Mortgagor at least five (5) days prior to any action under the UCC shall constitute reasonable notice to Mortgagor.

   **Section 6.2**  **Financing Statements**. Mortgagor authorizes Mortgagee to make, file and/or record on Mortgagor's behalf, in form and substance satisfactory to Mortgagee, such financing statements and such further assurances as Mortgagee may, from time to time, reasonably consider necessary to create, perfect and preserve Mortgagee's security interest hereunder and Mortgagee may cause such statements and assurances to be recorded and filed, at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest. Mortgagor's chief executive office is at the address set forth in the first paragraph of this Mortgage.

   **Section 6.3**  **Fixture Filing**. This Mortgage shall also constitute a "fixture filing" for the purposes of the UCC against all of the Mortgaged Property which is or is to become fixtures. Information concerning the security interest herein granted may be obtained at the addresses of Debtor (Mortgagor) and Secured Party

(Mortgagee) as set forth in the first paragraph of this Mortgage.

## ARTICLE 7
## ILLINOIS LAW PROVISIONS

**Section 7.1      Illinois Insurance Notice**.  Unless Mortgagor provides Mortgagee with evidence of insurance coverage required by Mortgagor's agreement with Mortgagee, Mortgagee may purchase insurance at Mortgagor's expense to protect Mortgagee's interest in the Mortgaged Property. This insurance may, but need not, protect Mortgagor's interests.  The coverage that Mortgagee purchases may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Mortgaged Property. Mortgagor may later cancel any insurance purchased by Mortgagee but only after providing Mortgagee with evidence that Mortgagor  has obtained insurance as required by this Mortgage.  If Mortgagee purchases insurance for the Mortgaged Property, Mortgagor will be responsible for the costs of that insurance, including interest and any other charges Mortgagee may impose in connection with the placement of insurance, until the effective date of the cancellation or expiration of the insurance.  The costs of the insurance may be added to Mortgagor's total outstanding balance or obligation.  The costs of the insurance may be more than the cost of insurance Mortgagor  may be able to obtain on Mortgagor's own.

**Section 7.2      Future Advances**. This is an open-end mortgage that secures future advances and the holder hereof shall have all of the rights, powers and protection to which the holder of any open-end mortgage is entitled under Illinois law. Upon request Mortgagee may, in Mortgagee's discretion, and only if permitted by and in accordance with the terms of the Loan Documents, make future advances to Mortgagor secured by the lien of this Mortgage. Any future advance, and the interest payable thereon, shall be secured by this Mortgage when evidenced by a promissory note stating that the note is secured hereby. At no time shall the principal amount of the debt secured by this Mortgage exceed$6,250,000.00, nor shall the maturity of any future advance secured hereby extend beyond the date the final principal payment is due on the Note.

## ARTICLE 8
## MISCELLANEOUS

**Section 8.1      Notices.** Any notice required or permitted to be given under this Mortgage shall be given in accordance with the Promissory Note.

**Section 8.2      Covenants Running with the Land.** All Obligations contained in this Mortgage are intended by Mortgagor, Mortgagee to be, and shall be construed as, covenants running with the Mortgaged Property unless and until this Mortgage is duly released by Mortgagee pursuant to the terms and provisions of this Mortgage.  All Persons who may have or acquire an interest in the Mortgaged Property shall be deemed to have notice, and be bound by, the terms of the Promissory Note and the other Loan Documents; however, no such party shall be entitled to any rights thereunder without the prior written consent of Mortgagee.

**Section 8.3      Attorney-in-Fact.** Mortgagor hereby irrevocably appoints Mortgagee and its successors and assigns, as its attorney-in-fact, which agency and attorney-in-fact is coupled with an interest and with full power of substitution, (a) to execute and/or record any notices of completion, cessation of labor or any other notices that Mortgagee deems appropriate to protect Mortgagee's interest, if Mortgagor shall fail to do so within ten (10) days after written request by Mortgagee, (b) upon the issuance of a deed pursuant to the foreclosure of this Mortgage or the delivery of a deed in lieu of foreclosure, to execute all instruments of assignment, conveyance or further assurance with respect to the Leases, Rents, Income, Property Agreements, Tax Refunds, Proceeds, Insurance and Condemnation Awards in favor of the grantee of any such deed and as may be necessary or desirable for such purpose, (c) to prepare, execute and file or record financing statements, continuation statements, applications for registration and like papers necessary to create, perfect or preserve Mortgagee's security interests and rights in or to any of the Mortgaged Property, and (d) while any Event of

Default exists, to perform any obligation of Mortgagor hereunder, however: (1) Mortgagee shall not under any circumstances be obligated to perform any obligation of Mortgagor; (2) any sums advanced by Mortgagee in such performance shall be added to and included in the Indebtedness and shall bear interest at the rate or rates at which interest is then computed on the Indebtedness; (3) Mortgagee as such attorney-in-fact shall only be accountable for such funds as are actually received by Mortgagee; and (4) Mortgagee shall not be liable to Mortgagor or any other person or entity for any failure to take any action which it is empowered to take under this Section 8.3.

Section 8.4    **Successors and Assigns.** This Mortgage shall be binding upon and inure to the benefit of Mortgagee and Mortgagor and their respective successors and assigns. Mortgagor shall not, without the prior written consent of Mortgagee, assign any rights, duties or obligations hereunder.

Section 8.5    **No Waiver.** Any failure by Mortgagee to insist upon strict performance of any of the terms, provisions or conditions of the Loan Documents shall not be deemed to be a waiver of same, and Mortgagee shall have the right at any time to insist upon strict performance of all of such terms, provisions and conditions. Mortgagee may accept partial payments under the Promissory Note without waiver of any previous acceleration of the Indebtedness due under the Loan Documents.

Section 8.6    **Promissory Note.** If any conflict or inconsistency exists between this Mortgage and the Promissory Note, the Promissory Note shall govern.

Section 8.7    **Release or Reconveyance.** Upon payment in full of the Indebtedness and performance in full of the Obligations, Mortgagee, at Mortgagor's expense, shall release the liens and security interests created by this Mortgage.

Section 8.8    **Waiver of Stay, Moratorium, Exemption and Similar Rights.** Mortgagor agrees, to the full extent that it may lawfully do so, that it will not at any time insist upon or plead or in any way take advantage of any stay, marshalling of assets, extension, redemption or moratorium law now or hereafter in force and effect so as to prevent or hinder the enforcement of the provisions of this Mortgage or the Indebtedness secured hereby, or any agreement between Mortgagor and Mortgagee or any rights or remedies of Mortgagee. Furthermore, Mortgagor hereby waives all rights of exemption pertaining to real or personal property as to any indebtedness secured by or that may be secured by this Mortgage, and Mortgagor waives the benefit of any statute regulating, restricting or prohibiting the obtaining of a deficiency judgment by Mortgagee against Mortgagor or requiring that the value of the Mortgaged Property be set off against any part of the indebtedness secured hereby.

Section 8.9    **Applicable Law; Consent to Jurisdiction.** THE PROVISIONS OF THIS MORTGAGE REGARDING THE CREATION, PERFECTION AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS HEREIN GRANTED , AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER, SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF ILLINOIS (WITHOUT GIVING EFFECT TO ILLINOIS'S PRINCIPLES OF CONFLICTS OF LAW). MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY, INTELLIGENTLY AND INTENTIONALLY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, IRREVOCABLY CONSENTS AND AGREES THAT ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS MORTGAGE (EACH, A "PROCEEDING") MAY BE INSTITUTED OR BROUGHT IN THE COURT OF THE STATE OF ILLINOIS SITTING IN COOK COUNTY OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, AS MORTGAGEE MAY ELECT IN ITS SOLE DISCRETION, AND BY THE EXECUTION AND DELIVERY OF THIS MORTGAGE, MORTGAGOR IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY COURTS OF THE STATE OF ILLINOIS OR OF ANY DISTRICT COURT OF THE UNITED STATES IN ILLINOIS OR ANY OTHER FEDERAL OR STATE COURT, AS MORTGAGEE MAY ELECT IN ITS SOLE DISCRETION, OVER ANY PROCEEDING ARISING OUT OF OR RELATING TO THE PROMISSORY NOTE, ANY OTHER LOAN DOCUMENTS AND/OR ANY DOCUMENTS, AGREEMENTS OR INSTRUMENTS EXECUTED AND/OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, AS THE CASE MAY BE. WITHOUT LIMITING THE

GENERALITY OF THE FOREGOING OR OTHERWISE, MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY, INTELLIGENTLY AND INTENTIONALLY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (I) WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS MORTGAGE, THE PROMISSORY NOTE, ANY OTHER LOAN DOCUMENTS AND/OR ANY DOCUMENTS, AGREEMENTS OR INSTRUMENTS EXECUTED AND/OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, AS THE CASE MAY BE, BROUGHT IN ANY SUCH COURT, (II) WAIVES ANY CLAIM THAT ANY SUCH PROCEEDING ARISING OUT OF OR RELATING TO THIS MORTGAGE, THE PROMISSORY NOTE, ANY OTHER LOAN DOCUMENTS AND/OR ANY DOCUMENTS, AGREEMENTS OR INSTRUMENTS EXECUTED AND/OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, AS THE CASE MAY BE, HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, AND (III) WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO ANY SAID PROCEEDING ARISING OUT OF OR RELATING TO THIS MORTGAGE, THE PROMISSORY NOTE, ANY OTHER LOAN DOCUMENTS AND/OR ANY DOCUMENTS, AGREEMENTS OR INSTRUMENTS EXECUTED AND/OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, AS THE CASE MAY BE, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER MORTGAGOR.

Section 8.10    No Usury. All amounts paid on the Indebtedness which are deemed interest shall, for the purpose of the calculation provided for herein, be deemed and considered to be spread over the entire period from the date hereof to the date of final payment of the Note. In no event shall any agreed to or actual exaction charged, reserved or taken as an advance or forbearance by Mortgagee as consideration for the Obligations exceed the limits (if any) imposed or provided by the law applicable from time to time to the Indebtedness for the use or detention of money or for forbearance in seeking its collection; Mortgagee hereby waives any right to demand any such excess. In the event that the interest provisions of the Loan Documents or any exactions required thereunder shall result at any time or for any reason in an effective rate of interest that transcends the maximum interest rate permitted by applicable law (if any), then without further agreement or notice the obligation to be fulfilled shall automatically be reduced to such limit and all sums received by Mortgagee in excess of those lawfully collectible as interest shall be applied against the principal of the Indebtedness' immediately upon Mortgagee's receipt thereof, with the same force and effect as though the payor had specifically designated such extra sums to be so applied.

Section 8.11    Headings. The Article, Section and Subsection titles hereof are inserted for convenience of reference only and shall in no way alter, modify or define, or be used in construing, the text of such Articles, Sections or Subsections.

Section 8.12    Entire Agreement. This Mortgage and the other Loan Documents embody the entire agreement and understanding between Mortgagor and Mortgagee and supersede all prior agreements and understandings between such parties relating to the subject matter hereof and thereof. Accordingly, the Loan Documents may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties. This Mortgage may only be amended in writing.

Section 8.13    Choice of Law. Mortgagor agrees that (i) whether or not deficiency judgments are available under the laws of the State in which the Land is located after a foreclosure of the Mortgaged Property, or any portion thereof, or any other realization thereon by Mortgagee, Mortgagee shall have the right to seek such a deficiency judgment against Mortgagor in other states or foreign jurisdictions; (ii) to the extent Mortgagee obtain a deficiency judgment in any other state or foreign jurisdiction then such party shall have the right to enforce such judgment in other states or foreign jurisdictions; (iii) Mortgagor and Mortgagee will submit to non-exclusive jurisdiction and the laying of venue for any suit on this Mortgage in such state.

Section 8.14    No Third Parties Benefited. No person other than Mortgagee and Mortgagor and their permitted successors and assigns shall have any right of action under any of the Loan Documents.

Section 8.15    Attorneys' Fees and Expenses; Enforcement. If any attorney is engaged by Mortgagee to enforce or defend any provision of this Agreement, any of the other Loan Documents or other any related

documents, or as a consequence of any default or event of default under the Loan Documents, with or without the filing of any legal action or proceeding, Mortgagor shall pay to Mortgagee, within five (5) Business Days after demand, the amount of all reasonable attorneys' fees, paralegal fees and related costs and expenses (whether internal or external) and all costs incurred by Mortgagee in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance of the Note as specified therein. If any of the services described above are provided by an employee of Mortgagee, Mortgagee's costs and expenses for such services shall be calculated in accordance with Mortgagee's standard charge for such service reasonably determined based on their actual allocated cost.

**Section 8.16    Immediately Available Funds**. Unless otherwise expressly provided for in  this Agreement, all amounts payable by Mortgagor to Mortgagee shall be payable only in United States currency, immediately available funds.

**Section 8.17    "Premises" and "Mortgaged Property"**. Without limiting the generality of the foregoing or otherwise, whenever and wherever the term "Premises" is used in this Mortgage, said term "**Premises**" shall mean and include the premises described in **Exhibit A** hereto, as well as any and all Land, Improvements, Imposition Deposits and Personal Property upon or relating to any of the foregoing premises, for all purposes. Without limiting the generality of the foregoing or otherwise, whenever and wherever the term "**Mortgaged Property**" is used in this Mortgage, said term "**Mortgaged Property**" shall mean and include, in addition to all other items, property and collateral of any kind whatsoever included therein, the premises described in **Exhibit A** hereto, as well as any and all Land, Improvements, Imposition Deposits and Personal Property upon or relating to any of the foregoing premises, for all purposes.

**Section 8.18    Mortgagee's Consent**. Wherever in this Agreement there is a requirement for Mortgagee's consent or approval and/or a document to be provided or an action taken "to the satisfaction of Mortgagee", it is understood by such phrase that Mortgagee shall exercise its consent, right or judgment in its sole discretion.

**Section 8.19    Loan Sales and Participations; Disclosure of Information**. Mortgagor agrees  that Mortgagee may elect, at any time, to sell, assign or grant participations in all or any portion of its rights and obligations under the Loan Documents, and that any such sale, assignment or participation may be to one or more financial institutions, private investors and/or other entities, at Mortgagee's sole discretion. The indemnity obligations of Mortgagor under the Loan Documents shall also apply with respect to any purchaser, assignee or participant. Mortgagee promptly shall notify Mortgagor of the completion of such sale, assignment or participation and provide Mortgagor with a list of all participants and assignees. Mortgagee may designate an agent or independent contractor to exercise any of Mortgagee's rights under this Agreement and any of the other Loan Documents.  Any reference to Mortgagee in any of the Loan Documents shall include Mortgagee's agents, employees or independent contractors.

**Section 8.20    Severability**. If any provision or obligation under this Agreement and the other Loan Documents shall be determined by a court of competent jurisdiction to be invalid, illegal or unenforceable, that provision shall be deemed severed from the Loan Documents and the validity, legality and enforceability of the remaining provisions or obligations shall remain in full force as though the invalid, illegal, or unenforceable provision had never been a part of the Loan Documents; provided, however, that if the rate of interest or any other amount payable under either Note or this Agreement or any other Loan Document, or the right of collectability therefor, are declared to be or become invalid, illegal or unenforceable, then, to the extent applicable hereunder or under any of the Loan Documents, Mortgagee's obligations to make advances under the Loan Documents shall not be enforceable by Mortgagor.

**Section 8.21    Heirs, Successors and Assigns**. Except as otherwise expressly provided under the terms and conditions of this Agreement, the terms of the Loan Documents shall bind and inure to the benefit of the heirs, successors and assigns of the parties.

Section 8.22    **Time is of the Essence**. Time is of the essence of each  and  every  term  of  this Agreement.

Section 8.23    **Headings**.  All article, section or other headings appearing in this Agreement and any of the other Loan Documents are for convenience of reference only and shall be disregarded in construing this Agreement and any of the other Loan Documents. Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plural and vice versa, and impersonal pronouns shall be deemed to include the personal pronoun of the appropriate gender.

Section 8.24    **Construction.** Even though this Mortgage was prepared by Mortgagee, Mortgagor acknowledges that it has had the opportunity to review the document and consult with legal counsel and provide comments to Mortgagee. Thus this agreement is a product of negotiation between the parties and should not be construed against Mortgagee.

Section 8.25    Intentionally deleted.

Section 8.26    **Joint and Several Obligations; Multiple Parties**. Each Mortgagor is unconditionally and jointly and severally liable and obligated in any and all respects with regard to each and every indebtedness, obligation and/or liability of any kind whatsoever evidenced, created and/or contemplated under or in connection with this Mortgage. Without limiting the generality of the foregoing or otherwise, if Mortgagor is comprised of more than one Person or entity, each of such Persons and entities shall be jointly and severally liable for the indebtedness evidenced hereby. A default on the part of any one Person comprising Mortgagor of this Mortgage shall be deemed a default on the part of each Mortgagor hereunder. All references to "Mortgagor" in this Mortgage shall mean all entities comprising Mortgagor as well as each entity individually. In addition, Mortgagor agrees that each Mortgagor shall be deemed to be a signatory party to this Mortgage, the Promissory Note and/or any of the other Loan Documents, effective as of the respective dates hereof or thereof, as the case may be, and that for all purposes and in all respects, each Mortgagor shall be jointly and severally obligated in all respects with each other Mortgagor as a "Mortgagor" under or in connection with any of this Mortgage or any of the other Loan Documents. References to an individual Mortgagor contained in any of this Mortgage, the Promissory Note or any of the other Loan Documents shall be deemed to be (unless the context otherwise specifically requires) references to each Mortgagor, and each and every undertaking shall be their joint and several undertakings in all respects, without limiting the generality of the foregoing, all to secure the payment and performance of all indebtedness, obligations and liabilities hereunder or thereunder, as the case may be. A separate action or actions may be brought and prosecuted against either Mortgagor whether an action is brought against the other Mortgagor or whether the other Mortgagor is joined in any such action or actions. Without limiting the generality of the foregoing or any other term or provision of this Mortgage or otherwise, each Mortgagor waives any right to require Lender to: (1) proceed against the other Mortgagor, Guarantor or any other Person liable for any of the indebtedness, obligations and/or liabilities of any kind whatsoever under or in connection with this Mortgage, the Promissory Note or any of the other Loan Documents; (2) proceed against or exhaust any security now or hereafter held in connection with any of the indebtedness, obligations and/or liabilities of any kind whatsoever under or in connection with this Mortgage, the Promissory Note or any of the other Loan Documents, including the Mortgaged Property; or (3) pursue any other right or remedy in Mortgagee's power whatsoever.

Section 8.27    **PREJUDGMENT REMEDY WAIVER; WAIVER OF JURY TRIAL.**

TO INDUCE MORTGAGEE TO ENTER INTO THE COMMERCIAL LOAN TRANSACTION EVIDENCED BY THE PROMISSORY NOTE, THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS, MORTGAGOR ACKNOWLEDGES AND AGREES THAT THE LOAN CONSTITUTES A BUSINESS LOAN AND A LOAN SECURED BY REAL ESTATE WITHIN THE PURVIEW OF 815 ILCS 205/4 AND NOT A CONSUMER TRANSACTION, AND MORTGAGOR KNOWINGLY,

VOLUNTARILY, INTELLIGENTLY AND INTENTIONALLY WAIVES ANY RIGHT TO NOTICE AND A HEARING UNDER ANY FEDERAL OR STATE STATUTE OR STATUTES OR FOREIGN LAWS AFFECTING PREJUDGMENT REMEDIES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING OR OTHERWISE, MORTGAGOR ACKNOWLEDGES AND AGREES THAT IN ANY ACTION UPON THIS TRANSACTION, MORTGAGEE MAY AVAIL ITSELF OF AND PURSUE ANY AND ALL RIGHTS IT MAY HAVE TO OBTAIN A PREJUDGMENT REMEDY. MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY, INTELLIGENTLY AND INTENTIONALLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ALL RIGHTS OF NOTICE, JUDICIAL HEARING OR PRIOR COURT ORDER IN CONNECTION WITH THE OBTAINING BY MORTGAGEE OF ANY PREJUDGMENT REMEDY WITH RESPECT TO THIS MORTGAGE, THE PROMISSORY NOTE OR THE OTHER LOAN DOCUMENTS, OR PURSUANT TO ANY OTHER DOCUMENT EXECUTED BY MORTGAGOR IN CONNECTION WITH THIS TRANSACTION, INCLUDING ANY AMENDMENTS OR EXTENSIONS HEREOF OR THEREOF. FURTHER, MORTGAGOR WAIVES ANY REQUIREMENT OF MORTGAGEE TO POST A BOND OR ANY OTHER SECURITY, OR TO SHOW SOME EXIGENCY, IN CONNECTION WITH THE OBTAINING BY MORTGAGEE OF ANY SUCH PREJUDGMENT REMEDY. FURTHER, AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING OR OTHERWISE, IN THE EVENT MORTGAGEE SEEKS TO TAKE POSSESSION OF ANY OR ALL OF THE MORTGAGED PROPERTY OR THE COLLATERAL BY COURT PROCESS OR OTHER METHOD AVAILABLE UNDER THE LAW, MORTGAGOR IRREVOCABLY WAIVES ANY BOND AND ANY SURETY OR SECURITY RELATING THERETO REQUIRED BY ANY STATUTE, COURT RULE OR OTHERWISE AS AN INCIDENT TO SUCH POSSESSION, AND WAIVES ANY DEMAND FOR POSSESSION PRIOR TO THE COMMENCEMENT OF ANY SUIT OR ACTION TO RECOVER WITH RESPECT THERETO. SPECIFICALLY, MORTGAGOR RECOGNIZES AND UNDERSTANDS THAT THE EXERCISE OF THE RIGHTS DESCRIBED ABOVE MAY RESULT IN THE ATTACHMENT OF OR LEVY AGAINST MORTGAGOR'S PROPERTY, AND SUCH WRIT FOR A PREJUDGMENT REMEDY WILL NOT HAVE THE PRIOR WRITTEN APPROVAL OR SCRUTINY OF A COURT OF LAW OR OTHER JUDICIAL OFFICER AND MORTGAGOR WILL NOT HAVE THE RIGHT TO ANY NOTICE OR PRIOR HEARING WHERE MORTGAGOR MIGHT CONTEST SUCH A PROCEDURE. THE INTENT OF MORTGAGOR IS TO GRANT TO MORTGAGEE FOR GOOD AND VALUABLE CONSIDERATION, THE RIGHT TO OBTAIN SUCH A PREJUDGMENT REMEDY AND TO EXPRESS ITS BELIEF THAT ANY SUCH PREJUDGMENT REMEDY OBTAINED IS VALID AND CONSTITUTIONAL UNLESS A COURT OF COMPETENT JURISDICTION SHOULD DETERMINE OTHERWISE. FURTHER, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY, INTELLIGENTLY AND INTENTIONALLY WAIVES DEMAND, PRESENTMENT FOR PAYMENT, PROTEST, NOTICE OF PROTEST, NOTICE OF DISHONOR, DILIGENCE IN COLLECTION, NOTICE OF NONPAYMENT OF THE PROMISSORY NOTE AND ANY AND ALL NOTICES OF A LIKE NATURE. FURTHER, TO THE EXTENT NOT OTHERWISE EXPRESSLY PROVIDED HEREIN, MORTGAGOR EXPRESSLY WAIVES ALL DEFENSES BASED UPON SURETYSHIP OR IMPAIRMENT OF COLLATERAL.

EACH OF MORTGAGOR AND MORTGAGEE (BY ITS ENTERING INTO THE LOAN DOCUMENTS AND ACCEPTANCE OF THE PROMISSORY NOTE AND THIS MORTGAGE) MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY, INTELLIGENTLY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THE PROMISSORY NOTE, THIS MORTGAGE OR ANY OTHER LOAN DOCUMENT OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF MORTGAGEE RELATING TO THE ADMINISTRATION OR ANY LOAN OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, MORTGAGOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. MORTGAGOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.

MORTGAGOR ACKNOWLEDGES THAT IT MAKES THESE WAIVERS KNOWINGLY, VOLUNTARILY, INTELLIGENTLY AND INTENTIONALLY AND ONLY AFTER CONSIDERATION OF THE RAMIFICATIONS OF THESE WAIVERS WITH ITS ATTORNEYS, AND FURTHER ACKNOWLEDGES THAT THESE WAIVERS CONSTITUTE A

**MATERIAL INDUCEMENT FOR MORTGAGEE TO MAKE THE LOAN.**

   **Section 8.28 ILLINOIS INSURANCE NOTICE.**  Unless Mortgagor provides Mortgagee with evidence of insurance coverage required by Mortgagor's agreement with Mortgage, Mortgagee may purchase insurance at Mortgagor's expense to protect Mortgagee's interest in the Mortgaged Property. This insurance may, but need not, protect Mortgagor's interests. The coverage that Mortgagee purchases may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Mortgaged Property. Mortgagor may later cancel any insurance purchased by Mortgagee but only after providing Mortgagee with evidence that Mortgagor has obtained insurance as required by this Mortgage.  If Mortgagee purchases insurance for the Mortgaged Property, Mortgagor will be responsible for the costs of that insurance, including interest and any other charges Mortgagee may impose in connection with the placement of insurance, until the effective date of the cancellation or expiration of the insurance.  The costs of the insurance may be added to Mortgagor's total outstanding balance or obligation.  The costs of the insurance may be more than the cost of insurance Mortgagor may be able to obtain on Mortgagor's own.

**[SIGNATURE PAGE ATTACHED]**

**IN WITNESS WHEREOF**, this Mortgage has been executed by Mortgagor's duly authorized representative as of the date set forth above.

**PLATFORM II LAWNDALE, LLC,**
an Illinois limited Liability Company

By: _____
       Scott Krone, Manager

*BLACK INK ONLY*

THIS DOCUMENT MUST BE NOTARIZED

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___ILLINOIS_____        )
County of __COOK_____        } §
                                                    )

On ___MAY  18___, 2018, before me, ___Jeffrey M. Galkin___ a Notary Public, personally appeared Scott Krone who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Illinois__ that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

_____
Signature of Notary

(Affix seal here)

> **JEFFREY M GALKIN**
> Official Seal
> Notary Public - State of Illinois
> My Commission Expires Nov 2, 2019

Loan No. 1744LawndaleIL
GreenLake/Platform II Lawndale, LLC
Mortgage

9692414.5

**EXHIBIT A**

LEGAL DESCRIPTION
Parcel Nos.: 13-35-319-015-0000; 13-35-319-002-0000; 13-35-319-039-0000

Legal Description:  Parcel 1:
All of Lots 2 to 8, both inclusive; Lot 40 (except the South 16.00 feet thereof), Lots 41 to 45 (except that part of said Lots 42, 43, 44, and 45 conveyed to Chicago and Pacific Railroad Company); also the North-South vacated alley, lying East of adjoining Lot 40 (except the South 16.00 feet thereof) and Lots 41 to 45 and West of and adjoining Lots 2 to 6 and Lot 7 (except the South 16.00 feet thereof), all in Block 3, in Subdivision of the Southeast Quarter of the Southwest Quarter of Section 35, Township 40 North, Range 13, East of the Third Principal Meridian, (except the East Half of the Southeast Quarter of the Southeast Quarter of the Southwest Quarter of said section and except railroad), in Cook County, Illinois.

Parcel 2:
All that part of the Subdivision of the Southeast Quarter of the Southwest Quarter of Section 35, Township 40 North, Range 13, East of the Third Principal Meridian (except the East Half of the Southeast Quarter of the Southeast Quarter of the Southwest Quarter of said section) and (except railroad) which is described as follows:

Commencing at the Northwest corner of Lot 2 in Block 3 in said subdivision, which corner is the beginning of 14 degree curve, to the left with its tangent along the North line of said Lot 2; thence Westerly along said 14 degree curve, a distance of 11.00 feet to a point in the Southeasterly boundary line of the property of the Grantors: Henry A. Scandrett, Walter J. Cummings, and George I. Haight, not as individuals but solely as Trustees of the property of the Chicago, Milwaukee, St. Paul, and Pacific Railroad Company, as shown on a Plat marked "Exhibit A" attached to and made a part of Warranty Deed dated October 21, 1891, from Mary A. Reid to the Chicago and Pacific Company, a predecessor of said grantors, which Deed was filed for record in the Recorder's Office of Cook County, Illinois on October 24, 1891 and recorded in Book 3856 of record on Page 91 and the true point of beginning of the land to be described; thence continuing Westerly along said 14 degree curve for a distance of 86.86 feet to the beginning of an 11 degrees 28 minutes curve to the left and tangent to said 14 degree curve at said last mentioned point; thence Westerly on said 11 degrees 28 minutes curve to the left, a distance of 117.56 feet to a point in the North prolongation of the West line of North Ridgeway Avenue, distant 518.72 feet North of intersection of said street line with the North line of Wabansia Avenue; thence South along the North prolongation of the West line of said North Ridgeway Avenue, a distance of 91.52 feet to a point in the aforementioned Southeasterly boundary line of said grantors property; thence Northeasterly along said boundary line to the point of beginning, all in Cook County, Illinois.

Permanent Index #'s: 13-35-319-002-0000 (Vol. 374) and 13-35-319-015-0000 (Vol. 374) and 13-35-319-039-0000 (Vol. 374)

Property Address: 1750 North Lawndale Avenue, Chicago, Illinois 60647