# EXHIBIT D

# FACILITY MANAGEMENT AGREEMENT

**THIS FACILITY MANAGEMENT AGREEMENT** (this "**Agreement**") dated as of the _6th_ day of _January_, 20~~2~~0 (the "**Effective Date**") is by and between **CUBESMART ASSET MANAGEMENT, LLC**, a Delaware limited liability company ("**Manager**"), and **PLATFORM II LAWNDALE LLC**, an Illinois limited liability company ("**Owner**"). Each of Owner and Manager shall individually be referred to as a "**Party**" and collectively as the "**Parties**".

## BACKGROUND:

A. Owner owns the land (the "**Land**") and will own those certain under-development self-storage facility improvements (the "**Improvements**") identified and described on **Exhibit A** attached hereto. The Land and the Improvements located thereon, when built, are herein individually and collectively referred to as the "**Property**"; and

B. Owner desires to engage the services of Manager to manage, lease, operate, maintain, and repair the Property for and on behalf of Owner, all in accordance with, and subject to, the terms and provisions of this Agreement.

**NOW, THEREFORE**, in consideration for the mutual covenants herein contained and for other good and valuable consideration, the receipt, adequacy, and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

## ARTICLE 1

### Employment of Manager; Term

1.1 **Employment.** Owner hereby appoints Manager, and Manager hereby accepts such appointment, as an independent contractor, with sole and exclusive right to lease, operate, maintain, manage, and repair the Property, and Manager agrees, for and in consideration of the Management Fee (as defined in Section 4.1 below), to perform its obligations hereunder with due diligence, in an efficient and proper manner, and in accordance with the terms and conditions set forth in this Agreement. Manager shall be, at law, an independent contractor, and this Agreement shall not create any employment relationship, either express or implied, or any relationship of principal and agent, between Manager (or any Person employed by Manager) and Owner.

1.2 **Term.** Except for any Pre-Term Services that may be elected by Owner during the Development Period (as defined in Section 4.5), the services of Manager hereunder shall commence the day a certificate of occupancy is issued for the Property so long as Owner has provided Manager at least fifteen (15) days advance notice thereof, or as agreed between the Parties (the "**Commencement Date**"), and, unless sooner terminated as expressly permitted pursuant to Article 5 hereof, shall continue in full force and effect until the date that is three (3) years following the Commencement Date (the "**Initial Term**"). After the expiration of the Initial Term, this Agreement shall automatically renew for successive terms of one (1) year each (each a "**Renewal Term**", and the Initial Term and each Renewal Term shall collectively be referred to as the "**Term**"), unless and until terminated in accordance with Article 5 below.

1.3 **Owner Acknowledgement.** Owner acknowledges that Manager is in the business of managing self-storage facilities both for its own account and for others. It is hereby expressly agreed that Manager and its affiliates may continue to engage in such activities, may manage facilities other than those presently managed by it (whether or not such other facilities

may be in direct or indirect competition with Owner) and may, in the future, engage in other business which may compete, directly or indirectly, with activities of Owner.  In the event that Manager plans to manage another self-storage facility within three (3) miles of the Property, either for a third-party or for its own account, Manager will provide Owner with at least sixty (60) days' notice prior to the commencement date of such management and, at its election, either party may terminate this Agreement within thirty days of receipt of such notice without penalty.

## ARTICLE 2

## Duties and Authority of Manager

**2.1** **General Duties and Authority.**  During the Term, Manager agrees to lease, operate, maintain, manage, and repair the Property in a high-quality manner in keeping with the standards maintained by other high-quality self-storage properties of similar kind and location, all of which shall be done with due diligence and in good faith.  Subject to the restrictions, limitations, and rights set forth in this Agreement, Manager shall have the authority to fully and completely supervise the Property, and supervise and direct the business and affairs associated or related to the daily operation thereof.

**2.2** **Budget and Limitations on Authority.**

(a)    Not less than sixty (60) days prior to the beginning of each Fiscal Year during the Term, Manager shall prepare an annual Budget for Owner's approval with respect to the management, care, protection, repair, maintenance, leasing, and operation of the Property; provided, however, that the first such Budget shall be prepared by Manager within thirty (30) days after the Commencement Date applicable to the Property; provided, however that Manager has received from Owner all records reasonably required by Manager to prepare the Budget.  The term "**Budget**" shall mean a statement setting forth the estimated revenues, occupancies, lease terms and rate increases, capital improvements, and all aspects of the anticipated expenses to be incurred in the operation, ownership, management, and leasing of the Property including, without limitation, salaries and all other operating expenses.  Owner shall have fifteen (15) days in which to review the Budget and if, in the sole discretion of Owner, a revised budget is required, Manager shall have fourteen (14) days from receipt of notice from Owner to submit a revised proposed budget to Owner which addresses those items deemed unacceptable by Owner in Owner's notice to Manager.  A final, approved, and certified Budget shall be submitted to Owner no later than thirty (30) days prior to the commencement of each Fiscal Year.  Budgets shall be prepared, submitted, and certified by Manager in accordance with the terms of this Agreement. Owner may, with the prior written approval of Manager, revise the Budget at any time during a Fiscal Year.  Manager shall implement the Budget.

(b)    The Budget shall also include a summary of all space in the Property, together with a designation of all vacancies (hereinafter called the "**Rent Roll**").

(c)    The expenses which Manager is authorized to incur and pay on behalf of Owner hereunder shall in all respects be limited to those expenses set forth in the Budget for the Fiscal Year during which such expenses are paid.   The foregoing notwithstanding, if an Emergency occurs necessitating repairs the cost of which would have the effect of exceeding the Budget by more than those limitations as provided below, and Manager is unable to communicate promptly with Owner, then Manager may order and contract for such Emergency repairs, with the cost thereof being included as a Reimbursable Expense for the purposes of this Agreement, and Manager shall promptly thereafter notify Owner of any such expenses and the nature of the Emergency.

(d)    Notwithstanding any other provision of this Agreement, the authority granted to Manager for the expenditure or disbursement of funds, for the making of contracts on behalf of Owner, for the hiring or employment of vendors, suppliers, contractors, subcontractors, and employees, for the entering into leases, or for the incurring of liabilities with respect to the management, care, protection, maintenance and/or operation of the Property, without in each instance first obtaining the prior specific written approval of Owner, shall be limited to:

1.    the sums expressly pre-approved in the Budget and subject to the terms and conditions of the Budget approval;

2.    unbudgeted repair, replacement, and maintenance expenses not to exceed One Thousand Dollars ($1,000.00) for each unbudgeted repair, replacement, or maintenance item;

3.    unbudgeted utility and Taxes;

4.    expenditures for an Emergency not to exceed Ten Thousand Dollars ($10,000.00) for each Emergency; and/or

5.    expenditures required under Owner approved Leases.

The following provisions of this Agreement are subject to the foregoing limitations unless expressly and specifically stated otherwise.

**2.3    Renting of the Property; Inquiries; Complaints.** Manager shall bill and make a diligent effort to collect the Rents and, subject to the Budget, disburse therefrom the reasonable and necessary expenses of operations, upkeep, and maintenance of the Property, including compensation of Manager and all payments due Owner pursuant to this Agreement. Manager shall advertise available storage space in the Property which may include the use of signs, the internet, direct mail, electronic mail and other forms of advertising. Owner grants to Manager the sole and exclusive right to conduct all leasing activity with respect to the Property to rent vacant storage space to Lessees on terms and conditions reasonably satisfactory to Owner. Manager is hereby authorized to enter into Leases for storage space with Lessees on behalf, in the name, and for the account of Owner, and to collect Rents from Lessees provided that:

(a)    All Leases shall be on Manager's form of lease, which form of lease may be revised by Manager from time to time to, among other things, account for changes to the applicable state's self-storage statutes.

(b)    Owner agrees to use a customer point of sale system, as may be determined by Manager from time to time, in its sole discretion, as the site operating software, the expense of which (including without limitation any cost or expense to upgrade, from time to time, the software) shall be a Reimbursable Expense.

(c)    Owner acknowledges that the Property may contain property for rent that is used for uses other than self-storage including, without limitation, residential, retail, office, industrial, manufacturing, and other non-storage uses (collectively, **"Non-Storage Uses"**). Manager's duties under this Agreement for Non-Storage Uses are limited to only those duties as are specifically agreed to between Owner and Manager.

Manager shall deal with all inquiries relating to the Property. Manager shall also receive, consider, and handle complaints relating to the operation and repair of the Property, of all Lessees, or parties to other agreements affecting the Property, and of customers and invitees of the Property.

**2.4    Repair, Maintenance and Improvements.** Subject to the Budget and the other rights and limitations set forth in this Agreement, Manager shall make, install, and execute, or supervise and have control over the making, installation, and execution, of all decisions concerning the acquisition of furniture, fixtures, and supplies for the Property, and the purchase, lease or other acquisition of the same on behalf of Owner. Subject to the Budget and the other rights and limitations set forth in this Agreement, Manager shall make, install, and execute, or supervise and have control over the making, installation, and execution of, all alterations, repairs, replacements, equipment, and installations necessary to maintain the Property in a clean, safe, and orderly condition or as required by Applicable Law or Insurance Requirements, or as directed to be made or installed by Owner; provided, however, that no such alterations, repairs, replacements, equipment, or installations shall be made by Manager without Owner's prior written approval, unless specifically included in the Budget or otherwise expressly permitted in this Agreement. Upon the written request of Owner, Manager shall, on behalf of Owner, negotiate and contract for, and supervise the installation of, all capital improvements related to the Property subject to payment of the compensation described in Section 4.4 below.

**2.5    Personnel.** Manager shall select all vendors, suppliers, contractors, subcontractors, and employees with respect to the Property, and shall hire discharge and supervise all labor and employees required for the operation and maintenance of the Property; all such acts shall be on behalf of Owner. Manager shall procure and maintain, at Owner's expense, worker's compensation, disability and other insurance and fringe benefits, as may be customary or as may be required by Applicable Law or Insurance Requirements covering all of Manager's employees employed at the Property. Any employees so hired shall be employees of Manager or affiliates of Manager, and shall be carried on the payroll of Manager or its affiliates. Manager shall comply with all Applicable Laws applicable to the hiring, employment, and termination of employment of such employees, including without limitation wage and hour laws. Such employees may be employed on a full-time or part-time basis. Employees may include, but will not be limited to, on site resident managers, on-site assistant managers, relief managers, maintenance personnel, and other individuals located, rendering services, or performing activities at the Property in connection with its operation and management. The cost of employing such persons shall be in accordance with the Budget. Some or all of such persons may be simultaneously engaged for the account of Owner and by or for the account of owners of other self-storage facilities managed by Manager, some of which may be affiliates of Manager. Manager will allocate the cost of these personnel among all such owners, including Owner, on an equitable basis. Manager shall be responsible for disbursement of funds in payment of all expenses incurred in connection with the operation of the Property, and Owner shall not be required to employ personnel in such disbursement. Manager shall not be separately reimbursed for the time of its executive officers or regional managers devoted to Owner's affairs or for the other overhead expenses of Manager.

**2.6    Agreements.** Manager shall negotiate on behalf of Owner and submit for Owner's execution such agreements which Manager deems necessary or advisable for the furnishing of utilities, services, concessions, and supplies, for the maintenance, repair, and operation of the Property, and such other agreements which may benefit the Property or be incidental to the matters for which Manager is responsible hereunder, provided that all of the foregoing shall be in accordance with the Budget, expressly permitted in this Agreement, or otherwise expressly approved in writing by Owner.

**2.7    Other Decisions.** Subject to the Budget and the other rights and limitations set forth in this Agreement, Manager shall make all decisions in connection with the daily operation, management, repair, maintenance, and leasing of the Property.

**2.8    Regulations and Permits.** Subject to the Budget and the other rights and limitations set forth in this Agreement, Manager shall cause all things to be done, on behalf of

4

Owner, at the Property necessary to comply with all Applicable Laws which may include applying for, and attempting to obtain and maintain, on behalf of Owner, all licenses and permits required by Applicable Law or advisable (in Manager's reasonable commercial judgment) in connection with the ownership, use, management, and operation of the Property.

**2.9    Records and Reports of Disbursements and Collections; Accounting and Record Keeping.**  Manager shall cause to be prepared and/or delivered to Owner the following reports, statements, and/or documents:

(a)    on or before thirty (30) days after the close of each calendar quarter, and on or before thirty (30) days after the close of every month, Manager shall provide Owner with monthly reports in substantially the form as set forth on **Exhibit B** attached to this Agreement;

(b)    upon Owner's written request, and on or before ninety (90) days after the close of the Fiscal Year, all documents, invoices, and/or statements accumulated during the prior year on behalf of Owner; and

(c)    a monthly and year to date occupancy report including vacancies.

Manager shall establish, maintain, and supervise at the Property such bookkeeping and record keeping as shall be necessary to provide to Owner the information required by this Agreement. Manager shall keep proper records in conformity with the accounting principles generally accepted in the United States of America, and shall retain all supporting documentation including, without limitation, all cancelled checks and all employment records, consistent with Manager's document retention practices and policies.  The books, records and accounts shall be maintained at Manager's office and shall be made available to Owner at Manager's Office and delivered to Owner via e-mail for examination and audit by Owner or its representatives upon reasonable prior notice to Manager.  Manager agrees to cooperate reasonably with Owner and its designated representatives in connection with the completion of any audit performed by or on behalf of Owner.  Manager agrees to remediate any findings of material weakness or significant deficiencies that are reported in Owner's review or audit and shall fully implement any reasonable recommendations of Owner's audit or report.  Upon termination of this Agreement and payment of all fees, expenses, and reimbursements owed to Manager under this Agreement, Manager shall make all such records available during Manager's regular business hours to Owner for copying at Owner's sole expense.

**2.10    Bank Accounts; Deposits.**

(a)    At Owner's sole cost and expense, Manager shall deposit in a banking institution selected and approved by Owner and Manager and in an account entitled "Deposit Account of [Owner]" (the "**Operating Account**"), the Rents and all other sums received by Manager in connection with the Property.  Manager shall pay the operating expenses of the Property, the Reimbursable Expenses, and any other payments related to the Property as allowed by the terms of this Agreement out of the Operating Account.  Manager's performance under this Agreement is conditioned on Owner, prior to the Commencement Date, delivering to Manager immediate federal funds in the amount of Fifteen Thousand Dollars ($15,000.00), which Manager shall deposit into the Operating Account as an initial deposit.  No Segregated Security Deposits (as defined below) shall be paid from the Operating Account (it being understood that returns of all Segregated Security Deposits shall be paid solely from the Security Deposit Account, as defined below).

(b)    On or before the Commencement Date, Owner shall also deposit with Manager immediate federal funds in the amount of Fifteen Thousand Dollars ($15,000.00) (the "**Operating Expense Deposit**").  The Operating Expense Deposit shall be held by the Manager

during the Term in a non-interest-bearing account and may be commingled with other funds of Manager. From and after any Event of Default by Owner or after the effective date of any termination of this Agreement by Owner or Manager, the Manager is authorized to draw from the Operating Expense Deposit any and all expenses, costs, Reimbursable Expenses and other charges authorized by this Agreement to the extent that there are insufficient funds in the Operating Account to pay such costs and expenses. Manager shall return any remaining funds in the Operating Expense Deposit sixty (60) days following the date this Agreement is terminated by Owner or Manager.

(c)     If security deposits or other funds are required by Applicable Law to be held in a segregated account (the "**Segregated Security Deposits**"), such Segregated Security Deposits shall be held in a banking institution selected and approved by Owner in a separate special account (the "**Security Deposit Account**").

(d)     Manager shall reconcile all bank accounts on a monthly basis and forward such reconciliations and all supporting documentation, including copies of bank statements, to Owner within thirty (30) days after the end of each calendar quarter and within thirty (30) days after the close of every other month.

(e)     It is agreed that Manager shall not be held liable in the event of the bankruptcy or failure of a depository. Subject to the Budget, or as otherwise expressly permitted in this Agreement or as otherwise approved by Owner in writing, Manager shall disburse funds from the Operating Account on behalf of Owner in such amounts, and at times, as disbursement of such revenues for payment of expenses is required in accordance with the Budget and this Agreement. Manager shall not be obligated to make any advance to or for the account of Owner, or to pay any sums relating to the Property, except out of funds held in the Operating Account. If the funds in the Operating Account are insufficient to pay all expenses of operating the Property and if Owner does not provide Manager with funds to make timely payment of such expenses when and as due, then Owner shall indemnify, defend and hold harmless Manager against loss, expense, damage or penalty that Manager suffers or incurs resulting from the non-payment of such expenses. Manager's performance of payment obligations under this Agreement is in all events subject to Owner providing funds sufficient to pay all costs and expenses relating to the Property and its operation, except for costs and expenses specifically stated in this Agreement to be Manager's responsibility without right to reimbursement, and Manager may suspend any activity required of it under this Agreement unless Owner provides funds to pay the costs and expenses associated with such activity or this Agreement specifically requires Manager to pay the costs and expenses of such activity from its own funds.

(f)     If any lender requires Owner to establish accounts different than those set forth in this Section 2.10, Manager shall reasonably cooperate with Owner and lender with respect to establishing such accounts. The cost of any such accounts or account changes shall be an expense of the Property.

**2.11   Disbursements.**   Pursuant to the Budget, or as expressly permitted in this Agreement, or as otherwise authorized by Owner in writing, Manager shall pay from the Operating Account the following expense items: (a) all expenses incurred through operating, renting, servicing, maintaining, or repairing the Property, including without limitation, expenses for all services rendered by professionals, such as attorneys, accountants, engineers, architects, collection agents, and tax advisors, (b) at Owner's request and provided that Owner provides Manager with all necessary and appropriate information and documentation, all sums due to lenders on loans secured by or otherwise affecting the Property, including amounts due for interest, amortization of principal, and allocation to reserves or escrow funds, (c) all Taxes, and (d) the Management Fee.

**2.12** **Collection**.  Manager shall direct the collection and billing of all accounts receivable due to Owner with respect to the Property, and shall be responsible for establishing and implementing policies and procedures to minimize the amount of bad debts and delinquent accounts receivable.

**2.13** **Legal Action**.  With Owner's written permission, Manager shall cause to be instituted on behalf of and in the name of Owner (or, at Manager's option, in the name of Manager), any legal actions or proceedings that Manager deems necessary or advisable in the normal course of business related to the Property.  The expense of such legal action shall be a Reimbursable Expense paid out of the Operating Account.

**2.14** **Insurance**.

(a)    At all times during the Development Period, Owner shall maintain, through insurance companies reasonably acceptable to Manager, a Builder's Risk Policy and Owner's Interest Liability policy insuring the Property.  The Owner shall also ensure each contractor working on the Improvements, or generally at the Property, maintains commercially reasonable insurance in favor of the Owner for the duration of such contractor's work on the property.

(b)    At all times during the Term, Owner shall maintain, through insurance companies reasonably acceptable to Manager, the following minimum insurance:

1.    Commercial General Liability covering bodily injury and property damage with minimum limits of $1,000,000 each occurrence and $2,000,000 general aggregate, including premises liability, tenant's legal liability, and sale and disposal endorsements, which insurance shall name Manager, CubeSmart, and CubeSmart, L.P. (collectively, the "**Additional Insured Parties**") as additional insureds.

2.    If applicable, Commercial Automobile Liability covering owned, hired, and non-owned vehicles with limits of at least $1,000,000 combined single limit (bodily injury and property damage), which insurance shall name the Additional Insured Parties as additional insureds.

3.    Umbrella Insurance limit not less than $5,000,000 each occurrence.

4.    "All Risk" Property Insurance on all property owned by Owner.

5.    Such other insurance as Owner shall, from time to time, be required to maintain pursuant to the provisions of the Leases, Insurance Requirements, or Applicable Law, or as Manager shall reasonably require.

Each of the above Owner's policies of insurance shall be primary and non-contributory to any liability insurance carried by Manager whose insurance(s) shall be excess and non-contributory for claims and losses arising out of the performance of this Agreement.  Prior to the Commencement Date, and no later than thirty (30) days after each renewal thereof, Owner shall furnish to Manager certificates of insurance evidencing Owner's compliance with the foregoing insurance requirements.  Such certificates shall provide that no cancellation in coverage can take effect unless thirty (30) days' prior written notice is furnished to Manager.

(c)    At all times during the Term, Manager shall maintain, through insurance companies reasonably acceptable to Owner, the following minimum insurance:

1.    Commercial General Liability covering bodily injury and property damage with minimum limits of $1,000,000 each occurrence and $2,000,000 general aggregate, including premises liability, tenant's legal liability, and sale and disposal endorsements, which insurance shall name Owner as an additional insured.

2.    Commercial Automobile Liability covering owned, hired and non-owned vehicles with limits of at least $1,000,000 combined single limit (bodily injury and property damage), which insurance shall name Owner as an additional insured.

3.    Umbrella Insurance limit not less than $5,000,000 each occurrence.

4.    Workers' Compensation as required by all Applicable Laws and Employer's Liability coverage with a limit of not less than $1,000,000.

5.    Professional Liability Insurance with minimum limits of $2,000,000 each event and in the aggregate.

6.    Comprehensive crime insurance including employee theft and depositor's forgery coverage with limits as to any given occurrence of not less than $1,000,000.

7.    Such other insurance as Manager shall, from time to time, be required to maintain pursuant to Applicable Law, or as Owner shall reasonably require.

(d)    Notification of Claim.  Each Party shall promptly notify the other after it receives notice of any claim, loss, damage, or injury, and neither Party shall take any action (such as admission of liability) that bars the other from obtaining any protection afforded by any applicable insurance policy.

**2.15    Taxes**.  It is expressly understood that all real estate taxes, personal property taxes and all other taxes, water and sewer charges, and other assessments assessed to, or levied upon, the Property (individually and collectively, "**Taxes**") are the sole responsibility of Owner, and to the extent known and reasonably estimated by Manager, shall be accounted for in the Budget.  At the express direction of Owner and to the extent there are sufficient funds in the Operating Account, Manager will pay the Taxes to the applicable governmental or assessing authority. Where bills for Taxes are sent directly to Owner, Owner shall at least thirty (30) days prior to the due date of such bill for Taxes deliver such bills to Manager and Manager shall cause the bills to be processed and paid from the Operating Account before incurring any late fees or charges.  In no event shall Manager have any liability for any late fees, penalties, interest, liens or fines related in any way to the payment of Taxes, except to the extent of Manager's gross negligence, willful act, or fraud.  At Owner's request, Manager shall assist Owner with Owner's hiring of a consulting firm to seek abatement of property taxes as necessary.

**2.16    Restrictions**.  Notwithstanding anything to the contrary set forth in this Agreement, Manager shall not be required to do, or cause to be done, or be in any way responsible for, anything for the account of Owner (i) which may not be commenced, undertaken, or completed because of insufficient funds of Owner, or (ii) which may not be commenced, undertaken, or completed because of acts of God, strikes, governmental regulation or laws, insurrection, acts of war, terrorism, economic disruption, or other types of events beyond Manager's reasonable control whether similar or dissimilar to the forgoing.

**2.17    Limitations on Manager's Authority**.  Notwithstanding anything to the contrary set forth in this Agreement, Manager shall not, without obtaining the prior written consent of Owner, (i) rent storage space in the Property by Leases or agreement for a term in excess of one year, (ii) alter the building or other structures of the Property, in any material manner; or (iii)

enter into any other agreements affecting the Property that exceed one year unless same are terminable on thirty (30) days' notice at the will of Owner without penalty, payment, or surcharge.

**2.18    Shared Expenses.**  Certain economies may be achieved with respect to certain expenses to be incurred on behalf of Owner hereunder if materials, supplies, insurance, or services are purchased by Manager in quantity for use not only in connection with the Property, but in connection with other properties managed by Manager.  Manager shall have the right to purchase such materials, supplies, insurance, or services in its own name, and charge Owner a pro rata share of the cost thereof; provided, however, that (a) the quality of such materials, supplies, insurance or services shall be not less than would be otherwise available if purchased directly for Owner, and (b) the pro rata cost of such purchase to Owner shall not result in expense greater than would otherwise be incurred at competitive prices and terms available in the area where the Property is located, and (c) Manager shall give Owner access to such records, at the Property or by email, so that Owner may review any such expenses incurred.

**2.19    Compliance with Law.**  Manager shall cause all such acts and things to be done in and about the Property as shall be required by Applicable Law and Insurance Requirements; provided, however, that Manager shall not, without the prior consent of Owner, make any alterations or repairs so ordered or so requested, if not included in the Budget, or otherwise expressly permitted in this Agreement.

**2.20    Liens.**  Manager shall promptly notify Owner of any lien, claim of lien, encumbrance, or charge placed or filed upon or against the Property, any part thereof, or the income therefrom of which Manager has knowledge.  If Owner has made available to Manager sufficient funds to pay the same, and if Owner so directs Manager, Manager shall pay such claim and cause the same to be cancelled.

**2.21    Service Contracts.**  Manager shall comply with all of the terms, conditions, and obligations of the Service Contracts, and shall not violate the terms, conditions and obligations of the Leases, unless by the terms thereof Owner would be excused from complying therewith.

**2.22    General.**  Subject to the Budget and the provisions of this Agreement, Manager shall perform any and all things in and about the Property pertaining to the management, leasing, maintenance, repair, and operation thereof customarily performed by managers of properties similar in scope.

## ARTICLE 3

### Duties of Owner; Confidential Information; Trademarks

**3.1    Duties of Owner.**  Owner hereby agrees to cooperate with Manager in the performance of its duties under this Agreement and, to that end, Manager shall have the right to use an on-premises office designated by Owner (if there is an on-site office at the Property) for performance of Manager's duties hereunder.  Owner shall provide Manager access to all files, books, and records of Owner relevant to the Property, and to execute such documents or instruments as both Owner and Manager deem necessary or advisable to enable Manager to fulfill its duties under this Agreement.

**3.2    Confidential and Proprietary Information.**

(a)    For the purposes of this Agreement, the term Confidential and Proprietary Information shall mean:  information of any type in any form that is disclosed to or observed or obtained by one Party from the other Party in the course of, or by virtue of, this Agreement,

including, without limitation, all information regarding one Party's business, how it operates its business or affairs and its business plans, any abstracts of those plans, the fees that it charges or how it offers its services, products, costs, marketing strategies, projections, historical or pro-forma financial information, customer insurance information or strategies, operations and business results relating to the past, present or future of the business activities of such Party, and any other information which is a trade secret under Applicable Law, and the physical embodiments or expressions of such information in any tangible form, including any written or machine readable expressions of such information (collectively, with the Manager Confidential and Proprietary Information (defined below) the "**Confidential and Proprietary Information**"). The Parties each further agree to maintain the confidentiality of such Confidential and Proprietary Information and upon the termination of this Agreement, return same to the other Party, including, but not limited to, documents, notes, memoranda, lists, computer programs, manuals, and any summaries of such Confidential and Proprietary Information. Neither Party shall reveal the Confidential and Proprietary Information to any third party and shall not use the Confidential and Proprietary Information for any purpose other than its performance under this Agreement.

(b)     Additionally, any Confidential and Proprietary Information disclosed by Manager, specifically related to its self-storage operational trade processes or terms of its proposed management services hereunder, including, without limitation, (i) amount, terms, thresholds and all other information surrounding the Management Fee or any other fees charged to Owner pursuant to Section 4 of this Agreement, (ii) the CubeSmart's Policy and Procedures Manual or other written rules and regulations, (iii) all Manager lease forms and all other legal or operation documents used by Manager in the performance of its duties hereunder, (iv) all Manager proprietary revenue management data including techniques, feasibility and market study analysis, customer profiles, customer lists, sales estimates, (v) Manager construction or development specs or other architectural, landscaping or signage designs created by CubeSmart, site plan reviews, Manager Trademarks and CubeSmart Signage (each, as defined herein), (vi) all accounting and pro-forma budgeting analysis performed by Manager and the amount of CubeSmart's proposed management fee structure with Company, and (vii) names of employees of Manager, and techniques and methods of training employees in the self-storage business, all of which have been developed and/or acquired through the expenditure of time, money, and effort, shall be referred to hereunder as "**Manager Confidential and Proprietary Information**". The Manager Confidential and Proprietary Information will remain the sole and exclusive property of the Manager Parties, and the Owner Parties each disclaim any and all right, title and interest in and to the Manager Confidential and Proprietary Information. The Owner Parties each agree that the Manager Confidential and Propriety Information constitutes a valuable asset of the Manager Parties, and the unauthorized disclosure or improper use of any Manager Confidential and Proprietary Information by the Owner Parties would cause irreparable damage and harm to the Manager Parties. Accordingly, in the event of a breach of this Section 3.2 or any other misuse of Manager Confidential and Propriety Information by any Owner Party, money damages would not be a sufficient remedy, and the Manager Parties shall each be entitled to, and the Owner Parties hereby consent to the entry of, an injunction restraining such breach. Such remedy shall not be deemed to be the exclusive remedy for any breach of this Section 3.2; but shall be in addition to any and all other remedies available at law or in equity to the Manager Parties. The Owner Parties shall each defend, protect, indemnify, and hold the Manager Parties harmless from and against any and all claims, actions, suits, liabilities, losses, damages, costs, and expenses, including, without limitation attorney's fees and expenses, court costs and out of pocket expenses, which are incurred by any of the Manager Parties in connection with any breach by any Owner Party of any of its agreements or obligations under this Section 3.2.]

(c)     Confidential and Proprietary Information shall not include (i) information which is or becomes publicly available without breach of this Agreement by the party receiving

such information, or (ii) is rightfully received by the party receiving such information from a third party without breach of any contractual or other obligations of confidentiality, or (iii) is developed by the party receiving such information independently from the Confidential and Proprietary Information and not in breach of this Agreement.

**3.3** **Use of Trademarks, Service Marks and Related Items, Signage.** Manager shall manage and operate the Property under any name, trade name, or franchise created or selected by Owner and agreed to by Manager. Any franchise, trade name, trademark, designs, service marks, or other trade or service names or items created or registered by any Manager Party (each individually, a "**Manager Trademark**", collectively, and inclusive with the Manager Signage (defined below) the "**Manager Trademarks**") shall be and remain the sole and exclusive property of such Manager Party, and the Owner Parties hereby disclaim any and all right, title or interest in or to any Manager Trademark, and nothing in this Agreement shall be construed to convey any title or ownership rights to the Manager Trademarks to Owner. Owner shall not use the Manager Trademarks, in whole or in part, and shall not copy, reproduce or distribute the Manager Trademarks in any form (either for advertising, to a lender party or otherwise) except as expressly permitted in writing by Manager for each specific instance of use.

**3.4** **CubeSmart Branding.** (a) At Owner's option and expense, and with Manager's consent, Manager shall replace the signage at the Property with "CubeSmart" signage (collectively, "**Manager's Signage**") and thereafter manage and operate the Property under the name of "CubeSmart" during the Term. Owner acknowledges that the name CubeSmart is a Manager Trademark and that Owner has no right to copy, expand, or otherwise use the CubeSmart name except as expressly provided for in this Agreement. Commencing upon Manager's rebranding of a Property as a CubeSmart facility, Manager grants to Owner a non-exclusive, limited, revocable license to use the Manager's Signage and CubeSmart name solely in connection with the operation of the Property and solely during the Term ("**License**"). If Manager determines, in Manager's sole discretion, that Owner is not approving funds sufficient to maintain a Property in the condition and manner similar to other CubeSmart facilities, Manager shall have the right to immediately revoke the License, remove Manager's Signage, and replace Manager's Signage with Owner's signage. Any License granted to Owner hereunder shall be automatically revoked and terminated upon the expiration or earlier termination of this Agreement, and Owner shall have no further rights to use any Manager Trademark, including, without limitation, the CubeSmart name and Manager's Signage. If Manager's Signage is not removed within ten (10) days after the termination of this Agreement, Manager shall have the right, but not the obligation, to enter the Property and remove Manager's Signage, which right shall survive the termination of this Agreement.

(b) Notwithstanding anything contained herein to the contrary, Manager shall pay up to twenty thousand dollars ($20,000) for the Manager's Signage ("**Branding Costs**"). If this Agreement terminates during or prior to the Initial Term for any reason other than an Event of Default by Manager or Manager's termination of the Agreement without cause, then, in addition to any other fees and charges that may be payable by Owner, Owner shall pay to Manager, as a Property Expense, an amount equal to the "unamortized portion" (as described below) of the Branding Costs. Such Branding Costs shall be amortized on a straight-line basis over the Initial Term together with interest thereon at the rate of eight percent (8%) per annum, and the "unamortized portion" of such Signage Costs shall be determined based upon the unexpired portion of the Initial Term as of the termination date if this Agreement commenced and had not been so terminated.

## ARTICLE 4

## Compensation of Manager

**4.1** **Monthly Management Fee**. (a) Commencing on the Commencement Date and continuing during the Term, Owner shall pay to Manager, for the services herein provided by Manager, a management fee equal to the greater of five percent (5%) of the Gross Revenue or Two Thousand Dollars ($2,000.00) per month (the "**Management Fee**"). The term "**Gross Revenue**" shall mean all revenue of Owner (whether received by Owner or by Manager on behalf or for the account of Owner) arising from the Property including, without limitation, rental payment for leases of space in the Property (excluding sales taxes, refunds, and returned checks), revenue from the Insurance/Protection Program, and revenue from ancillary sources such as revenue for additional services provided to customers for a fee, vending machines or concessionaire revenues, revenue from lock and box sales, administrative and late fees, parking rents or fees, truck rental commissions, and other retail sales at the Property. Gross Revenues shall not include: (i) interest accrued on accounts maintained by Manager for or on behalf of Owner, (ii) applicable excise, sales, occupancy and use taxes, or similar government taxes, duties, levies, or charges, (iii) prepaid rent or security deposits until taken into account as rent; (iv) any funds paid by tenants of the Property representing proceeds from fire or other casualty losses; (v) any condemnation (including transfers in lieu of or under threat of condemnation) or insurance proceeds paid to Owner in connection with a claim; (vi) any proceeds arising out of awards, settlements, or any other disposition of any lawsuit or legal proceedings, except to the extent that the net amount of such proceeds remaining, after accounting for all costs and expenses (including attorneys' fees) in obtaining such proceeds represents gross revenues from the Property on which Manager would otherwise be entitled to the management fee; (vii) rebates, discounts, or credits of a similar nature, or (viii) proceeds of any sale, financing, or refinancing of the Property or any portion of the Property or any other capital assets and other items not in the ordinary course of the Property's operations, or income derived from securities or other property acquired and held for investment. No leasing commissions are payable by Owner to Manager. The Management Fee shall be paid monthly. The Management Fee for each month shall be paid to Manager from the Operating Account not later than the fifth (5th) day of the following month, and shall be calculated on the basis of the Gross Revenue for the preceding month. If there are insufficient funds in the Operating Account to pay all or a portion of the Management Fee when such Management Fee is due and payable, then Owner shall promptly deposit such funds into the Operating Account to pay the Management Fee when such fee is due and payable. A late fee of five percent (5%) of any unpaid Management Fee shall be paid by Owner if the Management Fee is paid to Manager after the fifth (5th) day of any month.

(b)     It is understood and agreed that the foregoing compensation will not be reduced by the cost to Owner of those employees and independent contractors engaged in connection with the operation and maintenance of the Property, including, but not limited to, the categories of personnel specifically referred to in Section 2.5. Except as otherwise expressly provided in this Agreement, it is further understood and agreed that Manager shall not be entitled to additional compensation of any kind in connection with the performance by it of its duties under this Agreement. It is understood and agreed that the monthly payment to be made hereby may in some months be inaccurate to the extent of net deposits and that said inaccuracies will be corrected no less often than annually.

**4.2** **Sales Center**. Manager shall provide sales and customer service support through Manager's national sales center. Owner agrees that all telephone calls, TTDY calls, and emails to the Property shall be answered or responded by Manager's sales center staff (collectively, "**Sales Center Services**"). Owner shall pay to Manager a fee of Three Hundred Ninety-Nine Dollars ($399.00) for each Property for each month of the Term for the Sales Center Services, which fee shall be due and payable by Owner to Manager when the Management Fee is paid.

**4.3** **Tenant Insurance/Protection Program**. Manager shall offer to all customers of the Property any tenant insurance/protection program that is used by Manager for its owned and/or other managed properties ("**Insurance/Protection Program**"). Fifty percent (50%) of

any revenue derived from the Insurance/Protection Program at the Property shall be paid to Owner. The owner of this Insurance/Protection Program shall assume all risk associated with the implementation and operation of the Insurance/Protection Program.

**4.4** **Capital Improvements**. If Owner elects, Manager will supervise and oversee capital repairs and improvements at a cost of eight percent (8%) of the total cost of the project for any projects in excess of Twenty Thousand Dollars ($20,000.00). No fee shall be owed by Owner for projects costing less than Twenty Thousand Dollars ($20,000.00).

**4.5** **Pre-Term Services**. If Owner elects, Manager will supervise and oversee certain development tasks as designated by Owner, (the "**Pre-Term Services**") prior to the Commencement Date hereof (that time period before the certificate of occupancy is issued for the Property shall be referred to hereunder as the "**Development Period**"). To the extent such Pre-Term Services are elected by Owner, (i) the Parties agree the Development Period, and the Pre-Term Services, shall be governed by the terms in this Agreement as if it was part of the Term and (ii) the Pre-Term Services shall be performed at Manager's sole cost and expense, except to the extent (a) Owner terminates this Agreement, or (b) the Property is sold by Owner, in either case, prior to the Commencement Date, Owner shall reimburse Manager for the value of all Pre-Term Services performed by Manager, up to Twenty Thousand Dollars ($20,000.00).

## ARTICLE 5

## Default and Termination

**5.1** **Event of Default**. Each of the following occurrences shall be deemed to be an "**Event of Default**" under this Agreement:

(a) Any failure of Manager to perform any of its material or financial obligations (excluding those obligations referenced in Section 5.1(b) below) under this Agreement, which failure is not cured within thirty (30) days after delivery of written notice thereof to Manager; provided, however, if such failure is capable of cure but cannot be cured within such thirty-day period, then, so long as Manager has commenced and is diligently pursuing the cure of such failure within such thirty-day period, the thirty-day period shall be extended for an additional reasonable period of time to permit Manager to cure such failure.

(b) Any failure of Owner to pay the Management Fee and any other sums due and owing to Manager, or required to be deposited in the Operating Account under or pursuant to this Agreement, which failure is not cured within five (5) days after written notice thereof to Owner. The foregoing notwithstanding, Manager shall not be required to deliver a written notice of Owner's failure under this paragraph more than two (2) times in any Fiscal Year.

(c) Any failure of Owner to perform any of its obligations (excluding those obligations referenced in Section 5.1(b) above) under this Agreement, which failure is not cured within thirty (30) days after written notice thereof to Owner, provided, however, if such failure is capable of cure but cannot be cured within such thirty-day period, then so long as Owner has commenced and is diligently pursuing the cure of such failure within such thirty-day period, the thirty-day period shall be extended for an additional reasonable period of time to permit Owner to cure such failure.

**5.2** **Automatic Termination**. Notwithstanding anything contained herein to the contrary, this Agreement shall terminate upon the occurrence of any of the following events (except as to rights and obligations which shall have accrued prior thereto):

13

(a)   the dissolution or termination of the corporate existence of the Owner or Manager;

(b)   cessation of Owner's or Manager's authority to do business; or

(c)   the bankruptcy, insolvency, or assignment for the benefit of the creditors of Owner or Manager.

**5.3   Termination by Owner**.  Owner shall have the right to terminate this Agreement (except as to rights and obligations which shall have accrued prior thereto) upon the occurrence of any one or more of the following events:

(a)   upon thirty (30) days' prior written notice to Manager if an Event of Default by Manager occurs beyond any applicable notice and cure period; or

(b)   (i) during the Initial Term, or (ii) upon a sale or transfer of the Property to any person or entity other than Manager or an Affiliate of Manager, so long as (x) Owner provides thirty (30) days' prior written notice to Manager and (y) Owner pays to Manager a termination fee ("**Termination Fee**") in the amounts set forth below:

| Year of Initial Term | Termination Fee Due to Manager |
| --- | --- |
| Year 1 | $20,000.00 |
| Year 2 | $15,000.00 |
| Year 3 | $10,000.00 |

; or

(c)   any time after the expiration of the Initial Term, by delivering to Manager at least sixty (60) days' prior written notice thereof.

**5.4   Termination by Manager**.  Manager shall have the right to terminate this Agreement (a) upon thirty (30) days' prior written notice to Owner if an Event of Default by Owner occurs beyond any applicable notice and cure period or (b) without cause upon giving Owner at least sixty (60) days' prior written notice thereof.

**5.5   Termination Upon Destruction or Condemnation**.  This Agreement shall terminate upon the date of any damage or destruction of the Property which, in Owner's reasonable opinion, materially affects the continued operation of the Property, and Owner elects to close or discontinue operating the affected Property as a self-storage facility. This Agreement shall terminate upon the date of any conveyance to or taking by any authorized entity by eminent domain of the Property or any portion thereof which, in Owner's reasonable opinion, materially affects the continued operation of the Property as a self-storage facility after such taking.

**5.6   Duties Upon Termination**.  At the expiration or earlier termination of this Agreement:

(a)   Manager's authority to draw against the funds in the Operating Account will be terminated forty-five (45) days after expiration or earlier termination of this Agreement.

(b)   Owner will assume full liability for all existing financial obligations for the Property which were incurred prior to said termination by the Manager pursuant to, and in accordance with, the terms of this Agreement.

(c)    Each Party shall continue to be liable for its respective obligations which have accrued up to and including the termination date, and shall promptly pay to the other all amounts due the other Party under the terms of this Agreement. Such payment shall be made as soon after the effective date of termination as such amounts are determinable. Upon termination of this Agreement for any reason, the Manager shall deliver the following to Owner at Owner's Notice Address:

(1)    A final accounting reflecting the balance of income and expenses on the Property as of the date of termination, to be delivered within forty-five (45) days after such termination;

(2)    All remaining monies of Owner held by Manager and/or in any bank account (including, without limitation, the Operating Account and the Operating Expense Deposit), taking into account payment of all operating expenses of the Property, any Reimbursable Expenses and any other payments related to the Property as allowed by the terms of this Agreement, and any and all monies due Owner which are received by Manager after termination, to be delivered within sixty (60) days after such termination;

(3)    All keys or access cards, records, contracts, leases, receipts for deposits, unpaid bills, and other papers or documents which pertain to the Property or to this Agreement as Owner may reasonably request, to be delivered immediately;

(4)    Manager shall forthwith surrender and deliver to Owner any space in the Property occupied by Manager; and

(5)    Manager shall forthwith surrender and deliver to Owner all books and records with respect to Rents, Reimbursable Expenses, vacancies, deposits, fees, charges and all other receipts and disbursements related to the Property, the management, operation, maintenance, and repair thereof including, without limitation, all budgets, rent rolls, occupancy reports, cash flow statements, invoices, and canceled checks.

(d)    Manager shall furnish all such information and take all such action as Owner shall require in order to effectuate an orderly and systematic termination of Manager's duties and activities under this Agreement. Such action shall include the assignment of all customer leases in effect as of the termination date and security deposits to Owner or its designee, the issuance of any representation letters or other documents requested by Owner in order to assist with the completion of any financial audits with respect to the Property. In addition, Manager shall, at Owner's expense, assign all licenses, permits, and other agreements, if any, to Owner which Manager has entered into or obtained for the benefit of Owner or the Property. Manager hereby grants a power of attorney to Owner to endorse any checks received in connection with the Property and hereby assigns to Owner, effective upon the date of such termination, any and all rights Manager may have in and to the Property records. Owner shall be responsible to pay for any and all out-of-pocket expenses charged by vendors or service providers who are not Affiliates of Manager to effectuate the orderly transfer of Manager's duties under this Agreement to Owner or Owner's designee.

### 5.7    Indemnification.

(a)    Owner hereby agrees to indemnify, defend and hold the Manager Parties harmless from and against any and all costs, expenses, reasonable attorneys' fees, suits, liabilities, judgments, damages, and claims (collectively, "**Claims**") in connection with the management of the Property, the loss of use of the Property following any damage, injury, or destruction, or the failure to maintain sufficient funds in the Operating Account to pay all

expenses authorized by this Agreement, arising from any cause except for the willful misconduct, gross negligence, or fraud on the part of any Manager Party.

(b)     Manager hereby agrees to indemnify and hold the Owner Parties harmless from and against any and all Claims in connection with the operation and/or management of the Property arising from acts by any Manager Party outside the scope of authority granted by Owner under this Agreement or the willful misconduct, gross negligence, or fraud of any Manager Party.

The provisions of this Section 5.7 shall survive the expiration or earlier termination of this Agreement.

## ARTICLE 6

### No Interest in Real Property; No Partnership; Property of Owner

**6.1      Not Real Property**.  This Agreement shall not be deemed at any time to be an interest in real estate or a lien of any nature or kind against the Property or Owner's interest therein.  The rights of Manager created hereby shall at all times be subject and subordinate to all deeds to secure debt, deeds of trust, mortgages, and the like, now or hereafter encumbering all or any portion of the Property, and to all extensions thereof.  This clause shall be selfoperative, and no further instrument of subordination shall be required from Manager.  If requested by any mortgagee or by Owner, Manager shall execute promptly any commercially reasonable document that Owner, or any mortgagee, may reasonably request to effect such subordination.

**6.2      No Partnership**.  Manager's relationship to Owner is strictly and solely that of an independent contractor for Owner.  Nothing contained in this Agreement shall be deemed or construed to create a partnership or joint venture between Owner and Manager, and nothing contained herein shall be deemed or construed to obligate Owner for or on account of any debts or obligations of Manager other than debts or obligations incurred by Manager for the benefit of Owner in accordance with the provisions of this Agreement.

**6.3      Property of Owner**.  Except for personal property owned by Manager and located in Manager's office at the Property, all property located in, at, or upon the Property, whether real, personal, or mixed, including all leases, contracts and funds, is, shall be, and remains the property of Owner (excluding property of tenants).  Owner shall at all times have the right to enter upon the Property and to inspect same.

## ARTICLE 7

### Definitions

All terms used in this Agreement which are not defined in this Article 7 shall have the meanings set forth elsewhere in this Agreement.  As used in this Agreement, the following terms shall have the following meanings (such meanings to be applicable to both the singular and plural form of the terms defined):

**7.1      "Affiliate"** means, with respect to a Person, another Person, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the Person in question.  The term **"control"** as used in the preceding sentence means, with respect to a Person that is a corporation, the right to exercise, directly or indirectly, more than fifty-one percent (51%) of the voting rights attributable to the shares of the controlled corporation, and, with respect to a Person that is not a corporation, the possession, directly or

16

indirectly, of the power to direct, or cause the direction of, the management or policies of the controlled Person.

**7.2** "**Applicable Law**" shall mean all building codes, zoning ordinances, laws, orders, writs, ordinances, rules, and regulations of any Federal, state, county, city, borough, or municipality, or of any division, agency, bureau, court, commission, or department thereof, or of any public officer or official having jurisdiction over or with respect to the Property.

**7.3** "**Emergency**" shall mean an event requiring action to be taken prior to the time that approval could reasonably be obtained from Owner in order to comply with Applicable Law, any Insurance Requirement, or this Agreement, or to preserve the Property (or any part thereof), or for the safety of any employees, tenants, occupants, customers, licensees, or invitees thereof, or to avoid the suspension of any services necessary to the employees, tenants, occupants, customers, licensees, or invitees thereof.

**7.4** "**Fiscal Year**" shall mean the calendar year.

**7.5** "**Insurance Requirements**" shall mean the requirements of any insurance policies from time to time in effect in respect of the Property, or of any insurance carriers or boards of fire underwriters or similar insurance rating organizations having jurisdiction in respect of the Property.

**7.6** "**Leases**" shall mean all written or oral leases, subleases, tenancies, and other occupancy agreements, whether or not of record, for the use, enjoyment, or occupancy of any storage space in or on the Property by Lessees.

**7.7** "**Lessees**" shall mean all tenants, lessees, and other occupants of storage space in the Property under Leases.

**7.8.** "**Manager's Notice Address**" shall mean the following address(es) or such other address(es) as Manager may give notice thereof to Owner in writing:

> CubeSmart
> 5 Old Lancaster Road
> Malvern, PA 19355
> Attn:  Vice President – Third Party Management
>
> Required Copy to:
>
> CubeSmart
> 5 Old Lancaster Road
> Malvern, PA 19355
> Attn:  Chief Legal Officer

**7.9** "**Manager Party**" shall mean Manager and Manager's members and Affiliates, and each of their respective directors, officers, and employees.

**7.10** "**Owner's Notice Address**" shall mean the following address(es) or such other address(es) as Owner may give notice thereof to Manager in writing:

> Platform II Lawndale LLC
> 600 Waukegan Road, Suite 129
> Northbrook, IL 60062

**7.11** "**Owner Party**" shall mean Owner and Owner's members and Affiliates, and each of their respective directors, officers, and employees.

**7.12** "**Person**" shall mean any corporation, partnership, limited liability company, limited partnership, association, cotenancy, joint venture, individual, trustee, business trust, real estate investment trust, banking association, federal or state savings and loan institution, or any other legal or corporate entity.

**7.13** "**Reimbursable Expenses**" shall mean the sum of any expenses for which Owner is expressly obligated to pay to or reimburse Manager under this Agreement, any expenses which Manager incurs at the express direction of Owner, and all expenses incurred by Manager in the performance of its duties under this Agreement and authorized by any Budget, or expressly authorized under this Agreement, including, without limitation, utility expenses, supplies, materials, legal fees (to the extent expressly authorized by Owner), payroll for on-site employees, and disbursements; but excluding all office, accounting, management, and administrative expenses applicable to Manager's office overhead, payroll and employment benefits for Manager's district vice president of operations, and any other employees of Manager that are not employed at or allocable to the Property, and Manager's normal operating expenses incurred in its accounting and reporting activities.   As used in this Section 7.13, "payroll for onsite employees" shall include wages, salaries, social security payments, bonuses, fringe benefits, and related employee payroll, costs, taxes, and expenses so long as such payroll costs have been authorized by a Budget.

**7.14** "**Rents**" shall mean all rents and other payments received under Leases.

**7.15** "**Service Contracts**" shall mean any contract or agreement for the maintenance, operation, or repair of the Property, but expressly excluding this Agreement.

## ARTICLE 8

### Miscellaneous

**8.1** **Assignment**.  Neither this Agreement nor any right hereunder shall be assignable by Owner or Manager, by operation of law or otherwise, and any attempt to do so shall be void, except that each Party shall be permitted to assign this Agreement to its Affiliate.  In the event of an assignment by either Owner or Manager, the Party assigning this Agreement shall provide the other Party with a true, correct, and complete copy of the documents evidencing such assignment, including reasonable evidence of the assigning Party's compliance with the provisions of this Section 8.1.

**8.2** **Headings.**  The headings contained herein are for convenience of reference only, and are not intended to define, limit, or describe the scope or intent of any provision of this Agreement.

**8.3** **Governing Law**.  The validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the Parties hereunder shall be governed by the internal laws of the State or Commonwealth in which the Property is located, without regard to its conflicts of law provisions.

**8.4** **Notices**.  Any notice required or permitted herein to be given in writing shall be personally delivered, or by delivery through a recognized, national overnight courier service, to the Owner's Notice Address or to the Manager's Notice Address, as applicable.

**8.5**     **Severability**.  Should any term or provision hereof be deemed invalid, void, or unenforceable either in its entirety or in a particular application, the remainder of this Agreement shall nonetheless remain in full force and effect and, if the subject term or provision is deemed to be invalid, void, or unenforceable only with respect to a particular application, such term or provision shall remain in full force and effect with respect to all other applications.

**8.6**     **Successors.**  This Agreement shall be binding upon and inure to the benefit of the respective Parties hereto and their permitted assigns and successors in interest.

**8.7**     **Arbitration**.  If any dispute, difference, or disagreement shall arise upon or in respect of this Agreement, and/or the meaning or construction hereof, every such dispute, difference and disagreement shall be referred to a single arbiter agreed upon by the Parties hereto, or, if no single arbiter can be agreed upon, an arbiter or arbiters shall be selected in accordance with the Commercial Arbitration Rules of the American Arbitration Association and such dispute, difference, or disagreement shall be settled by arbitration in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association.  The decision of the arbiter or arbiters shall be final, conclusive, and binding upon the Parties and a judgment may be obtained thereon in any court having jurisdiction.  The arbitration shall be held in the State and County in which the Property is located, except if Owner or an Affiliate of Owner has more than one property or self-storage facility management agreement with Manager, then the arbitration shall be held in Chester County, Pennsylvania.  Owner and Manager shall each pay one-half (1/2) of the cost and expense of such arbitration and each shall separately pay for its own attorneys' fees and expenses.  Owner agrees to an arbitration on an individual basis.  In any dispute, **NEITHER OWNER NOR ANY AFFILIATE OF OWNER WILL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER CUSTOMERS IN COURT OR IN ARBITRATION OR OTHERWISE PARTICIPATE IN ANY CLAIM AS A CLASS REPRESENTATIVE, CLASS MEMBER OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.**  The arbitral tribunal may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.  The arbitral tribunal has no power to consider the enforceability of this class arbitration waiver and any challenge to the class arbitration waiver may only be raised in a court of competent jurisdiction.  If any provision of this arbitration agreement is found unenforceable, the unenforceable provision will be severed and the remaining arbitration terms will be enforced.

**8.8**     **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**8.9**     **No Waiver**.  No failure by Owner or Manager to insist upon the strict performance of any covenant, agreement, term, or condition of this Agreement, or to exercise any right or remedy in the event of a breach hereunder, and no acceptance of any funds from Manager or Owner during the continuance of any such breach, shall constitute a waiver of any such breach or of any such covenant, agreement, term, or condition.  No covenant, agreement, term, or condition of this Agreement to be performed or complied with by Manager or Owner, nor any breach thereof, shall be waived, altered or modified except by a written instrument executed by Owner and Manager. No waiver of any breach shall affect or alter this Agreement, but each and every covenant, agreement, term, and condition of this Agreement shall continue in full force and effect with respect to any other existing or subsequent breach thereof.

**8.10**     **No Representation**.     Manager acknowledges that Owner has made no representations with respect to the Property, its income, expenses, operation, or the benefits that may accrue to Manager hereunder.

**8.11    Estoppel Certificates.**  Each Party hereto agrees, upon demand of the other, to execute and deliver to the other Party, a certificate stating that this Agreement is unmodified and in full force and effect (or, if this Agreement has been modified, that the same is in full force and effect as modified and stating such modifications), whether or not to the knowledge of such Party there exists any default hereunder, and such other matters as the other Party may reasonably request.

**8.12    No Third Party Beneficiaries.**  There shall be no third party beneficiaries under this Agreement, and no Person other than Manager and Owner shall be entitled to rely on any provision of this Agreement.

**8.13    No Broker Commission.**  If Owner is represented by any broker or any other third party agent, Owner is responsible for all commission fees or other payment to such agent, and agrees to indemnify and hold Manager harmless from all claims by such broker or anyone claiming a commission is due as a result of the execution of this Agreement.

**8.14    Entire Agreement.**  This Agreement and all related exhibits and schedules constitutes the sole and entire agreement of Owner and Manager with respect to the subject matter of this Agreement, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to the subject matter.  Neither Owner nor Manager have relied on any statement, representation, warranty, or agreement of the other Party or of any other person on such Party's behalf, including any representations, warranties, or agreements arising from statute or otherwise in law, except for the representations, warranties, or agreements expressly contained in this Agreement.

[BALANCE OF PAGE INTENTIONALLY BLANK; SIGNATURES FOLLOW]

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date first above written.

OWNER:

**PLATFORM II LAWNDALE LLC**

By: _____

    Name: Scott Krone
    Title: Manager


MANAGER:

**CUBESMART ASSET MANAGEMENT, LLC**

By: _____

    Name: Guy Middlebrooks
    Title: Vice President – Third Party Management

## EXHIBIT A

### Property Address

1750 Lawndale, Chicago, IL 60647

## EXHIBIT B

## MONTHLY FINANCIAL PACKAGE

| | |
|---|---|
| **Summary of Rental Experience** | Occupancy, Units Rentals, Vacates, Net Rental Income etc. |
| **SRE Detail** | Occupancy and Rate by Unit Type |
| **Summary 36 Month** | 36 Month Operational Activity |
| **Balance Sheet** | Balance Sheet |
| **BVA Detail** | Month to Date and Year to Date Profit & Loss Statement Against Budget |
| **Rolling Detail** | 12 Month Rolling Income Statement |
| **Rent Roll** | Rent Roll, showing existing tenants, pricing, paid through date |
| **Unit Mix** | Unit Mix, showing unit sizes and dimensions, occupancy by size and dimension |
| **Check Register** | Check Register |

**EXHIBIT H**