# EXHIBIT F

**FORBEARANCE AGREEMENT**

THIS FORBEARANCE AGREEMENT (this "**Agreement**") is between PLATFORM II LAWNDALE, LLC, an Illinois limited liability company ("**Borrower**"), SCOTT KRONE, an Illinois resident ("**Krone**"), MARTIN TARADEJNA, an Illinois resident ("**Taradejna**"), and CODA DESIGN + BUILD, LLC, an Illinois limited liability company ("**Coda**") and together with Krone and Taradejna, ("**Guarantors**") and GREENLAKE REAL ESTATE FUND LLC, a California limited liability company ("**GreenLake**").  This Agreement is dated November 30, 2020 (the "**Effective Date**").

1.      GreenLake is the holder of the following loan (the "**Loan**") which was originally made to Borrower and guaranteed by Guarantors as of May 18, 2018.  In conjunction with this agreement GreenLake is hereby offering to make $1,400,000.00 in additional funds available to Borrower.  All of the above parties agree to the following dates and amounts below:

|  | Date of Agreement | Maturity Date | Principal |
|---|---|---|---|
| Amount due upon maturity of the Forbearance Agreement, the ("**Forbearance Maturity Date**") (no default interest or penalties are in this amount, except the Forbearance Fee)[1] and the Uses referenced in **Schedule 1**. This amount due is assuming no Defaults after the Effective Date. | November 30, 2020 | January 29, 2021 | $6,900,000.00 |
|  | Deferred Origination Fee on new advance [2] | | $56,000.00 |
|  | | **Total** | **$6,956,000.00** |
| Amount due upon ("**Extended Forbearance Maturity Date**"), if requested by Borrower in writing prior to 12/31/2020, Borrower makes all payments in Paragraph 6(e) below. This amount due is assuming no Defaults after the Effective Date. | January 29, 2021 | July 30, 2021 | $6,900,000.00 |
|  | Deferred Origination Fee on new advance | | $56,000.00 |
|  | | **Total** | **$6,956,000.00** |
| Amount due on 1/29/2021*, if the Loan is not repaid on the Forbearance Maturity Date which would then be a Default or is in Default for another reason after the Effective Date. | | Principal | $7,590,000.00 |
|  | | Default Interest | $1,667,508.28 |
|  | Deferred Origination Fee on new advance | | $56,000.00 |
| Post Forbearance Maturity Date | | **Total** | **$9,313,508.28** |
|  | | Per Diem, commencing 2/1/2021 | $    4,427.50 |

---

[1] However, if there is a Default at any time by Borrower or a Guarantor after the Effective Date then at GreenLake's option all default fees and interest shall be retroactively applied to the commencement of the Loan as provided in the Loan Documents.
[2] The Deferred Origination Fee is due upon Forbearance Maturity Date (in other words, not taken out of Uses in Schedule 1).

14343990.v2

| | | |
|---|---|---|
| Amount due on 7/30/2021*, if the loan is not repaid on the Extended Forbearance Maturity Date which would then be a Default or is in Default for another reason after 1/29/2021. (This amount due only applies if the extension was timely requested by Borrower and there was no Default prior to the Extension). | Principal | $7,590,000.00 |
| | Default Interest | $2,093,813.28 |
| | Deferred Origination Fee on new advance | $56,000.00 |
| | Post Extended Forbearance Maturity Date   **Total** | **$9,739,813.28** |
| | Per Diem, commencing 7/31/2021 $ | 4,427.50 |

*All amounts subject to adjustment for fees and/or reserves.

*Assumes interest is paid current and paid each month on the 1st of the month as due.

Borrower and Guarantors acknowledge and agree that the present principal balance, default interest, and fees as of November 30, 2020 is $8,268,805.84, which includes an origination fee of $220,000.00 which was paid at the closing of the Loan. By signing this Forbearance Agreement, the amount due, assuming no further Defaults, is $6,956,000 if paid on 1/29/21, subject to additional fees and expenses. Borrower and Guarantors reaffirm all obligations and covenants owed to GreenLake under that certain Promissory Note Secured by Mortgage dated May 18, 2018 representing the Loan (the "**Note**") and all documents (including but not limited to the amended Note and Mortgage amount) related thereto, as amended by the terms of this Agreement (collectively, the "**Loan Documents**"). Borrower and Guarantors further confirm that Borrower is responsible for all accrued and unpaid interest, costs, expenses, origination fees and forbearance fees incurred by GreenLake in the enforcement, attorney's fees, costs and advancement of costs for preservation and protection of collateral in this Agreement, including but not limited to attorney's fees.   Borrower and Guarantors acknowledge that the present total outstanding amount of GreenLake's attorney's fees related to this matter is approximately $123,127.38 and such costs and fees are likely to continue to increase. Borrower and Guarantors acknowledge the amount due upon the Forbearance Maturity Date, Extended Forbearance Maturity Date, Post Forbearance Maturity Date, and the Post Forbearance Extended Maturity Date as stated above, each of which shall incorporate a forbearance fee paid to GreenLake of $350,000.00.

2.        Borrower originally Defaulted on the Loan because it failed to make timely payments of real estate taxes; Borrower failed to provide evidence to GreenLake related to remediation of the Property pursuant to the terms of Section 1.22(c) of the Note; Borrower failed to provide evidence satisfactory to GreenLake that all existing surveys for the Property are certified to GreenLake; Borrower failed to enter into a Facility Management Agreement with CubeSmart in such form acceptable to GreenLake;   Borrower failed to deliver to GreenLake a fully executed Collateral Assignment of Facility Management Agreement with CubeSmart in such form acceptable to GreenLake; Borrower failed to timely complete construction of the storage facility and Borrower failed to make timely payments on July 1, 2019; August 1, 2019; September 1, 2019; October 1, 2019 and December 1, 2019; and failed to make any payments on January 1, 2020 and every month thereafter through the Effective Date (collectively, the "**Existing Defaults**"). Borrower, Guarantors, and GreenLake enter into this Agreement so that Lender forbears on its remedies related to the Borrower's Existing Defaults and to continue the Note through maturity until January 29, 2021 (the "**Forbearance Date**"[3]; sometimes referred to as the "**Forbearance Maturity Date**") pursuant to the terms contained in this Agreement. If the Borrower or any Guarantor is in Default for any reason after the Effective Date of this Agreement, then all the aforementioned Existing Defaults are reinstated with the associated fees, penalties and interest as stated in the Note.

---

[3] Said term shall include "Extended Forbearance Date", July 30, 2021, as applicable.

3.      Borrower and Guarantors acknowledge and agree that the Loan is payable in full on the Forbearance Date[4] and Borrower and Guarantors waive any and all rights to cure any Default, including but not limited to the Existing Defaults.

4.      Borrower and Guarantors acknowledge and agree that GreenLake may continue with the foreclosure proceedings filed in Cook County Case No. 2020CH02969 and any other proceedings related to the Loan (collectively, the "**Foreclosure Proceedings**"), but GreenLake shall not hold a foreclosure sale of the property secured by the Mortgage prior to the Forbearance Date, unless Borrower and/or Guarantors are in Default of this Agreement and, except as otherwise modified by this Agreement, the Loan Documents. Borrower and Guarantors agree not to object to any of the Foreclosure Proceedings or matters related thereto. Notwithstanding the forgoing, GreenLake will dismiss without prejudice, the Foreclosure Proceedings upon evidence from Borrower (and approval by GreenLake) of (i) a commitment letter from an outside lender related to the refinance of the Loan sufficient to payoff GreenLake as per the amounts above; (ii) loan documents (in form substantially complete) related to the refinance of the Loan; (iii) proof of funds from outside lender, if available, and (iv) an established closing date for the refinance of the Loan.

5.      Upon the advance of the $1,400,000.00 described in Section 1 of this Agreement, Borrower and Guarantors acknowledge and agree that GreenLake will have satisfied that certain $750,000.00 advance under the Note (originally identified as the Opening Advance in Section 1.4(iv) of the Note) and an additional $650,000.00 (collectively, the "**Additional Advance**"). The Additional Advance shall be placed into the "**Payment Reserve**" to be used in accordance with the Uses set forth in **Schedule 1** attached hereto and incorporated herein by this reference and in accordance with the following:

      (a)      Provided there are sufficient funds available in the Payment Reserve and there is no Event of Default under this Agreement or any of the Loan Documents, GreenLake shall apply funds contained in the Payment Reserve to monthly payments of interest, insurance, real estate taxes and/or expenses (up to the balance of the Payment Reserve) in accordance with the terms contained in Sections 6(e) below. **Borrower shall remain responsible for timely payment of any amount due which is not funded from the Payment Reserve, any unpaid payments shall be a Default.**

      (b)      In the event GreenLake, in GreenLake's sole discretion, determines that the funds contained in the Payment Reserve are insufficient to cover monthly payments of interest, insurance, and/or real estate taxes, GreenLake may require Borrower to deposit additional funds into the Payment Reserve in an amount sufficient to cover any shortfall. Any such required additional funds shall be delivered by Borrower to GreenLake no later than seven (7) calendar days after notice from GreenLake of such requirement, failure to timely remit shall be a Default.

      (c)      Following and during the continuance of an Event of Default under this Agreement, the Note, or any of the other Loan Documents, GreenLake may use the funds in the Payment Reserve (as well as any other then yet to be advanced Loan Amount) in its discretion for the payment of principal, interest, fees or other sums due under the Note.

      (d)      The Payment Reserve need not be maintained by GreenLake in a separate account and shall not earn any interest.

      (e)      The Additional Advance shall be governed by and disbursed pursuant to this Section 5 and shall not be subject to the terms contained in the Note related to the "Opening Advance" or the "Working Capital Holdback", including but not limited to Sections 1.4(iv) and 1.22(f) of the Note.

---

[4] Or if applicable the Extended Forbearance Date.

6.       In consideration of Borrower's continued payments, subject to the terms and conditions set out herein, and in reliance on the agreements of the payments contained herein, GreenLake shall (i) forbear from exercising its remedy of foreclosure under the Loan related to the Existing Defaults until the Forbearance Date, and (ii) forgive all Default interest, certain late fees, and other penalties accumulated from the Existing Defaults, provided Borrower and Guarantors are in full compliance with the terms of this Agreement and the Loan Documents, including the following (the failure of Borrower or any Guarantor to comply shall be a Default):

(a)      Borrower and Guarantors shall have each amended their pleadings to have dismissed with prejudice their affirmative defenses and counter claim in the Foreclosure Proceedings concurrent with the execution of this Agreement and consent to the summary judgement of the foreclosure, however the court will not be asked to enter the summary judgment unless Borrower or Guarantors are in Default of this Forbearance Agreement.

(b)      Borrower and Guarantors shall fully comply with all representations, warranties, covenants, terms and conditions contained in this Agreement and the Loan Documents;

(c)      The Payment Reserve is being set aside by GreenLake for, among other things, the purpose of paying the missed payments that caused the Existing Defaults. As such uncured missed payments began January 1, 2020, Borrower and Guarantors acknowledge and agree the Additional Advance shall be treated as though it was advanced as of January 1, 2020.

(d)      Borrower and Guarantors acknowledge and agree that concurrently with the execution of this Agreement, GreenLake shall use funds contained in the Payment Reserve to reimburse GreenLake for all outstanding out of pocket costs and attorneys' fees incurred to date related to all enforcement action taken related to the Loan, which are estimated to be $123,127.38 as of the date of this Agreement.

(e)      Borrower and Guarantors acknowledge and agree that funds allocated to the Payment Reserve shall be used to make the missed monthly payments (including interest, tax impound, and insurance impound payments) for January 1, 2020, February 1, 2020, March 1, 2020, April 1, 2020, May 1, 2020, June 1, 2020, July 1, 2020, August 1, 2020, September 1,2020, October 1, 2020 to GreenLake in accordance with the following:

| Interest Payment | $63,250 |
|---|---|
| Tax Impound | $3,800.00 |
| Insurance Impound | $1,600.00 |
| "Total Monthly Payment" | $68,650.00 |

(f)      Provided there are sufficient funds available in the Payment Reserve, Borrower and Guarantors acknowledge and agree that funds allocated to the Payment Reserve shall be used to make interest, taxes and insurance payments in the amount of $68,650.00 each beginning on November 1, 2020 and when the payment Reserve is exhausted, Borrower shall make the Total Monthly Payments due thereafter until the Forbearance Maturity Date, failure to make these payments shall be a Default. Borrower acknowledges that it shall be responsible to pay to GreenLake the Total Monthly Payment(s) if it requests from GreenLake to extend the Forbearance Maturity Date in accordance with the terms of this Agreement.

(g)      Borrower and Guarantors agree that Section 1.7 of the Note shall be and is hereby deleted.

(h)      Notwithstanding anything contained in Sections 6(e) and 6(f), Borrower acknowledges and agrees that GreenLake, in GreenLake's sole discretion, may adjust any tax impound payment

14343990.v2

amount or insurance impound payment amount (pursuant to the terms of the Note) to reflect changes in relevant tax and/or insurance bills.

(i)      Borrower and Guarantors (as applicable) shall execute that certain First Amendment to Promissory Note Secured by Mortgage and any related documents evidencing the Additional Advance in such forms acceptable to GreenLake as of the Effective Date.

7.      Borrower and Guarantors hereby further agree that upon the execution of this Agreement:

(a)      Borrower and Guarantors shall, at all times, actively pursue the refinancing of the Loan from outside lenders.

(b)      Borrower and/or Guarantors shall send to GreenLake a copy of any letter of interest, loan commitment, term sheet or correspondence, relating to the refinancing of the Loan from outside lenders within 24 hours of receipt by Borrower or Guarantors.

(c)      Until the repayment of this Loan according to the terms of this Agreement, on the first day of each month, Borrower and Guarantors shall submit to GreenLake a report of all of Borrower's efforts to seek and secure the refinancing of the Loan for the immediately preceding month, which report shall include all applications, negotiations, commitments, approvals, term sheets and denials for each lender from which Borrower is seeking such refinancing.

(d)      Borrower shall have provided evidence to GreenLake related to remediation of the Property pursuant to the terms of Section 1.22(c) of the Note, including evidence that such remediation did not exceed a total cost of $70,607.25, proof of payment and lien releases for all work completed in connection with the remediation, and a copy of any letter or certificate confirming compliance and completion, including but not limited to a no further action letter from the applicable environmental department authorities.

(e)      Borrower and Guarantors shall continue to diligently defend any and all active or pending lawsuits to GreenLake's satisfaction and Borrower and Guarantors shall provide GreenLake with an update on the first of each month related to such lawsuits. The active and pending lawsuits involving Borrower and/or Guarantors include, but are not limited to, the following:

     a.      City of Chicago v. L&B Partnership LLC, et. al., 14M1402825, Circuit Court of Cook County, First Municipal District;

     b.      Steve Siegel v. Scott Krone, et., al., 16-CH-1118, Circuit Court of Cook County, First Municipal District;

     c.      Alliant Credit Union v. Platform I 600 Waukegan, LLC, Scott Krone, et. al,. 2018-CH-02032, Circuit Court of Cook County, Chancery Division; and

     d.      Krone v. Tresi, Limited Liability Company. 2018-CH-00668, Circuit Court of Cook County, Chancery Division.

(f)      Borrower shall have provided evidence satisfactory to GreenLake that all existing surveys for the Property are certified to GreenLake or in the alternative Borrower shall cause an updated survey to be certified to GreenLake within forty (40) calendar days after the Effective Date. Borrower shall send proof that it has ordered the survey within 3 days of the Effective Date. Failure by Borrower to deliver the survey in accordance with this subsection (f) shall be an event of Default.

(g)    Borrower shall have entered into a Facility Management Agreement with CubeSmart in such form acceptable to GreenLake. Failure by Borrower to comply with this subsection (g) shall be an event of Default.

(h)    Borrower shall deliver to GreenLake a fully executed Collateral Assignment of Facility Management Agreement with CubeSmart in such form acceptable to GreenLake within twenty-one (21) calendar days after the Effective Date. Borrower shall send proof that it has requested the Collateral Assignment of the Facility Management Agreement within 3 days of the Effective Date.  Failure by Borrower to deliver the Collateral Assignment of Facility Management Agreement in accordance with this subsection (h) shall be an event of Default.

(i)    Borrower shall have provided GreenLake with a punch list of remaining construction items, if any, and a copy of the Occupancy Permit from all regulatory authorities.

(j)    Borrower shall within 10 days of the Effective pay current all due and outstanding real estate taxes, provide GreenLake with paid receipts thereof, and thereafter provide GreenLake with copies of any future outstanding tax bill(s) related to the Property with a written request for GreenLake to pay any taxes that are due from the Tax Impound. Borrower acknowledges and agrees that it shall pay to GreenLake within five (5) calendar days after request thereof, (i) any late fee or penalty related to the real property taxes which GreenLake will remit with any tax payment; and (ii) any amount of taxes due in excess of the amount contained in the Tax Impound. Notwithstanding the foregoing, the parties acknowledge that Borrower shall be entitled to use the proceeds held in the tax impound account to pay such outstanding real estate taxes as of the Effective Date.

(k)    Borrower acknowledges and agrees, in accordance with the terms of the Note, that Borrower is responsible for the payment of the real property taxes for the Property prior to delinquency.

(l)    Borrower and Guarantors waive presentment, demand for payment, notice of dishonor, protest, notice of nonpayment and acknowledges acceleration of the Note subject to this Forbearance Agreement.

(m)    Borrower represents that there are no unpaid construction payments due or material men invoices due for the construction of the premises except those shown in Schedule 2. In the event any of the subcontractors or material men described on Schedule 2 file a lien or commence a claim against Borrower on account of any such unpaid amounts, such lien or claim shall not constitute a default under the terms of the Loan Documents, provided however that Borrower is not otherwise in Default under the Loan Documents. Notwithstanding the aforementioned in the event of any Default by Borrower under the Loan Documents, Lender no longer forbears on this provision or any other provision of this Agreement.

(n)    Borrower shall have provided evidence of insurance satisfactory to GreenLake.

(o)    Notwithstanding anything contained in the Note or Loan Documents, Borrower and Guarantors acknowledge, agree, and consent to the jurisdiction and venue of the State of Illinois Circuit Court of St. Clair County with respect to any proceeding that may be initiated by GreenLake for the appointment of any receiver, the enforcement of the Note and/or Loan Documents (except that certain Open-End Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing executed in connection with the Loan), and the collection of any indebtedness due under the Loan.

(p)    In the event of a Default by Borrower and/or Guarantors under this Agreement, the Note or the Loan Documents, then Guarantors shall agree that the Disposition of Collateral shall be deemed

commercially reasonable if sold under the terms of **Exhibit A**, attached. Notwithstanding anything contained in those certain documents listed in subsections a., b. and c. below, Borrower and Guarantors acknowledge and agree that: (1) any and all distributions, conversions and voting power related to membership interest held by Krone and Taradejna in Borrower is now hereby collaterally assigned to GreenLake to further secure the repayment of the Loan; (2) the membership interest held by Krone and Taradejna in Borrower, and the distributions, conversions, and voting power arising therefrom, have not been otherwise sold, exchanged, transferred, given, encumbered, assigned, pledged, mortgaged, hypothecated, or disposed of; (3) Krone and Taradejna shall not exercise any voting rights or management authority related to the Collateral or give any consents, waivers or approvals of any voting rights or management authority in the Operating Agreement of Borrower without the prior written consent of GreenLake; (4) Krone and Taradejna hereby appoint GreenLake as their attorney-in-fact to exercise any and all management authority held by Krone and Taradejna as Managers of Borrower pursuant to the Operating Agreement of Borrower; and (5) Borrower and Guarantor acknowledge and agree that they will take all actions and execute any documents necessary to accomplish the purposes of this Section 7(p), as determined by GreenLake in GreenLake's sole discretion.

    a.  That certain Pledge and Security Agreement dated May 18, 2018 executed by Krone for the benefit of GreenLake;

    b.  That certain Pledge and Security Agreement dated May 18, 2018 executed by Taradejna for the benefit of GreenLake; and

    c.  That certain Acknowledgment and Control Agreement dated May 18, 2018 executed by Borrower, Krone, Taradejna, and GreenLake.

**(q)** **Borrower and Guarantors acknowledge they have reviewed GreenLake's accounting of the Loan as of the date of this Agreement and agree with all figures and calculations contained therein, including but not limited to those contained in Section 1 of this Agreement. At the request of GreenLake, Borrower and Guarantors shall fully cooperate and respond to and with any auditor of GreenLake in connection with the Loan or otherwise, consistent with the terms of this Agreement.**

Borrower and Guarantors acknowledge that failure to comply or take the affirmative acts necessary in Section 7, shall be deemed a Default.

8.      Any term of the Loan Documents that is inconsistent with the terms of this Agreement shall be deemed to be modified to be consistent with the modifications contained in this Agreement. If for any reason this Agreement is invalid, the Loan Document shall be enforceable in accordance with their original terms.

9.      It shall be a Default under this Agreement and the Loan Documents if: (a) any lawsuit, arbitration proceeding or criminal prosecution is commenced against Borrower or any of the Guarantors or any of the property of Borrower or any of the Guarantors, which is not dismissed within thirty (30) days; (b) any lien, judgment, levy or claim is asserted against Borrower or any of the Guarantors or any of the property of Borrower or any of the Guarantors, which is not cured within thirty (30) days, provided, that if Borrower may contest any such lien or claim, Borrower so long as Borrower shall post a bond or other reasonable security in connection with such contest; (c) Borrower or any of the Guarantors revoke, disclaim or attempts to limit any liability for repayment of the Loans or any collateral for the Loans; (d) there is any breach of any agreement, representation or warranty made by Borrower or Guarantors under the Loan Documents, the Note or this Agreement which is not cured prior to the end of any applicable notice or cure period; (e) any bankruptcy or other proceeding for protection from creditors is filed against Borrower or any of the Guarantors. If there is any Default hereunder, then notwithstanding anything else contained herein and in the Loan Documents, all amounts due under the Loan shall

become immediately due and payable and GreenLake shall have the right to immediately exercise all rights and remedies that it may have at law or equity. Time is of the essence in performance of all obligations of Borrower and Guarantors. All remedies of GreenLake are cumulative and the exercise of one remedy will not preclude the exercise of any other remedy.

10.      The forbearance by GreenLake hereunder shall not be deemed to be a waiver by GreenLake of any Default under the Loan or Loan Documents or of any right or remedy that GreenLake may have at law or equity, or under any Loan Document.

11.      Borrower and Guarantors acknowledge and agree, upon GreenLake's request, to execute any other documents necessary or desirable to effectuate the intent of the Receivership Order, entered September 10. 2020. Borrower and Guarantors agree not to contest the Receivership Order or any order or judgment entered in accordance with the Receivership Order.

12.      Borrower and Guarantors hereby release GreenLake, its officers, directors, agents, attorneys, successors and assigns (the "**Released Parties**"), from all liability, of every kind and nature, arising out of any of GreenLake's actions or inactions up to the date hereof with respect to the making or administration of the Loan or the enforcement of any rights or remedies of GreenLake under the Loan of every kind of nature. Without limiting the generality of the foregoing, Borrower and Guarantors specifically release the Released Parties from liability relating to:  (a) any erroneous reports made to credit reporting agencies relating to the terms of the Loan, the payment status of the Loan or any other matters relating to the Loan; and (b) failure to deliver to Borrower or Guarantors disclosures when the Loan was made as required to be made under any of the Regulations of the Consumer Financial Protection Bureau or other applicable regulations.   This paragraph will survive the expiration or termination of this Agreement.

13.      All actions or proceedings arising directly or indirectly from this Agreement, the Loan, the Note, or the Loan Documents (as such may be amended by this Agreement) shall be litigated in courts located in the State of Illinois Circuit Court of St. Clair County, except that any action related to the appointment of a receiver or foreclosure shall be brought in the courts located in the Circuit County of Cook County, Illinois. Borrower and Guarantors irrevocably consent to the jurisdiction thereof and agree not to disturb such choice of forum for any reason whatsoever. Further, Borrower and Guarantors waive personal service of any and all process, and consents and acknowledges that at the sole election of GreenLake, or its successors or assigns, any service of process may be made by the Sheriff, Special Process Server or certified or registered mail, return receipt request, upon Scott Krone at 600 Waukegan Road, #129, Northbrook, Illinois 60062 or upon of M. Reas Bowman, Esq., Levin Ginsburg, 180 N. LaSalle Street, Suite 3200, Chicago, Illinois 60601. Borrower and Guarantors appoint M. Reas Bowman to accept service of process on each of its behalf.

14.      All prior offers of settlement with respect to the Loan, if any, that have been made by GreenLake are hereby revoked. No modification, extension, amendment or waiver of any of the obligations of Borrower and/or Guarantors with respect to the Loan is binding on GreenLake unless made in writing by an officer of GreenLake. If Borrower tenders payment to the GreenLake that is less than the amount required herein GreenLake may accept such partial payment without waiving its demand for full payment of the amounts required.   Any failure of GreenLake to enforce any terms hereunder shall not preclude GreenLake from requiring strict performance of such terms in the future.

15.      This Agreement represents the entire agreement of the parties hereto with respect to the subject matter of this Agreement and supersedes any prior agreements. This Agreement may not be modified or terminated except in writing signed by the parties hereto. This Agreement shall be governed by the internal laws of the state of Illinois without reference to conflict of laws rules. This Agreement may be signed in one or more counterparts. Faxed or electronically transmitted copies will be binding on the party sending a copy of this Agreement in such format.

14343990.v2

16.     Borrower and Guarantors shall send any correspondence to GreenLake at 1416 El Centro Street, Suite 200, South Pasadena, CA 91030, Attn:   Kathy Kim, with a copy to Sandberg Phoenix & von Gontard, 600 Washington Ave., Fl. 15, St. Louis, MO 63101, Attn: Anthony J. Soukenik. GreenLake shall send any correspondence to Borrower and/or Guarantors at Platform II Lawndale, LLC, 600 Waukegan Rd., Ste 129 Northbrook, IL 60062, Attn: Scott Krone, with a copy to Levin Ginsburg, 180 N. LaSalle St., Suite 3200, Chicago, Illinois 60601-2800; Attn: Jeffrey Galkin. Any notices required or permitted to be given under this Agreement may be sent by United States certified mail or by a nationally recognized courier service, postage prepaid, and shall be deemed to be delivered when delivery is tendered to the recipient regardless of whether the recipient accepts such delivery.  A notice will be deemed to be sent on the date of the postmark or acceptance receipt from the courier.

17.     Borrower and Guarantors hereby acknowledge and agree that the Note shall be and is hereby amended to include the following provisions:

(a)     **THE PAYOR (MAKER) HEREBY IRREVOCABLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY ILLINOIS STATE COURT SITTING IN ST. CLAIR COUNTY, ILLINOIS OR ANY UNITED STATES OF AMERICA COURT SITTING IN THE SOUTHERN DISTRICT OF ILLINOIS, AS THE PAYEE (HOLDER) MAY ELECT, IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS PROMISSORY NOTE, (B) AGREES THAT ALL CLAIMS IN RESPECT TO SUCH SUIT, ACTION OR PROCEEDING MAY BE HELD AND DETERMINED IN ANY OF SUCH COURTS, (C) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH THE PAYOR (MAKER) MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT, (D) WAIVES ANY CLAIM THAT SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND (E) WAIVES ALL RIGHTS OF ANY OTHER JURISDICTION WHICH THE PAYOR (MAKER) MAY NOW OR HEREAFTER HAVE BY REASON OF ITS PRESENT OR SUBSEQUENT DOMICILES. THE PAYOR (MAKER) AND BY ITS ACCEPTANCE HEREOF, THE PAYEE (HOLDER) HEREBY IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION IN WHICH THE PAYOR (MAKER) AND THE PAYEE (HOLDER) ARE PARTIES RELATING TO OR ARISING OUT OF OR IN CONNECTION WITH THIS PROMISSORY NOTE.**

(b)     Borrower and Guarantors agree that: (i) the Promissory Note and the rights and obligations of the parties under each shall be governed by the laws of the State of Illinois, without reference to the conflict of law principles of such state; (ii) the obligation evidenced by the Promissory Note is an exempted transaction under Section 1603(1) of the Truth In Lending Act, 15 U.S.C. §1601, et seq.; (iii) said obligation constitutes a business loan and a loan secured by real estate within the purview of 815 ILCS 205/4 (1992); (iv) the proceeds of the indebtedness evidenced by the Note will not be used for the purchase of registered equity securities, within the purview of Regulation "U" issued by the Board of Governors of the Federal Reserve System; and (v) upon the Maturity Date, GreenLake shall have no obligation to refinance the indebtedness evidenced by the Note or to extend further credit to Borrower.

18.     If any of the terms of this Agreement are inconsistent with the terms of any other Loan Document, the documents supplying Loan and the terms of this Agreement shall prevail.  The failure of a term in one Loan Document to appear in another Loan Document shall not be deemed to be an inconsistency.

19.     Borrower and Guarantors represent and warrant that they are entering into and execution this Agreement is done on their own volition, freely and voluntarily and not under any coercion, duress or undue influence of or by GreenLake. Borrower and Guarantors represent and warrant that the concepts embodied in this Agreement have been independently negotiated, that they at all times have been represented by counsel of their own choice, or have had the opportunity to be represented by counsel of their own choice, and that this Agreement is satisfactory to and in the best interest of Borrower and Guarantors, and have actively requested that the GreenLake enter into this Agreement. Borrower and Guarantors represent and warrant that all actions required in connection with the authorization, execution, delivery and performance of this Agreement have been

14343990.v2

duly taken, and that when executed and delivered, this Agreement shall constitute their valid and binding obligations. Borrower and Guarantors represent and warrant that the payments made hereunder are not given as a fraudulent transfer or preference against any creditors of Borrower and Guarantors. Borrower and Guarantors represent and warrant that they are not insolvent and have not filed, nor intend to file a petition for relief under any chapter of the federal Bankruptcy Code, that no involuntary petition has been filed with respect to Borrower or Guarantors under any chapter of the federal Bankruptcy Code, and that Borrower or Guarantors have not and do not intend to seek relief under any other insolvency, bankruptcy, reorganization, receivership or other similar debtor relief law.

20.      If any provision of this Agreement is held to be illegal, invalid, or unenforceable at law, such provision shall be fully severable, and the remaining provisions thereof shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance therefrom.

**[SIGNATURE PAGE TO FOLLOW]**

14343990.v2

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the date first above written.

**BORROWER**:

**PLATFORM II LAWNDALE, LLC**,
an Illinois limited liability company

By: _____
         Scott Krone, Manager

**GUARANTORS**:

_____
SCOTT KRONE, an Illinois resident

_____
MARTIN TARADEJNA, an Illinois resident

**CODA DESIGN + BUILD, LLC**,
an Illinois limited liability company

By: _____
         Scott Krone, Manager

**GREENLAKE**:

**GREENLAKE REAL ESTATE FUND LLC**,
a California limited liability company,

   By:   GreenLake Investment Management LLC,
          a California limited liability company, Its Manager

   By: _____
         Paul Diamond
         Chief Operating Officer

14343990.v2



**EXHIBIT A**

**Commercially Reasonable Terms of Disposition of Collateral Sale**

**Proposed UCC Sale Procedures**

The proposed selling officer will be Steve Baer of High Ridge Partners.  This is agreed-upon by counsel for the Guarantors.

The sales officer proposed that Notice of the Sale would be published on two Sundays and a Wednesday in Chicago Tribune Auction Mart (at a cost of around $4,500) and with the Self-Storage Association ("SSA"), with the sale occurring sometime after the last date of publication. GreenLake proposes that the Notice of Sale be published in the Chicago Tribune, as suggested by the sales officer, and in the SSA's weekly industry column online edition for a period of one month at the quoted cost of $1,500.00. The Guarantors propose that the Notice of Sale be published in both the SSA's weekly industry column online edition and as a quarter-page advertisement in the SSA's print edition, at an additional cost of approximately $1,800. In order to defray the additional $1,800 cost, the Guarantors are willing to forgo publication of the Notice of Sale in the Chicago Tribune (at a cost of $4,500) and substitute that publication for the Chicago Daily Law Bulletin.

A virtual room with diligence documentation will be set up through a third-party program called iDeals. That room will not allow for downloads or printing of documents.

A list of diligence documentation as solely determined and generated by the selling officer.

Each potential bidder will be required to sign a non-disclosure agreement as solely determined and generated by the selling officer.

GreenLake will provide direct notice of the sale to Borrower, Guarantors and any creditor of the two Guarantors who shows in a UCC search for which GreenLake is obligated by statute to provide direct notice to. Counsel for the Guarantors will handle notice to the members of the Borrower and will stipulate that the failure of GreenLake or the selling officer to send notice to these members will not be raised as an objection to the manner in which notice was sent in advance of the sale.

The sale will take place at the office of Freeborn & Peters, where there exists a conference theater that can hold groups of people in a socially distanced setting.  The sale will also happen over Zoom to allow for remote bidders.

The Notice of Sale will identify how a bidder can get qualified, information about the virtual data room and how to get access to that room, the selling officer's contact information, information about security requirements for the building where the sale is being conducted, Zoom instructions and describe the mechanism for how the successful bidder will pay.

A court reporter will be either live in person or on Zoom to tape the proceedings.

Bidding specifics to be decided in advance of sale based on number of interested bidders.  Either done in roundabout fashion or just ask for bidders like a normal auction/mortgage foreclosure sale.  If there is a low number of bidders, then just straightforward bidding like a typical auction.

To be qualified to bid, prospective buyers must provide proof of funds up to the bid amount of no less than $200,000.00, which is GreenLake's opening bid.  The selling officer usually reserves the right to modify certain things such as this based upon sole discretion.  So, they might let the bid rise if they believe the buyer can close at the bid price. The proof may be in the form of a letter from the bank or lender confirming availability of the

funds. They would even take a screen shot of an online banking statement. There would be no financing contingency allowed for any bid.

If a potential bidder asks to inspect the property, that inspection will/can be scheduled.

Sale can be continued for short period of time on seller officer's suggestion and in accordance with Illinois' UCC guidelines for same.

GreenLake will credit bid the amount of $200,000 for each interest being sold as its starting and top bid. This is subject to some small discretion on the opening bid, only depending on interest from third-parties.

For non-credit bidders, a down payment or earnest money of 10% would be required with balance to be paid in 24 hours.

14343990.v2

**SCHEDULE 1**

|  | Amount | Months | Monthly |
|---|---|---|---|
| **"Uses"** | | | |
| Interest (Jan 2020- Jan 2021) | (822,250.00) | 13 | (63,250.00) |
| Tax Impound (Jan 2020- Jan 2021) | (49,400.00) | 13 | (3,800.00) |
| Insurance Impound (Jan 2020- Jan 2021) | (20,800.00) | 13 | (1,600.00) |
| Forbearance Fee | (350,000.00) | | |
| Legal | (123,127.38) | | |
| CubeSmart Shortfall, estimated | (42,108.00) | | |
| Receiver and other fees, estimated | (45,700.00) | | |
| **Subtotal** | **($1,453,385.38)** | | |
| Current Reserves*[5] | 53,385.38 | | |
| **Net Additional Funding** | **($1,400,000.00)** | | |
| Original Loan | ($5,500,000.00) | | |
| **Total Balance Post Forbearance** | **($6,900,000.00)** | | |

---

[5] Due to Borrower's defaults, all reserves were consumed by default interest and fees.  As part of this Agreement, Lender has agreed to reinstate these reserves so long as there is no further default under the Note or this Agreement.

14343990.v2

**SCHEDULE 2**

# PLATFORM II LAWNDALE

**SUBCONTRACTORS OWED**

| Subcontractor | Amount |
|---|---|
| Landworks Landscaping, LLC | $ 7,700.00 |
| A&S Masonry | $ 5,525.00 |
| Artur Construction | $ 19,150.00 |
| VFJ | $ 9,210.00 |
| Batavia Damp Proofing | $ 5,890.00 |
| Super Remodeling | $ 6,000.00 |
| Dortrak | $ 9,250.49 |
| WG Glass | $ 11,950.00 |
| Masters Drywall | $ 17,500.00 |
| Margarito Sanchez | $ 19,000.00 |
| Custom Tile and Stone | $ 580.00 |
| Janus International | $ 160,527.44 |
| Schindler Elevator | $ 44,322.00 |
| Tai Pluming | $ 14,320.50 |
| Ferguson Enterprises | $ 3,999.33 |
| Chicago Metro Fire Protection | $ 40,903.30 |
| Metropolitan Fire Protection | $ 19,200.00 |
| Chase Mechanical | $ 7,933.00 |
| SLS Electrical | $ 26,000.00 |
| TK Audio | $ 45,822.70 |
| Miscellaneous | $ 25,550.08 |
| **Total** | **$ 500,333.84** |

14343990.v2

## <u>FIRST AMENDMENT TO PROMISSORY NOTE SECURED BY MORTGAGE</u>

THIS FIRST AMENDMENT TO PROMISSORY NOTE SECURED BY MORTGAGE (this "**<u>First Amendment</u>**") is dated as of November 30, 2020 (the "**<u>Agreement Date</u>**") between PLATFORM II LAWNDALE LLC, an Illinois limited liability company (the "**<u>Borrower</u>**") and **SCOTT KRONE**, an individual, **MARTIN TARADEJNA**, an individual, and **CODA DESIGN + BUILD, LLC**, an Illinois limited liability company (collectively, "**<u>Guarantor</u>**") and **GREENLAKE REAL ESTATE FUND LLC**, a California limited liability company and/or Assignees ("**<u>Lender</u>**").

### <u>RECITALS</u>

A.      Borrower and Lender entered into that certain Promissory Note Secured by Mortgage dated May 18, 2018 (the "**<u>Note</u>**") whereby Lender agreed to make a secured loan (the "**<u>Loan</u>**") available to Borrower in the maximum principal amount of $6,250,000.00, of which a total of $5,500,000.00 has been advanced as of the date hereof (the "**<u>Advanced Amount</u>**"). All initially capitalized terms not defined herein shall have the meaning ascribed to them in the Note.

B.      The Note is secured by an Open-End Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated May 18, 2018 and recorded May 22, 2018 (the "**<u>Mortgage</u>**") encumbering certain real property commonly known as 1750 N. Lawndale Avenue, Chicago, Cook County, Illinois 60647 (Parcel Nos. 13-35-319-002-0000; 13-35-319-015-0000; 13-35-319-039-0000), and more particularly described in the Mortgage (the "**<u>Property</u>**").

C.      Each Guarantor executed a certain Payment and Performance Guaranty dated May 18, 2018 (collectively, the "**<u>Guaranty</u>**") guaranteeing the payment and performance of Borrower under the Note.

D.      Borrower and Guarantor have requested that Lender enter into that certain Forbearance Agreement of even date herewith (the "**<u>Forbearance Agreement</u>**"), and Lender is willing to so do provided the parties enter into and act in accordance with the terms of this First Amendment.

### <u>AMENDMENT</u>

1.      **Additional Loan Amount.** The Loan Amount under the Note shall be increased by $706,000.00 (the "**<u>Additional Loan Amount</u>**") for a total Loan Amount of $6,956,000.00, of which $56,000.00 is a "**<u>Deferred Origination Fee</u>**" that does not begin to bear interest, except upon an Event of Default or if not paid in full upon maturity. The Deferred Origination Fee shall be paid to Lender's Advisor Affiliate (as hereinafter defined) upon full repayment of the balance of this Note, including maturity, early payoff, or upon an Event of Default (as applicable).

2.      **Additional Advance.** Borrower and Guarantor acknowledge and agree that Lender has advanced the Advanced Amount as of the Agreement Date. Provided Borrower and Guarantor are in compliance with the terms of this First Amendment and the Forbearance Agreement, Lender shall advance the remaining funds yet to be advanced under the Loan in the amount of $1,400,000.00 (the "**<u>Additional Advance</u>**") in accordance with the terms of this Agreement and the Forbearance Agreement.

3.      **Funding of Additional Advance.** Subject to the satisfaction of the terms and conditions in this First Amendment and Forbearance Agreement, the Additional Advance shall be placed into the "**<u>Payment Reserve</u>**" to be used and disbursed in accordance with Section 5 of the Forbearance Agreement. Except as provided for herein, the Additional Advance shall be governed by the terms of the Note, the Forbearance Agreement, and the other Loan Documents.

4.      **Mortgage.** The Additional Advance and the Additional Loan Amount are secured by, among other things, the Mortgage, as may be amended.

5. **Conditions Precedent.** This First Amendment shall not be effective until satisfaction of the following conditions:

5.1. Borrower and Guarantor shall have provided documents authorizing the execution of this First Amendment, First Amendment to Mortgage, reaffirmation of each Payment and Performance Guaranty, and any other loan documents required by Lender in its sole discretion;

5.2. Each Borrower or Guarantor that is not a natural Person shall have provided proof that such Borrower or Guarantor is validly formed and in good standing in the state of its formation. Borrower shall have provided proof that any entity Guarantors are validly formed an in good standing in the state in which such entities are formed;

5.3. Each Guarantor, individually, shall have executed a reaffirmation of Guarantor's Payment and Performance Guaranty guarantying repayment of the amount due hereunder and other obligations of Borrower;

5.4. Borrower and Guarantor shall have executed the Forbearance Agreement and shall be in compliance with the terms of the same;

5.5. Borrower and Guarantor shall have executed this First Amendment and delivered the original to Lender;

5.6. Borrower shall have executed the First Amendment to Mortgage in form and substance acceptable to Lender in Lender's sole discretion;

5.7. The title company shall be irrevocably committed to issue and shall upon the Agreement Date issue, such title insurance and endorsements as Lender may require;

5.8. Borrower shall have provided such other documents and items as Lender may require in connection with the modification of the existing loan; and

5.9. Borrower shall have paid all attorneys' fees and any other out-of-pocket costs incurred by Lender in connection with this First Amendment.

6. **Release.**

6.1. For purposes of this Section (the "**Release**"), the following terms shall have the following definitions:

6.1.1. "**Related Parties**" shall mean, with respect to any released party, such party's parents, subsidiaries, affiliates, successors, assigns, predecessors in interest, officers, directors, employees, Lenders, representatives, attorneys, financial advisors, accountants and shareholders, if any.

6.1.2. "**Claims**" shall mean any and all claims, losses, debts, liabilities, demands, obligations, promises, acts, omissions, agreements, costs, expenses, damages, injuries, suits, actions, causes of action, including without limitation, any and all rights of setoff, recoupment or counterclaim of any kind or nature whatsoever, in law or in equity, known or unknown, suspected or unsuspected, contingent or fixed that arise prior to the Agreement Date or relate to the period prior to the Agreement Date.

6.2. Excluding only the continuing obligations of Lender under the express terms of the Loan Documents and this First Amendment after the date hereof, each of Borrower and Guarantor hereby releases, acquits and forever discharges Lender, and each of Lender's Related Parties of and from any and all Claims arising

out of, related or in any way connected with the Loan Documents, this First Amendment or the transactions contemplated by any thereof, including, without limitation, any action or failure to act, prior to the execution of this First Amendment, in response to or otherwise in connection with the events or circumstances arising under or otherwise related to the Loan Documents or any Defaults occurring under the Loan Documents (collectively, the "**Released Claims**").

6.3.       As further consideration for the Release provided in <u>Section 6.2</u> above, each of Borrower and Guarantor, for itself, and its respective successors and assigns, hereby agrees, represents, and warrants that the matters released herein are not limited to matters that are known or disclosed, and Borrower and Guarantor each hereby waives any and all rights and benefits that it now has, or in the future may have.  In this connection, each of Borrower and Guarantor hereby agrees, represents, and warrants that it realizes and acknowledges that factual matters now unknown to it may have given or may hereafter give rise to Claims, and each of Borrower and Guarantor further agrees, represents, and warrants that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, each of Borrower and Guarantor nevertheless hereby intends to release, discharge, and acquit the respective Released Parties from any such Claims that are in any way related to the Loan or the distribution of the Loan proceeds.

6.4.       Notwithstanding such provisions, the Release given under <u>Section 6.2</u> shall constitute a full release in accordance with its terms.  Borrower and Guarantor knowingly and voluntarily waive the provisions of any statute, law, or rule governing such a release or notice thereof. In connection with such waiver and relinquishment Borrower and Guarantor hereby acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true with respect to the matters released herein.

6.5.       Each of Borrower and Guarantor irrevocably covenants and agrees forever to refrain from initiating, filing, instituting, maintaining, or proceeding upon, or encouraging, advising or voluntarily assisting any other person or entity to initiate, institute, maintain or proceed upon any Released Claims of any nature. Each of Borrower and Guarantor represents and warrants that it is the owner of and has not assigned, sold, transferred, or otherwise disposed of any of the Released Claims. Each of Borrower and Guarantor hereby agrees, represents, and warrants that it has the authority and capacity to execute this Release.

6.6.       It is understood and agreed that the acceptance of delivery of this Release by the Released Parties shall not be deemed or construed as an admission of liability by any Released Parties, and each such party hereby expressly denies liability of any nature whatsoever arising from or related to the subject of the within Release.

6.7.       Each of Borrower and Guarantor hereby agrees, represents, and warrants that it has had the advice of counsel of its own choosing in negotiations for and the preparation of this Release, that it has read this Release or has had the same read to it by their counsel, and that it is fully aware of its content and legal effect. This Release may be pleaded as full and complete defense to or be used as the basis for an injunction against any action, suit or other proceeding that be instituted, prosecuted, or attempted in breach of this Release.   Each of Borrower and Guarantor expressly agrees that the customary rules of contract interpretation to the effect that ambiguities are to be construed or resolved against the drafting party shall not be employed in the interpretation or construction of this Release.

7.       **Representations and Warranties.** Borrower hereby represents and warrants that:

7.1.       Except as disclosed in the Forbearance Agreement, there is no default by Lender under the Loan Documents and no event which with the passage of time or the giving of notice would constitute a default.

7.2.       There has been no change in any organizational document of Borrower and the items

provided to Lender in connection with the initial funding of the Loan remain true, accurate and complete in all respects.

7.3.    Borrower has received no notice of non-compliance with any applicable laws with respect to the Property or the operations conducted on the Property.

7.4.    Borrower restates and affirms all the representations and warranties contained in the Note.

7.5.    The proceeds are being used for business purposes.

7.6.    Borrower has had no dealings with any broker or agent in connection with this First Amendment.

8.    **Lender's Advisor Affiliate**. The term "**Lender's Advisor Affiliate**" means the Affiliate of Lender acting as Lender's investment advisor, performing functions which include, but are not limited to, originating and/or servicing the Loan.

9.    **Loan Administration and Affiliates**. Borrower acknowledges and agrees that Lender shall be responsible for the administration of the Loan and shall have the power to enforce any and all remedies under the Note and/or Loan Documents on behalf of itself and any Affiliates of Lender. Borrower acknowledges and agrees that there may be certain amounts under the Note due to Affiliates of Lender pursuant to certain written agreements between Lender and Affiliates of Lender, including but not limited to all or a portion of the Origination Fee, the Exit Fee, the Extension Fee, default interest, and/or other fees, costs, and sums due under the Note.

10.    **Governing Law**. This First Amendment shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of Illinois (without giving effect to Illinois's principles of conflicts of law).

11.    **Reaffirmation of Note and Loan Documents**. The Note, as amended by this First Amendment, remains in full force and effect in accordance with its terms and binding on Borrower. Borrower acknowledges and reaffirms all the other Loan Documents and that such Loan Documents secure this First Amendment in addition to the Note, all of which continue to be in full force and effect.

12.    **Reaffirmation of Guaranty**. Guarantor hereby consents to this First Amendment and reaffirms the Guaranty, which shall continue to be in full force and effect with respect to the Loan Documents as amended and shall guaranty the total outstanding principal balance and other sums due under the Note including without limitation the Additional Loan Amount and binding on Guarantor.

13.    **Integration**. The Note, as amended by this First Amendment, shall supersede any prior written or oral agreements related to the relationship between Borrower and Lender and together with the Loan Documents shall constitute the sole agreement with respect to the Loan.

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the undersigned have executed this First Amendment to Promissory Note as of the date and year first referenced.

**BORROWER**:

**PLATFORM II LAWNDALE, LLC**,
an Illinois limited liability company

By: _____
    Scott Krone, Manager

**GUARANTORS**:

_____
SCOTT KRONE, an Illinois resident

_____
MARTIN TARADEJNA, an Illinois resident

**CODA DESIGN + BUILD, LLC**,
an Illinois limited liability company

By: _____
    Scott Krone, Manager

**LENDER**:

**GREENLAKE REAL ESTATE FUND LLC**,
a California limited liability company,

By:  GreenLake Investment Management LLC,
     a California limited liability company, Its Manager

By: _____
    Paul Diamond, Authorized Signatory

## REAFFIRMATION OF GUARANTY

THIS REAFFIRMATION OF GUARANTY (this "**Reaffirmation**") is made as of November 30, 2020, by **SCOTT KRONE**, an Illinois resident ("**Guarantor**"), to and for the benefit of **GREENLAKE REAL ESTATE FUND LLC**, a California limited liability company and its successors and assigns ("**Lender**").

## RECITALS

A.      PLATFORM II LAWNDALE LLC, an Illinois limited liability company ("**Borrower**") and Lender entered into that certain Promissory Note Secured by Mortgage dated May 18, 2018 (the "**Note**") whereby Lender agreed to make a secured loan (the "**Loan**") available to Borrower in the maximum amount of $6,250,000.00 ("**Original Loan Amount**"). All initially capitalized terms not defined herein shall have the meaning ascribed to them in the Note.

B.      The Note is secured by an Open-End Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated May 18, 2018 and recorded May 22, 2018 (the "**Mortgage**") encumbering certain real property commonly known as 1750 N. Lawndale Avenue, Chicago, Cook County, Illinois 60647 (Parcel Nos. 13-35-319-002-0000; 13-35-319-015-0000; 13-35-319-039-0000), and more particularly described in the Mortgage (the "**Property**"). Failure to list any collateral herein shall not be deemed to be a waiver of such collateral.

C.      In connection with the Note, Guarantor executed and delivered to Lender that certain Payment and Performance Guaranty dated as of May 18, 2018 (as heretofore amended, restated or otherwise modified from time to time, collectively, the "**Guaranty**").

D.      Borrower has requested that Lender enter into that certain First Amendment to Promissory Note Secured by Mortgage among Borrower, Guarantor, and Lender dated as of even date herewith (the "**First Amendment**"), in order to, among other things, increase the Original Loan Amount to $6,956,000.00, and make certain modifications to the terms of the Note.

E.      Lender is unwilling to execute the First Amendment unless, among other things, Guarantor affirms the Guaranty and the Guaranteed Indebtedness (as defined in the Guaranty), as such Guaranteed Indebtedness may be modified by the terms of the First Amendment, and make the further agreements provided for herein.

F.      Guarantor will derive material financial benefit from the Loan evidenced and secured by the First Amendment and the other Loan Documents and Guarantor desires to affirm the Guaranty in accordance with the terms hereof in order to induce Lender to execute the First Amendment.

**NOW, THEREFORE**, in consideration of the premises set forth above and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby unconditionally agrees with Lender, its successors and/or assigns, as follows:

1.      The Guaranty, as amended hereby, remains in full force and effect, and Guarantor hereby ratifies and affirms all of its obligations under the Guaranty, as set forth in the Guaranty.

2.      Guarantor represents and warrants to Lender that:

(a)      Guarantor has full right, power and authority to enter into, deliver and perform its obligations under this Reaffirmation;

(b)      this Reaffirmation constitutes the legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except that the enforceability of this Reaffirmation

may be limited by bankruptcy, insolvency, fraudulent conveyance, fraudulent transfer, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law), and that the liability of Guarantor hereunder and under the Guaranty shall continue in full force and effect until the Guaranteed Indebtedness and all other amounts and obligations secured pursuant to the Note and First Amendment are paid to Lender in full; and

    (c)  as of the date hereof, to Guarantor's knowledge, there are no defenses, setoffs, claims or counterclaims that could be asserted against Lender arising from or in connection with the Guaranty.

   3.  This Reaffirmation shall be deemed to be made a part of the Guaranty. This Reaffirmation may be executed in counterparts and said counterparts when taken together shall constitute one and the same instrument.

   4.  All capitalized terms that are not defined herein shall have the same meanings as set forth in the Guaranty, or Note, as applicable.

   5.  This Agreement shall be construed, interpreted and enforced according to the internal laws of the State of Illinois.

**[SIGNATURE PAGE TO FOLLOW]**

**IN WITNESS WHEREOF**, this Reaffirmation has been duly executed by Guarantor as of the date first written above.

**GUARANTOR:**

_____

SCOTT KRONE, an Illinois resident

THIS DOCUMENT MUST BE NOTARIZED

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___I L___     )
                                        ) §
COUNTY OF ___Cook___   )

**BE IT REMEMBERED,** on ___December___  1__, 2020, before me ___James Lehmann___, a Notary Public, personally appeared **SCOTT KRONE**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he voluntarily executed the instrument in his authorized capacity for its stated purpose.

I certify under PENALTY OF PERJURY under the laws of the State of ___IL___ that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

_____
Notary Public

My Commission Expires: ___11/16/22___

> OFFICIAL SEAL
> JAMES LEHMANN
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:11/16/22

## REAFFIRMATION OF GUARANTY

THIS REAFFIRMATION OF GUARANTY (this "**Reaffirmation**") is made as of November 30, 2020, by **MARTIN TARADEJNA**, an Illinois resident ("**Guarantor**"), to and for the benefit of **GREENLAKE REAL ESTATE FUND LLC**, a California limited liability company and its successors and assigns ("**Lender**").

### RECITALS

A.    PLATFORM II LAWNDALE LLC, an Illinois limited liability company ("**Borrower**") and Lender entered into that certain Promissory Note Secured by Mortgage dated May 18, 2018 (the "**Note**") whereby Lender agreed to make a secured loan (the "**Loan**") available to Borrower in the maximum amount of $6,250,000.00 ("**Original Loan Amount**"). All initially capitalized terms not defined herein shall have the meaning ascribed to them in the Note.

B.    The Note is secured by an Open-End Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated May 18, 2018 and recorded May 22, 2018 (the "**Mortgage**") encumbering certain real property commonly known as 1750 N. Lawndale Avenue, Chicago, Cook County, Illinois 60647 (Parcel Nos. 13-35-319-002-0000; 13-35-319-015-0000; 13-35-319-039-0000), and more particularly described in the Mortgage (the "**Property**"). Failure to list any collateral herein shall not be deemed to be a waiver of such collateral.

C.    In connection with the Note, Guarantor executed and delivered to Lender that certain Payment and Performance Guaranty dated as of May 18, 2018 (as heretofore amended, restated or otherwise modified from time to time, collectively, the "**Guaranty**").

D.    Borrower has requested that Lender enter into that certain First Amendment to Promissory Note Secured by Mortgage among Borrower, Guarantor, and Lender dated as of even date herewith (the "**First Amendment**"), in order to, among other things, increase the Original Loan Amount to $6,956,000.00, and make certain modifications to the terms of the Note.

E.    Lender is unwilling to execute the First Amendment unless, among other things, Guarantor affirms the Guaranty and the Guaranteed Indebtedness (as defined in the Guaranty), as such Guaranteed Indebtedness may be modified by the terms of the First Amendment, and make the further agreements provided for herein.

F.    Guarantor will derive material financial benefit from the Loan evidenced and secured by the First Amendment and the other Loan Documents and Guarantor desires to affirm the Guaranty in accordance with the terms hereof in order to induce Lender to execute the First Amendment.

**NOW, THEREFORE**, in consideration of the premises set forth above and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby unconditionally agrees with Lender, its successors and/or assigns, as follows:

1.    The Guaranty, as amended hereby, remains in full force and effect, and Guarantor hereby ratifies and affirms all of its obligations under the Guaranty, as set forth in the Guaranty.

2.    Guarantor represents and warrants to Lender that:

(a)    Guarantor has full right, power and authority to enter into, deliver and perform its obligations under this Reaffirmation;

(b)    this Reaffirmation constitutes the legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except that the enforceability of this Reaffirmation

may be limited by bankruptcy, insolvency, fraudulent conveyance, fraudulent transfer, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law), and that the liability of Guarantor hereunder and under the Guaranty shall continue in full force and effect until the Guaranteed Indebtedness and all other amounts and obligations secured pursuant to the Note and First Amendment are paid to Lender in full; and

        (c)     as of the date hereof, to Guarantor's knowledge, there are no defenses, setoffs, claims or counterclaims that could be asserted against Lender arising from or in connection with the Guaranty.

3.      This Reaffirmation shall be deemed to be made a part of the Guaranty. This Reaffirmation may be executed in counterparts and said counterparts when taken together shall constitute one and the same instrument.

4.      All capitalized terms that are not defined herein shall have the same meanings as set forth in the Guaranty, or Note, as applicable.

5.      This Agreement shall be construed, interpreted and enforced according to the internal laws of the State of Illinois.

**[SIGNATURE PAGE TO FOLLOW]**

**IN WITNESS WHEREOF**, this Reaffirmation has been duly executed by Guarantor as of the date first written above.

**GUARANTOR:**

_Mr.A.Z_ (signature)

MARTIN TARADEJNA, an Illinois resident

THIS DOCUMENT MUST BE NOTARIZED

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___I L___ )
                     ) §
COUNTY OF ___Cook___ )

**BE IT REMEMBERED**, on _December_ _1_, 2020, before me _James Lehmann_, a Notary Public, personally appeared **MARTIN TARADEJNA**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he voluntarily executed the instrument in his authorized capacity for its stated purpose.

I certify under PENALTY OF PERJURY under the laws of the State of ___I L___ that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

_____
Notary Public

My Commission Expires: _11/16/22_

> OFFICIAL SEAL
> JAMES LEHMANN
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:11/16/22

Loan No. 1744LawndaleIL (First Amendment)
GreenLake/Platform II Lawndale
Reaffirmation of Guaranty (Taradejna)
13695097.v1

Page 3 of 3

## REAFFIRMATION OF GUARANTY

THIS REAFFIRMATION OF GUARANTY (this "**Reaffirmation**") is made as of November 30, 2020, by **CODA DESIGN + BUILD, LLC**, an Illinois limited liability company ("**Guarantor**"), to and for the benefit of **GREENLAKE REAL ESTATE FUND LLC**, a California limited liability company and its successors and assigns ("**Lender**").

### RECITALS

A.      PLATFORM II LAWNDALE LLC, an Illinois limited liability company ("**Borrower**") and Lender entered into that certain Promissory Note Secured by Mortgage dated May 18, 2018 (the "**Note**") whereby Lender agreed to make a secured loan (the "**Loan**") available to Borrower in the maximum amount of $6,250,000.00 ("**Original Loan Amount**").  All initially capitalized terms not defined herein shall have the meaning ascribed to them in the Note.

B.      The Note is secured by an Open-End Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated May 18, 2018 and recorded May 22, 2018 (the "**Mortgage**") encumbering certain real property commonly known as 1750 N. Lawndale Avenue, Chicago, Cook County, Illinois 60647 (Parcel Nos. 13-35-319-002-0000; 13-35-319-015-0000; 13-35-319-039-0000), and more particularly described in the Mortgage (the "**Property**"). Failure to list any collateral herein shall not be deemed to be a waiver of such collateral.

C.      In connection with the Note, Guarantor executed and delivered to Lender that certain Payment and Performance Guaranty dated as of May 18, 2018 (as heretofore amended, restated or otherwise modified from time to time, collectively, the "**Guaranty**").

D.      Borrower has requested that Lender enter into that certain First Amendment to Promissory Note Secured by Mortgage among Borrower, Guarantor, and Lender dated as of even date herewith (the "**First Amendment**"), in order to, among other things, increase the Original Loan Amount to $6,956,000.00, and make certain modifications to the terms of the Note.

E.      Lender is unwilling to execute the First Amendment unless, among other things, Guarantor affirms the Guaranty and the Guaranteed Indebtedness (as defined in the Guaranty), as such Guaranteed Indebtedness may be modified by the terms of the First Amendment, and make the further agreements provided for herein.

F.      Guarantor will derive material financial benefit from the Loan evidenced and secured by the First Amendment and the other Loan Documents and Guarantor desires to affirm the Guaranty in accordance with the terms hereof in order to induce Lender to execute the First Amendment.

**NOW, THEREFORE**, in consideration of the premises set forth above and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby unconditionally agrees with Lender, its successors and/or assigns, as follows:

1.      The Guaranty, as amended hereby, remains in full force and effect, and Guarantor hereby ratifies and affirms all of its obligations under the Guaranty, as set forth in the Guaranty.

2.      Guarantor represents and warrants to Lender that:

(a)      Guarantor has full right, power and authority to enter into, deliver and perform its obligations under this Reaffirmation;

(b)      this Reaffirmation constitutes the legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except that the enforceability of this Reaffirmation

may be limited by bankruptcy, insolvency, fraudulent conveyance, fraudulent transfer, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law), and that the liability of Guarantor hereunder and under the Guaranty shall continue in full force and effect until the Guaranteed Indebtedness and all other amounts and obligations secured pursuant to the Note and First Amendment are paid to Lender in full; and

(c)     as of the date hereof, to Guarantor's knowledge, there are no defenses, setoffs, claims or counterclaims that could be asserted against Lender arising from or in connection with the Guaranty.

3.      This Reaffirmation shall be deemed to be made a part of the Guaranty.  This Reaffirmation may be executed in counterparts and said counterparts when taken together shall constitute one and the same instrument.

4.      All capitalized terms that are not defined herein shall have the same meanings as set forth in the Guaranty, or Note, as applicable.

5.      This Agreement shall be construed, interpreted and enforced according to the internal laws of the State of Illinois.

**[SIGNATURE PAGE TO FOLLOW]**

**IN WITNESS WHEREOF**, this Reaffirmation has been duly executed by Guarantor as of the date first written above.

**GUARANTOR:**

**CODA DESIGN + BUILD, LLC,**
an Illinois limited liability company

By: _____
        Scott Krone, Manager


THIS DOCUMENT MUST BE NOTARIZED

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |


STATE OF _I L_____ )
                                           ) §
COUNTY OF _Cook_____ )

**BE IT REMEMBERED,** on _December 1_, 2020, before me _James Lehmann_____,
a Notary Public, personally appeared Scott Krone, as Manager of **CODA DESIGN + BUILD, LLC,** an Illinois limited liability company, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he voluntarily executed the instrument in his authorized capacity for its stated purpose.

I certify under PENALTY OF PERJURY under the laws of the State of _I L_____ that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

_____
Notary Public


My Commission Expires: 11/16/22

| |
|---|
| OFFICIAL SEAL<br>JAMES LEHMANN<br>NOTARY PUBLIC - STATE OF ILLINOIS<br>MY COMMISSION EXPIRES:11/16/22 |