**Exhibit C**

**Engagement Letter**

**NEAL GERBER EISENBERG**

September 3, 2021

David S. Martin
Attorney at Law

Tel 312.269.8011
Fax 312.578.1544
dmartin@nge.com

*Via Email*

Mr. Scott Krone
Coda Management Group
600 Waukegan Road
Suite 129
Northbrook, IL 60062

    Re:    Platform II Lawndale LLC Engagement Letter
             Property Tax Services, 1750 Lawndale Avenue, Chicago, IL

Dear Mr. Krone:

    Thank you for selecting Neal, Gerber & Eisenberg LLP (the "Firm" or "us/we/our") as legal counsel and Graft & Jordan as co-counsel. It is our policy to confirm in writing the terms of our engagement, including the scope of our representation and how we charge for legal services. Those terms are set forth below and in the attached "General Provisions of Engagement" ("General Provisions").

    1.    <u>Client</u>. Our client in this engagement is Platform II Lawndale LLC (the "Company"). We will not be representing any of your affiliates, owners, members, directors, officers or employees unless we are specifically engaged to do so. Accordingly, absent a specific, separate engagement to represent such other persons or entities, you agree that our representation of the Company does not create an attorney-client relationship between the Firm and any of such other persons or entities. We expect that our principal contact with the Company for purposes of this engagement will be you.

    2.    <u>Scope of Engagement</u>. We have been engaged to represent the Company in connection with property tax matters relating to the self-storage facility located at 1750 N. Lawndale Avenue, Chicago, IL. Any material change in the nature or scope of the engagement requires the Firm's and your mutual agreement. If the nature or scope of our engagement changes, the terms set out in this letter will apply to the new or expanded engagement unless we enter into a further agreement with respect thereto.

    3.    <u>Staffing</u>. I will have primary responsibility for this engagement. I may request other Firm lawyers or legal assistants to work on your matter(s) in order to provide services to you in a timely and efficient manner or in circumstances where they bring special expertise or experience to bear on your work.

<u>Fees and Expenses</u>. Our fees will be contingent and equal to:

    12.5% of the annual triennial tax savings resulting from any assessment reduction granted by the Cook County Assessor or Board of Review;

 **NEAL GERBER EISENBERG**

Scott Krone
September 3, 2021
Page 2

30% of any tax refund ordered by the Illinois courts, the Property Tax Appeal Board or pursuant to a Certificate of Error proceeding; and

30% of any tax refund ordered by the Illinois courts in connection with a tax rate objection.

The tax savings is calculated with reference to the difference between the assessment as proposed by the Assessor and the assessment as finally reduced by the Assessor or the Board of Review. The difference in assessment is multiplied by the most recently ascertainable equalization factor and tax rate to indicate an annual savings. The annual savings is multiplied by the number of years remaining in the triennial sequence.

In addition to fees, the Firm is entitled to payment or reimbursement of costs and expenses incurred on your behalf. No significant expense will be incurred without your prior approval.

4. <u>Prospective Conflicts of Interest</u>. The Firm represents a large number of clients in a variety of practice areas. Our clients may include your competitors (including those engaged in competing technologies), customers, suppliers or others with whom you have business dealings. It is possible that in the future some of our present or future clients may have matters that are potentially or actually adverse to you that are unrelated to the work we are performing for you. Similarly, there may be matters that you ask us to undertake in the future which present a potential or actual conflict with another client of the Firm. Our ability to undertake such representation on behalf of you or another client will be governed by applicable rules of professional conduct and in many circumstances depends on obtaining the consent of each affected client. To allow the Firm to represent both you and other current and future clients in pending and future matters to the fullest extent consistent with applicable ethical restrictions, the Firm requests that our clients agree to a limited waiver of certain prospective conflicts of interest. To enable you to decide whether to be represented by us, we will explain how we propose to resolve future conflicts and what your consent to this prospective waiver will mean to you and to us.

The Firm seeks your waiver only for work on behalf of other clients that is not substantially related, factually and legally, to our work for you. We do *not* seek a waiver that would allow us: to attack the work that we perform for you; to disclose or use adversely to you your confidential or proprietary information (or place the Firm in a position to do so); to permit Firm lawyers working on your matters to work adversely to you on another client's matter; or, so long as we continue to represent you, to assert against you any allegations of criminal, fraudulent or tortious conduct. By signing this letter, you agree that, outside of these limitations, the Firm may represent other clients whose interests are adverse to yours in any matter, including any negotiations, business transactions, bankruptcy or litigation matters (including discovery matters), and intellectual property and patent matters.

You may revoke this prospective waiver at any time; however, such revocation shall not affect any matters we have undertaken prior to our receipt of the revocation, and, you agree that you will not seek to disqualify the Firm from representing the other clients with respect to such

 **NEAL GERBER EISENBERG**

Scott Krone
September 3, 2021
Page 3

matters. You also agree that, to the extent permitted by the Rules of Professional Conduct, you will consent to our withdrawal from your matters if withdrawal is necessary for us to continue representing other clients; in the event of such withdrawal, we will of course assist you in facilitating the transfer of your matters to other counsel.

We urge you to consult independent counsel before consenting to this prospective waiver, and you should withhold your consent if you have unanswered or unaddressed concerns. Although the Firm has concluded, after careful consideration, that this waiver and our possible undertaking of adverse representations pose neither any material risk of adverse disclosure of your confidential or proprietary information nor any material limitation on our zealous representation of you, you should consider and decide these questions yourself. You should also decide whether you are ready, willing and able to abide by the commitments in this waiver, both now and in the future. We are pleased to discuss any reservations you may have, but you should know that, in the absence of a mutually acceptable prospective waiver, the Firm will be unable to represent you in your current matters or any future matter.

5. <u>Consent to Use of Information</u>. In connection with the Firm's marketing materials and/or descriptions of its legal practice on its website and in social media, you consent to being identified as a client of the Firm as well as to the disclosure of publicly-available information regarding the Firm's representation of the client.

6. <u>Your Cooperation</u>. To enable us to represent the Company effectively, you agree to cooperate fully with us and to accurately and completely disclose to us all facts and documents that may be relevant to the matter we are undertaking. Also, because it is important that we be able to contact you in order to consult with you regarding the representation, you will inform us, in writing, of any changes in name, address, telephone number, contact person, e-mail address, or other similar information regarding the Company. Whenever we need your instructions or authorization in order to proceed with legal work on your behalf, we will contact you at the latest address the Company has provided to us. If the Company affiliates with, acquires, is acquired by or merges with another company, you will provide us with sufficient notice to permit us to withdraw as your attorneys if we determine that such affiliation, acquisition or merger creates a conflict of interest between any of our clients and the other party to such affiliation, acquisition or merger, or if we determine that it is not in the best interests of the Firm to continue the representation following such change.

Please carefully review this letter and the attached General Provisions. If the terms contained herein and in the General Provisions are not consistent with your understanding of our engagement in any respect or if you have any questions concerning the same, please contact me promptly. Absent timely advice from you to the contrary, we will act in reliance upon the understanding that this letter, together with the General Provisions, reflects your and our mutual understanding regarding the terms of our engagement. For avoidance of doubt, however, Firm policy requires that we receive confirmation of your acceptance of these terms in the form of your

 **NEAL GERBER EISENBERG**

Scott Krone
September 3, 2021
Page 4

signature on the enclosed copy of this letter. Please return the signed copy to me as soon as possible.

You should not hesitate to contact me at any time with any comments or questions concerning our services. We appreciate the opportunity to serve as your counsel and look forward to working with you.

Very truly yours,

David S. Martin

DSM:kb
Enclosure

**CONFIRMED:**

Platform II Lawndale LLC

By: _____
Scott Krone

Title: _____Mgr._____

Date: _____9.3.21_____

095000.0810:32694866.1

**NEAL, GERBER & EISENBERG LLP**
**GENERAL PROVISIONS OF ENGAGEMENT**

1. <u>The Engagement Letter and the General Provisions</u>. The following General Provisions apply to the relationship between Neal, Gerber & Eisenberg LLP (the "Firm" or "us/we/our") and each of the Firm's clients, except as modified by the engagement letter or other written agreement between a particular client and the Firm. The General Provisions and the particular engagement letter together constitute the terms pursuant to which the Firm is engaged to serve the client as legal counsel. In the event of any conflict or inconsistency between the engagement letter and the following General Provisions, the terms of the engagement letter shall control.

2. <u>Fees</u>. Our fees for services are based on hourly billing rates in effect from time to time. Rates for attorneys and other professionals are based upon their experience and specialized knowledge. The rates are reviewed annually and may be adjusted without prior notice. In preparing our statements for professional services, we will use the hourly rates in effect at the time the services were rendered. The time for which a client will be charged will include, but will not be limited to, telephone and office conferences with the client or its personnel, other counsel or advisors, witnesses, consultants, court personnel, opposing counsel and parties, and others; conferences among our legal and support staff personnel; review of files and other factual investigation, including discovery in litigation; legal research; responding to clients' requests for us to provide information to their auditors; drafting and review of letters, pleadings, briefs, memoranda, contracts, official filings, and other documents; travel time; time in court and other hearings and proceedings; and time spent in negotiations.

3. <u>Disbursements</u>. We do not charge for ordinary expenses attendant to our services (copying, computerized research, conference calls, etc.) However, clients are responsible for certain cash disbursements and other charges related to our professional services. These include expenses for travel, filing fees, title charges, and fees of expert witnesses, court reporters, special or co-counsel or other professionals or service providers who we engage on the client's behalf and with the client's approval, and other extraordinary costs. The Firm may, in its discretion, advance nominal fees and expenses, but invoices for significant third party charges will be sent directly to the client for payment.

4. <u>Billing and Payment</u>. It is our normal practice to render statements on a monthly basis. Payment is due within 30 days after the statement date. At our option, a late payment fee at the rate of one percent (1%) per month may be charged on statements not paid when due. If our statements are not paid in a timely fashion, we reserve the right to suspend further work on the client's account and, if the arrearage is not resolved after notice to the client of the delinquency, terminate our representation.

5. <u>Estimates of Fees and Expenses</u>. Although from time to time, at a client's request, we may furnish estimates of fees and expenses that we expect will be incurred, these estimates are subject to unforeseen circumstances and are by their nature inexact. As a result, the actual fees and expenses most likely will be more or less than our estimate. No fee estimate shall be deemed or construed to establish a fixed, maximum or minimum fee, and the Firm will not otherwise be bound by any estimates, unless otherwise expressly provided by written agreement with a particular client.

6. <u>Outcome and Contingency</u>.  We cannot guarantee the outcome of any given matter or predict with certainty the consequences of any given action or inaction.  Opinions expressed by us concerning any such outcome or consequences are necessarily limited to the facts known to us at the time such opinions are expressed.  Unless otherwise specifically provided in the engagement letter, payment for our services is not contingent upon the outcome of any matter.

7. <u>Insurance Coverage</u>.  If a client has or may have insurance coverage for a matter in which our assistance has been requested, the client is responsible for timely notifying the insurer.  The Firm will assist in this regard upon request, but we do not undertake any responsibility to advise the client as to the existence, applicability or availability of insurance coverage unless we have been provided copies of the relevant policies of insurance and expressly requested to advise the client with respect to same.

8. <u>Renewals</u>.  The Firm does not undertake to maintain the effectiveness of any patents, trademarks, UCC financing statements, judgments, liens or other filings unless specifically agreed in writing, and then only during the duration of our representation of the client.

9. <u>Termination of Representation</u>.

(a) A client has the right to terminate our representation at any time for any reason by written notice to us.  Upon written notice to a client, we have the right to terminate our representation of the client for any reason if such termination would not have a material adverse effect on the client's interests or if, among other things, the client fails to honor the terms of our engagement, including the obligation to make timely payments, or if any facts or circumstances would, in our view, render our continuing representation unlawful, unethical or ineffective. Absent express notice of termination, our representation of a client will terminate (i) upon completion of our work on the particular matter or matters for which we have been engaged, or (ii) after a period of six consecutive months in which no work has been performed by our attorneys on the client's behalf if no further work is then mutually contemplated.

(b) If a client or we terminate our representation for any reason, the client shall take all steps necessary to free us of any obligation to perform further services for the client, including the execution of any documents necessary to substitute counsel and to consent to our withdrawal as counsel in any proceeding.

(c) The termination of our attorney-client relationship will not affect a client's responsibility for any fees or other charges incurred through the date of termination.

(d) Upon termination of our active involvement in a particular matter, we will have no duty to inform a client of new developments or changes in law which may be relevant to such matter.  Further, unless the client and the Firm agree in writing to the contrary, we will have no obligation to monitor renewal or notice dates or similar deadlines which may arise with respect to such matter.  If the matter involves obtaining a judgment and such judgment is obtained, we will only be responsible for those post-judgment services (such as recording abstracts, filing judgment liens, and calendaring renewal of judgments) as are expressly agreed to by the Firm and for which the client will be obligated to pay.

(e) Upon termination of the attorney-client relationship between the Firm and a client, all of the Firm's duties to such client, excluding those duties owed to former clients generally under applicable rules of professional conduct, shall terminate. In the event our attorney-client relationship with a client terminates and the client subsequently requests, and the Firm agrees to provide, further representation, the revival of the attorney-client relationship will be subject to these General Provisions as amended as of the time of such revival and as modified by any prior or contemporaneous written agreement between the client and the Firm.

10. Document Retention.

(a) Upon the conclusion of our representation of a client on a particular matter, original hard copy documents and client property related to the matter, such as executed agreements, releases, deeds, title documents, insurance documents, stock certificates, wills, trusts, powers of attorney and other dispositive estate planning documents, will be delivered to the client unless we agree to retain the same on the client's behalf. The client may request delivery of any or all "Client Files" at any time, and is encouraged to do so at the conclusion of the matter. "Client Files" shall include, in addition to the documents and property referenced in the first sentence of this paragraph, correspondence between the Firm and the client or third parties, pleadings, motions, briefs, discovery, legal research and memoranda, transcripts, affidavits, expert reports, legal instruments, corporate records, documents filed with governmental agencies, and other documents received from the client or third parties in connection with the representation or prepared for the client's use or on its behalf during the representation. Client Files do not include attorney work product or other internal work product or Firm documentation, including Firm invoices, billing and timekeeping records; internal memoranda, e-mails and other communications between or among Firm attorneys and/or other Firm personnel; attorneys' notes; conflicts searches and other client intake-related documents; client relationship documentation; administrative records and other documents intended for internal use; and documents that we are prohibited, by court order or agreement with a third party, from providing to the client. For purposes of this paragraph (a), a particular matter is presumed to be concluded when no substantive time or disbursements have been recorded for the matter for a period of 18 consecutive months, unless we and the client foresee the need for additional work on the matter within a reasonable time thereafter.

(b) Upon termination of our representation of a client as provided in Section 9, we will deliver any or all Client Files to the client at the client's request.

(c) In the absence of a timely request, as provided in the preceding paragraphs (a) and (b), the Firm shall be authorized to destroy the Client Files in accordance with our retention policy for Client Files then in effect, without further notice. Current retention schedules are available to the client upon request.

(d) The Firm retains the right to make copies of any file, at our expense, for our own information and retention purposes. The Firm retains the right, after termination of the attorney-client relationship and subject to applicable law, to retain a Client Files, including original documents and other materials, pending payment of any amount owed by the client to the Firm.

11. Confidentiality and Electronic Communications. We owe a duty of confidentiality to all of our clients. By accepting the terms of engagement set forth in the

engagement letter and the General Provisions, each client acknowledges that we will not be required to disclose to any client, or to use on such client's behalf, any information in our possession with respect to which we owe a duty of confidentiality to another current or former client. In addition, unless a client specifically advises us to use some other form of communication, we intend to use state of the art communications methods in the normal course (which may include wired or wireless e-mail, cellular telephones, voice-over Internet and electronic data/document web sites) to communicate with and send or make available documents to clients and others. Absent special arrangements or circumstances, we do not employ encryption technologies in our electronic communications. Although there is some security risk with the current technology, we believe the benefits from using this technology outweigh the risk of accidental disclosure. Acceptance of the terms of engagement by a client signifies consent to our use of these communication methods.

12. <u>Consent to Firm's Consultation with Counsel</u>. From time to time the Firm may consult regarding its representation of a client with the Firm's General Counsel or outside counsel retained by the Firm. To the extent that, on such occasions, the Firm is addressing its own rights or responsibilities with respect to the client, such consultations might be deemed to create a conflict of interest between the Firm and its client. It is a condition of the Firm's agreement to represent the client that, in such circumstances, (a) the client consents to such consultation and waives any conflict of interest that may result from it, and (b) the client acknowledges that any and all such communications shall be protected from disclosure to the client by the Firm's own attorney-client privilege.

13. <u>Disputes and Arbitration</u>. The Firm will investigate any concerns about our work that a client has brought to our attention and will do what we reasonably can to resolve the matter. Absent resolution by discussions between the Firm and the client, any dispute, claim or controversy between a client and the Firm or any individual attorney at the Firm, including any and all disputes in contract or tort, claims for breach of duty or professional negligence or controversies otherwise arising out of our relationship with the client, shall be determined exclusively by binding arbitration in Chicago, Illinois, before a single arbitrator. The arbitrator's exclusive jurisdiction shall include all questions regarding the arbitrability of the dispute and the enforceability of the parties' agreement to arbitrate. The arbitration shall be administered by JAMS in accordance with its Streamlined Arbitration Rules then in effect, and judgment on any award may be entered in and enforced by any court of competent jurisdiction. The arbitration shall be confidential and the parties shall maintain its confidentiality, except as may be necessary in connection with a court proceeding to compel arbitration or to enforce or challenge an award, or unless otherwise required by law. The agreement to arbitrate shall survive the termination of our representation of the client.

14. <u>Governing Law</u>. The General Provisions and the particular engagement letter agreement between a client and the Firm shall be construed in accordance with the internal laws of the State of Illinois.