**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re PLATFORM II LAWNDALE LLC | ) | **Chapter 11 Proceeding** |
| | ) | |
| | ) | **Case No. 22-07668** |
| **Debtor,** | ) | |
| | ) | **Hon. Deborah L. Thorne** |
| | ) | |

**AMENDED PLAN OF REORGANIZATION**

**Proposed by Platform II Lawndale LLC**

**Date**: September 15, 2023

**INTRODUCTION**

Platform II Lawndale LLC, the debtor and debtor in possession in this Chapter 11 case, (the "Debtor") proposes this Plan of Reorganization under § 1121(a) of the Bankruptcy Code (this "Plan").

This Plan is the Debtor's proposal for the Debtor's payment of the Claims of its Creditors as of the Petition Date.

The Debtor by this Plan solicits acceptances from all Creditors whose claims are Impaired. The Debtor believes that acceptance of this Plan would be in the Creditors' best interest. THE DEBTOR URGES ALL CREDITORS TO ACCEPT THIS PLAN.

**I.       DEFINITIONS AND INTERPRETATIONS**

The following terms shall have the meanings set forth in this Article I. Unless otherwise indicated, the singular shall include the plural and capitalized terms shall at all times refer to the terms as defined in this Article I. If the Debtor has not defined a term in this Plan, but that term is used in the Bankruptcy Code, then it shall have the meaning assigned to it in the Bankruptcy Code or in the decisions relating to the Bankruptcy Code.

A.       **Administrative Expense**: shall mean any cost, Claim, or expense of administration entitled to priority in accordance with the provisions of §§ 330, 503(b), and 507(a)(1) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any fees or charges assessed against or due from the Debtor's estate under 28 U.S.C. § 1930, and all fees and expenses of Professional Persons incurred after the Confirmation Date but prior to the Effective Date, and (b) any amounts required to be paid to assume executory contracts or unexpired leases in accordance with Article VIII of this Plan.

B.       **Allowed**:       shall mean, with respect to any Claim, except as otherwise provided:

1.   any Claim for which a proof of claim has been Filed with the Bankruptcy Court on or before the Bar Date:

> (a) as to which no objection has been made to its allowance by the Claims Objection Bar Date,

> (b) or as to which an objection was Filed and the Claim has been allowed by a Final Order;

2.   any Claim that is deemed to be Allowed under:

> (a) any provision of this Plan,

> (b) in any stipulation of the amount and nature of a Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, or

> (c) in any stipulation with the Debtor of the amount and nature of a Claim executed on or after the Confirmation Date; and

3.   any Claim that has been scheduled by the Debtor in its schedules of liabilities as other than disputed, contingent, and unliquidated and as to which the Debtor or other Party in Interest has not Filed an objection by the Claims Objection Bar Date.

Unless otherwise specified by the Plan or by order of the Bankruptcy Court, Allowed Claims shall not include interest for the period from and after the Petition Date, nor shall they include any Claim that may be disallowed under § 502(d) of the Bankruptcy Code.

C.   **Allowed Priority Tax Claim**: shall mean that portion of an Allowed Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

D.   **Allowed Secured Claim**: shall mean a Secured Claim to the extent that, under § 506(a) of the Bankruptcy Code, such Claim is determined by a Final Order or provided in the Plan not to be an unsecured claim and (b) is an Allowed Claim.

E.   **Allowed Unsecured Claim**: shall mean an Unsecured Claim to the extent that it is an Allowed Claim.

F.   **Assets**: shall mean all tangible and intangible assets of every kind and nature of the Debtor and all proceeds thereof (including but not limited to cash proceeds), existing as of the Effective Date.

G.   **Avoidance Action**: shall mean any actual or potential claim or cause of action arising under Chapter 5 of the Bankruptcy Code.

H.   **Ballot**: shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Claims in Classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

I.      **Ballot Date**: shall mean the date set by the Bankruptcy Court as the last date for timely submission of a ballot accepting or rejecting the Plan.

J.      **Bankruptcy Code**: shall mean title 11 of the United States Code, as amended from time to time.

K.      **Bankruptcy Court**: shall mean the United States Bankruptcy Court for the Northern District of Illinois including the Hon. Deborah L. Thorne, the United States Bankruptcy Judge presiding in this case, or such other judge or Court that may have jurisdiction over this case. In the event of the filing an appeal, as used herein, the term shall also mean the United States District Court for the Northern District of Illinois, as the context dictates.

L.      **Bar Date**: shall mean the date set by the Bankruptcy Court as the last date for timely submission of a proof of claim on account of all Claims against the Debtor other than Administrative Claims**.**

M.      **Business Day**: shall mean any day other than a Saturday, Sunday or a legal holiday as defined in the Rules at Rule 9006(a).

N.      **Claim**: shall mean any right to payment from the Debtor that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

O.      **Claims Objection Bar Date**: shall mean the deadline fixed by the Bankruptcy Court for the Debtor or any other entity to File an objection to the allowance of any Claim.

P.      **Class**: shall mean any one of the classes of Claims described in Article II of the Plan.

Q.      **Collateral**: shall mean property in which the Debtor has an interest that secures, in whole or in part, the payment of a Claim.

R.      **Confirmation**: shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

S.      **Confirmation Date**: shall mean the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code; provided, however, that if the Confirmation Order is stayed on motion pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay.

T.      **Confirmation Hearing**: shall mean the hearing to confirm the Plan.

U.      **Confirmation Order**: shall mean the Order of the Bankruptcy Court (or District Court as the case may be) confirming this Plan under § 1129 of the Bankruptcy Code and approving the transactions contemplated in this Plan.

V.     **Contested Claim**: shall mean any Claim against the Debtor (a) subject to a timely objection or request for estimation, or (b) that is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order, or (c) that is not an Allowed Claim.

W.     **Creditor**: shall mean any Person having a Claim against the Debtor, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtors' estates of any kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code.

X.     **CubeSmart Lawsuit**: shall mean an adversary proceeding against CubeSmart Self Storage for breach of contract and fraud.

Y.     **Debtor**: shall mean Platform II Lawndale LLC, the debtor in this case.

Z.     **Disallowed Claims**: shall mean a Claim to the extent that such Claim is disallowed by a Final Order or by written agreement of the holder thereof.

AA.    **Disclosure Statement**: shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court, together with all exhibits and supplements thereto, as amended, supplemented or modified, that is prepared and distributed in accordance with §§ 1125, 1126(b) and/or 1145 of the Bankruptcy Code and/or other applicable law.

BB.    **Disputed**: shall mean, with reference to any Claim against the Debtor, a Claim or any portion thereof, that is not an Allowed Claim including, but not limited to, Claims (1) (a) that the Debtor has not scheduled, or that the Debtor scheduled at zero or as contingent, unliquidated or disputed, (b) that are the subject of a proof of claim that differs in nature, amount or priority from the Debtor's schedules, or (c) as to which an objection has been interposed as of the deadline fixed by the Plan, as may be extended in accordance with the Plan and (2) the allowance or disallowance of which is not yet the subject of a Final Order.

CC.    **District Court**: shall mean the United States District Court for the Northern District of Illinois, Eastern Division including any United States District Judge presiding in this case or such other Court having jurisdiction over this case.

DD.    **§ 1111(b) Election**: shall mean a timely election, under § 1111(b) of the Bankruptcy Code and Rule 3014 of the Rules, by the holder of a Claim secured by Collateral to have its entire Claim treated as a Secured Claim under the Plan notwithstanding § 506(a) of the Bankruptcy Code.

EE.    **Effective Date**: shall mean the first Business Day which is ten (10) days (as calculated in accordance with Bankruptcy Rule 9006(a)) after the Confirmation Date, on which (a) the Confirmation Order is not stayed.

FF.    **Fee Application**: shall mean an application of a Professional Person under §§ 330 or 331 of the Code.

GG.    **File, Filed, or Filing**: shall mean file, filed or filing with the Clerk of the Bankruptcy Court.

HH.    **Final Order**: shall mean an order or judgment of the Bankruptcy Court which (a) has not been reversed, stayed, vacated, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reargue, petition for certiorari or rehearing has been waived in a manner satisfactory to the Debtor, as a result of which such order shall have become final in accordance with applicable law or (b) if an appeal, reargument, certiorari or rehearing has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought or certiorari has been denied and time to take further appeal or to seek certiorari or further re-argument or rehearing has expired.

II.    **Foreclosure Lawsuit:** shall mean the lawsuit GreenLake filed against the Debtor and others in the Chancery Division of the Circuit Court of Cook County, Illinois, as case number 2020 CH 02969.

JJ.    **Fund**: shall mean $8,434,685.88 the total sum of monies to be paid out by the Debtor under the Plan.

KK.    **GreenLake:** shall mean the Debtor's secured Creditor, GreenLake Real Estate Fund LLC, whose loan is secured by a mortgage on the Debtor's storage facility.

LL.    **GreenLake Funding Date:** shall mean the Effective Date or such other date on which GreenLake, Red Oak Capital Holdings, and the Debtor shall agree.

MM.    **Impaired**: shall have the meaning set forth in § 1124 of the Bankruptcy Code.

NN.    **Party in Interest**: shall mean anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.

OO.    **Person**: shall mean a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

PP.    **Petition Date**: shall mean the date on which the petition commencing this case under Chapter 11 was Filed, which was July 11, 2022.

QQ.    **Plan**: shall mean this Plan of Reorganization proposed by the Debtor either in its present form or as it may be amended or modified from time to time.

RR.    **Pre-Confirmation Rights of Action**: shall mean all rights, claims and causes of action, whether equitable or legal, of the estate against the Debtor or third persons (including the right to prosecute or compromise and settle such rights, claims, and causes of action) existing before the Confirmation Date, including, without limitation, any Avoidance Action.

SS.    **Priority Tax Claim**: shall mean that a Claim asserting priority under § 507(a)(8) of the Bankruptcy Code.

TT.   **Professional Fees**: shall mean fees requested or to be requested under §§ 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a professional for services rendered or expenses incurred in this case on or prior to the effective date.

UU.   **Professional Persons**: shall mean all persons retained or to be compensated under §§ 326, 327, 328, 330, 503(b), and 1103 of the Bankruptcy Code.

VV.   **Reorganized Debtor:** shall mean Platform II Lawndale LLC, as constituted after the confirmation of this Plan.

WW.   **Rules**: shall mean the Federal Rules of Bankruptcy Procedure recommended by the Judicial Conference of the United States, as prescribed by the Supreme Court of the United States, effective on the Petition Date in accordance with the provisions of 11 U.S.C. § 2075, as amended from time to time.

XX.   **Secured Claim**: shall mean a Claim of a Creditor, arising on or before the Petition Date that is purportedly secured by a lien on Collateral or subject to set off under § 553 of the Bankruptcy Code, to the extent of the value of such holder's purported interest in the Debtor's interest in the property, or to the extent of the purported amount of the set-off, as applicable, provided, however, that if the Creditor is entitled to make and makes the § 1111(b) Election, the Creditor's Claim shall be a Secured Claim in the full amount of the Creditor's Claim.

YY.   **Subordinated Claim**: shall mean (a) a Claim subordinated for purposes of distribution to any Unsecured Claim in accordance with §§ 510(b) or 510(c) of the Bankruptcy Code, or (b) a Penalty Claim.

ZZ.   **Tax Claim**: shall mean any Claim for taxes against the Debtor, including without limitation any interest and penalties due thereon, entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

AAA.  **Undetermined Claim**: shall mean a Claim that is not an Allowed Claim or a Disallowed Claim and is (a) a Contested Claim, (b) a Claim arising from the rejection of an executory contract or unexpired lease under this Plan, (c) a claim that is unliquidated or contingent, (d) a Claim as to which, on or before the Effective Date, the Debtor has not made a determination whether or not to object or (e) an Administrative Expense.

BBB.  **Unimpaired**:  shall mean any Claim that is not Impaired within the meaning of § 1124 of the Bankruptcy Code

CCC.  **Unsecured Claim**: shall mean a Claim that is not a Secured Claim, a Priority Claim, a Tax Claim, or a Subordinated Claim.

DDD.  **Unsecured Creditor**: shall mean any Creditor that is the holder of an Unsecured Claim.

## II.   CLASSIFICATION OF AMOUNTS OWING, CLAIMS AND INTEREST

A.  All Claims shall be fixed and determined as of the Petition Date.

-6-

B. Classification. The Claims against the Debtor and the Equity Interests in the Debtor shall be classified in this Plan as follows:

1. Administrative Expenses

2. Class 1 – Secured Claim of GreenLake

3. Class 2a – Priority Tax Claims of the Illinois Department of Revenue

4. Class 2b – Priority Tax Claims of the Cook County Treasurer

5. Class 3a – General Unsecured Claims

6. Class 3b – Convenience Class Claims

7. Class 3c – Schindler Elevator Unsecured Claim

8. Class 3d – Coda Design + Build, LLC Claim

9. Equity Interests

C. Resolution of Disputes: Disputes regarding the proper classification of Claims shall be resolved using the procedures established in the Bankruptcy Code, the Rules and other applicable laws. The Bankruptcy Court shall have exclusive jurisdiction over disputes concerning the classification of Claims. Resolution of any such disputes shall not be a condition precedent to Confirmation or Consummation of the Plan

D. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class.

E. Distributions on Disputed Claims: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

## III.   TREATMENT OF UNIMPAIRED AND UNCLASSIFIED CLAIMS

The following Class is unimpaired by the Plan in accordance with § 1124 of the Bankruptcy Code or is not required to be classified in this Plan of Reorganization under the provisions of the Bankruptcy Code.

A. **Administrative Expenses**: These claimants represent Claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash, or as otherwise agreed, through a one-time payment under this Plan beginning on the first day of the first whole month following confirmation of this Plan; provided, however, that an Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor shall be paid by the Debtor under the terms and conditions of any agreements relating

to such obligation, along with accruing real estate taxes. Payment of Professional Fees shall be subject to the provisions of §§ 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. United States Trustee and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due after that. The source of payment for these amounts will be the Debtor's income and proceeds of a post-confirmation loan obtained from Red Oak Capital to fund the Plan. The Debtor expects Administrative Claims will be approximately $363,000.00 as of the Effective Date. The Debtor will also pay the loan fees set forth in Exhibit C to the Disclosure Statement.

## IV.   TREATMENT OF IMPAIRED CLAIMS AND EQUITY INTERESTS

The Claims in the Classes listed below are Impaired by the Plan:

**Class 1 -** GreenLake holds the Class 1 Secured Claim for $8,139,150.00 arising from a loan secured by the Debtor's real estate and personal property. The Class 1 Secured Claim is Impaired. GreenLake's loan matured, and it obtained a judgment against the Debtor. The Reorganized Debtor will pay $7,200,000.00 of the secured portion of GreenLake's Claim on the GreenLake Funding Date and the remainder through the satisfaction of a new $939,150.00 promissory note, attached as Exhibit D, and proceeds that the Debtor might receive from the CubeSmart Lawsuit up to the amount of the Class 1 Secured Claim as described below.

The Debtor will derive the initial $7,200,000 payment to GreenLake through the Red Oak Capital Holdings loan and new equity investments. As a part of the payment to the Class 1 Secured Claim, Red Oak Capital Holdings will receive a first-priority lien on the Debtor's real estate and other assets.

On receipt of the $7,200,000.00 payment, GreenLake will simultaneously release its mortgage lien and all other security interests on the Reorganized Debtor's assets.

Upon receipt of the $7,200,000.00 payment, GreenLake and the Reorganized Debtor will jointly move the Cook County Circuit Court to enter an order, reopening the foreclosure portion of the Foreclosure Lawsuit for the sole purpose of dismissing the foreclosure count of the Complaint with prejudice and for entry of a stipulated order that provides that the remaining claims will be voluntarily dismissed without prejudice and with leave to reinstate.

If GreenLake does not execute a release of mortgage, and of any UCC-3 financing statements after receipt and posting of funds as confirmed in writing by GreenLake, the Debtor shall be empowered to execute such releases as GreenLake's attorney in fact.

On the GreenLake Funding Date, the Reorganized Debtor will execute the promissory note on the Effective Date that shall bear simple interest at seven and one-half percent (7.50%) per annum. Scott Krone, the Reorganized Debtor's manager, and Coda Design + Build LLC will execute guaranties to jointly and severally ensure payment of the promissory note. Scott Krone, Coda Design + Build LLC, and GreenLake have agreed on the terms of the guaranties, which will be executed at or before the closing of the Red Oak Capital Holdings loan.

The promissory note requires the Reorganized Debtor to deliver monthly interest payments. Interest will be allocated and payable in two forms. During the first year, the Reorganized Debtor

must pay thirty-five percent (35%) of the interest accruing each month with sixty-five percent (65%) deferred. During the second year, the Debtor must pay fifty percent (50%) of the interest accruing each month with fifty percent (50%) deferred.

GreenLake will apply all payments from any source first to costs and fees incurred, second to interest that comes due, third to deferred interest, and fourth to reduce the principal balance. The deferred interest will be due on maturity, early payoff, or an event of default or acceleration. GreenLake will provide monthly statements for the promissory note.

The promissory note will have a three (3) year term; however, the Reorganized Debtor will have an extension option for an additional two (2) years provided the Reorganized Debtor pays the deferred interest and there is no event of default under the promissory note.

The promissory note will contain standard financial reporting requirements. The Reorganized Debtor and guarantors will execute new or amended additional loan documents through a separate agreement between GreenLake and those parties.

The promissory note will contain a standard costs and attorneys' fees provision under which GreenLake will be entitled to seek all costs and fees incurred in connection with the promissory note and exercising its remedies thereunder.

Scott Krone and Coda Design + Build LLC will provide a payment direction letter related to any distribution to Scott Krone outside the ordinary course of business, Coda Design + Build, LLC, and the entities in which Scott Krone and/or Coda Design + Build LLC have a direct or indirect interest, including, but not limited to, Platform II - Lawndale, Chicago, Platform II - Wisconsin, Milwaukee, Platform III - Floyd, Louisville, Platform II - Superior, Toledo, Platform III - Third St, Dayton.

Under the terms of the Plan and in addition to payments under the promissory note, GreenLake will receive the net proceeds received from the CubeSmart lawsuit after payment of the Reorganized Debtor's attorney's fees and costs up to $939,150.00 plus accrued and unpaid interest under the promissory note, and the amounts will be applied to the outstanding amounts due under the promissory note in the order identified in the promissory note.

To ensure payment, the Reorganized Debtor will execute, deliver on the GreenLake Funding Date, and irrevocably consent to the entry of the order of judgment in the sum of $1,600,000 less any and all amounts previously paid, in the form attached as Exhibit E (the "Agreed Judgment"); provided however, that GreenLake shall not file or request entry of the Agreed Judgment except as specifically permitted in the Plan. The original signed Agreed Judgment shall be held in trust by GreenLake's counsel, Sandberg Phoenix, who shall be authorized to deliver the Agreed Judgment for entry in the Foreclosure Lawsuit only due to an uncured default by Reorganized Debtor under the promissory note. The promissory note will allow for a sixty (60) day cure period that begins upon notice from GreenLake of an event of default. Notice will be provided by electronic mail pursuant to a notice provision in the parties' loan agreement.

If the Reorganized Debtor pays $139,150.00 to reduce the principal balance owing under the promissory note, the amount of the Agreed Judgment shall be reduced for each dollar of principal thereafter paid on the promissory Note. The amount of the Agreed Judgment shall not be reduced

for interest payments or fees and costs due and paid under the promissory note. Any amounts received under the promissory note shall first be applied to outstanding non-accrued interest and costs.

GreenLake and its counsel agree not to file, abstract, record or execute upon the Agreed Judgment as long as the Reorganized Debtor has complied with the terms of the promissory note and the Plan. At such time the promissory note is paid in full, including all outstanding and unpaid interest, the amount of the pocket judgment will be $800,000, and it will be released.

After the date on which the Reorganized Debtor has fully performed all obligations imposed upon the Reorganized Debtor under the promissory note, GreenLake agrees to return the Agreed Judgment to the Reorganized Debtor's counsel and thereby release all claims against the Reorganized Debtor, Scott Krone, and Coda Design + Build, LLC.

| | |
|---|---|
| Claimant: | GreenLake |
| Security: | The Debtor's real estate |
| Amount to Be Paid: | $8,139,150.00 |
| Secured/Unsecured | Secured |
| Interest Rate: | N/A |
| Distribution: | 100% |
| Status: | Impaired |

**There are no other Impaired Secured Claims**. Any other party asserting a security interest in any of the Debtor's assets shall be subject to having that lien discharged under this Plan.

a.   **Class 2 – Priority Tax Claims**: There are two Priority Tax Claims within Class 2. The Class relates to the Allowed Priority Tax Claims having Priority Unsecured Status. The Cook County Treasurer holds the Class 2a Claim of $208,880.37 due to unpaid real estate taxes accrued during the 2020 and 2021 tax years. The Debtor also must pay the first installment of the 2022 real estate taxes, which equal $51,665.57. The total distributions to the Cook Treasurer equal $260,545.94. The Illinois Department of Revenue holds the Class 2b Claim of $544.05 Claim for the Debtor's failure to file an information return.

**Class 2a:** In full and final satisfaction of the Class 2a Claims, the holder of the Class 2a Claim shall be paid in quarterly payments over five years (20 quarters) with interest at 18% per annum. The payments will allow them to receive $1/20^{th}$ of the total each quarter with interest. The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter.

Claimant: Cook County Treasurer

| | |
|---|---|
| Security: | None |
| Amount to Be Paid: | $385,625.09 |
| Secured/Unsecured | Unsecured |
| Interest Rate: | 18% |
| Distribution: | 100% |
| Status: | Impaired |

**Class 2b:** In full and final satisfaction of the Class 2b Claims, the holder of the Class 2b Claim shall be paid on the Effective Date.

Claimant: Illinois Department of Revenue

| | |
|---|---|
| Security: | None |
| Amount to Be Paid: | $544.05 |
| Secured/Unsecured | Unsecured |
| Interest Rate: | N/A |
| Distribution: | 100% |
| Status: | Impaired |

b.   **Class 3 Claims**: The Debtor divided Class 3 Claims into three subclasses. Each Class concerns Claims having Unsecured Status. Notwithstanding that the Debtor designated Claims in subclasses for organizational purposes, Class 3a, Class 3b, and Class 3c include all of the Allowed Claims held by any Unsecured Creditor, and all disputed, contingent, or unliquidated Allowed Unsecured Claims allowed as of the Effective Date. There are twenty-three (23) Unsecured Creditors. No Unsecured Claim shall accrue interest after the Petition Date. The Debtor owes these debts primarily due to issues with cash flow resulting from the mismanagement of its property by CubeSmart Self Storage, a third-party manager, and enormous borrowing costs. Class 3a includes all Unsecured Claims that are undisputed and equal to or greater than $10,000.00, other than the Class 3b and 3c Unsecured Claims. The Unsecured Creditors in each Class hold the following percentages of the total Unsecured Claims:

| | Total Claim | Percentage of Claims in Each Class |
|---|---|---|
| Total Unsecured Claims | $1,610,450.31 | 100.00% |
| Class 3a - General Unsecured Creditors | $ 361,154.39 | 22.43% |
| Class 3b - Convenience Class | $ 33,011.00 | 2.05% |
| Class 3c – Schindler Elevator Unsecured Claim | $ 17,197.40 | 1.07% |
| Class 3d - Coda Design + Build, LLC Unsecured Claim | $1,199,087.52 | 74.46% |

**Class 3a:** In full and final satisfaction of the Class 3a Claims, each Class 3a Claim Holder shall receive quarterly payments totaling 25% of their Claims over five years (20 quarters). The payments will allow them to receive $1/20^{th}$ of the total each quarter. There are thirteen (13) claimants in Class 3a. The sum to be paid to Class 3a Claims is $99,319.21 and 6.29% of the net proceeds from litigation. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. After the payment of attorneys' fees

and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of each Claimant's Claim.

**Class 3a Claimants**:

| Claimant | Claim | Distribution |
|---|---|---|
| Artur Construction Inc. | $19,150.00 | $4,787.50 |
| Chicago Metro Fire Protection | $40,249.30 | $10,062.33 |
| CubeSmart Self Storage | $24,940.80 | $ 6,235.20 Contested Claim |
| Levin & Ginsburg | $158,271.09 | $39,567.77 |
| Margarito Sanchez | $12,250.00 | $ 3,062.50 Contested Claim |
| Metropolitan Fire Protection | $19,200.00 | $ 4,800.00 |
| SLS Electric | $15,000.00 | $ 3,750.00 |
| Tai Plumbing LLC | $14,320.50 | $ 3,580.13 |
| TK Audio Visual, LLC | $45,822.70 | $11,455.68 |
| WG Glass | $11,950.00 | $2,987.50 |

| | |
|---|---|
| Total Class 3a | $361,154.39 |
| Security: | None |
| Amount to Be Paid: | $90,288.60 and 22.43% of the net proceeds from litigation up to the amount of each Claim. |
| Pro Rata Cash Distribution: | 25% |
| Secured/Unsecured: | Unsecured |
| Status: | Impaired |

**Class 3b Claimants**: Class 3b is a convenience class. In full and final satisfaction of the Class 3b Claims, the holder of each Class 3b Claim shall be paid in a single payment equal to 25% of their Claims. There are eight (8) claimants in Class 3b. The total to be paid to Class 3b Claims is $5,374.00 and 6.29% of the net proceeds from litigation. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained

by judgment or through settlement within thirty (30) days of receipt up to the amount of each Claimant's Claim.

| Claimant | Claim | Distribution |
|---|---|---|
| A & S Masonry | $ 5,525.00 | $1,381.25 |
| Batavia Damp Proofing | $ 5,890.00 | $1,472.50 |
| Custom Tile & Stone | $   580.00 | $  145.00 |
| Dortrak | $ 1,750.00 | $  437.50 |
| Ferguson Enterprises | $   256.00 | $   64.00 |
| Internal Revenue Service | $   100.00 | $   25.00 |
| Landworks Landscaping, LLC | $ 2,700.00 | $  675.00 |
| Masters Drywall | $ 1,000.00 | $  250.00 |
| Super Remodeling Inc. | $ 6,000.00 | $1,500.00 |
| VFJ | $ 9,210.00 | $2,302.50 |

| | |
|---|---|
| Total Class 3b | $33,011.00 |
| Security: | None |
| Amount to Be Paid: | $8,252.75 and 2.05% of the net proceeds from litigation up to the amount of each Claim. |
| Pro Rata Cash Distribution: | 25% |
| Secured/Unsecured: | Unsecured |
| Status: | Impaired |

**Class 3c Unsecured Claim of Schindler Elevator**: Schindler Elevator holds the Class 3c Unsecured Claim for $17,197.40 arising from a mechanics lien for which no equity exists to pay it. In full and final satisfaction of the Class 3c Claim, the holder shall be paid in quarterly payments equal to 25% of its Claim over five years (20 quarters). The payments will allow it to receive $1/20^{th}$ of the total each quarter. The sum to be paid to Class 3c Claims is $4,299.35 and 1.05% of the net proceeds from litigation up to the amount of its Claim. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of Schindler Elevator's Claim.

The Debtor placed Schindler Elevator's Claim in a separate Class because its Claim arose from a mechanics lien, which differs in nature from operating Claims.

| | |
|---|---|
| Total Class 3c | $17,197.40 Contested Claim |
| Security: | None |
| Amount to Be Paid: | $4,299.35 and 1.07% of the net proceeds from litigation up to the amount of its Claim. |
| Pro Rata Cash Distribution: | 25% |
| Secured/Unsecured: | Unsecured |
| Status: | Impaired |

**Class 3d Unsecured Claim of Coda Design + Build, LLC** – Coda Design + Build, LLC's Claim arises from the deferral of payments to which it was entitled and for advances in made on the Debtor's behalf,

During the course of the construction of the Debtor's facility, Coda Design + Build, LLC served as the general contractor. Coda Design + Build, LLC deferred receipt of its fees for providing its contracting services. It paid subcontractors who were not paid by the Debtor or through loan advances. Coda Design + Build, LLC advanced funds on the Debtor's behalf to pay interest to GreenLake, Before the appointment of a state court receiver, Coda Design + Build, LLC provided management services and was entitled to fees that were accrued but unpaid. Coda Design + Build also paid CubeSmart's invoices for operations as well as interest payments to GreenLake

In full and final satisfaction of the Class 3d Claim, Coda Design + Build, LLC shall be paid in quarterly payments equal to 25% of its Claims over five years (20 quarters). The payments will allow it to receive $1/20^{th}$ of the total each quarter. The sum to be paid to Coda Design + Build, LLC is $299,772.00 and 73.37% of the net proceeds from litigation up to the amount of its Claim. The percentage of the Claim is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of Coda Design + Build, LLC's Claim.

The Debtor placed Coda Design + Build, LLC's Claim in a separate Class because, as a related entity to the Debtor, it is an insider, and the Debtor cannot consider its vote as a vote in favor of confirming a Plan of Reorganization.

| | |
|---|---|
| Coda Design + Build, LLC | $1,199,087.52 |
| Security: | None |
| Amount to Be Paid: | $299,771.88 and 74.46% of the net proceeds from litigation up to the amount of its Claim. |
| Pro Rata Cash Distribution: | 25% |
| Secured/Unsecured: | Unsecured |
| Status: | Impaired |

Unless otherwise explicitly provided in this Plan, each Class 3 claimant waives:

      (a) interest accruing after the Petition Date;
      (b) penalties accruing after the Petition Date;
      (c) the right to accelerate payment unless the Debtor defaults in its payments under this Plan after the Effective Date; and
      (d) contractual attorney's fees accruing after the Petition Date.

A. **Equity Interests**.

1. Each of the Debtor's members hold an Equity Interest due to pre-petition contributions. No Person holding an Equity Interest will receive anything of value, including an interest in the Reorganized Debtor, as a result of any contribution made before the Effective Date.

2. The investors who have contributed new monies to fund the Plan shall hold the Debtor's membership interests as reflected in Exhibit F.

B. **Consensual Releases**.

1. **Release of Scott Krone.** Scott Krone, who is the Debtor's Manager, guaranteed the repayment of GreenLake's pre-petition loan to the Debtor, which exposes him to liability for GreenLake's full Claim without the adjustment provided under the plan of reorganization. GreenLake has consented to the treatment of its Claim in Class 1, provided Scott Krone guarantees the Reorganized Debtor's payments. On receipt of a monies equaling $8,139,150.00, whether as a result of the payment on Class 1 Secured Claim, proceeds of the CubeSmart litigation, or funds received from Scott Krone or either of them, for good and valuable consideration, the adequacy of which is confirmed, including, without limitation, Scott Krone's service before and during the Chapter 11 Case to facilitate the Debtor's reorganization and the implementation of the Plan, GreenLake agrees to and shall conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever, and permanently release Scott Krone from all Causes of Action, including any derivative claims asserted or assertible by or on behalf of GreenLake and including any claims that GreenLake, or its successor or assigns, would have presently or in the future been legally entitled to assert in its own right, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, any guaranty of the Debtor's obligations before or after the Petition Date. GreenLake agrees to execute and deliver all such additional documents consistent with the terms of the release and to take all such further actions as may be reasonably requested by the Released Parties to effectuate the terms and provisions of this paragraph,

2. **Release of GreenLake.** As of the Effective Date, for good and valuable consideration, the adequacy of which is confirmed, the Released Parties have agreed to and shall conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever, and permanently release GreenLake from all Causes of Action, including any derivative claims asserted or assertible by or on behalf of GreenLake and including any claims that Released Parties, or that any other Person or party claiming under or through Released Parties, would have presently or in the future been legally entitled to assert in its or his own right, based on or relating to, or in any manner arising from, in whole or in part, GreenLake's extension of credit to the Debtor, and any guaranty of the Debtor's obligations before or after the Petition Date. The Released Parties agree to execute and

deliver all such additional documents consistent with the terms of the release and to take all such further actions as may be reasonably requested by GreenLake to effectuate the terms and provisions of this paragraph,

## V.  CLAIMS RESOLUTION

A. **Bar Date for Filing of Administrative Expense Claims Other Than Claims for Professional Fees Earned in This Case**: The Debtor has Filed a motion seeking a determination of the date by which Claims must be Filed within forty-five days of the Effective Date.

B. **Bar Date for Filing of Claims for Professional Fees Earned in This Case**: Any Professional Person asserting a Claim for pre-confirmation services and expenses shall File a Fee Application not later than forty-five days after the Effective Date.

C. **Resolution of Undetermined Claims**: To the extent that the Debtor seeks to dispute or adjudicate the amount of any Claim the Debtor will File any objection or other pleading (a) with regard to any governmental claim thirty (30) days after such claim is filed, and with regard to any other claim within thirty (30) days of the Effective Date.

D. **Distributions on Disputed Claims**: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

## VI.  LITIGATION

A. **No Waiver**.     Unless a Claim or cause of action against a Person is expressly waived, relinquished, released, compromised or settled by the Debtor or its estate, the Debtor and its estate expressly reserve such Claim or cause of action for later adjudication by the Debtor or its estate, including, but not limited to, Claims and causes of action not specifically identified or which the Debtor may be presently unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those which the Debtor now believes to exist.

## VII.  DISTRIBUTION OF FUNDS

Means of Distribution: The Debtor shall be responsible for making all distributions in accordance with the terms of the Plan.

## VIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is a party to 287 executory contracts concerning the lease of storage units at the Debtor's property, which the Debtor assumes as a part of this Plan. Any other executory contracts are deemed rejected as of the Effective Date. All Claims arising from the rejection of executory contracts or unexpired leases under this Plan must be Filed within twenty (20) days of the Effective Date.

## IX.    INJUNCTION.

**Unless after notice and a hearing, the Court enters an order providing for the Debtor's discharge at an earlier date, the Debtor will not receive a discharge of its indebtedness until its completes all payments under the Plan. A discharge will discharge the Debtor to the maximum extent allowed under §§ 1141, 523, and actions by Creditors to the full extent provided for in § 524.**

## X.    IMPLEMENTATION AND FUNDING OF THE CASE

A. **Funding Source**. The Debtor will retain all of its assets and will be obligated to make the payments required under the Plan. The Debtor has obtained a commitment for a post-confirmation loan from Red Oak Capital Holdings. Exhibit C to the Disclosure Statement shows the Sources and Uses of Funds from Red Oak Capital Holdings. The Debtor will obtain additional sums from investors to pay its obligations under the Plan and otherwise fund payments from income generated from its storage business.

B. **Vesting of Assets**. Under the provisions of §§ 1141(b) and 1141(c) of the Bankruptcy Code, and consistent with the terms hereof, all of the Assets and effects of the Debtor including, without limitation, all assets, interests, property, or rights transferred or assigned to the respective Debtor, as reorganized, and shall vest in the Debtor, as reorganized, on the Effective Date free and clear of all Claims, Liens, encumbrances, charges and other interests of the holders of Claims and Equity Interests, except as otherwise provided in this Plan.

C. All assets of the Debtor shall remain assets of the Debtor, free and clear of all liens, Claims, encumbrances and interests, except those that are expressly created or preserved under the terms of this Plan. Included in those assets shall be all personal property and general intangibles.

D. **Distributions**. In order to receive a distribution under this Plan each and every Creditor who elects to participate in the distributions provided for under this Plan warrants that it is authorized to accept, in consideration of its Claim against the Debtor, the distributions for which this Plan provides and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

## XI.    GENERAL PROVISIONS

A. **Extension of Payment Dates**: If any installment payment under this Plan falls due on a Saturday, Sunday or a Legal Holiday, then such due date shall be extended to the next following Business Day.

B. **Transfer of Claims**: In the event that the holder of any Claim shall transfer such Claim, it shall immediately advise the Debtor in writing of such transfer. The Debtor shall be entitled to assume that each Creditor has not transferred its Claim unless and until the Debtor has received written notice to the contrary. Each transferee of a Claim shall take such Claim subject to the provisions of this Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Debtor shall be entitled

to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under this Plan of the transferor.

C. **Captions**: Captions used in this Plan are for convenience only and shall not affect the construction of this Plan.

D. **Severability**: Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

E. **Successors and Assigns**: The rights and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors or assigns of such person.

F. **Right to Take Action**:   After the Effective Date, the Debtor shall have the right to take any and all actions they deems necessary or appropriate to litigate, compromise or settle any litigation claim, subject to Court Approval.

G. **Returned Distributions and Uncashed Checks**.    If any distribution is returned to the Debtor as undeliverable, no further distributions shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Checks issued by the Debtor on account of Allowed Claims that are not returned as undeliverable, but are not negotiated within sixty (60) days from and after the date of issuance thereof shall be null and void. Any holder of an Allowed Claim that does not assert its rights under the Plan to receive a distribution within ninety (90) days from and after the date (a) such distribution is returned as undeliverable, or (b) of the issuance of a check that has not been returned as undeliverable, but is null and void because it was not timely negotiated, shall have such holder's Claim for such distribution discharged and shall be forever barred from asserting any such Claim against the estate, the Debtor or its assets. In the event that there is more than one distribution under the Plan, any Creditor whose funds escheat shall be eliminated from any future distributions. Any entities ultimately receiving undeliverable cash, voided checks, or unclaimed distributions shall not be entitled to interest or other accruals of any kind. Notwithstanding the preceding statements, the Debtor has an obligation to use its best efforts to locate each Creditor's updated addresses and will do so.

H. **Set-Offs**.   Under § 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Debtor may set-off the distributions to be made under the Plan against any Allowed Claim; provided however, that neither the failure to effect a set-off nor the allowance of any Claim shall constitute a waiver or release of such Claims, right or cause of action.

I. **Distributions to Contested Claims**.    No distribution shall be required to be made with respect to any portion of a Contested Claim pending the resolution thereof in the manner prescribed herein.

J. **Notices**.   Until further notice is given by parties to the terms hereof, all notices to be given under the Plan shall be sent by First Class Mail, postage prepaid, addressed to:

Debtor:                                          With a copy to:

Platform II Lawndale LLC               Gregory J. Jordan
600 Waukegan Road, Suite 129      Jordan & Zito, LLC
Northbrook, Illinois 60062           350 North LaSalle Drive, Suite 1100
Attn: Scott Krone                  Chicago, Illinois 60654
                                   gjordan@jz-llc.com

Until further notice given under to the terms hereof, all notices to be given hereunder shall be given by electronic mail to all parties authorized to participate in the Court's CM/ECF system or First Class Mail to all effected parties and all persons on the service list in the Debtor's bankruptcy case with sufficient notice in accordance with the Court's local rules.

## XII.     RETENTION AND ENFORCEMENT OF CLAIMS

Under § 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions contained herein, the Debtor shall retain for the benefit of the holders of Claims and may enforce any and all Claims of the Debtor including preference and other avoidance claims available under the Bankruptcy Code, if any.

## XIII.     MODIFICATION OF THIS PLAN

A. **Pre-Confirmation Modification**: Modifications of this Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with § 1125 of the Bankruptcy Code. Should any Creditor make a proper election under § 1111(b), the Debtor reserves the right to modify their plan as necessary to implement the requirement of §§ 1129(a)(7)(B) and 1129(b)(2)(A)(i) of the Bankruptcy Code to conform the terms of this Plan to the particular value of such claim.

B. **Post-Confirmation Modification**: This Plan may be modified at any time after the Confirmation Date and before its substantial consummation, provided that such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under § 1129 of the Bankruptcy Code. For the purpose of modification of this Plan, substantial consummation shall be deemed to occur on the later of the date (1) when the confirmation order becomes final, or (2) the dates set forth in Article XVI of this Plan entitled Closing the Estate.

C. **Voting on the Plan.**     As a member of an Impaired Class, each holder of an Allowed Claim in each Creditor Class are entitled to vote to accept or reject the Plan. Under §1129(a)(10) of the Bankruptcy Code, the Debtor cannot use the Class 3d Creditor's vote to determine whether a class of Creditors has accepted the Plan. An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. A Class of holders of Claims shall be deemed to accept the Plan in the event that no holder of a Claim within that Class submits a ballot by the deadline for doing so. All Claims shall be allowed for voting purposes only unless objected to before the hearing on Confirmation of the Plan.

D. **Presumed Rejection of the Plan**.　　The Debtor as the Holder of an Interest is deemed not to have accepted the Plan under § 1126(g) of the Bankruptcy Code.

E. **Non-Consensual Confirmation**.　　In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code or amend the Plan.

F. **Voting on Modification**: A holder of a Claim or interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time specified by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## XIV.　INVALIDATION OF LIENS AND DISCHARGE

All liens securing Claims which are not allowed under the provisions of this Plan and §§ 502 and 506 of the Bankruptcy Code shall be invalidated and deemed null and void and of no further force and effect. The provisions of this Plan, as confirmed, shall bind all Creditors and parties in interest, whether or not they accept this Plan and shall discharge the Debtor from all Claims that arose before the Confirmation Date. The distributions provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims against any of the Debtor's assets or the Property, including claims arising after the Petition Date and before the Confirmation Date. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on and after the Confirmation Date, all holders of Claims shall be precluded from asserting any Claim against the Debtor or their assets.

## XV.　ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY CLASSES OF IMPAIRED CLAIMS OR EQUITY INTERESTS

A. **Reservation of § 1129(b) Rights**. In the event that one or more Impaired Classes shall have failed to accept the Plan by the requisite majorities in accordance with § 1126(c) and (d) of the Bankruptcy Code, the Debtor shall request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code against such rejecting Class or Classes.

B. **§ 1129(a)(12) Compliance**. All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, either will have been paid or will be paid on the Effective Date as an Administrative Expense Claim.

C. **Deemed Satisfaction of § 1129(a)(13) of the Bankruptcy Code.** Prior to the commencement of the Case, the Debtor does not have a plan or plans providing for retiree benefits, as that term is defined in § 1144 of the Code. Consequently, the confirmation requirements contained in § 1129(a)(13) of the Bankruptcy Code are inapplicable to the Plan, and the Plan shall be deemed to have satisfied such requirements.

## XVI.　Powers and Duties of the Reorganized Debtor's Agents.

A. **Power of §1129 Representative**

The Reorganized Debtor will act through Scott Krone, as the Reorganized Debtor's Manager appointed pursuant to §1129 of the Bankruptcy Code, and the officers, employees, and agents appointed or engaged by him or through his efforts in a capacity as applicable to a corporate agent with full approval of its principal, subject to the provisions of this Plan. In addition to any powers and duties available to an agent by statute or at law, the powers and duties of such Person shall include:

1.   investing monies in accordance with §345 of the Bankruptcy Code, and withdrawing and making Distributions of monies to holders of Allowed Claims, if any, and paying taxes and other obligations owed by the Debtor or incurred by the Reorganized Debtor in connection with the operation of the Estate in accordance with this Plan;

2.   objecting to, compromising, and settling Claims;

3.   engaging attorneys, consultants, agents, employees, and all Professional Persons, to assist the Reorganized Debtor with respect to the Reorganized Debtor's responsibilities;

4.   executing and delivering all documents, and taking all actions, necessary to consummate the Plan of the Reorganized Debtor's business;

5.   coordinating the disposition of assets, subject to rejected executory contracts or abandonment or liquidation of any retained assets;

6.   coordinating the collection of outstanding accounts receivable;

7.   coordinating the storage and maintenance of the Debtor's books and records;

8.   disposing of, and delivering title to others of, or otherwise realizing the value of all the Assets delivered to the Reorganized Debtor on terms deemed reasonable in the Reorganized Debtor's sole discretion. The Reorganized Debtor may, but shall not be required to, seek the Bankruptcy Court's approval of any such disposition by filing a motion pursuant to §363 of the Bankruptcy Code and Rule 9019 of the Rules;

9.   prosecuting and otherwise disposing of the Causes of Action transferred to Reorganized Debtor;

10. overseeing compliance with the Estate's accounting, finance, and reporting obligations;

11. preparing monthly operating reports and financial statements and United States Trustee quarterly reports;

12. overseeing the filing of tax returns;

13. performing any additional corporate actions as necessary to carry out the terms of the Plan;

14. paying United States Trustee Fees and the fees and expenses of the attorneys, consultants, agents, employees, and Professional Persons engaged by the Debtor and the

Reorganized Debtor and to pay all other expenses for relating to the Estate's affairs. In the event of a dispute that cannot be resolved, the Reorganized Debtor's §1129 representative shall seek to resolve such dispute in the Bankruptcy Court;

      15. implementing and/or enforcing all provisions of the Plan; and

      16. such other powers as may be vested in or assumed by the Reorganized Debtor pursuant to this Plan or Bankruptcy Court Order or as may be needed or appropriate to carry out the provisions of this Plan.

B. **Appointment of the Reorganized Debtor's Officers**. Pursuant to §1129(a)(5) of the Bankruptcy Code, the Confirmation Order shall provide that Scott Krone, who will serve as the Reorganized Debtor's Manager, will undertake the responsibility for the management and operation of the Reorganized Debtor's business. The Reorganized Debtor designates Mr. Krone as the Estate's representative in accordance with §1129 of the Bankruptcy Code, and she shall have all powers, authority, and responsibilities specified in this Plan, including, without limitation, the powers of a trustee under §§704 and 1106 of the Bankruptcy Code. Scott Krone will be responsible for acting under §1123(a)(5)(B) and serve the functions required of the Reorganized Debtor under the Plan.

C. **Retention of Insider.** Pursuant to §1129(a)(5)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain the services of Scott Krone, who is an insider. Scott Krone has served as the Debtor's Manager during this bankruptcy case.

D. **Resignation of Managers**. Upon the Effective Date of this Plan, the Debtor's Managers shall be deemed to have resigned or been eliminated as the Debtor's Managers.

E. **No Agency Relationship**. Neither the Reorganized Debtor, nor any Manager, member, agent, attorney, or representative, including the §1129 representative, shall be liable, or responsible for any act or omission of the Debtor or any of its Managers, members, agents, officers, attorneys, or representatives unless expressly assumed pursuant to this Plan. The Reorganized Debtor shall not be deemed the agent of any of the holders of Claims in connection with the monies held or distributed pursuant to this Plan. The Reorganized Debtor shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct on the part of the Reorganized Debtor. The Reorganized Debtor and its Manager, members, agents, attorneys, or representatives, including the §1129 representative appointed, engaged, or employed by it shall be indemnified and held harmless, including the cost of defending such Claims and attorneys' fees in seeking indemnification, by the Estate against any and all Claims arising out of its, his, her or their duties under this Plan, except to the extent the actions constitute gross negligence or willful misconduct. Such parties may conclusively rely and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which it, she, or they believe to be genuine and to have been signed or presented by the proper party or parties. Any trustee, officer or agent appointed, engaged, or employed by the Reorganized Debtor may rely upon information previously generated by such party and such additional information provided by current and/or former employees of the Debtor. Any act taken by or omission of the Reorganized Debtor or any officer, director, shareholder, agent, attorney or representative,

including the §1129 representative of the Reorganized Debtor, pursuant to an Order of the Bankruptcy Court, after notice and hearing, as provided in Article XVIII of the Plan, shall be conclusively established to be proper, fair, in the best interest of Creditors and consistent with the duties of the Reorganized Debtor pursuant to the provisions of the Plan.

F. **No Bond Required**. Scott Krone, as the Reorganized Debtor's representative, shall serve without the necessity of obtaining or maintaining a bond.

## XVII.  CLOSING THE ESTATE

For purposes of § 1127(b) and for the closing of the estate, the following shall be conditions precedent to the substantial consummation of the Plan:

A.  The Confirmation Order shall have become a Final Order or such requirement shall have been waived in writing by the Debtor; and

B.  The date on which the Debtor payments makes the first quarterly payment due under this Plan and the first and final payment to Class 3b Claimants.

## XVIII. RETENTION OF JURISDICTION

A.  Notwithstanding confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

1.  Determination of the allowance of Claims and interests upon objection to such Claims by the Debtor, or by any other Party in Interest.

2.  Determination of requests for payment to professional persons and Claims entitled to priority under §§ 503 and 507 of the Bankruptcy Code, including compensation of parties entitled thereto.

3.  Implementation of the provisions of this Plan and entry of orders in aid of confirmation of this Plan, including, without limitation, appropriate orders to protect the Debtor from Creditor action.

4.  Modification of this Plan under § 1127 of the Bankruptcy Code.

5.  Adjudication of any causes of action, including Avoidance Actions brought by the Debtor.

6.  Determination of any issues raised by papers Filed with the Bankruptcy Court on or before the Confirmation Date.

7.  Entry of a final decree closing the Debtor's case.

## XIX.   OTHER MATERIALS

The attention of holders of Claims is directed to the Disclosure Statement.

**PLATFORM II LAWNDALE LLC**

By:____/s/ Scott Krone_____
        Scott Krone, Manager


By:____/s/ Gregory J. Jordan_____
        One of Its Attorneys

Gregory J. Jordan (ARDC# 6205510)
Mark Zito (ARDC# 6276231)
Jordan & Zito LLC
350 North LaSalle Drive, Suite 1100
Chicago Illinois 60654-4980
(312) 854-7181
gjordan@jz-llc.com
mzito@jz-llc.com

COUNSEL FOR PLATFORM II LAWNDALE LLC