**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re PLATFORM II LAWNDALE LLC** | ) | **Chapter 11 Proceeding** |
| | ) | |
| | ) | **Case No. 22-07668** |
| **Debtor.** | ) | |
| | ) | **Hon. Deborah L. Thorne** |
| | ) | |

**AMENDED DISCLOSURE STATEMENT**

**Proposed by Platform II Lawndale LLC**

**Date: September 15, 2023**

**1.  Summary of Treatment of Claims under Local Rule 3016-1**

a.  **Debtor:**  The Debtor[1] is an Illinois limited liability company and owner of a self-storage facility at 1750 North Lawndale Avenue in Chicago's West Logan Square neighborhood.

b.  **Filing of Case:**  On July 11, 2022 (the "Petition Date"), the Debtor Filed its voluntary case under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"). The Case is pending before the Honorable Deborah L. Thorne, United States Bankruptcy Judge.

c.  **Debtor to Retain Its Assets:**  The Plan provides that on its Effective Date, the Debtor will retain its assets and pay its Creditor's Claims. The Debtor will use member contributions and its operating income to pay Claims.

d.  **Administrative Claims:**  The Debtor will pay Administrative Claims within 30 days of the Plan's Effective Date or later based on the terms of the agreements between the Debtor and each holder of an Administrative Claim. The Debtor will pay the United States Trustee Fees and other bankruptcy fees in full on or before the Effective Date or as they come due after that.

e.  **Priority Claims:**  The Debtor has accrued $208,880.40 for pre-petition real estate taxes. The Debtor will pay the Cook County Treasurer's Claim with interest through equal quarterly cash payments over five years.

f.  **Secured Claims:**  The Debtor has one secured Creditor, GreenLake Real Estate Fund, LLC, whose loan is secured by a mortgage on the Debtor's storage facility. The Debtor will extend the secured portion of the lender's Claim by loan term by paying it on the Effective Date.

g.  **Unsecured Claims:**  The Debtor has three subclasses of Unsecured Creditors comprised of eleven Unsecured Creditors. Class 3a includes thirteen (13) general Unsecured Claims of more than Ten Thousand Dollars ($10,000), and Class 3b consists of a convenience Class for eight (8)

---

[1] The Definition of Capitalized Terms may be found in the Plan of Reorganization.

claims of less than Ten Thousand Dollars ($10,000). Coda Design + Build, LLC, an insider as a related company sharing common ownership, holds the sole Class 3c Unsecured Claim. Because it is an insider, Coda Design + Build, LLC cannot vote in favor of confirming a Plan of Reorganization, so the Debtor placed its Claim in a separate Class.

h.   **Total of Payments:**  Payments to all creditors will total -$9,021,008.33.

**2.   Introduction**

This Disclosure Statement concerning the Plan of Reorganization (the "Disclosure Statement") sets forth certain information regarding the Debtor's pre-petition history, the need to seek Chapter 11 protection, and significant events that have occurred or are expected to occur during the Debtor's Chapter 11 case. This Disclosure Statement also describes the terms and provisions of the Plan (as defined below), including certain alternatives to the Plan, certain effects of confirmation of the Plan, and how the Debtor will make distributions under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

The Disclosure Statement is being provided to all of the Debtor's known creditors and other parties in interest under 11 U.S.C. §1125 to provide information deemed by the Debtor to be material and necessary to enable such creditors and parties in interest to make a reasonably informed decision in the exercise of their rights to vote on, and participate in, the Plan of Reorganization of even date (the "Plan"). The Debtor has attached the Plan as Exhibit A. The Debtor urges Creditors and interest holders to review all terms and provisions with their attorneys.

THIS DISCLOSURE STATEMENT CONTAINS CERTAIN (I) PROVISIONS OF THE PLAN, (II) STATUTORY PROVISIONS, (III) DOCUMENTS RELATING TO THE PLAN, (IV) EVENTS EXPECTED TO OCCUR IN THE CHAPTER 11 CASE, AND (V) FINANCIAL INFORMATION. THE DEBTOR BASED THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT ON FINANCIAL AND OTHER INFORMATION IT AND ITS FINANCIAL ADVISORS DEVELOPED FROM: (I) INFORMATION MAINTAINED BY THE DEBTOR, (II) INFORMATION OBTAINED FROM THIRD PARTIES, AND (III) PLEADINGS AND DOCUMENTS FILED IN THIS CHAPTER 11 CASE.

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT. THUS, YOU SHOULD NOT RELY ON ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT OR AUTHORIZED BY THE BANKRUPTCY COURT IN ARRIVING AT YOUR DECISION. YOU SHOULD REPORT ANY ADDITIONAL REPRESENTATION OR INDUCEMENT TO COUNSEL FOR THE DEBTOR, WHO SHALL FURNISH SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

A BALLOT ACCOMPANIES THIS DISCLOSURE STATEMENT FOR YOUR USE IN VOTING ON THE PLAN. TO BE CONFIRMED, THE PLAN, A MAJORITY IN NUMBER AND TWO-THIRDS IN AMOUNT OF THOSE IMPAIRED CREDITORS VOTING IN EACH

CLASS UNDER THE PLAN MUST ACCEPT THEIR TREATMENT, EXCEPT TO THE EXTENT THAT THE BANKRUPTCY COURT MAY CONFIRM THE PLAN NOTWITHSTANDING THE FAILURE TO OBTAIN SUCH ACCEPTANCE UNDER SECTION 1129(B) OF THE BANKRUPTCY CODE. FOR A DETAILED DISCUSSION ON SOLICITATION AND VOTING BELOW.

THE DEBTOR URGES YOU TO REVIEW THE PLAN, THIS DISCLOSURE STATEMENT, AND THE BALLOT WITH COUNSEL OF YOUR CHOICE. HOLDERS OF IMPAIRED CLAIMS UNDER THE PLAN MAY VOTE TO ACCEPT OR REJECT THE PLAN BY COMPLETING AND RETURNING THE ENCLOSED BALLOT THAT MUST BE RECEIVED ON OR BEFORE _____, 2023 AT 11:59 P.M. BY THE CLERK OF THE BANKRUPTCY COURT AT THE FOLLOWING ADDRESS:

CLERK OF THE UNITED STATES BANKRUPTCY COURT
219 S. DEARBORN STREET, SUITE 710
CHICAGO ILLINOIS 60604

NONE OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBJECT TO A CERTIFIED AUDIT. BECAUSE OF THE COMPLEXITY OF THE DEBTOR'S FINANCIAL AFFAIRS, IT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. ALTHOUGH THE DEBTOR BELIEVES THAT DUE CARE. HAS BEEN TAKEN IN DEVELOPING FINANCIAL PROJECTIONS BECAUSE THE PROJECTIONS SEEK TO PORTRAY THE RESULTS OF FUTURE EVENTS, NOT ALL OF WHICH ARE WITHIN THE DEBTOR'S DIRECT CONTROL. VARIANCES MAY WELL OCCUR, AND THEY MAY BE MATERIALLY ADVERSE COMPARED WITH THE PROJECTIONS.

THE DEBTOR RECOMMENDS AND REQUESTS YOUR ACCEPTANCE OF THE PLAN.

a.  **Purpose of Disclosure Statement.**

The Debtor provides this Disclosure Statement (the "Disclosure Statement") to all of its known Creditors under § 1125 of the Bankruptcy Code, permitting those interested parties to make an informed judgment in exercising their right to vote on the Plan. ~~The~~In addition, the Debtor attaches the Plan as Exhibit A to this Disclosure Statement.

Chapter 11 of the Bankruptcy Code allows the Debtor to submit a copy of the Plan or a summary of it and a written disclosure statement to its Creditors and holders of interests, which the Bankruptcy Court has approved after notice and hearing as containing adequate information, as defined in § 1125(a) of the Bankruptcy Code. Alternatively, the Court may hold a combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan.

The Debtor has attempted to comply with the requirements of the law. Your receipt of this statement means that the Bankruptcy Court has approved this statement as containing adequate information after allowing interested parties to suggest to the Bankruptcy Court that the Debtor should provide additional information. The Debtor and its counsel have endeavored to make this Disclosure Statement as accurate as reasonably possible and meet the law's requirements as to disclosure.

-3-

b.  **Purpose of Plan**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code under which a debtor can pay its obligations under the Bankruptcy Code. The main objective of a Chapter 11 case involves the consummation of a plan of reorganization by satisfying creditors' claims. The bankruptcy court's confirmation of a plan makes it binding upon the debtor, any person or entity acquiring property under the plan, and any creditor, whether the Creditor (i) is Impaired under or has accepted the plan or (ii) receives or retains any property under the plan.

Under a plan of reorganization, a debtor can pay substantial portions of its debts. ~~Provided~~Therefore, provided the Creditors approve the Plan as presented, the Debtor will repay a significant amount of the debts.

Subject to certain limited exceptions and other than as provided in the Plan itself or the confirmation order (the "Confirmation Order"), the Confirmation Order discharges the Debtor from any debt that arose before the Plan's Effective Date and substitutes the obligations specified under the confirmed Plan. The Debtor based the Plan's terms on, among other things, the Debtor's assessment of its ability to achieve its goals, make distributions contemplated under the Plan and pay certain continuing obligations. Under the Plan, the Debtor has divided Claims into Classes according to seniority and other criteria.

c.  **Description of the Debtor's Situation.**

The Debtor operates a storage facility in the Logan Square neighborhood in Chicago. When the Debtor opened for business, it hired CubeSmart Self Storage, a third-party manager specializing in owning and managing similar properties. CubeSmart Self Storage breached its agreement with the Debtor by mismanaging the property and intentionally understating revenues and overstating expenses, and suppressing occupancy. CubeSmart hired workers who performed services for one hour per day yet billed the Debtor as if those employees performed services full-time. The Debtor believes that CubeSmart Self Storage defrauded the Debtor by seeking to cause the property to underperform industry standards, so it could eventually purchase the property at a substantial discount. Because of the low occupancy, the property did not generate sufficient cash flow to allow the Debtor to service its mortgage debt. The lender, GreenLake ~~Real Estate Fund, LLC~~, the Debtor's lender, filed ~~a foreclosure lawsuit~~the Foreclosure Lawsuit with a scheduled sale leading to the filing of the Chapter 11 Case.

d.  **Operations Since the Bankruptcy Filing.**

CubeSmart Self Storage resigned as the manager of the Debtor's facility in September 2022, and the last day CubeSmart Self Storage managed the Debtor's property was October 4, 2022. ~~Since that date, occupancy has increased, and customer service has improved.~~

Since October 4, 2022, Open Stop Self Storage has managed the Debtor's operations. Scott Krone, the Debtor's manager, also serves as Open Stop Self Storage's manager, Open Stop Self Storage has provided its services without a management fee other than the out-of-pocket compensation costs associated with the onsite employee and his supervisor. The supervisor's charge represents a pro-rata amount of her compensation allocated to the Debtor in relation to other facilities for which Open Stop Self Storage provides management services.

-4-

During the time Open Stop Self Storage has managed the facility, occupancy has increased, and customer service has improved. Further, the Debtor has increased its revenues and cut operating expenses, causing the Debtor's net income to improve.

e.  **Why the Debtor Filed This Case**.

The Debtor Filed its Case on the Petition Date to avoid losing the property at a foreclosure sale. The Debtor commenced the Case by filing a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code.

Moreover, the Debtor needed to replace CubeSmart Self Storage as its manager. During the period preceding the filing, CubeSmart Self Storage failed to report and provide to the Debtor all revenues collected, did not pay expenses, and generally was unable to provide professional management services. In certain instances, CubeSmart Self Storage claimed it paid invoices and received payment for amounts it did not pay.

As a result, the Debtor is in possession of its assets and operating its business as a debtor in possession under §§1107 and 1108 of the Bankruptcy Code.

As related above, the Debtor Filed this case to avoid a foreclosure sale. The Debtor believes it can manage the property efficiently and raise occupancy rates to pay the Claims in the Case.

f.  **Overview of Assets**

The Debtor's storage facility includes 612 climate-controlled units, including three (3) garage units that are not climate controlled. The gross building area is approximately 65,815 square feet equating to a 0.68:1 land-to-building ratio of which the Debtor currently leases 4758% of the units based on square footage in the facility. The Debtor borrowed $6,250,000.00 when it built the facility in 2018. The loan was amended by way of a forbearance agreement and amended loan documents the parties executed in 2020.

g.  **Retention of Debtor's Professionals**

By an August 11, 2022 order, the Bankruptcy Court approved the Debtor's retention of Gregory Jordan and Mark Zito of Jordan & Zito LLC as its bankruptcy counsel nunc pro tuneretroactive to the Petition Date. The Debtor hired David S. Martin of Neal, Gerber & Eisenberg LLP and William C. Graft of Graft & Jordan to obtain a reduction of its real estate tax liabilities. The real estate tax counsel's efforts resulted in substantial tax savings. The Debtor employed Joseph Ransdell of Great Point Capital and Brad Hettich of Commercial Lending X to obtain funding for its Plan. Subject to Court approval., the Debtor will pay Messrs. Ransdell and Hettich's fee from its post-confirmation loan from Red Oak Capital to fund the Plan, whose retention application will be presented to the Court.

**3.  Analysis of the Debtor's Income, Current Assets, and Liabilities.**

a.  The Debtor bases its projections on historical income and additional contractual income it receives.income received since October 2022 and projection of growth based on industry standards. The Debtor reasonably anticipates sustaining its earning capability over the Plan's five-

year period. The Debtor's regular income will allow it to fund the Plan. Creditors can review complete projections of the Debtor's income and expenses, attached as Exhibit B, page 1. Creditors can review a valuation of the Debtor's assets at Exhibit B, page 2.

b.   The Debtor projects its average after-tax monthly income will be $67,920.60 projected over the five-year Plan period.

The Debtor proposes to pay a substantial amount of its disposable income over the life of the Plan, which is illustrated as follows:

Total Projected After-Tax Revenues          $4,075,236.00

Total Payments on Claims          $9,021,008.33

Total Payments as a percentage of Revenue are 221.36% due to the receipt of financing.

**4.   Classification of Claims and Interests**.

The Bankruptcy Code requires that a plan of reorganization place each classified Creditor's Claim in a Class with other Claims or interests that are "substantially similar." The dollar amount of a Claim is usually not a basis upon which to distinguish it from other Claims.

The Plan establishes three Classes of Claims with subclasses that may vote on the Plan. Each subclass will be considered a separate Class for voting purposes. The Bankruptcy Court must independently conclude that the Plan's classification scheme is authorized. Any Creditor who believes that the Plan has improperly classified any group of Claims or interests may object to confirmation of the Plan. The Debtor believes that the Plan's classification of Claims and interests fully complies with the requirements of the Bankruptcy Code and applicable case law.

General Terms - All Claims submitted by Creditors shall be fixed and determined in accordance with a Filed proof of claim. Unless otherwise explicitly provided in this Disclosure Statement:

a.   No Creditor shall accrue interest on its Claim after the Petition Date;

b.   If an agreement between the parties provides, a Creditor may accrue interest on its Claim (at the rate provided in the agreement). Except for the Secured Claims and the Priority Tax Claim, the Debtor does not believe it is required to pay interest on any Claim.

c.   After the Petition Date, each Creditor waives:

    1.   default interest;

    2.   penalties;

    3.   the right to accelerate payment; and

    4.   Contractual attorney's fees.

d.   Effect of Filing and Not Filing Claims - Each Creditor who has Filed a proof of claim is not bound by the Debtor's estimates of Claims against it. Any Creditor who did not File a proof of claim is bound by the Debtor's calculation of the amount owed to that Creditor. If the Debtor disputed a debt on its schedules, and the Creditor in question did not File a proof of claim, the debt shall be deemed disallowed.

**5.   Treatment of Unimpaired and Unclassified Claims**

§ 1124 of the Bankruptcy Code provides that a class of creditors is "Impaired" unless the plan: (i) "leaves unaltered the legal, equitable, and contractual rights" to which each claimant in the class is entitled; or (ii) cures any defaults (other than certain non-monetary defaults specified in §365(b)(2) of the Bankruptcy Code), reinstates the maturity and other terms of the obligation, compensates the claimant for reasonable reliance damages and certain resulting losses, and does not "otherwise alter the legal, equitable or contractual rights" of each claimant in the class.

All Classes are Impaired by the Plan under § 1124 of the Bankruptcy Code or are not required to be classified in the Plan under the provisions of the Bankruptcy Code.

a.   **Administrative Expenses**:   These claimants represent Claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash, or as otherwise agreed, through a one-time payment under this Plan beginning on the first day of the first whole month following confirmation of this Plan; provided, however, that an Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor shall be paid by the Debtor under the terms and conditions of any agreements relating to such obligation, along with accruing real estate taxes. Payment of Professional Fees shall be subject to the provisions of §§ 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. ~~United States Trustee and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due after that. The source of payment for these amounts will be the Debtor's~~ income and proceeds of a post-confirmation loan obtained from Red Oak Capital <u>Holdings</u> to fund the Plan. The Debtor expects Administrative Claims will be approximately $363,000.00 as of the Effective Date. The Debtor will also pay the loan fees set forth in Exhibit C.

**6.   Treatment of Impaired Claims and Equity Interests**

The Claims in the Classes listed below are Impaired by the Plan:

**Class 1 - Secured Claim**:   GreenLake ~~Real Estate Fund, LLC~~ holds the Class 1 Secured Claim for $~~7,200,000~~<u>8,139,150</u>.00 arising from a loan secured by the Debtor's real estate and personal property. The Class 1 Secured Claim is Impaired. ~~GreenLake Real Estate Fund, LLC's~~<u>GreenLake's</u> loan matured, and it obtained a judgment against the Debtor. The <u>Reorganized</u> Debtor will pay <u>$7,200,000.00 of</u> the secured portion of ~~GreenLake Real Estate Fund, LLC's~~<u>GreenLake's</u> Claim on the ~~Effective~~<u>GreenLake Funding</u> Date. ~~In exchange for~~ <u>and</u> the ~~payment on GreenLake Real Estate Fund, LLC's~~ <u>remainder through the satisfaction of a new $939,150.00 promissory note, attached as Exhibit D, and proceeds that the Debtor might receive from the CubeSmart Lawsuit up to the amount of the</u> Class 1 Secured Claim~~, it as described below. Personal guarantees that Scott Krone and Coda Design + Build LLC~~ will ~~release its mortgage lien, all other security interests on~~<u>sign and a Direction of Payment Letter Agreement Scott Krone will</u>

-7-

execute will secure the loan. Any creditor or party in interest who wishes to review those documents should request copies from the Debtor's ~~assets, third-party guarantees of the Claim against the Debtor, and claims against third parties arising from the loan to the Debtor. In the event GreenLake Real Estate Fund, LLC does not execute a release of mortgage, UCC-3 financing statement, third-party guarantees, and claims against third parties, the Debtor shall, simultaneously with the delivery of funds, be empowered to execute such releases as GreenLake Real Estate Fund, LLC's attorney in fact~~counsel.

The Debtor will derive the initial $7,200,000 payment to GreenLake through the Red Oak Capital Holdings loan and new equity investments. As a part of the payment to the Class 1 Secured Claim, Red Oak Capital Holdings will receive a first-priority lien on the Debtor's real estate and other assets.

On receipt of the $7,200,000.00 payment, GreenLake will simultaneously release its mortgage lien and all other security interests on the Reorganized Debtor's assets.

Upon receipt of the $7,200,000.00 payment, GreenLake and the Reorganized Debtor will jointly move the Cook County Circuit Court to enter an order, reopening the foreclosure portion of the Foreclosure Lawsuit for the sole purpose of dismissing the foreclosure count of the Complaint with prejudice and for entry of a stipulated order that provides that the remaining claims will be voluntarily dismissed without prejudice and with leave to reinstate.

If GreenLake does not execute a release of mortgage, and of any UCC-3 financing statements after receipt and posting of funds as confirmed in writing by GreenLake, the Debtor shall be empowered to execute such releases as GreenLake's attorney in fact.

On the GreenLake Funding Date, the Reorganized Debtor will execute the promissory note on the Effective Date that shall bear simple interest at seven and one-half percent (7.50%) per annum. Scott Krone, the Reorganized Debtor's manager, and Coda Design + Build LLC will execute amended guaranties to jointly and severally ensure payment of the promissory note. Scott Krone, Coda Design + Build LLC, and GreenLake have agreed on the terms of the guaranties, which will be executed at or before the closing of the Red Oak Capital Holdings loan.

The promissory note requires the Reorganized Debtor to deliver monthly interest payments. Interest will be allocated and payable in two forms. During the first year, the Reorganized Debtor must pay thirty-five percent (35%) of the interest accruing each month with sixty-five percent (65%) deferred. During the second year, the Debtor must pay fifty percent (50%) of the interest accruing each month with fifty percent (50%) deferred.

GreenLake will apply all payments from any source first to costs and fees incurred, second to interest that comes due, third to deferred interest, and fourth to reduce the principal balance. The deferred interest will be due on maturity, early payoff, or an event of default or acceleration. GreenLake will provide monthly statements for the promissory note.

The promissory note will have a three (3) year term; however, the Reorganized Debtor will have an extension option for an additional two (2) years provided the Reorganized Debtor pays the deferred interest and there is no event of default under the promissory note.

**-8-**

The promissory note will contain standard financial reporting requirements. The Reorganized Debtor and guarantors will execute new or amended additional loan documents through a separate agreement between GreenLake and those parties.

The promissory note will contain a standard costs and attorneys' fees provision under which GreenLake will be entitled to seek all costs and fees incurred in connection with the promissory note and exercising its remedies thereunder.

Scott Krone and Coda Design + Build LLC will provide a payment direction letter related to any distribution to Scott Krone outside the ordinary course of business, Coda Design + Build, LLC, and the entities in which Scott Krone and/or Coda Design + Build LLC have a direct or indirect interest, including, but not limited to, Platform II - Lawndale, Chicago, Platform II - Wisconsin, Milwaukee, Platform III - Floyd, Louisville, Platform II - Superior, Toledo, Platform III - Third St, Dayton.

**Commented [GJ1]:** Scott will draw a salary from Coda to feed his family. I struck "Coda Management," which is not an existing entity.

Under the terms of the Plan and in addition to payments under the promissory note, GreenLake will receive the net proceeds received from the CubeSmart lawsuit after payment of the Reorganized Debtor's attorney's fees and costs up to $939,150.00 plus accrued and unpaid interest under the promissory note, and the amounts will be applied to the outstanding amounts due under the promissory note in the order identified in the promissory note.

To ensure payment, the Reorganized Debtor will execute, deliver on the GreenLake Funding Date, and irrevocably consent to the entry of the order of judgment in the sum of $1,600,000 less any and all amounts previously paid. The complaint and form of judgment is attached as Group Exhibit E (the "Agreed Judgment"); provided however, that GreenLake shall not file or request entry of the Agreed Judgment except as specifically permitted in the Plan.  The original signed Agreed Judgment shall be held in trust by GreenLake's counsel, Sandberg Phoenix, who shall be authorized to deliver the Agreed Judgment for entry in the Foreclosure Lawsuit only due to an uncured default by Reorganized Debtor under the promissory note. The promissory note will allow for a sixty (60) day cure period that begins upon notice from GreenLake of an event of default. Notice will be provided by electronic mail pursuant to a notice provision in the parties' loan agreement.

If the Reorganized Debtor pays $139,150.00 to reduce the principal balance owing under the promissory note, the amount of the Agreed Judgment shall be reduced for each dollar of principal thereafter paid on the promissory Note.  The amount of the Agreed Judgment shall not be reduced for interest payments or fees and costs due and paid under the promissory note. Any amounts received under the promissory note shall first be applied to outstanding non-accrued interest and costs.

GreenLake and its counsel agree not to file, abstract, record or execute upon the Agreed Judgment as long as the Reorganized Debtor has complied with the terms of the promissory note and the Plan. At such time the promissory note is paid in full, including all outstanding and unpaid interest, the amount of the pocket judgment will be $800,000, and it will be released.

After the date on which the Reorganized Debtor has fully performed all obligations imposed upon the Reorganized Debtor under the promissory note, GreenLake agrees to return the Agreed

Judgment to the Reorganized Debtor's counsel and thereby release all claims against the Reorganized Debtor, Scott Krone, and Coda Design + Build, LLC.

| | |
|---|---|
| Claimant: | GreenLake ~~Real Estate Fund, LLC~~ |
| Security: | The Debtor's real estate |
| Amount to Be Paid: | $~~7,200,000~~8,139,150.00 |
| Secured/Unsecured | Secured |
| Interest Rate: | N/A |
| Distribution: | 100% |
| Status: | Impaired |

**There are no other Impaired Secured Claims**. Any other party asserting a security interest in any of the Debtor's assets shall be subject to having that lien discharged under this Plan.

a.   **Class 2 – Priority Tax Claims**: There are two Priority Tax  Claims within Class 2. The Class relates to the Allowed Priority Tax Claims having Priority Unsecured Status. The Cook County Treasurer holds the Class 2a Claim of $208,880.37 due to unpaid real estate taxes accrued during the 2020 and 2021 tax years. The Debtor also must pay the first installment of the 2022 real estate taxes, which equal $51,665.57. The total distributions to the Cook Treasurer equal $260,545.94. The Illinois Department of Revenue holds the Class 2b Claim of $544.05 Claim for the Debtor's failure to file an information return.

**Class 2a:**   In full and final satisfaction of the Class 2a Claims, the holder of the Class 2a Claim shall be paid in quarterly payments over five years (20 quarters) with interest at 18% per annum. The payments will allow them to receive 1/20th of the total each quarter with interest. The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter.

| | |
|---|---|
| Claimant: | Cook County Treasurer |
| Security: | None |
| Amount to Be Paid: | $385,625.09 |
| Secured/Unsecured | Unsecured |
| Interest Rate: | 18% |
| Distribution: | 100% |
| Status: | Impaired |

**Class 2b:** In full and final satisfaction of the Class 2b Claims, the holder of the Class 2b Claim shall be paid on the Effective Date.

| | |
|---|---|
| Claimant: | ~~Cook County Treasurer~~Illinois Department of Revenue |
| Security: | None |
| Amount to Be Paid: | $544.05 |
| Secured/Unsecured | Unsecured |
| Interest Rate: | N/A |
| Distribution: | 100% |

**-10-**

Status:                Impaired

b. **Class 3 Claims**: The Debtor divided Class 3 Claims into three subclasses. Each Class concerns Claims having Unsecured Status. Notwithstanding that the Debtor designated Claims in subclasses for organizational purposes, Class 3a, Class 3b, and Class 3c include all of the Allowed Claims held by any Unsecured Creditor, and all disputed, contingent, or unliquidated Allowed Unsecured Claims allowed as of the Effective Date. There are twenty-~~one (21~~three (23)) Unsecured Creditors. No Unsecured Claim shall accrue interest after the Petition Date. The Debtor owes these debts primarily due to issues with cash flow resulting from the mismanagement of its property by CubeSmart Self Storage, a third-party manager, and enormous borrowing costs. Class 3a includes all Unsecured Claims that are undisputed and equal to or greater than $10,000.00, other than the Class 3b and 3c Unsecured Claims. The Unsecured Creditors in each Class hold the following percentages of the total Unsecured Claims:

| | Total Claim | Percentage of Claims in Each Class |
|---|---|---|
| Total Unsecured Claims | $1,~~617,150.34~~610,450.31 | 100.~~00~~% |
| Class 3a - General Unsecured Creditors | $  ~~397,276.82~~361,154.39 | ~~24.57~~ 22.43% |
| Class 3b - Convenience Class | $  ~~20,786~~33,011.00 | ~~1.29~~ 2.05% |
| Class 3c – Schindler Elevator Unsecured Claim | $  17,197.40 | ~~74.15~~ 1.07% |
| Class 3d - Coda Design + Build, LLC Unsecured Claim | $1,199,087.52 | 74.~~15~~46% |

**Class 3a:** In full and final satisfaction of the Class 3a Claims, each Class 3a Claim Holder shall receive quarterly payments totaling 25% of their Claims over five years (20 quarters). The payments will allow them to receive 1/20th of the total each quarter. There are thirteen (13) claimants in Class 3a. The sum to be paid to Class 3a Claims is $99,319.21 and 6.29% of the net proceeds from litigation. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. ~~The~~After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of each Claimant's Claim.

**Class 3a Claimants:**

| Claimant | Claim | Distribution |
|---|---|---|

| | | |
|---|---|---|
| Artur Construction Inc. | $19,150.00 | $4,787.50 |
| Chicago Metro Fire Protection | $40,249.30 | $10,062.~~00~~33 |
| CubeSmart ~~Self Storage~~ Self Storage | $24,940.80 | $ 6,235.20 Contested Claim |
| Levin & Ginsburg | $158,271.09 | $39,567.77 |
| Margarito Sanchez | $12,250.00 | $ 3,062.50 Contested Claim |
| Metropolitan Fire Protection | $19,200.00 | $ 4,800.00 |
| SLS Electric | $15,000.00 | $ 3,750.00 |
| Tai Plumbing LLC | $14,320.50 | $ 3,580.13 |
| TK Audio Visual, LLC | $45,822.70 | $11,455.68 |
| WG Glass | $11,950.00 | $2,987.50 |

Total Class 3a            $361,154.39
Security:                 None
Amount to Be Paid:        $90,288.60 and 22.~~26~~43% of the net proceeds from litigation up to the amount of each Claim.
Pro Rata Cash Distribution:  25%
Secured/Unsecured:        Unsecured
Status:                   Impaired

**Class 3b Claimants**: Class 3b is a convenience class. In full and final satisfaction of the Class 3b Claims, the holder of each Class 3b Claim shall be paid in a single payment equal to 25% of their Claims. There are eight (8) claimants in Class 3b. The total to be paid to Class ~~3a~~3b Claims is $5,374.00 and 6.29% of the net proceeds from litigation. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. ~~The~~After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of each Claimant's Claim.

| Claimant | Claim | Distribution |
|---|---|---|
| A & S Masonry | $_5,525.00 | $1,381.25 |
| Batavia Damp Proofing | $_5,890.00 | $1,472.50 |

| | | |
|---|---|---|
| Custom Tile & Stone | $ _580.00 | $  145.00 |
| Dortrak | $_1,750.00 | $  437.50 |
| Ferguson Enterprises | $ _256.00 | $   64.00 |
| Internal Revenue Service | $ _100.00 | $   25.00 |
| Landworks Landscaping, LLC | $_2,700.00 | $  675.00 |
| Masters Drywall | $_1,000.00 | $  250.00 |
| Super Remodeling Inc. | $_6,000.00 | $1,500.00 |
| VFJ | $_9,210.00 | $2,302.50 |

Total Class 3b $45,161 $33,011.00
Security:                        None
Amount to Be Paid:        $8,436.50252.75 and 2.7805% of the net proceeds from
                                   litigation up to the amount of each Claim.
Pro Rata Cash Distribution:    25%
Secured/Unsecured:             Unsecured
Status:                          Impaired

**Class 3c Unsecured Claim of Schindler Elevator**: Schindler Elevator holds the Class 3c Unsecured Claim for $17,197.40 arising from a mechanics lien for which no equity exists to pay it. In full and final satisfaction of the Class 3c Claim, the holder shall be paid in quarterly payments equal to 25% of its Claim over five years (20 quarters). The payments will allow it to receive 1/20th of the total each quarter. The sum to be paid to Class 3c Claims is $4,299.35 and 1.05% of the net proceeds from litigation up to the amount of its Claim. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. The After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of Schindler Elevator's Claim.

The Debtor placed Schindler Elevator's Claim in a separate Class because its Claim arose from a mechanics lien, which differs in nature from operating Claims.

-13-

| | |
|---|---|
| Total Class 3c | $17,197.40 Contested Claim |
| Security: | None |
| Amount to Be Paid: | $4,299.35 and 1.~~06~~07% of the net proceeds from litigation up to the amount of its~~ ~~ Claim. |
| Pro Rata Cash Distribution: | 25% |
| Secured/Unsecured: | Unsecured |
| Status: | Impaired |

**Class 3d Unsecured Claim of Coda Design + Build, LLC** ~~—~~ Coda Design + Build, LLC's Claim arises from the deferral of payments to which it was entitled and for advances in made on the Debtor's behalf,

During the course of the construction of the Debtor's facility, Coda Design + Build, LLC served as the general contractor. Coda Design + Build, LLC deferred receipt of its fees for providing its contracting services. It paid subcontractors who were not paid by the Debtor or through loan advances. Coda Design + Build, LLC advanced funds on the Debtor's behalf to pay interest to GreenLake, Before the appointment of a state court receiver, Coda Design + Build, LLC provided management services and was entitled to fees that were accrued but unpaid. Coda Design + Build also paid CubeSmart's invoices for operations as well as interest payments to GreenLake

In full and final satisfaction of the Class 3d Claim, Coda Design + Build, LLC shall be paid in quarterly payments equal to 25% of its Claims over five years (20 quarters). The payments will allow it to receive 1/20th of the total each quarter. The sum to be paid to Coda Design + Build, LLC is $299,772.00 and 73.37% of the net proceeds from litigation up to the amount of its Claim. The percentage of the Claim is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. ~~The~~After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of Coda Design + Build, LLC's Claim.

The Debtor placed Coda Design + Build, LLC's Claim in a separate Class because, as a related entity to the Debtor, it is an insider, and the Debtor cannot consider its vote as a vote in favor of confirming a Plan of Reorganization.

| | |
|---|---|
| Coda Design + Build, LLC | $1,199,087.52 |
| Security: | None |
| Amount to Be Paid: | $299,771.88 and ~~73.90~~74.46% of the net proceeds from litigation up to the amount of its Claim. |
| Pro Rata Cash Distribution: | 25% |
| Secured/Unsecured: | Unsecured |
| Status: | Impaired |

Unless otherwise explicitly provided in this Plan, each Class 3 claimant waives:

(a) interest accruing after the Petition Date;
(b) penalties accruing after the Petition Date;
(c) the right to accelerate payment unless the Debtor defaults in its payments under this Plan after the Effective Date; and
(d) contractual attorney's fees accruing after the Petition Date.

c.   **Equity Interests**. ~~The~~Each of the Debtor's members ~~each~~ hold an ~~interest~~ Equity Interest due to ~~equity~~pre-petition contributions. ~~The~~No Person holding an Equity Interest will receive anything of value, including an interest in the Reorganized Debtor ~~will not make~~, as a result of any ~~distributions on account of their Interests~~contribution made before the Effective Date.

The investors who have contributed new monies to fund the Plan shall hold the Debtor's membership interests as reflected in Exhibit F.

**7.   Consensual Releases.**

1. ~~Release of Released Parties.  As of the Effective Date~~**Release of Scott Krone.** Scott Krone, who is the Debtor's Manager, guaranteed the repayment of GreenLake's pre-petition loan to the Debtor, which exposes him to liability for GreenLake's full Claim without the adjustment provided under the plan of reorganization. GreenLake has consented to the treatment of its Claim in Class 1, provided Scott Krone guarantees the Reorganized Debtor's payments.  On receipt of a monies equaling $8,139,150.00, whether as a result of the payment on Class 1 Secured Claim, proceeds of the CubeSmart Lawsuit, or funds received from Scott Krone or either of them, for good and valuable consideration, the adequacy of which is confirmed, including, without limitation, ~~the~~Scott Krone's service ~~of the Released Parties~~ before and during the Chapter 11 Case to facilitate the Debtor's reorganization and the implementation of the Plan, GreenLake ~~Real Estate Fund, LLC has agreed~~agrees to and shall conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever, and permanently release ~~the Released Parties~~Scott Krone from all Causes of Action, including any derivative claims asserted or assertible by or on behalf of GreenLake ~~Real Estate Fund, LLC~~and including any claims that GreenLake ~~Real Estate Fund, LLC~~, or ~~that any other Person~~its successor or ~~party claiming under or through GreenLake Real Estate Fund, LLC~~Assigns, would have presently or in the future been legally entitled to assert in its own right, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, any guaranty of the Debtor's obligations before or after the Petition Date. GreenLake~~ Real Estate Fund, LLC~~ agrees to execute and deliver all such additional documents consistent with the terms of the release and to take all such further actions as may be reasonably requested by the Released Parties to effectuate the terms and provisions of this paragraph.

b.   **Release of GreenLake** ~~Real Estate Fund, LLC.~~. As of the Effective Date, for good and valuable consideration, the adequacy of which is confirmed, the Released Parties have agreed to and shall conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever, and permanently release GreenLake ~~Real Estate Fund, LLC~~from all Causes of Action, including any derivative claims asserted or assertible by or on behalf of GreenLake ~~Real Estate Fund, LLC~~and including any claims that Released Parties, or that any other Person or party claiming under or through Released Parties, would have presently or in the future been legally entitled to assert in its or his own right, based on or relating to, or in any manner arising from, in whole or in part, ~~GreenLake Real Estate Fund, LLC's~~GreenLake's extension of credit to the Debtor, and any

-15-

guaranty of the Debtor's obligations before or after the Petition Date. The Released Parties agree to execute and deliver all such additional documents consistent with the terms of the release and to take all such further actions as may be reasonably requested by GreenLake ~~Real Estate Fund, LLC~~ to effectuate the terms and provisions of this paragraph,

**8.  Confirmation of Plan.**

The Bankruptcy Court has approved this Disclosure Statement under § 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Rules") or will do so at a combined hearing on the adequacy of this Disclosure Statement and the confirmation of the Plan. The Debtor is providing a copy of this Disclosure Statement to each Creditor whose Claim the Debtor has scheduled as undisputed, liquidated, and noncontingent or who has Filed a proof of claim in the Debtor's case. The Debtor intends that this Disclosure Statement will assist Creditors whose Claims are Impaired in evaluating the Plan and determining whether to accept or reject the Plan. Under the Bankruptcy Code, an interested party may not solicit acceptance of the Plan unless (a) that interested party furnishes a copy of a disclosure statement before or concurrently with solicitation or (b) the Bankruptcy Court has authorized the interested party to solicit votes.

Each Creditor should understand that the Bankruptcy Court's approval of this Disclosure Statement in no way constitutes an endorsement of the Plan by the Bankruptcy Court or a guarantee of the accuracy or completeness of the information.

A quick overview of the process for confirming a reorganization plan may prove useful. For a bankruptcy court to approve a proposed reorganization plan, the plan's proponent must show that the plan satisfies the 13 requirements of § 1129(a) of the Bankruptcy Code if they are applicable. With one exception, a plan must meet all 13 requirements. They are (1) the plan's compliance with Title 11, (2) the proponent's (in this Case - the Debtor's) compliance with Title 11, (3) the good faith proposal of the plan, (4) the disclosure of payments, (5) the identification of management, (6) the regulatory approval of rate changes, if applicable, (7) the "best interest" test, (8) the unanimous acceptance by Impaired Classes, (9) the treatment of administrative and Priority Claims, (10) the acceptance by at least one Impaired Class of Claims, (11) the feasibility of the Plan, (12) the bankruptcy fees, and (13) retiree benefits. See § 1129(a)(1)-(13) of the Bankruptcy Code.  If, however, a plan is not approved by all of the Impaired Classes, as generally required by § 1129(a)(8) of the Bankruptcy Code, it is still possible to confirm a plan. If at least one of the non-insider, Impaired Classes of Claims approves the Plan, then the Court may confirm the Plan if it meets two additional requirements. See § 1129(b) of the Bankruptcy Code. If the Bankruptcy Court finds that the Plan meets all of the applicable requirements of § 1129(a) of the Bankruptcy Code except for § 1129(a)(8) of the Bankruptcy Code, and also that the Plan does not discriminate unfairly between Impaired Classes and is fair and equitable to the rejecting Classes, then the Bankruptcy Court may confirm the Plan. See § 1129(b)(1)-(2) of the Bankruptcy Code.

**9.  Effect of Confirmation.**

Upon the Effective Date, any debt that arose before the Petition Date, and any debt of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, shall be discharged, except as otherwise provided in the Plan. This discharge shall be effective regardless of whether or not a

proof of claim is Filed or deemed Filed, a Claim is an Allowed Claim, or the holder of a Claim has accepted the Plan.

The Plan's provisions shall be binding upon the Debtor and any Creditor or equity security holder, whether or not such Creditor or equity security holder has accepted the Plan and regardless of whether the Claims of such Creditor or equity security holder are Impaired under the Plan. Upon the Effective Date, all Property of the Estate shall vest in the Debtor. Except as otherwise provided in the Plan, all property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and equity security holders.

**10.    Defined Terms.**

Most words or phrases in this Disclosure Statement have their usual and customary meanings. However, some words or phrases, when used in the context of the Plan and Disclosure Statement with initial capital letters, shall have the definitions in the Plan. Unless otherwise defined, the terms used in this Disclosure Statement shall have the same meaning as in the Bankruptcy Code or the Rules.

**11.    Persons Entitled to Vote on Plan.**

a.   In connection with Plan confirmation, the Bankruptcy Court will only count the votes of Classes of Creditors whose Claims are allowed and whom the Debtor seeks to impair under the Plan. Under §1129(a)(10) of the Bankruptcy Code, the Debtor cannot use the Class 3c Creditor's vote to determine whether a class of Creditors has accepted the Plan. Generally, and subject to the specific provisions of § 1124 of the Bankruptcy Code, this includes Creditors who, under the Plan, will receive less than payment in full in cash of the allowed amounts of their respective Claims on the "Effective Date." The Plan defines "Effective Date" as "the first Business Day occurring after the date on which the Confirmation Order becomes a Final Order." The Plan seeks to impair the Claims of pre-petition unsecured Creditors and equity security holders.

b.   Any Ballot accompanying this Disclosure Statement does not constitute a proof of claim. If you are uncertain whether your Claim has been correctly scheduled, you may examine the Debtor's schedules which are on file and may be inspected at the office of the Clerk of the Bankruptcy Court, 219 S. Dearborn Street, Chicago, Illinois 60604.

c.   Acceptances Necessary to Confirm Plan.

At the confirmation hearing, the Bankruptcy Court must determine whether each Class of Creditors whose Claims are Impaired by the Plan has accepted the Plan. Under §1126 of the Bankruptcy Code, an Impaired Class is deemed to have accepted the Plan if Creditors, other than any entity designated under § 1126(e), that holds (a) at least two-thirds in amount and (b) more than one-half in number of the Allowed Claims of the Class have voted to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an Impaired Class, the Bankruptcy Court must also determine whether, under the Plan, Class members will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Class members would receive

-17-

or retain if a Chapter 7 trustee liquidated the Debtor's property under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

d.   Confirmation of the Plan without Necessary Acceptances.

The Bankruptcy Court may confirm the Plan even if all of the Impaired Classes do not accept it if the Bankruptcy Court finds that at least one Impaired Class accepted the Plan and finds that the Plan does not discriminate unfairly against and is fair and equitable as to all non-accepting Impaired Classes. The Bankruptcy Code at §1129(b) contains the above-referenced provision and requires that, among other things, the Creditors in the Impaired Classes must either receive the full value of their Claims or, if they receive less, no holder of any interest that is junior to the interests of such Class will receive or retain under the Plan on account of such junior Claim any property. In seeking confirmation of the Plan, the Debtor may rely on § 1129 of the Bankruptcy Code for non-accepting Classes.

**12.        Sources of Information.**

a.   In preparing this Disclosure Statement, counsel for the Debtor relied upon and utilized the following:

      1.   Income and Expense Records;

      2.   Financial records; and Estimation of the Debtor's future income and financial information; and

      3.   Discussions with the Debtor.

**13.        Source of Funding**

The Debtor has obtained funds from investors and a commitment for a post-confirmation loan from a third party lender, Red Oak Capital Holdings, a fund with offices in Grand Rapids, Michigan and Irvine, California. Red Oak Capital Holdings is in the business of providing financing for similar projects and has no affiliation with the Debtor, its manager, or any of its members. Red Oak Capital Holdings will receive a first-priority lien on the Debtor's real estate and other assets. Exhibit C shows the Sources and Uses of Funds from Red Oak Capital Holdings. To the extent the loan proceeds are insufficient to pay Claims, thus the Debtor has received funds from certain of its pre-petition investors to fund the balance required under the Plan.

**14. Summary of Liquidation Analysis.**

The Debtor has limited or no assets available for liquidation and sale for the benefit of Unsecured Creditors due to the lien and judgment GreenLake Real Estate Fund, LLC holds. Exhibit DG explains the value of the Debtor's assets.

If the Bankruptcy Court converted the Debtor's case to a case under Chapter 7 of the Bankruptcy Code, the Debtor projects that no gross proceeds from the liquidation of assets would be available for any claimant other than GreenLake Real Estate Fund, LLC, while the Debtor pays the secured portion of its Claim under this Plan. While it is doubtful that any monies would be left over, if

such funds existed, the Chapter 7 trustee would pay them to Priority Tax Claims. There is no likelihood of the payment of any monies to Unsecured Creditors in a liquidation case. The Plan, however, proposes to pay the Class 3a, 3b, and 3c Creditors twenty-five percent (25%) of their Claims.

The Debtor believes the Plan is feasible.

**15.    Objection to Claims.**

A party that the Debtor lists as disputed, unliquidated, or contingent must File a proof of claim to receive a distribution. CubeSmart Self Storage, whose Claim the Debtor listed as disputed, Filed a proof of claim to which the Debtor intends to object. The Debtor will object to the secured status of Schindler Elevator's Claim. The Debtor reserves the right to object to any Claim after the Effective Date and have the Bankruptcy Court estimate the amount of any Allowed Claim.

**16.    Litigation.**

On the Petition Date, the Debtor was the defendant in ~~a foreclosure lawsuit filed by GreenLake Real Estate Fund, LLC in the Circuit Court of Cook County, Illinois. GreenLake Real Estate Fund, LLC~~the Foreclosure Lawsuit. GreenLake obtained a judgment and scheduled a foreclosure sale that would have occurred shortly after the Petition Date. Additionally, the Debtor is a defendant in a lawsuit filed in the Circuit Court of Cook County, Illinois concerning an unused water tower on its property on which TMobile placed transmitting equipment. ~~The Debtor derives no income from TMobile's use.~~ The City of Chicago ~~asserts~~asserted that the water tower ~~requires~~required repair, which the Debtor believes is TMobile's obligation. The Debtor removed the water tower and substantially complied with its obligation, which led to the City of Chicago's lawsuit.

The Debtor intends to File ~~a lawsuit against CubeSmart Self Storage for breach~~the Cubesmart Lawsuit before or shortly after the confirmation of ~~contract~~the Plan. Based on the nature of the claims and ~~fraud~~counsel's experience, the Debtor anticipates it will complete the litigation within two years. In addition, the Debtor may File preference lawsuits, which may increase the sums paid to Unsecured Creditors. The Debtor will use any litigation proceeds, whether through settlement or judgment, to pay Unsecured Claims up to the amount of the Claim stated on its schedules or a Filed Claim to which the Debtor has not objected. The Debtor does not anticipate filing any other lawsuits, nor is it aware of any litigation that a third party might ~~File~~file against it.

**17.    Modification.**

The Debtor expects that there will be no material change in the number or amount of these Claims before the hearing on confirmation. The Plan does not affect or impair any rights or obligations in which the Debtor's Creditors or shareholders may have interests or the relative priority or subordination thereof.

**18.    Unclaimed Distributions.**

If any distribution is returned to the Debtor as undeliverable, the Debtor will make a good faith effort to obtain the Creditor's address. However if the Debtor if address to which the Debtor delivered payment or the Creditor's address is not reasonably available, no further distributions

-19-

shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Checks issued by the Debtor on account of Allowed Claims that are not returned as undeliverable but are not negotiated within ~~sixty (60~~ninety (90) days from and after the date of issuance thereof shall be null and void. Any holder of an Allowed Claim that does not assert its rights under the Plan to receive a distribution within ~~ninety (90~~one hundred twenty (120) days from and after the date (a) such distribution is returned as undeliverable or (b) of the issuance of a check that has not been returned as undeliverable, but is null and void because it was not timely negotiated, shall have such holder's Claim for such distribution discharged and shall be forever barred from asserting any such Claim against the estate, the Debtor, or its assets. The Plan calls for more than one distribution and any Creditor whose funds escheat shall be eliminated from any future distributions. Any entities ultimately receiving undeliverable cash, voided checks, or unclaimed distributions shall not be entitled to interest or other accruals. Nothing in the Plan shall require the Debtor to make an extraordinary attempt to locate any holder of an Allowed Claim or an Allowed Interest. Any undeliverable and unclaimed distributions and distributions not made shall be the Debtor's property.

**19.     Best Interest of Unsecured Creditors.**

Notwithstanding acceptance of the Plan by Creditors, to confirm the Plan, the Bankruptcy Court must also independently determine that the Plan is in the best interests of all Classes of Creditors. The "best interest test" requires that the Bankruptcy Court find that the Plan provides to each member of an Impaired Class of Claims and interests a recovery that has a present value at least equal to the present value of the distribution which each such member would receive from the Debtor if the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code.

THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF EACH CLASS OF CREDITORS.

After considering the effect that a Chapter 7 liquidation would have on the value of the Debtor's assets, including the costs of a Chapter 7 liquidation, the adverse effect of a forced sale on the prices which could be realized for the Debtor's assets, THE DEBTOR BELIEVES THAT ALL IMPAIRED CLASSES OF CLAIMS WOULD NOT RECEIVE ANY DISTRIBUTION IN A CHAPTER 7 LIQUIDATION AND, ACCORDINGLY, THAT SUCH CLASSES WILL RECEIVE DISTRIBUTIONS UNDER THE PLAN WHICH HAVE A SIGNIFICANTLY GREATER PRESENT VALUE THAN THAT WHICH SUCH CLASSES WOULD RECEIVE IN A CHAPTER 7 LIQUIDATION OF THE DEBTOR.

**20.     Feasibility.**

As a condition to confirmation of the Plan, the Bankruptcy Code requires that the Bankruptcy Court find that confirmation is not likely to be followed by liquidation of the Debtor's assets or the need for further financial reorganization. The Bankruptcy Court also must find that the Debtor proposed the Plan in good faith and that the Plan and its provisions comply with all applicable sections of the Bankruptcy Code. Based on its projections, the Debtor believes the Plan is feasible and will not be followed by liquidation or further restructuring. The Debtor has proposed its Plan in good faith and believes that the Plan complies with all applicable sections of the Bankruptcy Code.

-20-

**21.    Manner of Voting on Plan.**

All Creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, and signing the Ballot for Accepting or Rejecting Plan (the "Ballot") accompanying this Disclosure Statement and Filing it with the Bankruptcy Court. The Ballot must be Filed electronically or by mailing the Ballot to the Clerk of the United States Bankruptcy Court, 219 S. Dearborn Street, Suite 710, Chicago, Illinois 60604. To be counted, all Ballots must be Filed or received by the Clerk of the Bankruptcy Court on or before _____, 2023 at 11:59 P.M.

**22.    Considerations Relevant to the Adoption of the Plan by the Debtor.**

In deciding to adopt the Plan to present to the Debtor's Creditors, the Debtor considered, among other things, the Debtor's present financial condition, the probable impact of the Plan on all interested parties, and the availability, or lack thereof, of a viable alternative to the Plan.

**23.    Consequences of Plan.**

The Debtor has not obtained a tax opinion and expresses no opinion as to the tax consequences to the holder of any Claim caused by the terms of the Plan. The Debtor advises and encourages all Creditors and other interested parties to obtain their own tax counsel to determine the tax consequences of this Plan.

BECAUSE THE DEBTOR EXPRESSES NO TAX OR LEGAL ADVICE, IN NO EVENT WILL THE DEBTOR, ITS AGENTS, OR ANY PROFESSIONAL ADVISOR OR ADVISORS ENGAGED BY ANY OF THEM BE LIABLE IF, FOR ANY REASON, THE TAX OR LEGAL CONSEQUENCES OF THE PLAN ARE OTHER THAN AS ANTICIPATED. ACCORDINGLY, CREDITORS AND INTEREST HOLDERS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX AND LEGAL CONSEQUENCES OF THIS PLAN.

**24. Executory Contracts and Unexpired Leases.** The Debtor is a party to 287 executory contracts concerning the lease of storage units at the Debtor's property, which the Debtor assumes as a part of this Plan. ~~Any other executory contracts are deemed rejected as of the Effective Date. All Claims arising from the rejection of executory contracts or unexpired leases under this Plan must be Filed within twenty (20) days~~The Debtor will not have any other executory contracts as of the Effective Date.

**25.    Disbursing Agent.**

The Debtor will be the disbursing agent for all Classes receiving payments under the Plan.

**26.    Conclusion.**

Based on the preceding, the Debtor recommends that all Creditors vote to accept the Plan.

**PLATFORM II LAWNDALE LLC**

-21-

By:   /s/ Scott Krone
Scott Krone, Manager

By:   /s/ Gregory J. Jordan
One of Its Attorneys

Gregory J. Jordan (ARDC# 6205510)
Mark Zito (ARDC# 6276231)
Jordan & Zito LLC
350 North LaSalle Drive, Suite 1100
Chicago Illinois 60654-4980
(312) 854-7181
gjordan@jz-llc.com
mzito@jz-llc.com

COUNSEL FOR PLATFORM II LAWNDALE LLC

**EXHIBIT A**

**PLAN OF REORGANIZATION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re PLATFORM II LAWNDALE LLC** | ) | **Chapter 11 Proceeding** |
| | ) | |
| | ) | **Case No. 22-07668** |
| **Debtor,** | ) | |
| | ) | **Hon. Deborah L. Thorne** |
| | ) | |

**AMENDED PLAN OF REORGANIZATION**

**Proposed by Platform II Lawndale LLC**

**Date: September 15, 2023**

**INTRODUCTION**

Platform II Lawndale LLC, the debtor and debtor in possession in this Chapter 11 case, (the "Debtor") proposes this Plan of Reorganization under § 1121(a) of the Bankruptcy Code (this "Plan").

This Plan is the Debtor's proposal for the Debtor's payment of the Claims of its Creditors as of the Petition Date.

The Debtor by this Plan solicits acceptances from all Creditors whose claims are Impaired. The Debtor believes that acceptance of this Plan would be in the Creditors' best interest. THE DEBTOR URGES ALL CREDITORS TO ACCEPT THIS PLAN.

**I.  DEFINITIONS AND INTERPRETATIONS**

The following terms shall have the meanings set forth in this Article I. Unless otherwise indicated, the singular shall include the plural and capitalized terms shall at all times refer to the terms as defined in this Article I. If the Debtor has not defined a term in this Plan, but that term is used in the Bankruptcy Code, then it shall have the meaning assigned to it in the Bankruptcy Code or in the decisions relating to the Bankruptcy Code.

A.    **Administrative Expense:** shall mean any cost, Claim, or expense of administration entitled to priority in accordance with the provisions of §§ 330, 503(b), and 507(a)(1) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any fees or charges assessed against or due from the Debtor's estate under 28 U.S.C. § 1930, and all fees and expenses of Professional Persons incurred after the Confirmation Date but prior to the Effective Date, and (b) any amounts required to be paid to assume executory contracts or unexpired leases in accordance with Article VIII of this Plan.

B.    **Allowed**:        shall mean, with respect to any Claim, except as otherwise provided:

1.   any Claim for which a proof of claim has been Filed with the Bankruptcy Court on or before the Bar Date:

(1) as to which no objection has been made to its allowance by the Claims Objection Bar Date,

(2) or as to which an objection was Filed and the Claim has been allowed by a Final Order;

2.   any Claim that is deemed to be Allowed ~~pursuant to~~under:

(1) any provision of this Plan,

(2) in any stipulation of the amount and nature of a Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, or

(3) in any stipulation with the Debtor of the amount and nature of a Claim executed on or after the Confirmation Date; and

3.   any Claim that has been scheduled by the Debtor in its schedules of liabilities as other than disputed, contingent, and unliquidated and as to which the Debtor or other Party in Interest has not Filed an objection by the Claims Objection Bar Date.

Unless otherwise specified by the Plan or by order of the Bankruptcy Court, Allowed Claims shall not include interest for the period from and after the Petition Date, nor shall they include any Claim that may be disallowed under § 502(d) of the Bankruptcy Code.

C.   **Allowed Priority Tax Claim**:- shall mean that portion of an Allowed Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

D.   **Allowed Secured Claim**: -shall mean a Secured Claim to the extent that, ~~pursuant to~~under § 506(a) of the Bankruptcy Code, such Claim is determined by a Final Order or provided in the Plan not to be an unsecured claim and (b) is an Allowed Claim.

E.   **Allowed Unsecured Claim**: -shall mean an Unsecured Claim to the extent that it is an Allowed Claim.

F.   **Assets**:- shall mean all tangible and intangible assets of every kind and nature of the Debtor and all proceeds thereof (including but not limited to cash proceeds), existing as of the Effective Date.

G.   **Avoidance Action**:- shall mean any actual or potential claim or cause of action arising under Chapter 5 of the Bankruptcy Code.

H.   **Ballot**:  shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Claims in Classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

-2-

I.      **Ballot Date**: shall mean the date set by the Bankruptcy Court as the last date for timely submission of a ballot accepting or rejecting the Plan.

J.      **Bankruptcy Code**: shall mean title 11 of the United States Code, as amended from time to time.

K.      **Bankruptcy Court**: shall mean the United States Bankruptcy Court for the Northern District of Illinois including the Hon. Deborah L. Thorne, the United States Bankruptcy Judge presiding in this case, or such other judge or Court that may have jurisdiction over this case. In the event of the filing an appeal, as used herein, the term shall also mean the United States District Court for the Northern District of Illinois, as the context dictates.

L.      **Bar Date**: shall mean the date set by the Bankruptcy Court as the last date for timely submission of a proof of claim on account of all Claims against the Debtor other than Administrative Claims**.**

M.      **Business Day**: shall mean any day other than a Saturday, Sunday or a legal holiday as defined in the Rules at Rule 9006(a).

N.      **Claim**: shall mean any right to payment from the Debtor that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

O.      **Claims Objection Bar Date**: shall mean the deadline fixed by the Bankruptcy Court for the Debtor or any other entity to File an objection to the allowance of any Claim.

P.      **Class**: shall mean any one of the classes of Claims described in Article II of the Plan.

Q.      **Collateral**: shall mean property in which the Debtor has an interest that secures, in whole or in part, the payment of a Claim.

R.      **Confirmation**: shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

S.      **Confirmation Date**: shall mean the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code; provided, however, that if the Confirmation Order is stayed on motion pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay.

T.      **Confirmation Hearing**: shall mean the hearing to confirm the Plan.

U.      **Confirmation Order**: shall mean the Order of the Bankruptcy Court (or District Court as the case may be) confirming this Plan under § 1129 of the Bankruptcy Code and approving the transactions contemplated in this Plan.

-3-

V.    **Contested Claim**:- shall mean any Claim against the Debtor (a) subject to a timely objection or request for estimation, or (b) that is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order, or (c) that is not an Allowed Claim.

W.    **Creditor**:- shall mean any Person having a Claim against the Debtor, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtors' estates of any kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code.

X.    ~~Debtor:~~ **CubeSmart Lawsuit**: shall mean an adversary proceeding against CubeSmart Self Storage for breach of contract and fraud.

~~X.~~Y.        **Debtor**: shall mean Platform II Lawndale LLC, the debtor in this case.

~~Y.~~Z.    -    **Disallowed Claims**:- shall mean a Claim to the extent that such Claim is disallowed by a Final Order or by written agreement of the holder thereof.

~~Z.~~AA.    ———**Disclosure Statement**:- shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court, together with all exhibits and supplements thereto, as amended, supplemented or modified, that is prepared and distributed in accordance with §§ 1125, 1126(b) and/or 1145 of the Bankruptcy Code and/or other applicable law.

~~AA.~~BB.    **Disputed**:- shall mean, with reference to any Claim against the Debtor, a Claim or any portion thereof, that is not an Allowed Claim including, but not limited to, Claims (1) (a) that the Debtor has not scheduled, or that the Debtor scheduled at zero or as contingent, unliquidated or disputed, (b) that are the subject of a proof of claim that differs in nature, amount or priority from the Debtor's schedules, or (c) as to which an objection has been interposed as of the deadline fixed by the Plan, as may be extended in accordance with the Plan and (2) the allowance or disallowance of which is not yet the subject of a Final Order.

~~BB.~~CC.    **District Court**:- shall mean the United States District Court for the Northern District of Illinois, Eastern Division including any United States District Judge presiding in this case or such other Court having jurisdiction over this case.

~~CC.~~DD.    **§ 1111(b) Election**: -shall mean a timely election, ~~pursuant to~~under § 1111(b) of the Bankruptcy Code and Rule 3014 of the Rules, by the holder of a Claim secured by Collateral to have its entire Claim treated as a Secured Claim under the Plan notwithstanding § 506(a) of the Bankruptcy Code.

~~DD.~~EE.    **Effective Date**:- shall mean the first Business Day which is ten (10) days (as calculated in accordance with Bankruptcy Rule 9006(a)) after the Confirmation Date, on which (a) the Confirmation Order is not stayed.

~~EE.~~FF.    **Fee Application**: -shall mean an application of a Professional Person under §§ 330 or 331 of the Code.

~~FF.~~GG.    ———**File, Filed, or Filing**: shall mean file, filed or filing with the Clerk of the Bankruptcy Court.

-4-

GG.HH.    **Final Order**:- shall mean an order or judgment of the Bankruptcy Court which (a) has not been reversed, stayed, vacated, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reargue, petition for certiorari or rehearing has been waived in a manner satisfactory to the Debtor, as a result of which such order shall have become final in accordance with applicable law or (b) if an appeal, reargument, certiorari or rehearing has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought or certiorari has been denied and time to take further appeal or to seek certiorari or further re-argument or rehearing has expired.

II.  **Foreclosure Lawsuit:** shall mean the lawsuit GreenLake filed against the Debtor and others in the Chancery Division of the Circuit Court of Cook County, Illinois, as case number 2020 CH 02969.

HH.JJ.    **Fund**:- shall mean $8,434,685.88 the total sum of monies to be paid out by the Debtor under the Plan.

KK.    **GreenLake:** shall mean the Debtor's secured Creditor, GreenLake Real Estate Fund LLC, whose loan is secured by a mortgage on the Debtor's storage facility.

LL.    **GreenLake Funding Date:** shall mean the Effective Date or such other date on which GreenLake, Red Oak Capital Holdings, and the Debtor shall agree.

II.MM. **Impaired**: -shall have the meaning set forth in § 1124 of the Bankruptcy Code.

JJ.NN.    **Party in Interest**: shall mean anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.

KK.OO.    **Person**:- shall mean a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

LL.PP.-    **Petition Date**:- shall mean the date on which the petition commencing this case under Chapter 11 was Filed, which was July 11, 2022.

MM.QQ.    **Plan**:- shall mean this Plan of Reorganization proposed by the Debtor either in its present form or as it may be amended or modified from time to time.

NN.RR.    **Pre-Confirmation Rights of Action**: -shall mean all rights, claims and causes of action, whether equitable or legal, of the estate against the Debtor or third persons (including the right to prosecute or compromise and settle such rights, claims, and causes of action) existing before the Confirmation Date, including, without limitation, any Avoidance Action.

OO.SS.    **Priority Tax Claim**: -shall mean that a Claim asserting priority under § 507(a)(8) of the Bankruptcy Code.

-5-

~~PP.~~ TT. -      **Professional Fees**:- shall mean fees requested or to be requested under §§ 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a professional for services rendered or expenses incurred in this case on or prior to the effective date.

~~QQ.~~ UU.      **Professional Persons**: ~~-~~shall mean all persons retained or to be compensated ~~pursuant to~~ under §§ 326, 327, 328, 330, 503(b), and 1103 of the Bankruptcy Code.

~~RR.      Released Parties: shall mean Scott Krone, the Debtor's Manager, and Martin Taradejna, the Debtor's former manager, both of whom guaranteed the repayment of the loan made by Greenlake Real Estate Fund, LLC to the Debtor.~~

VV.      **Reorganized Debtor:** shall mean Platform II Lawndale LLC, as constituted after the confirmation of this Plan.

~~SS.~~ WW.      **Rules**:- shall mean the Federal Rules of Bankruptcy Procedure recommended by the Judicial Conference of the United States, as prescribed by the Supreme Court of the United States, effective on the Petition Date in accordance with the provisions of 11 U.S.C. § 2075, as amended from time to time.

~~TT.~~ XX.      **Secured Claim**:- shall mean a Claim of a Creditor, arising on or before the Petition Date that is purportedly secured by a lien on Collateral or subject to set off under § 553 of the Bankruptcy Code, to the extent of the value of such holder's purported interest in the Debtor's interest in the property, or to the extent of the purported amount of the set-off, as applicable, provided, however, that if the Creditor is entitled to make and makes the § 1111(b) Election, the Creditor's Claim shall be a Secured Claim in the full amount of the Creditor's Claim.

~~UU.~~ YY.      **Subordinated Claim**: ~~-~~shall mean (a) a Claim subordinated for purposes of distribution to any Unsecured Claim in accordance with §§ 510(b) or 510(c) of the Bankruptcy Code, or (b) a Penalty Claim.

~~VV.~~ ZZ.      **Tax Claim**:- shall mean any Claim for taxes against the Debtor, including without limitation any interest and penalties due thereon, entitled to priority in payment ~~pursuant to~~ under §507(a)(8) of the Bankruptcy Code.

~~WW.~~ AAA.      **Undetermined Claim**:- shall mean a Claim that is not an Allowed Claim or a Disallowed Claim and is (a) a Contested Claim, (b) a Claim arising from the rejection of an executory contract or unexpired lease ~~pursuant to~~ under this Plan, (c) a claim that is unliquidated or contingent, (d) a Claim as to which, on or before the Effective Date, the Debtor has not made a determination whether or not to object or (e) an Administrative Expense.

~~XX.~~ BBB.      **Unimpaired**:  shall mean any Claim that is not Impaired within the meaning of § 1124 of the Bankruptcy Code

~~YY.~~ CCC.      **Unsecured Claim**: ~~-~~shall mean a Claim that is not a Secured Claim, a Priority Claim, a Tax Claim, or a Subordinated Claim.

ZZ. DDD.        Unsecured Creditor: shall mean any Creditor that is the holder of an Unsecured Claim.

## II.  CLASSIFICATION OF AMOUNTS OWING, CLAIMS AND INTEREST

A.  All Claims shall be fixed and determined as of the Petition Date.

B.  Classification. The Claims against the Debtor and the Equity Interests in the Debtor shall be classified in this Plan as follows:

1.  Administrative Expenses

2.  Class 1 – Secured Claim of Greenlake Real Estate Fund, LLCGreenLake

3.  Class 2a – Priority Tax Claims of the Illinois Department of Revenue

4.  Class 2b – Priority Tax Claims of the Cook County Treasurer

5.  Class 3a – General Unsecured Claims

6.  Class 3b – Convenience Class Claims

7.  Class 3c – Schindler Elevator Unsecured Claim

8.  Class 3d – Coda Design + Build, LLC Claim

9.  Equity Interests

C.  Resolution of Disputes: Disputes regarding the proper classification of Claims shall be resolved pursuant tousing the procedures established in the Bankruptcy Code, the Rules and other applicable laws. The Bankruptcy Court shall have exclusive jurisdiction over disputes concerning the classification of Claims. Resolution of any such disputes shall not be a condition precedent to Confirmation or Consummation of the Plan

D.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class.

E.  Distributions on Disputed Claims: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

## III.TREATMENT OF UNIMPAIRED AND UNCLASSIFIED CLAIMS

The following Class is unimpaired by the Plan in accordance with § 1124 of the Bankruptcy Code or is not required to be classified in this Plan of Reorganization under the provisions of the Bankruptcy Code.

A.  **Administrative Expenses**:- These claimants represent Claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash, or as otherwise agreed, through a one-time payment under this Plan beginning on the first day of the first whole month following confirmation of this Plan; provided, however, that an Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor shall be paid by the Debtor under the terms and conditions of any agreements relating to such obligation, along with accruing real estate taxes. Payment of Professional Fees shall be subject to the provisions of §§ 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. –United States Trustee and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due after that. The source of payment for these amounts will be the Debtor's income and proceeds of a post-confirmation loan obtained from Red Oak Capital to fund the Plan. The Debtor expects Administrative Claims will be approximately $363,000.00 as of the Effective Date. The Debtor will also pay the loan fees set forth in Exhibit C to the Disclosure Statement.

## IV. TREATMENT OF IMPAIRED CLAIMS AND EQUITY INTERESTS

The Claims in the Classes listed below are Impaired by the Plan:

**Class 1 -** ~~Secured Claim:~~ -GreenLake ~~Real Estate Fund, LLC~~ holds the Class 1 Secured Claim for $~~7,200,000~~8,139,150.00 arising from a loan secured by the Debtor's real estate and personal property. The Class 1 Secured Claim is Impaired. ~~GreenLake Real Estate Fund, LLC's~~GreenLake's loan matured, and it obtained a judgment against the Debtor. The Reorganized Debtor will pay $7,200,000.00 of the secured portion of ~~GreenLake Real Estate Fund, LLC's~~GreenLake's Claim on the ~~Effective Date. In exchange for the payment on GreenLake Real Estate Fund, LLC's Class 1 Secured Claim, it will release its mortgage lien, all other security interests on the Debtor's assets, third-party guarantees of the Claim against~~GreenLake Funding Date and the remainder through the satisfaction of a new $939,150.00 promissory note, attached as Exhibit D, and proceeds that the Debtor~~, and claims against third parties arising~~ might receive from the ~~loan~~ CubeSmart Lawsuit up to the amount of the Class 1 Secured Claim as described below.

The Debtor~~, In~~ will derive the ~~event GreenLake Real Estate Fund, LLC~~ initial $7,200,000 payment to GreenLake through the Red Oak Capital Holdings loan and new equity investments. As a part of the payment to the Class 1 Secured Claim, Red Oak Capital Holdings will receive a first-priority lien on the Debtor's real estate and other assets.

On receipt of the $7,200,000.00 payment, GreenLake will simultaneously release its mortgage lien and all security interests on the Reorganized Debtor's assets.

Upon receipt of the $7,200,000.00 payment, GreenLake and the Reorganized Debtor will jointly move the Cook County Circuit Court to enter an order, reopening the foreclosure portion of the Foreclosure Lawsuit for the sole purpose of dismissing the foreclosure count of the Complaint with prejudice and for entry of a stipulated order that provides that the remaining claims will be voluntarily dismissed without prejudice and with leave to reinstate.

-8-

If GreenLake does not execute a release of mortgage, and of any UCC-3 financing statement, third-party guarantees, and claims against third parties statements after receipt and posting of funds as confirmed in writing by GreenLake, the Debtor shall, simultaneously with the delivery of funds, be empowered to execute such releases as GreenLake Real Estate Fund, LLC's GreenLake's attorney in fact.

On the GreenLake Funding Date, the Reorganized Debtor will execute the promissory note on the Effective Date that shall bear simple interest at seven and one-half percent (7.50%) per annum. Scott Krone, the Reorganized Debtor's manager, and Coda Design + Build LLC will execute guaranties to jointly and severally ensure payment of the promissory note. Scott Krone, Coda Design + Build LLC, and GreenLake have agreed on the terms of the guaranties, which will be executed at or before the closing of the Red Oak Capital Holdings loan.

The promissory note requires the Reorganized Debtor to deliver monthly interest payments. Interest will be allocated and payable in two forms. During the first year, the Reorganized Debtor must pay thirty-five percent (35%) of the interest accruing each month with sixty-five percent (65%) deferred. During the second year, the Debtor must pay fifty percent (50%) of the interest accruing each month with fifty percent (50%) deferred.

GreenLake will apply all payments from any source first to costs and fees incurred, second to interest that comes due, third to deferred interest, and fourth to reduce the principal balance. The deferred interest will be due on maturity, early payoff, or an event of default or acceleration. GreenLake will provide monthly statements for the promissory note.

The promissory note will have a three (3) year term; however, the Reorganized Debtor will have an extension option for an additional two (2) years provided the Reorganized Debtor pays the deferred interest and there is no event of default under the promissory note.

The promissory note will contain standard financial reporting requirements. The Reorganized Debtor and guarantors will execute new or amended additional loan documents through a separate agreement between GreenLake and those parties.

The promissory note will contain a standard costs and attorneys' fees provision under which GreenLake will be entitled to seek all costs and fees incurred in connection with the promissory note and exercising its remedies thereunder.

Scott Krone and Coda Design + Build LLC will provide a payment direction letter related to any distribution to Scott Krone outside the ordinary course of business. Coda Design + Build, LLC, and the entities in which Scott Krone and/or Coda Design + Build LLC have a direct or indirect interest, including, but not limited to, Platform II - Lawndale, Chicago, Platform II - Wisconsin, Milwaukee, Platform III - Floyd, Louisville, Platform II - Superior, Toledo, Platform III - Third St, Dayton.

**Commented [GJ2]:** Scott will draw a salary from Coda to feed his family. I struck "Coda Management," which is not an existing entity.

Under the terms of the Plan and in addition to payments under the promissory note, GreenLake will receive the net proceeds received from the CubeSmart lawsuit after payment of the Reorganized Debtor's attorney's fees and costs up to $939,150.00 plus accrued and unpaid interest under the promissory note, and the amounts will be applied to the outstanding amounts due under the promissory note in the order identified in the promissory note.

To ensure payment, the Reorganized Debtor will execute, deliver on the GreenLake Funding Date, and irrevocably consent to the entry of the order of judgment in the sum of $1,600,000 less any and all amounts previously paid, in the form attached as Exhibit E (the "Agreed Judgment"); provided however, that GreenLake shall not file or request entry of the Agreed Judgment except as specifically permitted in the Plan. The original signed Agreed Judgment shall be held in trust by GreenLake's counsel, Sandberg Phoenix, who shall be authorized to deliver the Agreed Judgment for entry in the Foreclosure Lawsuit only due to an uncured default by Reorganized Debtor under the promissory note. The promissory note will allow for a sixty (60) day cure period that begins upon notice from GreenLake of an event of default. Notice will be provided by electronic mail pursuant to a notice provision in the parties' loan agreement.

If the Reorganized Debtor pays $139,150.00 to reduce the principal balance owing under the promissory note, the amount of the Agreed Judgment shall be reduced for each dollar of principal thereafter paid on the promissory Note. The amount of the Agreed Judgment shall not be reduced for interest payments or fees and costs due and paid under the promissory note. Any amounts received under the promissory note shall first be applied to outstanding non-accrued interest and costs.

GreenLake and its counsel agree not to file, abstract, record or execute upon the Agreed Judgment as long as the Reorganized Debtor has complied with the terms of the promissory note and the Plan. At such time the promissory note is paid in full, including all outstanding and unpaid interest, the amount of the pocket judgment will be $800,000, and it will be released.

After the date on which the Reorganized Debtor has fully performed all obligations imposed upon the Reorganized Debtor under the promissory note, GreenLake agrees to return the Agreed Judgment to the Reorganized Debtor's counsel and thereby release all claims against the Reorganized Debtor, Scott Krone, and Coda Design + Build, LLC.

| | |
|---|---|
| Claimant: | GreenLake ~~Real Estate Fund, LLC~~ |
| Security: | The Debtor's real estate |
| Amount to Be Paid: | $~~7,200,000~~8,139,150.00 |
| Secured/Unsecured | Secured |
| Interest Rate: | N/A |
| Distribution: | 100% |
| Status: | Impaired |

**There are no other Impaired Secured Claims**. Any other party asserting a security interest in any of the Debtor's assets shall be subject to having that lien discharged under this Plan.

    a.   **Class 2 – Priority Tax Claims**: There are two Priority Tax Claims within Class 2. The Class relates to the Allowed Priority Tax Claims having Priority Unsecured Status. The Cook County Treasurer holds the Class 2a Claim of $208,880.37 due to unpaid real estate taxes accrued during the 2020 and 2021 tax years. The Debtor also must pay the first installment of the 2022 real estate taxes, which equal $51,665.57. The total distributions to the Cook Treasurer equal $260,545.94. The Illinois Department of Revenue holds the Class 2b Claim of $544.05 Claim for the Debtor's failure to file an information return.

**Class 2a:**- In full and final satisfaction of the Class 2a Claims, the holder of the Class 2a Claim shall be paid in quarterly payments over five years (20 quarters) with interest at 18% per annum. The payments will allow them to receive 1/20th of the total each quarter with interest. The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter.

Claimant:- Cook County Treasurer

| | |
|---|---|
| Security: | None |
| Amount to Be Paid: | $385,625.09 |
| Secured/Unsecured | Unsecured |
| Interest Rate: | 18% |
| Distribution: | 100% |
| Status: | Impaired |

**Class 2b:** In full and final satisfaction of the Class 2b Claims, the holder of the Class 2b Claim shall be paid on the Effective Date.

Claimant:- Illinois Department of Revenue

| | |
|---|---|
| Security: | None |
| Amount to Be Paid: | $544.05 |
| Secured/Unsecured | Unsecured |
| Interest Rate: | N/A |
| Distribution: | 100% |
| Status: | Impaired |

b. **Class 3 Claims:**- The Debtor divided Class 3 Claims into three subclasses. Each Class concerns Claims having Unsecured Status. Notwithstanding that the Debtor designated Claims in subclasses for organizational purposes, Class 3a, Class 3b, and Class 3c include all of the Allowed Claims held by any Unsecured Creditor, and all disputed, contingent, or unliquidated Allowed Unsecured Claims allowed as of the Effective Date. There are twenty-one (21) three (23) Unsecured Creditors. No Unsecured Claim shall accrue interest after the Petition Date. The Debtor owes these debts primarily due to issues with cash flow resulting from the mismanagement of its property by CubeSmart Self Storage, a third-party manager, and enormous borrowing costs. Class 3a includes all Unsecured Claims that are undisputed and equal to or greater than $10,000.00, other than the Class 3b and 3c Unsecured Claims. The Unsecured Creditors in each Class hold the following percentages of the total Unsecured Claims:

| | Total Claim | Percentage of Claims in Each Class |
|---|---|---|
| Total Unsecured Claims | $1,617,150.34 610,450.31 | 100.00% |

**-11-**

| | | |
|---|---|---|
| Class 3a - General Unsecured Creditors | $ ~~397,276.82~~361,154.39 | ~~24.57~~ 22.43% |
| Class 3b - Convenience Class | $ ~~20,786~~33,011.00 | ~~1.29~~ 2.05% |
| Class 3c – Schindler Elevator Unsecured Claim | $ 17,197.40 | ~~74.15~~ 1.07% |
| Class 3d - Coda Design + Build, LLC Unsecured Claim | $1,199,087.52 | ~~74.15~~46% |

**Class 3a:**- In full and final satisfaction of the Class 3a Claims, each Class 3a Claim Holder shall receive quarterly payments totaling 25% of their Claims over five years (20 quarters). The payments will allow them to receive $1/20^{th}$ of the total each quarter. There are thirteen (13) claimants in Class 3a. The sum to be paid to Class 3a Claims is $99,319.21 and 6.29% of the net proceeds from litigation. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. ~~The~~After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of each Claimant's Claim.

**Class 3a Claimants**:

| Claimant | Claim | Distribution |
|---|---|---|
| Artur Construction Inc. | $19,150.00 | $4,787.50 |
| Chicago Metro Fire Protection | $40,249.30 | $10,062.~~00~~33 |
| CubeSmart ~~SelfStorage~~Self Storage | $24,940.80 | $ 6,235.20 Contested Claim |
| Levin & Ginsburg | $158,271.09 | $39,567.77 |
| Margarito Sanchez | $12,250.00 | $ 3,062.50 Contested Claim |
| Metropolitan Fire Protection | $19,200.00 | $ 4,800.00 |
| SLS Electric | $15,000.00 | $ 3,750.00 |
| Tai Plumbing LLC | $14,320.50 | $ 3,580.13 |
| TK Audio Visual, LLC | $45,822.70 | $11,455.68 |
| WG Glass | $11,950.00 | $2,987.50 |

**-12-**

Total Class 3a————————————————————$361,154.39
Security:————————————————————None
Amount to Be Paid:        $90,288.60 and 22.2643% of the net proceeds from
                          litigation up to the amount of each Claim.
Pro Rata Cash Distribution:    25%
Secured/Unsecured:             Unsecured
Status:                        Impaired

**Class 3b Claimants**: Class 3b is a convenience class. In full and final satisfaction of the Class 3b Claims, the holder of each Class 3b Claim shall be paid in a single payment equal to 25% of their Claims. There are eight (8) claimants in Class 3b. The total to be paid to Class 3a3b Claims is $5,374.00 and 6.29% of the net proceeds from litigation. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. TheAfter the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of each Claimant's Claim.

| Claimant | Claim | Distribution |
|---|---|---|
| A & S Masonry | $_5,525.00 | $1,381.25 |
| Batavia Damp Proofing | $_5,890.00 | $1,472.50 |
| Custom Tile & Stone | $ _580.00 | $ 145.00 |
| Dortrak | $_1,750.00 | $ 437.50 |
| Ferguson Enterprises | $ _256.00 | $ 64.00 |
| Internal Revenue Service | $ _100.00 | $ 25.00 |
| Landworks Landscaping, LLC | $_2,700.00 | $ 675.00 |
| Masters Drywall | $_1,000.00 | $ 250.00 |
| Super Remodeling Inc. | $_6,000.00 | $1,500.00 |
| VFJ | $_9,210.00 | $2,302.50 |
| Total Class 3b———————— | $45,161 | $33,011.00 |

Security:                 None
Amount to Be Paid:        $8,436.50252.75 and 2.7805% of the net proceeds from
                          litigation up to the amount of each Claim.
Pro Rata Cash Distribution:    25%

-13-

Secured/Unsecured:          Unsecured
Status:                     Impaired

**Class 3c Unsecured Claim of Schindler Elevator**: Schindler Elevator holds the Class 3c Unsecured Claim for $17,197.40 arising from a mechanics lien for which no equity exists to pay it. In full and final satisfaction of the Class 3c Claim, the holder shall be paid in quarterly payments equal to 25% of its Claim over five years (20 quarters). The payments will allow it to receive 1/20th of the total each quarter. The sum to be paid to Class 3c Claims is $4,299.35 and 1.05% of the net proceeds from litigation up to the amount of its Claim. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. TheAfter the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of Schindler Elevator's Claim.

The Debtor placed Schindler Elevator's Claim in a separate Class because its Claim arose from a mechanics lien, which differs in nature from General Unsecured operating Claims.

| | |
|---|---|
| Total Class 3c–_____ | $17,197.40 Contested Claim |
| Security: | None |
| Amount to Be Paid: | $4,299.35 and 1.0607% of the net proceeds from litigation up to the amount of its Claim. |
| Pro Rata Cash Distribution: | 25% |
| Secured/Unsecured: | Unsecured |
| Status: | Impaired |

**Class 3d Unsecured Claim of Coda Design + Build, LLC –– Coda Design + Build, LLC's Claim arises from the deferral of payments to which it was entitled and for advances in made on the Debtor's behalf,**

During the course of the construction of the Debtor's facility, Coda Design + Build, LLC served as the general contractor. Coda Design + Build, LLC deferred receipt of its fees for providing its contracting services. It paid subcontractors who were not paid by the Debtor or through loan advances. Coda Design + Build, LLC advanced funds on the Debtor's behalf to pay interest to GreenLake, Before the appointment of a state court receiver, Coda Design + Build, LLC provided management services and was entitled to fees that were accrued but unpaid. Coda Design + Build also paid CubeSmart's invoices for operations as well as interest payments to GreenLake

In full and final satisfaction of the Class 3d Claim, Coda Design + Build, LLC shall be paid in quarterly payments equal to 25% of its Claims over five years (20 quarters). The payments will allow it to receive 1/20th of the total each quarter. The sum to be paid to Coda Design + Build, LLC is $299,772.00 and 73.37% of the net proceeds from litigation up to the amount of its Claim. The percentage of the Claim is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar

-14-

quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. ~~The~~After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of Coda Design + Build, LLC's Claim.

The Debtor placed Coda Design + Build, LLC's Claim in a separate Class because, as a related entity to the Debtor, it is an insider, and the Debtor cannot consider its vote as a vote in favor of confirming a Plan of Reorganization.

| | |
|---|---|
| Coda Design + Build, LLC | $1,199,087.52 |
| Security: | None |
| Amount to Be Paid: | $299,771.88 and ~~73.90~~74.46% of the net proceeds from litigation up to the amount of its Claim. |
| Pro Rata Cash Distribution: | 25% |
| Secured/Unsecured: | Unsecured |
| Status: | Impaired |

Unless otherwise ~~specifically~~explicitly provided in this Plan, each Class ~~3c~~3 claimant waives:

      (a)     interest accruing after the Petition Date;
      (b)     penalties accruing after the Petition Date;
      (c) the right to accelerate payment unless the Debtor defaults in its payments under this Plan after the Effective Date; and
      (d)     contractual attorney's fees accruing after the Petition Date.

A.  **Equity Interests.** ~~The members of the Debtor each hold of an Interest as a result of any equity the Debtor has in Estate assets. No distributions shall be made on account of the their Interests.~~

    1.  Each of the Debtor's members hold an Equity Interest due to pre-petition contributions. No Person holding an Equity Interest will receive anything of value, including an interest in the Reorganized Debtor, as a result of any contribution made before the Effective Date.

    2.  The investors who have contributed new monies to fund the Plan shall hold the Debtor's membership interests as reflected in Exhibit F.

B.  **Consensual Releases**.

    1.  ~~Release of Released Parties. As of the Effective Date~~**Release of Scott Krone.** Scott Krone, who is the Debtor's Manager, guaranteed the repayment of GreenLake's pre-petition loan to the Debtor, which exposes him to liability for GreenLake's full Claim without the adjustment provided under the plan of reorganization. GreenLake has consented to the treatment of its Claim in Class 1, provided Scott Krone guarantees the Reorganized Debtor's payments. On receipt of a monies equaling $8,139,150.00, whether as a result of the payment on Class 1 Secured Claim, proceeds of the CubeSmart litigation, or funds received from Scott Krone or either of them, for

**-15-**

good and valuable consideration, the adequacy of which is confirmed, including, without limitation, ~~the~~Scott Krone's service ~~of the Released Parties~~ before and during the Chapter 11 Case to facilitate the Debtor's reorganization and the implementation of the Plan, GreenLake ~~Real Estate Fund, LLC has agreed~~agrees to and shall conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever, and permanently release ~~the Released Parties~~Scott Krone from all Causes of Action, including any derivative claims asserted or assertible by or on behalf of GreenLake ~~Real Estate Fund, LLC~~ and including any claims that GreenLake ~~Real Estate Fund, LLC,~~ or ~~that any other Person~~its successor or ~~party claiming under or through GreenLake Real Estate Fund, LLC~~assigns, would have presently or in the future been legally entitled to assert in its own right, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, any guaranty of the Debtor's obligations before or after the Petition Date. GreenLake ~~Real Estate Fund, LLC~~ agrees to execute and deliver all such additional documents consistent with the terms of the release and to take all such further actions as may be reasonably requested by the Released Parties to effectuate the terms and provisions of this paragraph,

2. **Release of GreenLake ~~Real Estate Fund, LLC~~.** As of the Effective Date, for good and valuable consideration, the adequacy of which is confirmed, the Released Parties have agreed to and shall conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever, and permanently release GreenLake ~~Real Estate Fund, LLC~~ from all Causes of Action, including any derivative claims asserted or assertible by or on behalf of GreenLake ~~Real Estate Fund, LLC~~ and including any claims that Released Parties, or that any other Person or party claiming under or through Released Parties, would have presently or in the future been legally entitled to assert in its or his own right, based on or relating to, or in any manner arising from, in whole or in part, ~~GreenLake Real Estate Fund, LLC's~~GreenLake's extension of credit to the Debtor, and any guaranty of the Debtor's obligations before or after the Petition Date. The Released Parties agree to execute and deliver all such additional documents consistent with the terms of the release and to take all such further actions as may be reasonably requested by GreenLake ~~Real Estate Fund, LLC~~ to effectuate the terms and provisions of this paragraph,

**V.  CLAIMS RESOLUTION**

A. **Bar Date for Filing of Administrative Expense Claims Other Than Claims for Professional Fees Earned in This Case**: -The Debtor has Filed a motion seeking a determination of the date by which Claims must be Filed ~~by June 1, 2023~~within forty-five days of the Effective Date.

B. **Bar Date for Filing of Claims for Professional Fees Earned in This Case**:- Any Professional Person asserting a Claim for pre-confirmation services and expenses shall File a Fee Application not later than forty-five days after the Effective Date.

C. **Resolution of Undetermined Claims**: -To the extent that the Debtor seeks to dispute or adjudicate the amount of any Claim the Debtor will File any objection or other pleading (a) with regard to any governmental claim thirty (30) days after such claim is filed, and with regard to any other claim within thirty (30) days of the Effective Date.

-16-

D. **Distributions on Disputed Claims**:- Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

## VI. LITIGATION

A. **No Waiver**.        Unless a Claim or cause of action against a Person is expressly waived, relinquished, released, compromised or settled by the Debtor or its estate, the Debtor and its estate expressly reserve such Claim or cause of action for later adjudication by the Debtor or its estate, including, but not limited to, Claims and causes of action not specifically identified or which the Debtor may be presently unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those which the Debtor now believes to exist.

## VII.   DISTRIBUTION OF FUNDS

Means of Distribution:- The Debtor shall be responsible for making all distributions in accordance with the terms of the Plan.

## VIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is a party to 287 executory contracts concerning the lease of storage units at the Debtor's property, which the Debtor assumes as a part of this Plan. -Any other executory contracts are deemed rejected as of the Effective Date.- All Claims arising from the rejection of executory contracts or unexpired leases under this Plan must be Filed within twenty (20) days of the Effective Date.

## IX. INJUNCTION.

**Unless after notice and a hearing, the Court enters an order providing for the Debtor's discharge at an earlier date, the Debtor will not receive a discharge of its indebtedness until its completes all payments under the Plan. -A discharge will discharge the Debtor to the maximum extent allowed under §§ 1141, 523, and actions by Creditors to the full extent provided for in § 524.**

## X.  IMPLEMENTATION AND FUNDING OF THE CASE

A. **Funding Source**. -The Debtor will retain all of its assets and will be obligated to make the payments required under the Plan. The Debtor has obtained a commitment for a post-confirmation loan from Red Oak Capital Holdings. Exhibit C to the Disclosure Statement shows the Sources and Uses of Funds from Red Oak Capital Holdings. The Debtor will obtain ~~additonal~~additional sums ~~for~~from investors to pay its obligations under the Plan and otherwise fund payments from income generated from its storage business.

B. **Vesting of Assets**. ~~Pursuant to~~Under the provisions of §§ 1141(b) and 1141(c) of the Bankruptcy Code, and consistent with the terms hereof, all of the Assets and effects of the

Debtor including, without limitation, all assets, interests, property, or rights transferred or assigned to the respective Debtor, as reorganized, and shall vest in the Debtor, as reorganized, on the Effective Date free and clear of all Claims, Liens, encumbrances, charges and other interests of the holders of Claims and Equity Interests, except as otherwise provided in this Plan.

C.  All assets of the Debtor shall remain assets of the Debtor, free and clear of all liens, Claims, encumbrances and interests, except those that are expressly created or preserved under the terms of this Plan. Included in those assets shall be all personal property and general intangibles.

D.  **Distributions**. -In order to receive a distribution under this Plan each and every Creditor who elects to participate in the distributions provided for under this Plan warrants that it is authorized to accept, in consideration of its Claim against the Debtor, the distributions for which this Plan provides and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

## XI. GENERAL PROVISIONS

A.  **Extension of Payment Dates**: -If any installment payment under this Plan falls due on a Saturday, Sunday or a Legal Holiday, then such due date shall be extended to the next following Business Day.

B.  **Transfer of Claims**:- In the event that the holder of any Claim shall transfer such Claim, it shall immediately advise the Debtor in writing of such transfer. The Debtor shall be entitled to assume that each Creditor has not transferred its Claim unless and until the Debtor has received written notice to the contrary. -Each transferee of a Claim shall take such Claim subject to the provisions of this Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under this Plan of the transferor.

C.  **Captions**:- Captions used in this Plan are for convenience only and shall not affect the construction of this Plan.

D.  **Severability**:- Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

E.  **Successors and Assigns**:- The rights and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors or assigns of such person.

F.  **Right to Take Action**:    After the Effective Date, the Debtor shall have the right to take any and all actions they deems necessary or appropriate to litigate, compromise or settle any litigation claim, subject to Court Approval.

G.  **Returned Distributions and Uncashed Checks**.        If any distribution is returned to the Debtor as undeliverable, no further distributions shall be made to such holder unless and until the

-18-

Debtor is notified in writing of such holder's then current address. Checks issued by the Debtor on account of Allowed Claims that are not returned as undeliverable, but are not negotiated within sixty (60) days from and after the date of issuance thereof shall be null and void. Any holder of an Allowed Claim that does not assert its rights ~~pursuant to~~under the Plan to receive a distribution within ninety (90) days from and after the date (a) such distribution is returned as undeliverable, or (b) of the issuance of a check that has not been returned as undeliverable, but is null and void because it was not timely negotiated, shall have such holder's Claim for such distribution discharged and shall be forever barred from asserting any such Claim against the estate, the Debtor or its assets. In the event that there is more than one distribution under the Plan, any Creditor whose funds escheat shall be eliminated from any future distributions. Any entities ultimately receiving undeliverable cash, voided checks, or unclaimed distributions shall not be entitled to interest or other accruals of any kind. Notwithstanding the preceding statements, the Debtor has an obligation to use its best efforts to locate each Creditor's updated addresses and will do so.

H.  **Set-Offs**.  ~~Pursuant to~~Under § 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Debtor may set-off the distributions to be made ~~pursuant to~~under the Plan against any Allowed Claim; provided however, that neither the failure to effect a set-off nor the allowance of any Claim shall constitute a waiver or release of such Claims, right or cause of action.

I.  **Distributions to Contested Claims**.     No distribution shall be required to be made with respect to any portion of a Contested Claim pending the resolution thereof in the manner prescribed herein.

J.  **Notices**.    Until further notice is given by parties to the terms hereof, all notices to be given under the Plan shall be sent by First Class Mail, postage prepaid, addressed to:

Debtor:                                   With a copy to:

Platform II Lawndale LLC                   Gregory J. Jordan
600 Waukegan Road, Suite 129              Jordan & Zito, LLC
Northbrook, Illinois 60062                350 North LaSalle Drive, Suite 1100
Attn: Scott Krone                         Chicago, Illinois 60654
                                          gjordan@jz-llc.com

       Until further notice given ~~pursuant~~under to the terms hereof, all notices to be given hereunder shall be given by electronic mail to all parties authorized to participate in the Court's CM/ECF system or First Class Mail to all effected parties and all persons on the service list in the Debtor's bankruptcy case with sufficient notice in accordance with the Court's local rules.

**XII.    RETENTION AND ENFORCEMENT OF CLAIMS**

       ~~Pursuant to~~Under § 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions contained herein, the Debtor shall retain for the benefit of the holders of Claims and may enforce any and all Claims of the Debtor including preference and other avoidance claims available under the Bankruptcy Code, if any.

**XIII.   MODIFICATION OF THIS PLAN**

-**19**-

A. **Pre-Confirmation Modification**:- Modifications of this Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with § 1125 of the Bankruptcy Code. Should any Creditor make a proper election under § 1111(b), the Debtor reserves the right to modify their plan as necessary to implement the requirement of §§ 1129(a)(7)(B) and 1129(b)(2)(A)(i) of the Bankruptcy Code to conform the terms of this Plan to the particular value of such claim.

B. **Post-Confirmation Modification**:- This Plan may be modified at any time after the Confirmation Date and before its substantial consummation, provided that such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under § 1129 of the Bankruptcy Code. For the purpose of modification of this Plan, substantial consummation shall be deemed to occur on the later of the date (1) when the confirmation order becomes final, or (2) the dates set forth in Article XVI of this Plan entitled Closing the Estate.

C. **Voting on the Plan.**      As a member of an Impaired Class, each holder of an Allowed Claim in each Creditor Class are entitled to vote to accept or reject the Plan. -Under §1129(a)(10) of the Bankruptcy Code, the Debtor cannot use the Class 3d Creditor's vote to determine whether a class of Creditors has accepted the Plan. -An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. -A Class of holders of Claims shall be deemed to accept the Plan in the event that no holder of a Claim within that Class submits a ballot by the deadline for doing so. -All Claims shall be allowed for voting purposes only unless objected to before the hearing on Confirmation of the Plan.

D. **Presumed Rejection of the Plan**.      The Debtor as the Holder of an Interest is deemed not to have accepted the Plan ~~pursuant to~~under § 1126(g) of the Bankruptcy Code.

E. **Non-Consensual Confirmation**.      In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code or amend the Plan.

F. **Voting on Modification**:- A holder of a Claim or interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time specified by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

**XIV.   INVALIDATION OF LIENS AND DISCHARGE**

All liens securing Claims which are not allowed ~~pursuant to~~under the provisions of this Plan and §§ 502 and 506 of the Bankruptcy Code shall be invalidated and deemed null and void and of no further force and effect. The provisions of this Plan, as confirmed, shall bind all Creditors and parties in interest, whether or not they accept this Plan and shall discharge the Debtor from all Claims that arose before the Confirmation Date. The distributions provided

-20-

under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims against any of the Debtor's assets or the Property, including claims arising after the Petition Date and before the Confirmation Date. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on and after the Confirmation Date, all holders of Claims shall be precluded from asserting any Claim against the Debtor or their assets.

## XV.   ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY CLASSES OF IMPAIRED CLAIMS OR EQUITY INTERESTS

A.   **Reservation of § 1129(b) Rights**. In the event that one or more Impaired Classes shall have failed to accept the Plan by the requisite majorities in accordance with § 1126(c) and (d) of the Bankruptcy Code, the Debtor shall request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code against such rejecting Class or Classes.

B.   **§ 1129(a)(12) Compliance**. All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, either will have been paid or will be paid on the Effective Date as an Administrative Expense Claim.

C.   **Deemed Satisfaction of § 1129(a)(13) of the Bankruptcy Code.** Prior to the commencement of the Case, the Debtor does not have a plan or plans providing for retiree benefits, as that term is defined in § 1144 of the Code. Consequently, the confirmation requirements contained in § 1129(a)(13) of the Bankruptcy Code are inapplicable to the Plan, and the Plan shall be deemed to have satisfied such requirements.

## XVI.   Powers and Duties of the Reorganized Debtor's Agents.

A.   **Power of §1129 Representative**

The Reorganized Debtor will act through Scott Krone, as the Reorganized Debtor's Manager appointed pursuant to §1129 of the Bankruptcy Code, and the officers, employees, and agents appointed or engaged by him  or through his efforts in a capacity as applicable to a corporate agent with full approval of its principal, subject to the provisions of this Plan. In addition to any powers and duties available to an agent by statute or at law, the powers and duties of such Person shall include:

1.   investing monies in accordance with §345 of the Bankruptcy Code, and withdrawing and making Distributions of monies to holders of Allowed Claims, if any, and paying taxes and other obligations owed by the Debtor or incurred by the Reorganized Debtor in connection with the operation of the Estate in accordance with this Plan;

2.   objecting to, compromising, and settling Claims;

3.   engaging attorneys, consultants, agents, employees, and all Professional Persons, to assist the Reorganized Debtor with respect to the Reorganized Debtor's responsibilities;

4.   executing and delivering all documents, and taking all actions, necessary to consummate the Plan of the Reorganized Debtor's business;

-21-

5.  coordinating the disposition of assets, subject to rejected executory contracts or abandonment or liquidation of any retained assets;

6.  coordinating the collection of outstanding accounts receivable;

7.  coordinating the storage and maintenance of the Debtor's books and records;

8.  disposing of, and delivering title to others of, or otherwise realizing the value of all the Assets delivered to the Reorganized Debtor on terms deemed reasonable in the Reorganized Debtor's sole discretion. The Reorganized Debtor may, but shall not be required to, seek the Bankruptcy Court's approval of any such disposition by filing a motion pursuant to §363 of the Bankruptcy Code and Rule 9019 of the Rules;

9.  prosecuting and otherwise disposing of the Causes of Action transferred to Reorganized Debtor;

10. overseeing compliance with the Estate's accounting, finance, and reporting obligations;

11. preparing monthly operating reports and financial statements and United States Trustee quarterly reports;

12. overseeing the filing of tax returns;

13. performing any additional corporate actions as necessary to carry out the terms of the Plan;

14. paying United States Trustee Fees and the fees and expenses of the attorneys, consultants, agents, employees, and Professional Persons engaged by the Debtor and the Reorganized Debtor and to pay all other expenses for relating to the Estate's affairs. In the event of a dispute that cannot be resolved, the Reorganized Debtor's §1129 representative shall seek to resolve such dispute in the Bankruptcy Court;

15. implementing and/or enforcing all provisions of the Plan; and

16. such other powers as may be vested in or assumed by the Reorganized Debtor pursuant to this Plan or Bankruptcy Court Order or as may be needed or appropriate to carry out the provisions of this Plan.

B.  **Appointment of the Reorganized Debtor's Officers**. Pursuant to §1129(a)(5) of the Bankruptcy Code, the Confirmation Order shall provide that Scott Krone, who will serve as the Reorganized Debtor's Manager, will undertake the responsibility for the management and operation of the Reorganized Debtor's business. The Reorganized Debtor designates Mr. Krone as the Estate's representative in accordance with §1129 of the Bankruptcy Code, and she shall have all powers, authority, and responsibilities specified in this Plan, including, without limitation, the powers of a trustee under §§704 and 1106 of the Bankruptcy Code. Scott Krone will

be responsible for acting under §1123(a)(5)(B) and serve the functions required of the Reorganized Debtor under the Plan.

C.  **Retention of Insider.** Pursuant to §1129(a)(5)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain the services of Scott Krone, who is an insider. Scott Krone has served as the Debtor's Manager during this bankruptcy case.

D.  **Resignation of Managers**. Upon the Effective Date of this Plan, the Debtor's Managers shall be deemed to have resigned or been eliminated as the Debtor's Managers.

E.  **No Agency Relationship**. Neither the Reorganized Debtor, nor any Manager, member, agent, attorney, or representative, including the §1129 representative, shall be liable, or responsible for any act or omission of the Debtor or any of its Managers, members, agents, officers, attorneys, or representatives unless expressly assumed pursuant to this Plan. The Reorganized Debtor shall not be deemed the agent of any of the holders of Claims in connection with the monies held or distributed pursuant to this Plan. The Reorganized Debtor shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct on the part of the Reorganized Debtor. The Reorganized Debtor and its Manager, members, agents, attorneys, or representatives, including the §1129 representative appointed, engaged, or employed by it shall be indemnified and held harmless, including the cost of defending such Claims and attorneys' fees in seeking indemnification, by the Estate against any and all Claims arising out of its, his, her or their duties under this Plan, except to the extent the actions constitute gross negligence or willful misconduct. Such parties may conclusively rely and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which it, he, she, or they believe to be genuine and to have been signed or presented by the proper party or parties. Any trustee, officer or agent appointed, engaged, or employed by the Reorganized Debtor may rely upon information previously generated by such party and such additional information provided by current and/or former employees of the Debtor. Any act taken by or omission of the Reorganized Debtor or any officer, director, shareholder, agent, attorney or representative, including the §1129 representative of the Reorganized Debtor, pursuant to an Order of the Bankruptcy Court, after notice and hearing, as provided in Article XVI of the Plan, shall be conclusively established to be proper, fair, in the best interest of Creditors and consistent with the duties of the Reorganized Debtor pursuant to the provisions of the Plan.

F.  **No Bond Required**. Scott Krone, as the Reorganized Debtor's representative, shall serve without the necessity of obtaining or maintaining a bond.

XVI.XVII.   **CLOSING THE ESTATE**

For purposes of § 1127(b) and for the closing of the estate, the following shall be conditions precedent to the substantial consummation of the Plan:

-23-

A.  The Confirmation Order shall have become a Final Order or such requirement shall have been waived in writing by the Debtor; and

B.  The date on which the Debtor payments makes the first quarterly payment due under this Plan and the first and final payment to Class 3b Claimants.

## ~~XVII.~~XVIII.  RETENTION OF JURISDICTION

A.  Notwithstanding confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

1.  Determination of the allowance of Claims and interests upon objection to such Claims by the Debtor, or by any other Party in Interest.

2.  Determination of requests for payment to professional persons and Claims entitled to priority under §§ 503 and 507 of the Bankruptcy Code, including compensation of parties entitled thereto.

3.  Implementation of the provisions of this Plan and entry of orders in aid of confirmation of this Plan, including, without limitation, appropriate orders to protect the Debtor from Creditor action.

4.  Modification of this Plan ~~pursuant to~~under § 1127 of the Bankruptcy Code.

5.  Adjudication of any causes of action, including Avoidance Actions brought by the Debtor.

6.  Determination of any issues raised by papers Filed with the Bankruptcy Court on or before the Confirmation Date.

7.  Entry of a final decree closing the Debtor's case.

## ~~XVIII.~~XIX.  OTHER MATERIALS

The attention of holders of Claims is directed to the Disclosure Statement.

**PLATFORM II LAWNDALE LLC**

By: _____ /s/ Scott Krone _____
Scott Krone, Manager

By: _____ /s/ Gregory J. Jordan _____
One of Its Attorneys

Gregory J. Jordan (ARDC# 6205510)
Mark Zito (ARDC# 6276231)
Jordan & Zito LLC
350 North LaSalle Drive, Suite 1100
Chicago Illinois 60654-4980
(312) 854-7181
gjordan@jz-llc.com
mzito@jz-llc.com

COUNSEL FOR PLATFORM II LAWNDALE LLC

-**25**-

**Exhibit A**

**Plan of Reorganization**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re PLATFORM II LAWNDALE LLC** | ) | **Chapter 11 Proceeding** |
| | ) | |
| | ) | **Case No. 22-07668** |
| **Debtor,** | ) | |
| | ) | **Hon. Deborah L. Thorne** |
| | ) | |

**AMENDED PLAN OF REORGANIZATION**

**Proposed by Platform II Lawndale LLC**

**Date: September 15, 2023**

**INTRODUCTION**

Platform II Lawndale LLC, the debtor and debtor in possession in this Chapter 11 case, (the "Debtor") proposes this Plan of Reorganization under § 1121(a) of the Bankruptcy Code (this "Plan").

This Plan is the Debtor's proposal for the Debtor's payment of the Claims of its Creditors as of the Petition Date.

The Debtor by this Plan solicits acceptances from all Creditors whose claims are Impaired. The Debtor believes that acceptance of this Plan would be in the Creditors' best interest. THE DEBTOR URGES ALL CREDITORS TO ACCEPT THIS PLAN.

**I.      DEFINITIONS AND INTERPRETATIONS**

The following terms shall have the meanings set forth in this Article I. Unless otherwise indicated, the singular shall include the plural and capitalized terms shall at all times refer to the terms as defined in this Article I. If the Debtor has not defined a term in this Plan, but that term is used in the Bankruptcy Code, then it shall have the meaning assigned to it in the Bankruptcy Code or in the decisions relating to the Bankruptcy Code.

A.      **Administrative Expense:** shall mean any cost, Claim, or expense of administration entitled to priority in accordance with the provisions of §§ 330, 503(b), and 507(a)(1) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any fees or charges assessed against or due from the Debtor's estate under 28 U.S.C. § 1930, and all fees and expenses of Professional Persons incurred after the Confirmation Date but prior to the Effective Date, and (b) any amounts required to be paid to assume executory contracts or unexpired leases in accordance with Article VIII of this Plan.

B.      **Allowed:**        shall mean, with respect to any Claim, except as otherwise provided:

1.   any Claim for which a proof of claim has been Filed with the Bankruptcy Court on or before the Bar Date:

(a) as to which no objection has been made to its allowance by the Claims Objection Bar Date,

(b) or as to which an objection was Filed and the Claim has been allowed by a Final Order;

2.   any Claim that is deemed to be Allowed ~~pursuant to~~under:

(a) any provision of this Plan,

(b) in any stipulation of the amount and nature of a Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, or

(c) in any stipulation with the Debtor of the amount and nature of a Claim executed on or after the Confirmation Date; and

3.   any Claim that has been scheduled by the Debtor in its schedules of liabilities as other than disputed, contingent, and unliquidated and as to which the Debtor or other Party in Interest has not Filed an objection by the Claims Objection Bar Date.

Unless otherwise specified by the Plan or by order of the Bankruptcy Court, Allowed Claims shall not include interest for the period from and after the Petition Date, nor shall they include any Claim that may be disallowed under § 502(d) of the Bankruptcy Code.

C.      **Allowed Priority Tax Claim**: shall mean that portion of an Allowed Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

D.      **Allowed Secured Claim**: shall mean a Secured Claim to the extent that, ~~pursuant to~~under § 506(a) of the Bankruptcy Code, such Claim is determined by a Final Order or provided in the Plan not to be an unsecured claim and (b) is an Allowed Claim.

E.      **Allowed Unsecured Claim**: shall mean an Unsecured Claim to the extent that it is an Allowed Claim.

F.      **Assets**: shall mean all tangible and intangible assets of every kind and nature of the Debtor and all proceeds thereof (including but not limited to cash proceeds), existing as of the Effective Date.

G.      **Avoidance Action**: shall mean any actual or potential claim or cause of action arising under Chapter 5 of the Bankruptcy Code.

H.      **Ballot**: shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Claims in Classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

-2-

I.      **Ballot Date**: shall mean the date set by the Bankruptcy Court as the last date for timely submission of a ballot accepting or rejecting the Plan.

J.      **Bankruptcy Code**: shall mean title 11 of the United States Code, as amended from time to time.

K.      **Bankruptcy Court**:– shall mean the United States Bankruptcy Court for the Northern District of Illinois including the Hon. Deborah L. Thorne, the United States Bankruptcy Judge presiding in this case, or such other judge or Court that may have jurisdiction over this case. In the event of the filing an appeal, as used herein, the term shall also mean the United States District Court for the Northern District of Illinois, as the context dictates.

L.      **Bar Date**: shall mean the date set by the Bankruptcy Court as the last date for timely submission of a proof of claim on account of all Claims against the Debtor other than Administrative Claims**.**

M.      **Business Day**: shall mean any day other than a Saturday, Sunday or a legal holiday as defined in the Rules at Rule 9006(a).

N.      **Claim**:– shall mean any right to payment from the Debtor that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

O.      **Claims Objection Bar Date**: shall mean the deadline fixed by the Bankruptcy Court for the Debtor or any other entity to File an objection to the allowance of any Claim.

P.      **Class**:– shall mean any one of the classes of Claims described in Article II of the Plan.

Q.      **Collateral**:– shall mean property in which the Debtor has an interest that secures, in whole or in part, the payment of a Claim.

R.      **Confirmation**: shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

S.      **Confirmation Date**:– shall mean the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code; provided, however, that if the Confirmation Order is stayed on motion pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay.

T.      **Confirmation Hearing**: shall mean the hearing to confirm the Plan.

U.      **Confirmation Order**:– shall mean the Order of the Bankruptcy Court (or District Court as the case may be) confirming this Plan ~~pursuant to~~under § 1129 of the Bankruptcy Code and approving the transactions contemplated in this Plan.

-3-

V.    **Contested Claim**:- shall mean any Claim against the Debtor (a) subject to a timely objection or request for estimation, or (b) that is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order, or (c) that is not an Allowed Claim.

W.    **Creditor**:- shall mean any Person having a Claim against the Debtor, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtors' estates of any kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code.

X.    ~~**Debtor: CubeSmart Lawsuit**~~: shall mean an adversary proceeding against CubeSmart Self Storage for breach of contract and fraud.

~~X.~~Y.          **Debtor**: shall mean Platform II Lawndale LLC, the debtor in this case.

~~Y.~~Z.    -    **Disallowed Claims**:- shall mean a Claim to the extent that such Claim is disallowed by a Final Order or by written agreement of the holder thereof.

~~Z.~~AA.    -    **Disclosure Statement**:- shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court, together with all exhibits and supplements thereto, as amended, supplemented or modified, that is prepared and distributed in accordance with §§ 1125, 1126(b) and/or 1145 of the Bankruptcy Code and/or other applicable law.

~~AA.~~BB.          **Disputed**:- shall mean, with reference to any Claim against the Debtor, a Claim or any portion thereof, that is not an Allowed Claim including, but not limited to, Claims (1) (a) that the Debtor has not scheduled, or that the Debtor scheduled at zero or as contingent, unliquidated or disputed, (b) that are the subject of a proof of claim that differs in nature, amount or priority from the Debtor's schedules, or (c) as to which an objection has been interposed as of the deadline fixed by the Plan, as may be extended in accordance with the Plan and (2) the allowance or disallowance of which is not yet the subject of a Final Order.

~~BB.~~CC.          **District Court**:- shall mean the United States District Court for the Northern District of Illinois, Eastern Division including any United States District Judge presiding in this case or such other Court having jurisdiction over this case.

~~CC.~~DD.          **§ 1111(b) Election**: –shall mean a timely election, ~~pursuant to~~under § 1111(b) of the Bankruptcy Code and Rule 3014 of the Rules, by the holder of a Claim secured by Collateral to have its entire Claim treated as a Secured Claim under the Plan notwithstanding § 506(a) of the Bankruptcy Code.

~~DD.~~EE.          **Effective Date**:- shall mean the first Business Day which is ten (10) days (as calculated in accordance with Bankruptcy Rule 9006(a)) after the Confirmation Date, on which (a) the Confirmation Order is not stayed.

~~EE.~~FF.          **Fee Application**: -shall mean an application of a Professional Person under §§ 330 or 331 of the Code.

~~FF.~~GG.          **File, Filed, or Filing**: shall mean file, filed or filing with the Clerk of the Bankruptcy Court.

-4-

~~GG.~~HH.        **Final Order**:– shall mean an order or judgment of the Bankruptcy Court which (a) has not been reversed, stayed, vacated, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reargue, petition for certiorari or rehearing has been waived in a manner satisfactory to the Debtor, as a result of which such order shall have become final in accordance with applicable law or (b) if an appeal, reargument, certiorari or rehearing has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought or certiorari has been denied and time to take further appeal or to seek certiorari or further re-argument or rehearing has expired.

II.  **Foreclosure Lawsuit:** shall mean the lawsuit GreenLake filed against the Debtor and others in the Chancery Division of the Circuit Court of Cook County, Illinois, as case number 2020 CH 02969.

~~HH.~~JJ.        **Fund**:– shall mean $8,434,685.88 the total sum of monies to be paid out by the Debtor under the Plan.

KK.    ——**GreenLake:** shall mean the Debtor's secured Creditor, GreenLake Real Estate Fund LLC, whose loan is secured by a mortgage on the Debtor's storage facility.

LL.    **GreenLake Funding Date:** shall mean the Effective Date or such other date on which GreenLake, Red Oak Capital Holdings, and the Debtor shall agree.

~~II.~~MM.**Impaired**: –shall have the meaning set forth in § 1124 of the Bankruptcy Code.

~~JJ.~~NN. ——**Party in Interest**: shall mean anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.

~~KK.~~OO.        **Person**:– shall mean a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

~~LL.~~PP.-        **Petition Date**:– shall mean the date on which the petition commencing this case under Chapter 11 was Filed, which was July 11, 2022.

~~MM.~~QQ.        **Plan**:– shall mean this Plan of Reorganization proposed by the Debtor either in its present form or as it may be amended or modified from time to time.

~~NN.~~RR.        **Pre-Confirmation Rights of Action**: –shall mean all rights, claims and causes of action, whether equitable or legal, of the estate against the Debtor or third persons (including the right to prosecute or compromise and settle such rights, claims and causes of action) existing before the Confirmation Date, including, without limitation, any Avoidance Action.

~~OO.~~SS.            **Priority Tax Claim**: –shall mean that a Claim asserting priority under § 507(a)(8) of the Bankruptcy Code.

-5-

~~PP.~~TT. -    **Professional Fees**:- shall mean fees requested or to be requested under §§ 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a professional for services rendered or expenses incurred in this case on or prior to the effective date.

~~QQ.~~UU.    **Professional Persons**: shall mean all persons retained or to be compensated ~~pursuant to~~under §§ 326, 327, 328, 330, 503(b), and 1103 of the Bankruptcy Code.

~~RR.    Released Parties: shall mean Scott Krone, the Debtor's Manager, and Martin Taradejna, the Debtor's former manager, both of whom guaranteed the repayment of the loan made by Greenlake Real Estate Fund, LLC to the Debtor.~~

VV.    ~~——~~**Reorganized Debtor:** shall mean Platform II Lawndale LLC, as constituted after the confirmation of this Plan.

~~SS.~~WW.    **Rules**:~~—~~ shall mean the Federal Rules of Bankruptcy Procedure recommended by the Judicial Conference of the United States, as prescribed by the Supreme Court of the United States, effective on the Petition Date in accordance with the provisions of 11 U.S.C. § 2075, as amended from time to time.

~~TT.~~XX.    ~~——~~**Secured Claim**:- shall mean a Claim of a Creditor, arising on or before the Petition Date that is purportedly secured by a lien on Collateral or subject to set off under § 553 of the Bankruptcy Code, to the extent of the value of such holder's purported interest in the Debtor's interest in the property, or to the extent of the purported amount of the set-off, as applicable, provided, however, that if the Creditor is entitled to make and makes the § 1111(b) Election, the Creditor's Claim shall be a Secured Claim in the full amount of the Creditor's Claim.

~~UU.~~YY.    **Subordinated Claim**: shall mean (a) a Claim subordinated for purposes of distribution to any Unsecured Claim in accordance with §§ 510(b) or 510(c) of the Bankruptcy Code, or (b) a Penalty Claim.

~~VV.~~ZZ.    **Tax Claim**:- shall mean any Claim for taxes against the Debtor, including without limitation any interest and penalties due thereon, entitled to priority in payment ~~pursuant to~~under §507(a)(8) of the Bankruptcy Code.

~~WW.~~AAA.    **Undetermined Claim**:- shall mean a Claim that is not an Allowed Claim or a Disallowed Claim and is (a) a Contested Claim, (b) a Claim arising from the rejection of an executory contract or unexpired lease ~~pursuant to~~under this Plan, (c) a claim that is unliquidated or contingent, (d) a Claim as to which, on or before the Effective Date, the Debtor has not made a determination whether or not to object or (e) an Administrative Expense.

~~XX.~~BBB.    **Unimpaired**: shall mean any Claim that is not Impaired within the meaning of § 1124 of the Bankruptcy Code

~~YY.~~CCC.    **Unsecured Claim**: -shall mean a Claim that is not a Secured Claim, a Priority Claim, a Tax Claim, or a Subordinated Claim.

~~ZZ.~~DDD.    ~~——~~**Unsecured Creditor**:- shall mean any Creditor that is the holder of an Unsecured Claim.

-6-

## II.    CLASSIFICATION OF AMOUNTS OWING, CLAIMS AND INTEREST

A.  All Claims shall be fixed and determined as of the Petition Date.

B.  Classification.  The Claims against the Debtor and the Equity Interests in the Debtor shall be classified in this Plan as follows:

1.  Administrative Expenses

2.  Class 1 – Secured Claim of ~~Greenlake Real Estate Fund, LLC~~GreenLake

3.  Class 2a – Priority Tax Claims of the Illinois Department of Revenue

4.  Class 2b – Priority Tax Claims of the Cook County Treasurer

5.  Class 3a – General Unsecured Claims

6.  Class 3b – Convenience Class Claims

7.  Class 3c – Schindler Elevator Unsecured Claim

8.  Class 3d – Coda Design + Build, LLC Claim

9.  Equity Interests

C.  Resolution of Disputes:  Disputes regarding the proper classification of Claims shall be resolved ~~pursuant to~~using the procedures established in the Bankruptcy Code, the Rules and other applicable laws. The Bankruptcy Court shall have exclusive jurisdiction over disputes concerning the classification of Claims.  Resolution of any such disputes shall not be a condition precedent to Confirmation or Consummation of the Plan

D.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class.

E.  Distributions on Disputed Claims: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

## III.    TREATMENT OF UNIMPAIRED AND UNCLASSIFIED CLAIMS

The following Class is unimpaired by the Plan in accordance with § 1124 of the Bankruptcy Code or is not required to be classified in this Plan of Reorganization under the provisions of the Bankruptcy Code.

A.  **Administrative Expenses:** These claimants represent Claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash, or as otherwise agreed, through a one-time payment under this Plan beginning on

-7-

the first day of the first whole month following confirmation of this Plan; provided, however, that an Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor shall be paid by the Debtor under the terms and conditions of any agreements relating to such obligation, along with accruing real estate taxes. Payment of Professional Fees shall be subject to the provisions of §§ 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. ~~United States Trustee and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due after that.~~ The source of payment for these amounts will be the Debtor's income and proceeds of a post-confirmation loan obtained from Red Oak Capital to fund the Plan. The Debtor expects Administrative Claims will be approximately $363,000.00 as of the Effective Date. The Debtor will also pay the loan fees set forth in Exhibit C to the Disclosure Statement.

## IV.   TREATMENT OF IMPAIRED CLAIMS AND EQUITY INTERESTS

The Claims in the Classes listed below are Impaired by the Plan:

**Class 1** ~~Secured Claim:~~ GreenLake ~~Real Estate Fund, LLC~~ holds the Class 1 Secured Claim for $~~7,200,000~~8,139,150.00 arising from a loan secured by the Debtor's real estate and personal property. The Class 1 Secured Claim is Impaired. ~~GreenLake Real Estate Fund, LLC's~~GreenLake's loan matured, and it obtained a judgment against the Debtor. The Reorganized Debtor will pay $7,200,000.00 of the secured portion of ~~GreenLake Real Estate Fund, LLC's~~GreenLake's Claim on the ~~Effective Date. In exchange for the payment on GreenLake Real Estate Fund, LLC's Class 1 Secured Claim, it will release its mortgage lien, all other security interests on the Debtor's assets, third-party guarantees of the Claim against~~GreenLake Funding Date and the remainder through the satisfaction of a new $939,150.00 promissory note, attached as Exhibit D, and proceeds that the Debtor~~, and claims against third parties arising~~ might receive from the ~~loan~~ CubeSmart Lawsuit up to the amount of the Class 1 Secured Claim as described below.

The Debtor~~ In~~ will derive the ~~event GreenLake Real Estate Fund, LLC~~ initial $7,200,000 payment to GreenLake through the Red Oak Capital Holdings loan and new equity investments. As a part of the payment to the Class 1 Secured Claim, Red Oak Capital Holdings will receive a first-priority lien on the Debtor's real estate and other assets.

On receipt of the $7,200,000.00 payment, GreenLake will simultaneously release its mortgage lien and all other security interests on the Reorganized Debtor's assets.

Upon receipt of the $7,200,000.00 payment, GreenLake and the Reorganized Debtor will jointly move the Cook County Circuit Court to enter an order, reopening the foreclosure portion of the Foreclosure Lawsuit for the sole purpose of dismissing the foreclosure count of the Complaint with prejudice and for entry of a stipulated order that provides that the remaining claims will be voluntarily dismissed without prejudice and with leave to reinstate.

If GreenLake does not execute a release of mortgage, and of any UCC-3 financing ~~statement, third-party guarantees, and claims against third parties~~statements after receipt and posting of funds as confirmed in writing by GreenLake, the Debtor shall~~, simultaneously with the delivery of funds,~~

-8-

be empowered to execute such releases as ~~GreenLake Real Estate Fund, LLC's~~GreenLake's attorney in fact.

On the GreenLake Funding Date, the Reorganized Debtor will execute the promissory note on the Effective Date that shall bear simple interest at seven and one-half percent (7.50%) per annum. Scott Krone, the Reorganized Debtor's manager, and Coda Design + Build LLC will execute guaranties to jointly and severally ensure payment of the promissory note. Scott Krone, Coda Design + Build LLC, and GreenLake have agreed on the terms of the guaranties, which will be executed at or before the closing of the Red Oak Capital Holdings loan.

The promissory note requires the Reorganized Debtor to deliver monthly interest payments. Interest will be allocated and payable in two forms. During the first year, the Reorganized Debtor must pay thirty-five percent (35%) of the interest accruing each month with sixty-five percent (65%) deferred. During the second year, the Debtor must pay fifty percent (50%) of the interest accruing each month with fifty percent (50%) deferred.

GreenLake will apply all payments from any source first to costs and fees incurred, second to interest that comes due, third to deferred interest, and fourth to reduce the principal balance. The deferred interest will be due on maturity, early payoff, or an event of default or acceleration. GreenLake will provide monthly statements for the promissory note.

The promissory note will have a three (3) year term; however, the Reorganized Debtor will have an extension option for an additional two (2) years provided the Reorganized Debtor pays the deferred interest and there is no event of default under the promissory note.

The promissory note will contain standard financial reporting requirements. The Reorganized Debtor and guarantors will execute new or amended additional loan documents through a separate agreement between GreenLake and those parties.

The promissory note will contain a standard costs and attorneys' fees provision under which GreenLake will be entitled to seek all costs and fees incurred in connection with the promissory note and exercising its remedies thereunder.

Scott Krone and Coda Design + Build LLC will provide a payment direction letter related to any distribution to Scott Krone outside the ordinary course of business, Coda Design + Build, LLC, and the entities in which Scott Krone and/or Coda Design + Build LLC have a direct or indirect interest, including, but not limited to, Platform II - Lawndale, Chicago, Platform II - Wisconsin, Milwaukee, Platform III - Floyd, Louisville, Platform II - Superior, Toledo, Platform III - Third St, Dayton.

> **Commented [GJ1]:** Scott will draw a salary from Coda to feed his family. I struck "Coda Management," which is not an existing entity.

Under the terms of the Plan and in addition to payments under the promissory note, GreenLake will receive the net proceeds received from the CubeSmart lawsuit after payment of the Reorganized Debtor's attorney's fees and costs up to $939,150.00 plus accrued and unpaid interest under the promissory note, and the amounts will be applied to the outstanding amounts due under the promissory note in the order identified in the promissory note.

To ensure payment, the Reorganized Debtor will execute, deliver on the GreenLake Funding Date, and irrevocably consent to the entry of the order of judgment in the sum of $1,600,000 less any

and all amounts previously paid, in the form attached as Exhibit E (the "Agreed Judgment"); provided however, that GreenLake shall not file or request entry of the Agreed Judgment except as specifically permitted in the Plan. The original signed Agreed Judgment shall be held in trust by GreenLake's counsel, Sandberg Phoenix, who shall be authorized to deliver the Agreed Judgment for entry in the Foreclosure Lawsuit only due to an uncured default by Reorganized Debtor under the promissory note. The promissory note will allow for a sixty (60) day cure period that begins upon notice from GreenLake of an event of default. Notice will be provided by electronic mail pursuant to a notice provision in the parties' loan agreement.

If the Reorganized Debtor pays $139,150.00 to reduce the principal balance owing under the promissory note, the amount of the Agreed Judgment shall be reduced for each dollar of principal thereafter paid on the promissory Note. The amount of the Agreed Judgment shall not be reduced for interest payments or fees and costs due and paid under the promissory note. Any amounts received under the promissory note shall first be applied to outstanding non-accrued interest and costs.

GreenLake and its counsel agree not to file, abstract, record or execute upon the Agreed Judgment as long as the Reorganized Debtor has complied with the terms of the promissory note and the Plan. At such time the promissory note is paid in full, including all outstanding and unpaid interest, the amount of the pocket judgment will be $800,000, and it will be released.

After the date on which the Reorganized Debtor has fully performed all obligations imposed upon the Reorganized Debtor under the promissory note, GreenLake agrees to return the Agreed Judgment to the Reorganized Debtor's counsel and thereby release all claims against the Reorganized Debtor, Scott Krone, and Coda Design + Build, LLC.

| | |
|---|---|
| Claimant:– | GreenLake Real Estate Fund, LLC |
| Security: | The Debtor's real estate |
| Amount to Be Paid: | $7,200,000$8,139,150.00 |
| Secured/Unsecured | Secured |
| Interest Rate: | N/A |
| Distribution: | 100% |
| Status: | Impaired |

**There are no other Impaired Secured Claims**. Any other party asserting a security interest in any of the Debtor's assets shall be subject to having that lien discharged under this Plan.

a.   **Class 2 – Priority Tax Claims**: There are two Priority Tax Claims within Class 2. The Class relates to the Allowed Priority Tax Claims having Priority Unsecured Status. The Cook County Treasurer holds the Class 2a Claim of $208,880.37 due to unpaid real estate taxes accrued during the 2020 and 2021 tax years. The Debtor also must pay the first installment of the 2022 real estate taxes, which equal $51,665.57. The total distributions to the Cook Treasurer equal $260,545.94. The Illinois Department of Revenue holds the Class 2b Claim of $544.05 Claim for the Debtor's failure to file an information return.

**Class 2a:**- In full and final satisfaction of the Class 2a Claims, the holder of the Class 2a Claim shall be paid in quarterly payments over five years (20 quarters) with interest at 18%

-**10**-

per annum. The payments will allow them to receive 1/20th of the total each quarter with interest. The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter.

Claimant:- Cook County Treasurer

| | |
|---|---|
| Security: | None |
| Amount to Be Paid: | $385,625.09 |
| Secured/Unsecured | Unsecured |
| Interest Rate: | 18% |
| Distribution: | 100% |
| Status: | Impaired |

**Class 2b:** In full and final satisfaction of the Class 2b Claims, the holder of the Class 2b Claim shall be paid on the Effective Date.

Claimant:- Illinois Department of Revenue

| | |
|---|---|
| Security: | None |
| Amount to Be Paid: | $544.05 |
| Secured/Unsecured | Unsecured |
| Interest Rate: | N/A |
| Distribution: | 100% |
| Status: | Impaired |

b.   **Class 3 Claims**:- The Debtor divided Class 3 Claims into three subclasses. Each Class concerns Claims having Unsecured Status. Notwithstanding that the Debtor designated Claims in subclasses for organizational purposes, Class 3a, Class 3b, and Class 3c include all of the Allowed Claims held by any Unsecured Creditor, and all disputed, contingent, or unliquidated Allowed Unsecured Claims allowed as of the Effective Date. There are twenty-one (21)three (23) Unsecured Creditors. No Unsecured Claim shall accrue interest after the Petition Date. The Debtor owes these debts primarily due to issues with cash flow resulting from the mismanagement of its property by CubeSmart Self Storage, a third-party manager, and enormous borrowing costs. Class 3a includes all Unsecured Claims that are undisputed and equal to or greater than $10,000.00, other than the Class 3b and 3c Unsecured Claims. The Unsecured Creditors in each Class hold the following percentages of the total Unsecured Claims:

| | Total Claim | Percentage of Claims in Each Class |
|---|---|---|
| Total Unsecured Claims | $1,617,150.34610,450.31 | 100.00% |
| Class 3a - General Unsecured Creditors | $   397,276.82361,154.39 | 24.57 22.43% |
| Class 3b - Convenience Class | $   20,78633,011.00 | 1.29  2.05% |

**-11-**

Class 3c – Schindler Elevator   $   17,197.40          ~~74.15~~  1.07%
Unsecured Claim

Class 3d - Coda Design +   $1,199,087.52          ~~74.15~~46%
Build, LLC Unsecured Claim

**Class 3a:-** In full and final satisfaction of the Class 3a Claims, each Class 3a Claim Holder shall receive quarterly payments totaling 25% of their Claims over five years (20 quarters). The payments will allow them to receive 1/20th of the total each quarter. There are thirteen (13) claimants in Class 3a. The sum to be paid to Class 3a Claims is $99,319.21 and 6.29% of the net proceeds from litigation. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. ~~The~~After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of each Claimant's Claim.

**Class 3a Claimants**:

| Claimant | Claim | Distribution |
|---|---|---|
| Artur Construction Inc. | $19,150.00 | $4,787.50 |
| Chicago Metro Fire Protection | $40,249.30 | $10,062.~~00~~33 |
| CubeSmart ~~SelfStorage~~Self Storage | $24,940.80 | $ 6,235.20 Contested Claim |
| Levin & Ginsburg | $158,271.09 | $39,567.77 |
| Margarito Sanchez | $12,250.00 | $ 3,062.50 Contested Claim |
| Metropolitan Fire Protection | $19,200.00 | $ 4,800.00 |
| SLS Electric | $15,000.00 | $ 3,750.00 |
| Tai Plumbing LLC | $14,320.50 | $ 3,580.13 |
| TK Audio Visual, LLC | $45,822.70 | $11,455.68 |
| WG Glass | $11,950.00 | $2,987.50 |

Total Class 3a~~————————~~         $361,154.39
Security:~~————————~~         None
Amount to Be Paid:      ~~$90,288.60 and 22.26~~43% of the net proceeds from litigation up to the amount of each Claim.

-**12**-

Pro Rata Cash Distribution:     ___25%
Secured/Unsecured:              ___Unsecured
Status:                         ___Impaired

**Class 3b Claimants**: Class 3b is a convenience class. In full and final satisfaction of the Class 3b Claims, the holder of each Class 3b Claim shall be paid in a single payment equal to 25% of their Claims. There are eight (8) claimants in Class 3b. The total to be paid to Class ~~3a~~3b Claims is $5,374.00 and 6.29% of the net proceeds from litigation. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. ~~The~~After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of each Claimant's Claim.

| Claimant | Claim | Distribution |
|---|---|---|
| A & S Masonry | $ 5,525.00 | $1,381.25 |
| Batavia Damp Proofing | $ 5,890.00 | $1,472.50 |
| Custom Tile & Stone | $ 580.00 | $ 145.00 |
| Dortrak | $ 1,750.00 | $ 437.50 |
| Ferguson Enterprises | $ 256.00 | $ 64.00 |
| Internal Revenue Service | $ 100.00 | $ 25.00 |
| Landworks Landscaping, LLC | $ 2,700.00 | $ 675.00 |
| Masters Drywall | $ 1,000.00 | $ 250.00 |
| Super Remodeling Inc. | $ 6,000.00 | $1,500.00 |
| VFJ | $ 9,210.00 | $2,302.50 |

Total Class 3b ~~$45,161~~ $33,011.00
Security:                       None
Amount to Be Paid:              $8,~~436.50~~252.75 and 2.~~78~~05% of the net proceeds from litigation up to the amount of each Claim.
Pro Rata Cash Distribution:     25%
Secured/Unsecured:              Unsecured
Status:                         Impaired

**Class 3c Unsecured Claim of Schindler Elevator**: Schindler Elevator holds the Class 3c Unsecured Claim for $17,197.40 arising from a mechanics lien for which no equity exists

-13-

to pay it. In full and final satisfaction of the Class 3c Claim, the holder shall be paid in quarterly payments equal to 25% of its Claim over five years (20 quarters). The payments will allow it to receive 1/20th of the total each quarter. The sum to be paid to Class 3c Claims is $4,299.35 and 1.05% of the net proceeds from litigation up to the amount of its Claim. The percentage of Claims is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. The After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through settlement within thirty (30) days of receipt up to the amount of Schindler Elevator's Claim.

The Debtor placed Schindler Elevator's Claim in a separate Class because its Claim arose from a mechanics lien, which differs in nature from General Unsecured operating Claims.

|  |  |
|---|---|
| Total Class 3c– | $17,197.40 Contested Claim |
| Security: | None |
| Amount to Be Paid: | $4,299.35 and 1.0607% of the net proceeds from litigation up to the amount of its Claim. |
| Pro Rata Cash Distribution: | 25% |
| Secured/Unsecured: | Unsecured |
| Status: | Impaired |

**Class 3d Unsecured Claim of Coda Design + Build, LLC** — Coda Design + Build, LLC's Claim arises from the deferral of payments to which it was entitled and for advances in made on the Debtor's behalf,

During the course of the construction of the Debtor's facility, Coda Design + Build, LLC served as the general contractor. Coda Design + Build, LLC deferred receipt of its fees for providing its contracting services. It paid subcontractors who were not paid by the Debtor or through loan advances. Coda Design + Build, LLC advanced funds on the Debtor's behalf to pay interest to GreenLake, Before the appointment of a state court receiver, Coda Design + Build, LLC provided management services and was entitled to fees that were accrued but unpaid. Coda Design + Build also paid CubeSmart's invoices for operations as well as interest payments to GreenLake

In full and final satisfaction of the Class 3d Claim, Coda Design + Build, LLC shall be paid in quarterly payments equal to 25% of its Claims over five years (20 quarters). The payments will allow it to receive 1/20th of the total each quarter. The sum to be paid to Coda Design + Build, LLC is $299,772.00 and 73.37% of the net proceeds from litigation up to the amount of its Claim. The percentage of the Claim is twenty-five cents on the dollar (25%). The Debtor will make its first payment on the first day of the calendar quarter following the Plan's Effective Date. The Debtor will make the remaining payments on or before the first day of each following calendar quarter. The After the payment of attorneys' fees and costs along with amounts owing to GreenLake, the Debtor will distribute a pro rata portion of the net litigation proceeds, whether obtained by judgment or through

-**14**-

settlement within thirty (30) days of receipt up to the amount of Coda Design + Build, LLC's Claim.

The Debtor placed Coda Design + Build, LLC's Claim in a separate Class because, as a related entity to the Debtor, it is an insider, and the Debtor cannot consider its vote as a vote in favor of confirming a Plan of Reorganization.

Coda Design + Build, LLC        $1,199,087.52
Security:                       None
Amount to Be Paid:              $299,771.88 and 73.9074.46% of the net proceeds from litigation up to the amount of its Claim.
Pro Rata Cash Distribution:     25%
Secured/Unsecured:              Unsecured
Status:                         Impaired

Unless otherwise specificallyexplicitly provided in this Plan, each Class 3c3 claimant waives:

    (a) interest accruing after the Petition Date;
    (b) penalties accruing after the Petition Date;
    (c) the right to accelerate payment unless the Debtor defaults in its payments under this Plan after the Effective Date; and
    (d) contractual attorney's fees accruing after the Petition Date.

    A. **Equity Interests.** The members of the Debtor each hold an Interest as a result of any equity the Debtor has in Estate assets. No distributions shall be made on account of the their Interests.

    1. Each of the Debtor's members hold an Equity Interest due to pre-petition contributions. No Person holding an Equity Interest will receive anything of value, including an interest in the Reorganized Debtor, as a result of any contribution made before the Effective Date.

    2. The investors who have contributed new monies to fund the Plan shall hold the Debtor's membership interests as reflected in Exhibit F.

    B. **Consensual Releases.**

    1. Release of Released Parties. As of the Effective Date**Release of Scott Krone.** Scott Krone, who is the Debtor's Manager, guaranteed the repayment of GreenLake's pre-petition loan to the Debtor, which exposes him to liability for GreenLake's full Claim without the adjustment provided under the plan of reorganization. GreenLake has consented to the treatment of its Claim in Class 1, provided Scott Krone guarantees the Reorganized Debtor's payments. On receipt of a monies equaling $8,139,150.00, whether as a result of the payment on Class 1 Secured Claim, proceeds of the CubeSmart litigation, or funds received from Scott Krone or either of them, for good and valuable consideration, the adequacy of which is confirmed, including, without limitation, theScott Krone's service of the Released Parties before and during the Chapter 11 Case to facilitate the Debtor's reorganization and the implementation of the Plan, GreenLake Real Estate Fund, LLC has agreedagrees to and shall conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever, and permanently release the Released PartiesScott Krone from all Causes of

-15-

Action, including any derivative claims asserted or assertible by or on behalf of GreenLake ~~Real Estate Fund, LLC~~ and including any claims that GreenLake ~~Real Estate Fund, LLC~~, or ~~that any other Person~~its successor or ~~party claiming under or through GreenLake Real Estate Fund, LLC~~assigns, would have presently or in the future been legally entitled to assert in its own right, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, any guaranty of the Debtor's obligations before or after the Petition Date. GreenLake ~~Real Estate Fund, LLC~~ agrees to execute and deliver all such additional documents consistent with the terms of the release and to take all such further actions as may be reasonably requested by the Released Parties to effectuate the terms and provisions of this paragraph,

2. **Release of GreenLake ~~Real Estate Fund, LLC.~~,** As of the Effective Date, for good and valuable consideration, the adequacy of which is confirmed, the Released Parties have agreed to and shall conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever, and permanently release GreenLake ~~Real Estate Fund, LLC~~ from all Causes of Action, including any derivative claims asserted or assertible by or on behalf of GreenLake ~~Real Estate Fund, LLC~~ and including any claims that Released Parties, or that any other Person or party claiming under or through Released Parties, would have presently or in the future been legally entitled to assert in its or his own right, based on or relating to, or in any manner arising from, in whole or in part, ~~GreenLake Real Estate Fund, LLC's~~GreenLake's extension of credit to the Debtor, and any guaranty of the Debtor's obligations before or after the Petition Date. The Released Parties agree to execute and deliver all such additional documents consistent with the terms of the release and to take all such further actions as may be reasonably requested by GreenLake ~~Real Estate Fund, LLC~~ to effectuate the terms and provisions of this paragraph,

## V. CLAIMS RESOLUTION

A. **Bar Date for Filing of Administrative Expense Claims Other Than Claims for Professional Fees Earned in This Case**: ~~-~~The Debtor has Filed a motion seeking a determination of the date by which Claims must be Filed ~~by June 1, 2023~~within forty-five days of the Effective Date.

B. **Bar Date for Filing of Claims for Professional Fees Earned in This Case**:~~-~~ Any Professional Person asserting a Claim for pre-confirmation services and expenses shall File a Fee Application not later than forty-five days after the Effective Date.

C. **Resolution of Undetermined Claims**: ~~-~~To the extent that the Debtor seeks to dispute or adjudicate the amount of any Claim the Debtor will File any objection or other pleading (a) with regard to any governmental claim thirty (30) days after such claim is filed, and with regard to any other claim within thirty (30) days of the Effective Date.

D. **Distributions on Disputed Claims**:~~-~~ Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

## VI. LITIGATION

-**16**-

A. **No Waiver**.        Unless a Claim or cause of action against a Person is expressly waived, relinquished, released, compromised or settled by the Debtor or its estate, the Debtor and its estate expressly reserve such Claim or cause of action for later adjudication by the Debtor or its estate, including, but not limited to, Claims and causes of action not specifically identified or which the Debtor may be presently unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those which the Debtor now believes to exist.

VII.    **DISTRIBUTION OF FUNDS**

Means of Distribution:  The Debtor shall be responsible for making all distributions in accordance with the terms of the Plan.

VIII.   **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Debtor is a party to 287 executory contracts concerning the lease of storage units at the Debtor's property, which the Debtor assumes as a part of this Plan.  Any other executory contracts are deemed rejected as of the Effective Date.  All Claims arising from the rejection of executory contracts or unexpired leases under this Plan must be Filed within twenty (20) days of the Effective Date.

IX.     **INJUNCTION.**

**Unless after notice and a hearing, the Court enters an order providing for the Debtor's discharge at an earlier date, the Debtor will not receive a discharge of its indebtedness until its completes all payments under the Plan.  A discharge will discharge the Debtor to the maximum extent allowed under §§ 1141, 523, and actions by Creditors to the full extent provided for in § 524.**

X.      **IMPLEMENTATION AND FUNDING OF THE CASE**

A. **Funding Source**.  The Debtor will retain all of its assets and will be obligated to make the payments required under the Plan. The Debtor has obtained a commitment for a post-confirmation loan from Red Oak Capital Holdings. Exhibit C to the Disclosure Statement shows the Sources and Uses of Funds from Red Oak Capital Holdings. The Debtor will obtain ~~additonal~~additional sums ~~for~~from investors to pay its obligations under the Plan and otherwise fund payments from income generated from its storage business.

B. **Vesting of Assets**. ~~Pursuant to~~Under the provisions of §§ 1141(b) and 1141(c) of the Bankruptcy Code, and consistent with the terms hereof, all of the Assets and effects of the Debtor including, without limitation, all assets, interests, property, or rights transferred or assigned to the respective Debtor, as reorganized, and shall vest in the Debtor, as reorganized, on the Effective Date free and clear of all Claims, Liens, encumbrances, charges and other interests of the holders of Claims and Equity Interests, except as otherwise provided in this Plan.

C.  All assets of the Debtor shall remain assets of the Debtor, free and clear of all liens, Claims, encumbrances and interests, except those that are expressly created or preserved under the terms of this Plan. Included in those assets shall be all personal property and general intangibles.

-**17**-

D. **Distributions**. In order to receive a distribution under this Plan each and every Creditor who elects to participate in the distributions provided for under this Plan warrants that it is authorized to accept, in consideration of its Claim against the Debtor, the distributions for which this Plan provides and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

## XI.    GENERAL PROVISIONS

A. **Extension of Payment Dates**: If any installment payment under this Plan falls due on a Saturday, Sunday or a Legal Holiday, then such due date shall be extended to the next following Business Day.

B. **Transfer of Claims**:– In the event that the holder of any Claim shall transfer such Claim, it shall immediately advise the Debtor in writing of such transfer. The Debtor shall be entitled to assume that each Creditor has not transferred its Claim unless and until the Debtor has received written notice to the contrary. Each transferee of a Claim shall take such Claim subject to the provisions of this Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under this Plan of the transferor.

C. **Captions**: Captions used in this Plan are for convenience only and shall not affect the construction of this Plan.

D. **Severability**:– Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

E. **Successors and Assigns**:– The rights and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors or assigns of such person.

F. **Right to Take Action**:    After the Effective Date, the Debtor shall have the right to take any and all actions they deems necessary or appropriate to litigate, compromise or settle any litigation claim, subject to Court Approval.

G. **Returned Distributions and Uncashed Checks**.      If any distribution is returned to the Debtor as undeliverable, no further distributions shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Checks issued by the Debtor on account of Allowed Claims that are not returned as undeliverable, but are not negotiated within sixty (60) days from and after the date of issuance thereof shall be null and void. Any holder of an Allowed Claim that does not assert its rights ~~pursuant to~~under the Plan to receive a distribution within ninety (90) days from and after the date (a) such distribution is returned as undeliverable, or (b) of the issuance of a check that has not been returned as undeliverable, but is null and void because it was not timely negotiated, shall have such holder's Claim for such distribution discharged and shall be forever barred from asserting any such Claim against the estate, the Debtor or its assets. In the event that there is more than one distribution under the Plan,

-**18**-

any Creditor whose funds escheat shall be eliminated from any future distributions. Any entities ultimately receiving undeliverable cash, voided checks, or unclaimed distributions shall not be entitled to interest or other accruals of any kind. Notwithstanding the preceding statements, the Debtor has an obligation to use its best efforts to locate each Creditor's updated addresses and will do so.

H. **Set-Offs**. ~~Pursuant to~~Under § 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Debtor may set-off the distributions to be made ~~pursuant to~~under the Plan against any Allowed Claim; provided however, that neither the failure to effect a set-off nor the allowance of any Claim shall constitute a waiver or release of such Claims, right or cause of action.

I. **Distributions to Contested Claims**.    No distribution shall be required to be made with respect to any portion of a Contested Claim pending the resolution thereof in the manner prescribed herein.

J. **Notices**.    Until further notice is given by parties to the terms hereof, all notices to be given under the Plan shall be sent by First Class Mail, postage prepaid, addressed to:

| Debtor: | With a copy to: |
|---|---|
| Platform II Lawndale LLC | Gregory J. Jordan |
| 600 Waukegan Road, Suite 129 | Jordan & Zito, LLC |
| Northbrook, Illinois 60062 | 350 North LaSalle Drive, Suite 1100 |
| Attn: Scott Krone | Chicago, Illinois 60654 |
| | gjordan@jz-llc.com |

Until further notice given ~~pursuant~~under to the terms hereof, all notices to be given hereunder shall be given by electronic mail to all parties authorized to participate in the Court's CM/ECF system or First Class Mail to all effected parties and all persons on the service list in the Debtor's bankruptcy case with sufficient notice in accordance with the Court's local rules.

## XII.    RETENTION AND ENFORCEMENT OF CLAIMS

~~Pursuant to~~Under § 1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions contained herein, the Debtor shall retain for the benefit of the holders of Claims and may enforce any and all Claims of the Debtor including preference and other avoidance claims available under the Bankruptcy Code, if any.

## XIII.    MODIFICATION OF THIS PLAN

A. **Pre-Confirmation Modification**:~~ ~~ Modifications of this Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with § 1125 of the Bankruptcy Code. Should any Creditor make a proper election under § 1111(b), the Debtor reserves the right to modify their plan as necessary to implement the requirement of §§ 1129(a)(7)(B) and 1129(b)(2)(A)(i) of the Bankruptcy Code to conform the terms of this Plan to the particular value of such claim.

B.  **Post-Confirmation Modification**:- This Plan may be modified at any time after the Confirmation Date and before its substantial consummation, provided that such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under § 1129 of the Bankruptcy Code. For the purpose of modification of this Plan, substantial consummation shall be deemed to occur on the later of the date (1) when the confirmation order becomes final, or (2) the dates set forth in Article XVI of this Plan entitled Closing the Estate.

C.  **Voting on the Plan.**      As a member of an Impaired Class, each holder of an Allowed Claim in each Creditor Class are entitled to vote to accept or reject the Plan. -Under §1129(a)(10) of the Bankruptcy Code, the Debtor cannot use the Class 3d Creditor's vote to determine whether a class of Creditors has accepted the Plan. -An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. -A Class of holders of Claims shall be deemed to accept the Plan in the event that no holder of a Claim within that Class submits a ballot by the deadline for doing so. -All Claims shall be allowed for voting purposes only unless objected to before the hearing on Confirmation of the Plan.

D.  **Presumed Rejection of the Plan**.      The Debtor as the Holder of an Interest is deemed not to have accepted the Plan ~~pursuant to~~under § 1126(g) of the Bankruptcy Code.

E.  **Non-Consensual Confirmation**.      In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code or amend the Plan.

F.  **Voting on Modification**:- A holder of a Claim or interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time specified by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## XIV.  INVALIDATION OF LIENS AND DISCHARGE

All liens securing Claims which are not allowed ~~pursuant to~~under the provisions of this Plan and §§ 502 and 506 of the Bankruptcy Code shall be invalidated and deemed null and void and of no further force and effect. The provisions of this Plan, as confirmed, shall bind all Creditors and parties in interest, whether or not they accept this Plan and shall discharge the Debtor from all Claims that arose before the Confirmation Date. The distributions provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims against any of the Debtor's assets or the Property, including claims arising after the Petition Date and before the Confirmation Date. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on and after the Confirmation Date, all holders of Claims shall be precluded from asserting any Claim against the Debtor or their assets.

## XV.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY CLASSES OF IMPAIRED CLAIMS OR EQUITY INTERESTS

-20-

A.  **Reservation of § 1129(b) Rights**. In the event that one or more Impaired Classes shall have failed to accept the Plan by the requisite majorities in accordance with § 1126(c) and (d) of the Bankruptcy Code, the Debtor shall request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code against such rejecting Class or Classes.

B.  **§ 1129(a)(12) Compliance**. All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, either will have been paid or will be paid on the Effective Date as an Administrative Expense Claim.

C.  **Deemed Satisfaction of § 1129(a)(13) of the Bankruptcy Code.** Prior to the commencement of the Case, the Debtor does not have a plan or plans providing for retiree benefits, as that term is defined in § 1144 of the Code. Consequently, the confirmation requirements contained in § 1129(a)(13) of the Bankruptcy Code are inapplicable to the Plan, and the Plan shall be deemed to have satisfied such requirements.

**XVI.   Powers and Duties of the Reorganized Debtor's Agents**.

A.  **Power of §1129 Representative**

The Reorganized Debtor will act through Scott Krone, as the Reorganized Debtor's Manager appointed pursuant to §1129 of the Bankruptcy Code, and the officers, employees, and agents appointed or engaged by him or through his efforts in a capacity as applicable to a corporate agent with full approval of its principal, subject to the provisions of this Plan. In addition to any powers and duties available to an agent by statute or at law, the powers and duties of such Person shall include:

1.  investing monies in accordance with §345 of the Bankruptcy Code, and withdrawing and making Distributions of monies to holders of Allowed Claims, if any, and paying taxes and other obligations owed by the Debtor or incurred by the Reorganized Debtor in connection with the operation of the Estate in accordance with this Plan;

2.  objecting to, compromising, and settling Claims;

3.  engaging attorneys, consultants, agents, employees, and all Professional Persons, to assist the Reorganized Debtor with respect to the Reorganized Debtor's responsibilities;

4.  executing and delivering all documents, and taking all actions, necessary to consummate the Plan of the Reorganized Debtor's business;

5.  coordinating the disposition of assets, subject to rejected executory contracts or abandonment or liquidation of any retained assets;

6.  coordinating the collection of outstanding accounts receivable;

7.  coordinating the storage and maintenance of the Debtor's books and records;

8.  disposing of, and delivering title to others of, or otherwise realizing the value of all the Assets delivered to the Reorganized Debtor on terms deemed reasonable in the Reorganized

Debtor's sole discretion. The Reorganized Debtor may, but shall not be required to, seek the Bankruptcy Court's approval of any such disposition by filing a motion pursuant to §363 of the Bankruptcy Code and Rule 9019 of the Rules;

9.   prosecuting and otherwise disposing of the Causes of Action transferred to Reorganized Debtor;

10. overseeing compliance with the Estate's accounting, finance, and reporting obligations;

11. preparing monthly operating reports and financial statements and United States Trustee quarterly reports;

12. overseeing the filing of tax returns;

13. performing any additional corporate actions as necessary to carry out the terms of the Plan;

14. paying United States Trustee Fees and the fees and expenses of the attorneys, consultants, agents, employees, and Professional Persons engaged by the Debtor and the Reorganized Debtor and to pay all other expenses for relating to the Estate's affairs. In the event of a dispute that cannot be resolved, the Reorganized Debtor's §1129 representative shall seek to resolve such dispute in the Bankruptcy Court;

15. implementing and/or enforcing all provisions of the Plan; and

16. such other powers as may be vested in or assumed by the Reorganized Debtor pursuant to this Plan or Bankruptcy Court Order or as may be needed or appropriate to carry out the provisions of this Plan.

B. **Appointment of the Reorganized Debtor's Officers**. Pursuant to §1129(a)(5) of the Bankruptcy Code, the Confirmation Order shall provide that Scott Krone, who will serve as the Reorganized Debtor's Manager, will undertake the responsibility for the management and operation of the Reorganized Debtor's business. The Reorganized Debtor designates Mr. Krone as the Estate's representative in accordance with §1129 of the Bankruptcy Code, and she shall have all powers, authority, and responsibilities specified in this Plan, including, without limitation, the powers of a trustee under §§704 and 1106 of the Bankruptcy Code. Scott Krone will be responsible for acting under §1123(a)(5)(B) and serve the functions required of the Reorganized Debtor under the Plan.

C. **Retention of Insider.**   Pursuant to §1129(a)(5)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain the services of Scott Krone, who is an insider. Scott Krone has served as the Debtor's Manager during this bankruptcy case.

D. **Resignation of Managers**. Upon the Effective Date of this Plan, the Debtor's Managers shall be deemed to have resigned or been eliminated as the Debtor's Managers.

E. **No Agency Relationship**. Neither the Reorganized Debtor, nor any Manager, member, agent, attorney, or representative, including the §1129 representative, shall be liable, or responsible for

-**22**-

any act or omission of the Debtor or any of its Managers, members, agents, officers, attorneys, or representatives unless expressly assumed pursuant to this Plan. The Reorganized Debtor shall not be deemed the agent of any of the holders of Claims in connection with the monies held or distributed pursuant to this Plan. The Reorganized Debtor shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct on the part of the Reorganized Debtor. The Reorganized Debtor and its Manager, members, agents, attorneys, or representatives, including the §1129 representative appointed, engaged, or employed by it shall be indemnified and held harmless, including the cost of defending such Claims and attorneys' fees in seeking indemnification, by the Estate against any and all Claims arising out of its, his, her or their duties under this Plan, except to the extent the actions constitute gross negligence or willful misconduct. Such parties may conclusively rely and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which it, he, she, or they believe to be genuine and to have been signed or presented by the proper party or parties. Any trustee, officer or agent appointed, engaged, or employed by the Reorganized Debtor may rely upon information previously generated by such party and such additional information provided by current and/or former employees of the Debtor. Any act taken by or omission of the Reorganized Debtor or any officer, director, shareholder, agent, attorney or representative, including the §1129 representative of the Reorganized Debtor, pursuant to an Order of the Bankruptcy Court, after notice and hearing, as provided in Article XVI of the Plan, shall be conclusively established to be proper, fair, in the best interest of Creditors and consistent with the duties of the Reorganized Debtor pursuant to the provisions of the Plan.

F.   **No Bond Required**. Scott Krone, as the Reorganized Debtor's representative, shall serve without the necessity of obtaining or maintaining a bond.

XVI.XVII.    **CLOSING THE ESTATE**

For purposes of § 1127(b) and for the closing of the estate, the following shall be conditions precedent to the substantial consummation of the Plan:

A.   The Confirmation Order shall have become a Final Order or such requirement shall have been waived in writing by the Debtor; and

B.   The date on which the Debtor payments makes the first quarterly payment due under this Plan and the first and final payment to Class 3b Claimants.

XVII.XVIII.   **RETENTION OF JURISDICTION**

A.   Notwithstanding confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

1.   Determination of the allowance of Claims and interests upon objection to such Claims by the Debtor, or by any other Party in Interest.

2.   Determination of requests for payment to professional persons and Claims entitled to priority under §§ 503 and 507 of the Bankruptcy Code, including compensation of parties entitled thereto.

-23-

3.   Implementation of the provisions of this Plan and entry of orders in aid of confirmation of this Plan, including, without limitation, appropriate orders to protect the Debtor from Creditor action.

4.   Modification of this Plan ~~pursuant to~~under § 1127 of the Bankruptcy Code.

5.   Adjudication of any causes of action, including Avoidance Actions brought by the Debtor.

6.   Determination of any issues raised by papers Filed with the Bankruptcy Court on or before the Confirmation Date.

7.   Entry of a final decree closing the Debtor's case.

## ~~XVIII.~~XIX.    OTHER MATERIALS

The attention of holders of Claims is directed to the Disclosure Statement.

### PLATFORM II LAWNDALE LLC

By:   /s/ Scott Krone
      Scott Krone, Manager


By:   /s/ Gregory J. Jordan
      One of Its Attorneys

Gregory J. Jordan (ARDC# 6205510)
Mark Zito (ARDC# 6276231)
Jordan & Zito LLC
350 North LaSalle Drive, Suite 1100
Chicago Illinois 60654-4980
(312) 854-7181
gjordan@jz-llc.com
mzito@jz-llc.com

COUNSEL FOR PLATFORM II LAWNDALE LLC

-24-

# Exhibit B

# Financial Projections

|  | | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | | 11/1/2023 | 12/2/2023 | 1/1/2024 | 2/1/2024 | 3/1/2024 | 4/1/2024 | 5/1/2024 | 6/1/2024 | 7/1/2024 | 8/1/2024 | 9/1/2024 | 10/1/2024 | 11/1/2024 | 12/1/2024 |
|  | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |

**Revenue Calculations**

*Occupancy Calculations*

| Debt Assumptions | Rentals | 447 | 465 | 483 | 502 | 520 | 539 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Project Cost | Vacates | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| LTC | 70% | Net Rentals | 447 | 465 | 483 | 502 | 520 | 539 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 |
| Loan Amount | $0 | | | | | | | | | | | | | | | |
| Equity Required | $0 | Occupied Units | 73.00% | 76.00% | 79.00% | 82.00% | 85.00% | 88.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% |
| Rate | 5.5% | Occupied SF | 31,244 | 32,528 | 33,812 | 35,096 | 36,380 | 37,664 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 |
| Amortization | 25 Years | Occupancy | 64.6% | 67.6% | 70.6% | 73.6% | 76.6% | 79.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% |
| Monthly I/O Payment | $0 | Ending Occupancy | | | | | | | | | | | | | | |
| Monthly AM Payment | $0 | Occ Stabilization Level | | | | | | | | | | | | | | |
|  | | Average SF | | | | | | | | | | | | | | |

**Revenue**

*Net Rental Income*

| 4100 Gross potential income | 110,208 | 110,208 | 110,208 | 110,208 | 110,208 | 110,208 | 110,208 | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4800 Vacancy | (39,014) | (35,707) | (32,401) | (29,095) | (25,789) | (22,482) | (19,176) | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) |
| 4810 Non-standard rent | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) |
| *Rental Income* - | 70,194 | 73,501 | 76,807 | 80,113 | 83,419 | 86,726 | 90,032 | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 |
| 4700 Discounts | (12,225) | (13,547) | (11,029) | (8,181) | (9,173) | (5,828) | (6,655) | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) |
| 7101 Write-offs | (227) | (266) | (302) | (334) | (362) | (387) | (408) | (408) | (408) | (408) | (408) | (408) | (408) | (408) |
| 4110 Commercial Income - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Rental Income | 57,743 | 59,687 | 65,475 | 71,598 | 73,885 | 80,511 | 82,969 | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 |
| Total Other Income | 3,986 | 4,185 | 4,395 | 4,614 | 4,845 | 5,087 | 5,342 | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 |
| Total Ancillary Income | 4,423 | 4,644 | 4,876 | 5,120 | 5,376 | 5,645 | 5,927 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| **Total Revenues** | 66,152 | 68,517 | 74,746 | 81,332 | 84,106 | 91,243 | 94,238 | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 |
|  |  |  |  |  |  |  | x |  |  |  |  |  |  |  |
| Total Personnel Expense | (4,750) | (4,750) | (4,750) | (4,750) | (4,750) | (4,750) | (4,750) | (4,988) | (4,988) | (4,988) | (4,988) | (4,988) | (4,988) | (4,988) |
| Total Utility Expense | (3,535) | (3,535) | (3,535) | (3,535) | (2,785) | (2,035) | (2,035) | (3,092) | (3,092) | (3,092) | (3,092) | (3,092) | (3,092) | (3,092) |
| Total R&M Expense | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,313) | (1,313) | (1,313) | (1,313) | (1,313) | (1,313) | (1,313) |
| Total Other Operating Expense | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,575) | (1,575) | (1,575) | (1,575) | (1,575) | (1,575) | (1,575) |
| Total Marketing Expense | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (1,750) | (1,750) | (1,750) | (1,750) | (1,750) |
| Total Taxes & Insurance Expense | (9,450) | (9,450) | (9,450) | (9,450) | (9,450) | (9,450) | (9,450) | (9,734) | (9,734) | (9,734) | (9,734) | (9,734) | (9,734) | (9,734) |
| Total Other Non-Controllable Expense | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,575) | (1,575) | (1,575) | (1,575) | (1,575) | (1,575) | (1,575) |
| 6801  Management Fee Expense | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) |
| **Total Property Operating Expenses** | (25,985) | (25,985) | (25,985) | (25,985) | (25,235) | (24,485) | (24,485) | (26,776) | (26,776) | (26,526) | (26,526) | (26,526) | (26,526) | (26,526) |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| **Net Operating Income** | 40,167 | 42,532 | 48,761 | 55,347 | 58,871 | 66,758 | 69,753 | 73,916 | 73,916 | 74,166 | 74,166 | 74,166 | 74,166 | 74,166 |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| DEBT SERVICE I/O Red Oak | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 |
| Greenlake | $2,083 | $2,083 | $2,083 | $2,083 | $2,083 | $2,083 | $2,083 | $2,083 | $2,083 | $2,083 | $2,083 | $2,083 | $2,976 | $2,976 |
| TOTAL | 71,878 | 71,878 | 71,878 | 71,878 | 71,878 | 71,878 | 71,878 | 71,878 | 71,878 | 71,878 | 71,878 | 71,878 | 72,771 | 72,771 |
| Cash Flow | (31,711) | (29,346) | (23,117) | (16,530) | (13,007) | (5,120) | (2,125) | 2,038 | 2,038 | 2,288 | 2,288 | 2,288 | 1,396 | 1,396 |
| DSCR | | | | | | | | | | | | | | |
| Valuation @ 6.0% | | | | | | | | | | | | | | |
| LTV @ 60% | | | | | | | | | | | | | | |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Creditors | | 36467 | | | | 36467 | | | 36467 | | | 36467 | | | 36467 |
| Cash Flow After Debt | | | | | | | | | | | | | | |
| DSCR Interest Only Payment 24 Months | | | | | | | | | | | | | | |

*Management Expense - transition fee first month includes $3,500 startup fee and $3,000 management fee
*Marketing Expenses - Higher marketing costs in non winter months to track with competition
*Personnel Expense - First month includes onboarding/training expenses          0

**Revenue Calculations**

**Occupancy Calculations**

| | | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | | Year | Year | Year | Year | Year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1/1/2025 | 2/1/2025 | 3/1/2025 | 4/1/2025 | 5/1/2025 | 6/1/2025 | 7/1/2025 | 8/1/2025 | 9/1/2025 | 10/1/2025 | 11/1/2025 | | 1 | 2 | 3 | 4 | 5 |
| | | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | | 2023 | 2024 | 2025 | 2026 | 2027 |
| | Rentals | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | | 557 | 557 | 557 | 557 | 557 |
| 70% | Vacates | - | - | - | - | - | - | - | - | - | - | - | | - | - | - | - | - |
| $ | Net Rentals | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | 557 | | 557 | 557 | 557 | 557 | 557 |
| $ | | | | | | | | | | | | | | | | | | |
| $ | Occupied Units | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | 91.00% | | 91.00% | 91.00% | | 562 | 562 |
| 5.5% | Occupied SF | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | 38,948 | | 38,948 | 38,948 | | 38,948 | 38,948 |
| 25 Years | Occupancy | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% | | 82.6% | 82.6% | 82.6% | 82.6% | 82.6% |
| $0 | Ending Occupancy | | | | | | | | | | | | | | | | | |
| | Occ Stabilization Level | | | | | | | | | | | | | 91.0% | 91.0% | 91.0% | 91.0% | 91.0% |
| | Average SF | | | | | | | | | | | | | | | | | |

**Revenue**

**Net Rental Income**

| | | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4100 Gross potential income | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 | 136,556 | | 1,454,237 | 1,638,675 | 1,655,062 | 1,671,612 | 1,688,328 |
| | 4800 Vacancy | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) | (23,761) | | (322,468) | (285,129) | (287,981) | (290,861) | (293,769) |
| | 4810 Non-standard rent | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | | (12,000) | (10,000) | (12,000) | (12,000) | (12,000) |
| | *Rental Income* | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 | 111,795 | | 1,119,769 | 1,343,545 | 1,355,081 | 1,368,752 | 1,382,559 |
| | 4700 Discounts | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) | (12,096) | | (127,118) | (145,150) | (145,150) | (145,150) | (145,150) |
| | 7101 Write-offs | (408) | (408) | (408) | (408) | (408) | (408) | (408) | (408) | (408) | (408) | (408) | | (4,325) | (3,500) | (8,614) | (10,072) | (10,474) |
| | 4110 Commercial Income | - | - | - | - | - | - | - | - | - | - | - | | - | - | - | - | - |
| | Net Rental Income | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 | 99,292 | | 988,326 | 1,194,895 | 1,201,316 | 1,213,530 | 1,226,934 |
| | Total Other Income | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 | 1,050 | | 37,704 | 12,000 | 12,120 | 12,241 | 42,109 |
| | Total Ancillary Income | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | | 37,762 | 5,000 | 5,050 | 12,029 | 12,511 |
| **Total Revenues** | | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 | 100,692 | | 1,063,793 | 1,211,895 | 1,218,486 | 1,237,800 | 1,281,554 |
| | | | | | | | | | | | | | | | | 41.4% | 19.4% | 4.0% |
| | Total Personnel Expense | (4,988) | (4,988) | (4,988) | (4,988) | (4,988) | (6,189) | (6,189) | (6,189) | (6,189) | (6,189) | (6,189) | | (58,188) | (65,855) | (67,831) | (69,866) | (71,962) |
| | Total Utility Expense | (3,092) | (3,092) | (3,092) | (3,092) | (3,092) | (3,185) | (3,185) | (3,185) | (3,185) | (3,185) | (3,185) | | (36,455) | (37,569) | (38,696) | (39,857) | (41,052) |
| | Total R&M Expense | (1,313) | (1,313) | (1,313) | (1,313) | (1,313) | (1,378) | (1,378) | (1,378) | (1,378) | (1,378) | (1,378) | | (15,313) | (16,078) | (16,560) | (17,057) | (17,569) |
| | Total Other Operating Expense | (1,575) | (1,575) | (1,575) | (1,575) | (1,575) | (1,654) | (1,654) | (1,654) | (1,654) | (1,654) | (1,654) | | (18,375) | (19,294) | (19,873) | (20,469) | (21,083) |
| | Total Marketing Expense | (1,750) | (1,750) | (1,750) | (1,750) | (1,750) | (1,591) | (1,591) | (1,591) | (1,591) | (1,591) | (1,591) | | (23,250) | (20,207) | (20,813) | (21,437) | (22,080) |
| | Total Taxes & Insurance Expense | (9,734) | (9,734) | (9,734) | (9,734) | (9,734) | (9,000) | (9,000) | (9,000) | (9,000) | (9,000) | (9,000) | | (114,818) | (113,135) | (121,054) | (129,528) | (148,957) |
| | Total Other Non-Controllable Ex | (1,575) | (1,575) | (1,575) | (1,575) | (1,575) | (1,654) | (1,654) | (1,654) | (1,654) | (1,654) | (1,654) | | (18,375) | (19,294) | (19,873) | (20,469) | (21,083) |
| | 6801 Management Fee Expen | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | | (26,500) | (32,500) | (33,475) | (34,479) | (35,514) |
| **Total Property Operating Expenses** | | (26,526) | (26,526) | (26,526) | (26,526) | (26,526) | (27,650) | (27,650) | (27,650) | (27,650) | (27,650) | (27,650) | | (311,273) | (323,931) | (338,174) | (353,162) | (379,300) |
| **Net Operating Income** | | 74,166 | 74,166 | 74,166 | 74,166 | 74,166 | 73,041 | 73,041 | 73,041 | 73,041 | 73,041 | 73,041 | | 752,520 | 887,964 | 880,312 | 884,639 | 902,255 |
| | | | | | | | | | | | | | | | -262.0% | 97.5% | 32.5% | 4.8% |

| | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | Month | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DEBT SERVICE I/O Red Oak | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | $69,795 | | 618,529.00 | 618,529.00 | 618,529.00 | 618,529.00 |
| Greenlake | $2,976 | $2,976 | $2,976 | $2,976 | $2,976 | $2,976 | $2,976 | $2,976 | $2,976 | $2,976 | $2,976 | | |
| TOTAL | 72,771 | 72,771 | 72,771 | 72,771 | 72,771 | 72,771 | 72,771 | 72,771 | 72,771 | 72,771 | 72,771 | | |
| Cash Flow | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 270 | 270 | 270 | 270 | 270 | 270 | | |
| DSCR | | | | | | | | | | | | | 1.44 | 1.42 | 1.43 | 1.46 |
| Valuation @ 6.0% | | | | | | | | | | | | | $ 14,799,403 | $ 14,671,865 | $ 14,743,981 | $ 15,037,577 |
| LTV @ 60% | | | | | | | | | | | | | |

| Creditors | | | 3646 | |
|---|---|---|---|---|
| Cash Flow After Debt | | | | |
| DSCR Interest Only Payment 24 Months | | | | |

*Management Expense - transition fee first month in
*Marketing Expenses - Higher marketing costs in no
*Personnel Expense - First month includes onboarding



|  | | SF/Unit: 70 | |
|---|---|---|---|
|  | | Year | Year |
|  | | 6 | 7 |
|  | | 2026 | 2027 |

**Revenue Calculations**

*Occupancy Calculations*

|  | | Year 6 | Year 7 |
|---|---|---|---|
|  | Rentals | 557 | 557 |
|  | Vacates | | |
| 70% | Net Rentals | 557 | 557 |
| $0 | | | |
| $0 | Occupied Units | 562 | 562 |
| 5.5% | Occupied SF | 38,948 | 38,948 |
| 25 Years | Occupancy | 82.6% | 82.6% |
| $0 | Ending Occupancy | 91.0% | 90.0% |
| $0 | Occ Stabilization Level | | |
| | Average SF | | |

**Revenue**

| | | Year 6 | Year 7 | | |
|---|---|---|---|---|---|
| | *Net Rental Income* | | | | |
| | 4100  Gross potential income | 1,705,212 | 1,722,264 | 39.056361 | 3.2547 |
| | 4800  Vacancy | (296,707) | (299,674) | | |
| | 4810  Non-standard rent | (12,000) | (12,000) | | |
| | *Rental Income* | *1,396,505* | *1,410,590* | | |
| | 4700  Discounts | (145,150) | (145,150) | | |
| | 7101  Write-offs | (10,893) | (11,329) | | |
| | 4110  Commercial Income | - | - | | |
| | Net Rental Income | 1,240,461 | 1,254,110 | | |
| | Total Other Income | 42,109 | 42,109 | | |
| | Total Ancillary Income | 12,511 | 12,511 | | |
| **Total Revenues** | | **1,295,081** | **1,308,730** | | |
| | | *3.8%* | *3.8%* | | |
| | Total Personnel Expense | (74,121) | (76,344) | | |
| | Total Utility Expense | (42,284) | (43,552) | | |
| | Total R&M Expense | (18,096) | (18,639) | | |
| | Total Other Operating Expense | (21,715) | (22,367) | | |
| | Total Marketing Expense | (22,743) | (23,425) | | |
| | Total Taxes & Insurance Expens | (171,300) | (196,995) | | |
| | Total Other Non-Controllable Ex | (21,715) | (22,367) | | |
| | 6801  Management Fee Expen | (36,579) | (37,676) | | |
| **Total Property Operating Expenses** | | **(408,554)** | **(441,366)** | | |
| | | | | | |
| **Net Operating Income** | | **886,527** | **867,364** | | |
| | | *4.5%* | *4.5%* | | |
| DEBT SERVICE I/O Red Oak | | 618,529.00 | 618,529.00 | | |
| Greenlake | | | | | |
| TOTAL | | | | | |
| Cash Flow | | | | | |
| DSCR | | 1.43 | 1.40 | | |
| Valuation @ 6.0% | | $ 14,775,457 | $ 14,456,068 | | |
| LTV @ 60% | | | | | |
| | | | | | |
| Creditors | | | | | |
| Cash Flow After Debt | | | | | |
| DSCR Interest Only Payment 24 Months | | | | | |

*Management Expense - transition fee first month in
*Marketing Expenses - Higher marketing costs in no
*Personnel Expense - First month includes onboardi

**Exhibit C**

**Red Oak Sources
and Uses of Funds**



RED OAK
CAPITAL HOLDINGS

### *1744 N Lawndale Ave*

1744 N Lawndale Ave Chicago, IL 60647

RED OAK
FINANCIAL

#### Sources and Uses of Funds

| Proposed Refinancing | | 2025 | | | | |
|---|---|---|---|---|---|---|
| **Sources** | | **Amount** | **% Total** | **Uses** | **Amount** | **% Total** |
| New Loan: | $ | 8,000,000 | 88.91% | Outstanding Loan Balance: | $ 8,000,000 | 88.91% |
| Mezzanine: | $ | - | 0.00% | Payoff - Other Debt | $ - | 0.00% |
| Deposit / Other: | $ | - | 0.00% | Investor Equity Repatriation / Borrower Cash Out | $ - | 0.00% |
| Borrower Equity Required: | $ | (997,833) | -11.09% | Capital Improvements / Rehabilitation Costs | $ - | 0.00% |
| **Subtotal** | **$** | **8,997,833** | **100.00%** | Borrower Hard Costs | $ - | 0.00% |
| | | | | Borrower Soft Costs | $ - | 0.00% |
| | | | | Borrower Contingency Costs | $ - | 0.00% |
| | | | | Tenant Improvements | $ - | 0.00% |
| | | | | Leasing Commissions | $ - | 0.00% |
| | | | | Borrower Legal Costs | $ 15,000 | 0.17% |
| | | | | Appraisal Report | $ 6,500 | 0.07% |
| | | | | Environmental Report | $ 3,500 | 0.04% |
| | | | | PCR & Seismic Report | $ 2,500 | 0.03% |
| | | | | Title & Escrow | $ 16,000 | 0.18% |
| | | | | Survey | $ 2,500 | 0.03% |
| | | | | Lender Legal Costs | $ 15,000 | 0.17% |
| | | | | Closing Costs | $ - | 0.00% |
| | | | | Tax & Insurance Reserves | $ - | 0.00% |
| | | | | Red Oak Financial Processing Fee | $ 3,500 | 0.04% |
| | | | | Other Costs | $ - | 0.00% |
| | | | | Lender Contingency Account | $ 113,333 | 1.26% |
| | | | | Debt Service Reserve Account | $ 340,000 | 3.78% |
| | | | | Broker Loan Fee | $ 240,000 | 2.67% |
| | | | | Red Oak Financial Loan Fee | $ 240,000 | 2.67% |
| | | | | **Subtotal** | **$ 8,997,833** | **100.00%** |

Difference Check: Balanced

**Exhibit D**

**Promissory Note**

| | |
|---|---|
| GREENLAKE REAL ESTATE FUND LLC<br>1416 El Centro Street, Suite 200<br>South Pasadena, California, 91030 | Loan No. 1744LawndaleIL-B<br>Note Date: _____, 2023<br>Principal Amount: $939,150.00<br>Maturity Date: _____, 2026 |

**PROMISSORY NOTE**

FOR VALUE RECEIVED, **PLATFORM II LAWNDALE LLC,** an Illinois limited liability company (the "**Borrower**"), promises to pay to the order of **GREENLAKE REAL ESTATE FUND LLC** (the "**Lender**") at the above address or at such other place as the Lender may designate in writing, the principal amount set out above, together with interest thereon at the rate set out below (this "**Note**" or the "**Loan**"). Such payments shall be on the terms set out below.

1.      **THE PURPOSE** of this Loan is to evidence certain obligations of Borrower to Lender according to that certain Amended Plan of Reorganization proposed by Borrower in that certain Chapter 11 proceeding, Case No. 22-07668 in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Plan**"). Borrower acknowledges receipt of sufficient consideration for this Loan.

2.      **INTEREST** on the unpaid principal balance of this Note shall be calculated based on the annual rate of 7.50% (the "**Stated Rate**"). Interest will be calculated based on a year assumed to have 360 days and then applied to the actual number of days that any amount is outstanding hereunder. This method of interest calculation will result in a higher effective annual interest rate than the Stated Rate. Without regard to the foregoing, in no event shall the rate of interest exceed the maximum amount permitted by applicable law.

3.      **PAYMENT** of principal and interest of this Note shall be made as follows: Interest only shall be payable on the 1st day of each month beginning on _____ ____, 2023; provided, however, during the first 12 months of this Loan, Borrower shall only be required to pay 35% of the interest that accrued during such month and the remaining 65% of the interest that accrued during such month shall be deferred, and during months 13 through 24 of this Loan, Borrower shall only be required to pay 50% of the interest that accrued during such month and the remaining 50% of the interest that accrued during such month shall be deferred. There shall be no additional deferred interest after month 24 of this Loan. The balance of principal and accrued and deferred interest is payable without further notice or demand on the Maturity Date, as extended. Provided Borrower pays all deferred and accrued interest on or before the Maturity Date, as extended, (and effective as of the Maturity Date) and there is not then an event of default under the Loan, Borrower has the option to extend the Maturity Date by an additional 24 months by providing written notice thereof to the Lender no less than 10 days prior to the then Maturity Date. The scheduled payments will not be sufficient to pay the principal amount of the Note by the Maturity Date and a final balloon payment will be required. THE LENDER HAS NO OBLIGATION TO RENEW, EXTEND OR REFINANCE THIS NOTE OR ANY AMOUNTS DUE HEREUNDER EXCEPT AS EXPRESSLY PROVIDED IN THIS PARAGRAPH.

If Lender receives net proceeds from the CubeSmart Lawsuit, as that term is defined in the Plan, Lender shall apply the proceeds in accordance with Paragraph 6 below.

4.      **THIS NOTE IS SECURED BY** or is made pursuant to a (a) Borrower's and Guarantors' irrevocable consent to the entry of the order of judgment in the sum of $1,600,000.00 in the form provided in Exhibit E of the Plan with such reductions in the judgment amount, if any, as set forth in the Plan (the "**Judgment**"), and (b) the unconditional joint and several guarantees of Scott Krone and Coda Design + Build, LLC (collectively, the "**Guarantors**"). Failure to list any collateral will not be deemed to be a waiver of the collateral by the Lender.

**5.** **CALCULATION OF INTEREST; POST-MATURITY RATE OF INTEREST.** Lender shall deposit all funds within one business day of receipt. Interest shall continue to accrue when payments received are not collected funds and until such funds are collected. FROM AND AFTER THE MATURITY DATE OR ANY DEFAULT ON THIS NOTE, REGARDLESS OF WHETHER THE LENDER ACCELERATES PAYMENT OF THIS NOTE, INTEREST ON THE UNPAID PRINCIPAL AND INTEREST OF THIS NOTE SHALL AUTOMATICALLY AND WITHOUT THE NEED FOR FURTHER NOTICE ACCRUE AT AN ANNUAL RATE EQUAL TO 5 PERCENTAGE POINTS OVER THE RATE OF INTEREST THAT WOULD OTHERWISE THEN BE PAYABLE ON THIS NOTE.

**6.** **APPLICATION OF PAYMENTS.** The Lender may apply any amounts received from Borrower or collateral against any amounts then payable hereunder, or under any instrument securing this Note, or against any other amounts payable to Lender by Borrower, in the following order: first to costs and fees incurred by Lender, including attorneys' fees and costs; second to accrued interest due and payable; third to deferred interest; fourth to reduce the principal balance; and fifth to any other amount due and owing under the Note, if any. The actual amount payable under this Note may increase if the Borrower incurs any fees, charges, or penalties hereunder. No payment for less than the entire outstanding balance due on this Note will discharge Borrower's obligations under this Note or be deemed to be an accord and satisfaction. If Borrower seeks to repay the balance of the Note, Borrower shall deliver a written request for a payoff letter, which Lender shall provide within ten (10) days of its receipt of the written request.

**7.** **DEFAULT.** Borrower will be in default under this Note if Borrower or any person who provides security for this Note, or the grantor of any trust that is Borrower or that provides security for this Note: (i) fails to make any payment of any amounts hereunder and such nonpayment is not cured within 60 days after written notice from Lender; (ii) otherwise defaults under, or breaches any representation or warranty contained in, any other provision of this Note, or under any guaranty of this Note or any payment direction letter executed in connection therewith, or under any other agreement with the Lender executed after the date of this Note; (iii) makes any materially false statement at any time to the Lender; (iv) is the subject of any Bankruptcy or insolvency proceedings or makes an assignment for the benefit of creditors other than the approved Plan; (v) the Borrower's property becomes the subject of any judgment, attachment, lien, execution, or levy that materially impairs the Borrower's ability to conduct business; (vi) dissolves or ceases doing business; (vii) revokes, impairs, limits or terminates any security agreement or other document which secures this Note; (viii) pledges or encumbers (except for purchase money security interests) or transfers any of its assets including, without limitation, granting joint interests in such property or assets to any other person or entity, without receiving fair consideration therefore; or (ix) causes the Lender to believe that the Lender's prospects of payment or performance of this Note is significantly impaired.

**8.** **REMEDIES.** Upon the occurrence of any default hereunder the Lender shall have the right to (a) accelerate this Note without prior notice or demand, and declare this Note immediately due and payable; (b) set-off any cash or any other property of the Borrower in the possession, custody or control of the Lender even if this Note has not matured or been accelerated; (c) exercise all other rights available at law or under any guaranty of this Note. The Borrower will pay all expenses of the Lender in enforcing the Lender's rights and remedies under this Note, including the fees of any attorney retained by the Lender regardless of whether suit is filed. No delay by Lender in exercising any right or remedy will be a waiver of such right or remedy and will not prevent the Lender from enforcing such right or remedy in the future. In the event of any conflict between the terms of this Note or any guaranty of this Note, the Lender shall have the right to select which terms to enforce. The rights of the Lender under this Note will not be impaired by any extension, modification or renewal of, or indulgence with respect to Borrower's obligations hereunder; any delay, waiver, or omission to enforce any right, power, or remedy that the Lender may have; any addition to or substitution for or any release, surrender, compromise, settlement, waiver, subordination, failure to perfect, or modification of any collateral securing this Note.

**9.** **LATE CHARGES AND EXPENSES.** Lender will not be required to accept any late payment, but if Lender does accept a late payment, then the Borrower shall also pay, concurrently with the payment of principal and/or interest, a penalty equal to the greater of 10% of the principal and interest payment that is past due or $125, but in no event more than permitted by law. Borrower shall pay any and all attorneys' fees and costs of Lender, and

the fees and costs of attorneys, consultants, accountants, and other experts retained by Lender in connection with any litigation, proceeding, or dispute whether arising hereunder or otherwise, in any way related to Lender's relationship with Borrower or any Guarantor, members of Borrower or any Guarantor, whether such litigation, proceeding, dispute, or cost shall arise during the term of the Loan or after repayment, satisfaction discharge, or otherwise of the obligations under this Note and guaranty of this Note. THIS PARAGRAPH SHALL SURVIVE ANY REPAYMENT, SATISFACTION, DISCHARGE, OR OTHERWISE OF THE OBLIGATIONS UNDER THE LOAN AND GUARANTY OF THIS NOTE.

10.     **APPLICABLE LAWS AND SELECTION OF COURTS; WAIVER OF JURY TRIAL.** This Note will be governed by the internal laws of the state of Illinois without reference to conflict of laws rules and is subject to the arbitration provisions hereof. Borrower waives the right to a jury in any litigation arising under or with respect to this Note.

11.     **MODIFICATIONS, RENEWALS, WAIVERS.** Borrower and each surety, endorser and guarantor of this Note agrees that: (i) this Note may be modified or renewed one or more times and the time for payment of this Note or any renewal note may be extended without notice to or consent of any person obligated on this Note; (ii) the Lender may enforce this Note against less than all of the persons directly or indirectly obligated hereon without prejudice to its rights against any other persons; (iii) the Lender is not obligated to foreclose upon or exhaust any remedies or collateral given for this Note before proceeding against any person directly or indirectly obligated hereon; and (iv) presentment, demand for payment, notice of nonpayment, protest, notice of protest, notice of dishonor and all other notices in connection with this Note, filing of suit, and diligence in collection, are waived.

12.     **FINANCIAL STATEMENTS AND TAX RETURNS.** Within 30 days after the end of each month until this Note is paid in full, Borrower (and each of them if there is more than one) will deliver to the Lender financial statements with respect to the previous month that truly and accurately reflect assets, liabilities, income and expenses of Borrower, and such other financial information regarding the Borrower as the Lender may reasonably request. Such information shall be current within no more than 30 days before the date of the financial statements; provided, however, Borrower and Guarantors shall each provide current financial statements and 2020-2022 tax returns to Lender prior to the execution of this Loan. Such financial statements shall be prepared consistently with financial statements previously delivered to the Lender by the Borrower and shall be certified as true by the Borrower (and by the chief executive officer and chief financial officer of the Borrower if the Borrower is an entity). If any guaranty of this Note has more stringent requirements for delivery of financial statements, the provisions of that guaranty shall govern. Borrower shall file all state and Federal tax returns when due, subject to legal extensions. Borrower shall deliver a copy of Borrower's Federal tax returns (or any extension of the time for filing a return) within 10 days after such returns or extensions are filed. Within 15 days after written request by Borrower, but not more frequently than monthly, Lender will provide Borrower a statement indicating the amount of (a) principal outstanding, (b) accrued but unpaid interest, (c) outstanding deferred interest, (d) Lender's outstanding costs and expenses, (e) the amount of the Judgment after any reductions thereto in accordance with the Plan, and (f) in the event Lender receives a prepayment of any portion of the principal, the amount Lender shall calculate and provide a statement of the amount due in the next calendar month (a "**Statement**"). Notwithstanding the foregoing, Lender, at Lender's option, may send a Statement or other notice containing any of the items set forth in subsections (a) – (f) of this Section 12 to Borrower and/or Guarantors at any time during the term of the Loan. Borrower and Guarantors acknowledge and agree that unless a Statement or other form of notice sent by Lender outlining any of the items set forth in subsections (a) – (f) of this Section 12 is objected to by the Borrower and/or Guarantors in writing within fourteen (14) days after the date of Borrower and Guarantor's receipt of the Statement or notice (the "**Objection Period**"), such Statement or notice shall be evidence of the amount due and owing under the Loan, the amount of the Judgment, if applicable, after any reductions, and/or any of the items set forth in subsections (a) – (f) of this Section 12. Absent an objection delivered during the Objection Period, Borrower and Guarantors waive any defenses, objections, causes of action, counterclaims, or setoffs which Borrower and/or Guarantors may now or hereafter have to the amounts or items set forth in any Statement or notice after the expiration of the Objection Period. All notices provided under Sections 7 and 12 hereof shall be sent by nationally recognized overnight delivery service, registered or certified mail, or by first class mail, postage prepaid <u>and</u> via electronic mail. Notices shall be

sent to the Borrower and Guarantors at 600 Waukegan Road, Suite 129, Northbrook, IL. 60062 and via electronic mail to Scott Krone at skrone@codamg.com and JJ McCarthy at jj@yellowhathomes.com or to such other postal and/or electronic mail addresses of which the Borrower or Guarantors advise Lender in writing. Notices shall be sent to the Lender at 1416 El Centro Street, Suite 200, South Pasadena, CA 91030 and via electronic mail to notice@greenlakefund.com or to such other postal and/or electronic mail addresses of which the Lender advises Borrower and Guarantors in writing.

13.    **MISCELLANEOUS.** This Note is binding on the successors, heirs, assigns, and representatives of the parties hereto. If any applicable law prohibits or restricts any right, power, or remedy of the Lender in this Note, then such rights, powers, and remedies will be limited to those permitted by law, but all other provisions of this Note will remain in effect.

14.    **AGENT FOR SERVICE.** Borrower irrevocably appoints the following person (the "**Agent**") to accept service of any summons, subpoena, process, notices, or other documents ("**Notices**") from or on behalf of the Lender if such Notice commences or relates to or arises out of any litigation, arbitration, mediation, or any other dispute proceeding between any of the undersigned and the Lender: Scott Krone, Platform II Lawndale LLC, 600 Waukegan Road, Suite 129, Northbrook, Illinois 60062 or to such other postal address of which the Borrower advises Lender in writing. Delivery of a Notice to Agent shall be deemed to have the same effect as delivery to the undersigned, and the Lender shall have no further obligation of any kind to deliver the Notice directly to the undersigned. It shall be the sole responsibility of the Agent to convey such Notice to the Borrower. This appointment shall be irrevocable as long as the Borrower remains indebted or obligated to the Lender in any manner, and any attempt to revoke this appointment shall: (a) be null and void; and (b) shall constitute a default by the undersigned under all such debts or obligations.

15.    **ARBITRATION**. Except for Lender's rights with respect to the Judgment contained in this Note and the Plan, Borrower agrees that any dispute, claim, or controversy arising hereunder relating to or arising out of this Loan, any guaranty of this Note, or any other matter between Lender or an affiliate of Lender and Borrower, Guarantor, and/or an affiliate of Borrower or Guarantor, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration. The parties agree that this will include arbitration of any claim that all or part of this Note or any of the guaranty of this Note generally or the agreement to arbitrate is void or voidable for any reason, including but not limited to claims that it is a contract of adhesion, fails for lack of consideration, is procedurally or substantively unconscionable or is void as against public policy. The arbitration will be conducted by ADR Systems in accordance with the ADR Systems Commercial Arbitration Rules and the ADR Systems Commercial Fee Schedule in effect at the time of filing the demand for arbitration. The arbitration will take place in Chicago, Illinois, before one arbitrator, who shall be a retired judge from the United States District Court or the Illinois state courts. Judgment on the award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, nor preclude the use of the courts to obtain injunctive relief or enforcement of remedies not available through arbitration.

The parties acknowledge that the Loan evidences a transaction involving interstate commerce. Notwithstanding any other provisions herein with respect to applicable substantive law, any arbitration conducted pursuant to the terms of this section shall be governed by the Federal Arbitration Act (9 U.S.C., Secs. 1-16).

The parties shall maintain the confidential nature of the arbitration proceeding and any award, including any hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision.

In any arbitration arising out of or related to this agreement to arbitrate, the arbitrator(s) are not empowered to award punitive or exemplary damages except where permitted by statute, and the parties waive any right to recover any such damages.

In any arbitration arising out of or related to this agreement to arbitrate, the arbitrator shall award to the prevailing party, if any, the costs and reasonable attorneys' fees incurred by the prevailing party in connection with the arbitration. If the arbitrator determines a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the arbitrator may award the prevailing party an appropriate percentage of the costs and reasonable attorneys' fees incurred by the prevailing party in connection with the arbitration.

THE PARTIES HERETO ACKNOWLEDGE AND AGREE THAT THIS AGREEMENT TO ARBITRATE SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS NOTE AND ANY GUARANTY OF THIS NOTE.

**BOTH PARTIES AGREE TO HAVE ANY DISPUTE DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY HEREIN. BOTH PARTIES AGREE TO GIVE UP ANY RIGHTS THEY MAY POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL, AND BOTH PARTIES AGREE TO GIVE UP THEIR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL WITHOUT WAIVER OF THE RIGHT TO SEEK DISCOVERY DURING THE ARBITRATION WITH PERMISSION OF THE ARBITRATOR. IF EITHER PARTY REFUSES TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, THE REFUSING PARTY MAY BE JUDICIALLY COMPELLED TO ARBITRATE. THE AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY FOR BOTH PARTIES.**

**16.    NO OTHER AGREEMENTS: Oral or unexecuted agreements or commitments to loan money, extend credit, or forbear from enforcing repayment of a debt that is in any way related to this Note, including promises to extend or renew such debt and affirmative defenses to paying this Note, are not enforceable, regardless of the legal theory upon which they are based. To protect the undersigned Borrower and the Lender from misunderstanding or disappointment, any agreements the Borrower and the Lender reach covering such matters are contained in this Note and any guaranty of this Note securing this Note are the complete and exclusive statement of the agreement between the Borrower and the Lender, except as the Borrower and the Lender may later agree in writing to modify them. If any of the terms of this Note are inconsistent with the terms of any guaranty of this Note, the terms of this Note shall prevail. The failure of a term in this Note to appear in any guaranty of this Note shall not be deemed to be an inconsistency.**

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, this Note has been executed by Borrower as of the date set forth above.

**BORROWER:**

**PLATFORM II LAWNDALE LLC,**
an Illinois limited liability company

By: _____
    Scott Krone, Manager

THIS DOCUMENT MUST BE NOTARIZED

A notary public or other officer completing
this certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or validity
of that document.

STATE OF _____ )
                                                      ) §
COUNTY OF _____ )

On _____, 2023, before me, a Notary Public, personally appeared Scott Krone, as Manager of **PLATFORM II LAWNDALE LLC**, an Illinois limited liability company, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he voluntarily executed the instrument in his authorized capacity for its stated purpose.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

My Commission Expires:                                         (Affix Seal Here)

This Note, and the security interests granted pursuant to Paragraph 4 hereof, and such other provisions relating to the Guarantors herein, are acknowledged and agreed to by the undersigned Guarantors who have executed separate guaranty documents relating to the obligations hereof.

**GUARANTOR:**

_____

**SCOTT KRONE**

THIS DOCUMENT MUST BE NOTARIZED

A notary public or other officer completing
this certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or validity
of that document.

STATE OF _____ )

                                )  §

COUNTY OF _____ )

On _____, 2023, before me, a Notary Public, personally appeared **SCOTT KRONE**, an Illinois resident, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he voluntarily executed the instrument for its stated purpose.

WITNESS my hand and official seal.

_____

Notary Public

My Commission Expires:                                    (Affix Seal Here)

**GUARANTOR:**

**CODA DESIGN + BUILD, LLC**,
an Illinois limited liability company

By: _____

    Scott Krone, Manager

THIS DOCUMENT MUST BE NOTARIZED

> A notary public or other officer completing
> this certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or validity
> of that document.

STATE OF _____ )

                                   ) §

COUNTY OF _____ )

       On _____, 2023, before me, a Notary Public, personally appeared Scott Krone, as Manager of **CODA DESIGN + BUILD, LLC**, an Illinois limited liability company, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he voluntarily executed the instrument in his authorized capacity for its stated purpose.

       I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

       WITNESS my hand and official seal.

                                      _____

                                        Notary Public

My Commission Expires:                                       (Affix Seal Here)

**Group Exhibit E**

**Complaint and Agreed Judgment**

## IN THE CIRCUIT COURT FOR COOK COUNTY, ILLINOIS
## LAW DIVISION

*GREENLAKE REAL ESTATE FUND LLC*

      *Plaintiff,*

                      Case No. _____

    v.

*PLATFORM II LAWNDALE, LLC*

*Serve:* Levin Ginsburg, registered agent
      180 N. LaSalle St., Ste. 3200
      Chicago, IL 60601

*CODA DESIGN + BUILD, LLC*

*Serve:* Jeff Galkin, registered agent
      180 N. LaSalle St., Ste. 3200
      Chicago, IL 60601

*SCOTT KRONE*

*Serve:* 600 Waukegan Rd., Ste. 129
      Northbrook, IL 60062

      *Defendants.*

## COMPLAINT FOR ENTRY OF CONSENT/CONFESSION OF JUDGMENT

COMES NOW GreenLake Real Estate Fund LLC ("Plaintiff"), by and through its undersigned counsel, and for its Complaint for Entry of Consent/Confession of Judgment, states as follows:

### PARTIES

1. Plaintiff is a limited liability company organized under the laws of the State of California.

2. Defendant Platform II Lawndale, LLC ("Platform II") is a limited liability company organized under the laws of the State of Illinois in good standing and doing business in Cook County, Illinois.

3.      Defendant Coda Design + Build, LLC ("Coda") is a limited liability company organized under the laws of the State of Illinois in good standing and doing business in Cook County, Illinois.

4.      Defendant Scott Krone ("Krone") is a citizen and resident of the State of Illinois doing business in Cook County, Illinois.

5.      This Court has subject matter jurisdiction over this matter, and venue is proper in this Court because Defendants reside in and/or conduct business in this county and the parties contractually consented to this venue.

## COUNT I – BREACH OF PROMISSORY NOTE
### Defendant Platform II

6.      Plaintiff incorporates all prior paragraphs.

7.      Plaintiff and Defendant Platform II entered into a written agreement titled "Promissory Note," effective as of the date set forth in the Promissory Note.  A true and accurate copy of the Promissory Note is attached as *Exhibit 1*.

8.      Under the Promissory Note, Platform II agreed to repay certain obligations to Plaintiff, including a principal amount and the interest payments and other terms as set forth in the Promissory Note.

9.      Platform II further agreed that the amounts owing under the Promissory Note would be secured by Platform II's "irrevocable consent to the entry of the order of judgment in the sum of $1,600,000.00" in the event of their default ("Consent Judgment").  *Exhibit 1*, ¶ 4.

10.      The Parties to the Promissory Note further agreed the amount of the Consent Judgment would be subject to reduction based on their payment history in accordance with the Amended Plan of Reorganization proposed by Platform II in a Chapter 11 bankruptcy proceeding, Case No. 22-07668 in the United States Bankruptcy Court for the Northern District

2

of Illinois, Eastern Division (the "Plan"). A true and accurate copy of the Plan is attached as
*Exhibit 2.*

11.     Platform II is in breach of the payment terms of the Promissory Note.

12.     Accordingly, Platform II has breached the Promissory Note.

13.     Platform II agreed in the Promissory Note that the amount of the judgment would
be calculated by a recent statement or notice sent by Plaintiff for which Platform II did not object
within fourteen (14) days. (*Exh.* 1).

14.     The amount of Platform II's deficiency is set forth in *Exhibit 3* which is the most
recent statement sent by Plaintiff showing the amount due and owing.

15.     Platform II did not object to the statement sent by Plaintiff within fourteen (14)
days.

16.     Platform II's breach of the Promissory has caused Plaintiff damages to the extent
of the Consent Judgment, less all applicable reductions as set forth in the Plan. See, *Exhs. 1, 2
and 3.*

17.     The judgment consented-to by the Borrower is attached hereto as *Exhibit 4* which
includes the amount of the judgment in *Exhibit A* thereto.

WHEREFORE, Plaintiff requests that this Court enter Judgment in favor of Plaintiff and
against Defendant Platform II, in the amount of $1,600,000.00, less any applicable reductions
applicable under the Plan as outlined in Exhibits 3 and 4, and for such other and further relief as
the Court deems just and proper.

## COUNT II - BREACH OF GUARANTY
### Defendant Coda

18.     Plaintiff incorporates all prior paragraphs.

19.     Defendant Coda, for good and valuable consideration, made, executed, and delivered to Plaintiff a Payment and Performance Guaranty wherein and whereby Coda guaranteed to Plaintiff repayment of all debt owing from Platform II to Plaintiff under the Promissory Note.  A copy of the Coda Guaranty is attached as *Exhibit 5*.

20.     Platform II and Coda have failed, refused, and neglected to pay Plaintiff the amounts due and owing to Plaintiff by Platform II, including but not limited to all principal, interest, attorneys' fees, and costs payable under the Promissory Note.

21.     Due to the failure, refusal and/or neglect by Coda to pay and satisfy the indebtedness due and owing to Plaintiff by Platform II, Plaintiff has been required to obtain the services of attorneys, incurring attorneys' fees and collection costs, all of which are guaranteed by Coda.

22.     The amount of Platform II's deficiency for which Coda is liable as guarantor is set forth in *Exhibit 3* and the judgment to be entered against Coda is attached hereto as *Exhibit 4*.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against Coda Design + Build, LLC, in the amount of $1,600,000.00, less any applicable reductions applicable under the Plan as outlined in Exhibits 3 and 4, plus attorneys' fees, continuing interest and fees, costs and any and all other relief as this Court deems just, plus reasonable attorney's fees, costs of collections and costs.

### COUNT III - BREACH OF GUARANTY
**Defendant Krone**

23.     Plaintiff incorporates all prior paragraphs.

24.     Defendant Krone, for good and valuable consideration, made, executed, and delivered to Plaintiff a Payment and Performance Guaranty wherein and whereby Krone guaranteed to Plaintiff repayment of all debt owing from Platform II to Plaintiff under the Promissory Note.  A copy of the Krone Guaranty is attached as *Exhibit 6*.

25.     Platform II and Krone have failed, refused, and neglected to pay Plaintiff the amounts due and owing to Plaintiff by Platform II, including but not limited to all principal, interest, attorneys' fees, and costs payable under the Promissory Note.

26.     Due to the failure, refusal and/or neglect by Krone to pay and satisfy the indebtedness due and owing to Plaintiff by Platform II, Plaintiff has been required to obtain the services of attorneys, incurring attorneys' fees and collection costs, all of which are guaranteed by Krone.

27.     The amount of Platform II's deficiency for which Krone is liable as guarantor is set forth in *Exhibit 3* and the judgment to be entered against Krone is attached hereto as *Exhibit 4*.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against Scott Krone, in the amount of $1,600,000.00, less any applicable reductions applicable under the Plan as outlined in Exhibits 3 and 4, plus attorneys' fees, continuing interest and fees, costs and any and all other relief as this Court deems just, plus reasonable attorney's fees, costs of collections and costs.

Smith Gambrell & Russell LLP

By: */s/Adam C. Toosley*
      Adam C. Toosley, Esq.
      311 South Wacker Drive, Suite 3000
      Chicago, Illinois 60606-6677
      312-360-6000
      atoosley@freeborn.com
      Attorney Id.: 99883

SANDBERG PHOENIX & VON GONTARD, P.C.

By: /s/
      Anthony Soukenik
      Benjamin R. Wesselschmidt
      600 Washington Avenue, 15th Floor
      St. Louis, MO 63101

314-231-3332
314-241-7604 (fax)
asoukenik@sandbergphoenix.com
bwesselschmidt@sandbergphoenix.com

## IN THE CIRCUIT COURT COOK COUNTY,
## STATE OF ILLINOIS, LAW DIVISION

*GREENLAKE REAL ESTATE FUND LLC*

     *Plaintiff,*

       Case No. _____

   v.

*PLATFORM II LAWNDALE, LLC*

*CODA DESIGN + BUILD, LLC*

*SCOTT KRONE*

     *Defendants.*

### CONSENT/CONFESSION OF JUDGMENT

This matter comes before the Court upon the consent of the Defendants to entry of judgment in favor of Plaintiff GreenLake Real Estate Fund LLC ("Plaintiff") and against Defendants Platform II Lawndale, LLC ("Platform II"), Coda Design + Build, LLC ("Coda") and Scott Krone ("Krone"). In support, the parties state as follows:

WHEREAS, Platform II failed to perform its obligations under the terms of a certain Promissory Note between Plaintiff and Defendants (the "Promissory Note");

WHEREAS, the Promissory Note was secured by Platform II's irrevocable consent to the entry of the order of judgment in the amount of $1,600,000.00, less applicable reductions under the Promissory Note pursuant to the Amended Plan of Reorganization proposed by Platform II in a Chapter 11 bankruptcy proceeding, Case No. 22-07668 in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Plan"), attached as *Exhibit 2* to the Note.

WHEREAS, Platform II's breach of the Promissory Note has damaged Plaintiff to the amount $1,600,000.00, less applicable reductions under the Promissory Note as set forth in the Plan.

WHEREAS, Coda and Krone both provided Payment and Performance Guaranties of the Note guaranteeing the full and faithful performance of Platform under the Note;

WHEREAS, notice has been provided to Platform, Coda and Krone of the default and the amount due and owing to GreenLake and said amount has not been paid;

WHEREAS, Platform, Coda and Krone agree and consent to jurisdiction in the Circuit Court of Cook County for purposes of entry of this Consent Judgment;

WHEREAS, Coda and Krone have not paid GreenLake the amount due and owing under the Note; and

NOW THEREFORE, having considered the foregoing and the record before this Court, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

Judgment is hereby entered in favor of Plaintiff and jointly and severally against Defendants Platform II Lawndale, LLC, Coda Design + Build, LLC and Scott Krone, in the amount of $1,600,000.00, less applicable reductions under the Promissory Note as set forth in the Plan, and in the amount outlined on Exhibit A hereto.

**SO ORDERED:**

Date: _____          _____

                                   Circuit Judge

This foregoing Consent Judgment has been agreed and consented to by the parties and Defendants Platform II Lawndale, LLC, Coda Design + Build, LLC and Scott Krone consent to the entry of judgment against them as outlined above:

Platform II Lawndale, LLC          Coda Design + Build, LLC          Scott Krone

By:_____           By:_____          _____
Title:_____          Title:_____

2

Exhibit A

Statement of Amount Due

**Exhibit F**

**Post-Confirmation Investors**

| Platform II Lawndale LLC Post-Confirmation Investors | %age Held |
|---|---|
| **Class A Members** | |
| Scott Krone | 56.040% |
| **Class B Members** | |
| Cama SDIRA LLC f/b/o Carolina Yan IRA | 1.825% |
| CT Infinity Investments LLC | 2.920% |
| Eleven Vales Investing, LLC | 3.650% |
| Equity Trust Company | 3.650% |
| FCBO Richard Davis IRA734652 | 2.900% |
| Folkman Living Trust | 3.650% |
| Kabatchnick Enterprise Holdings | 0.365% |
| Michael and Julie Gillespie | 1.825% |
| NuView Trust Company FBO Eric Geyer IRA #1924967 | 1.825% |
| Polycomp Trust Company f/b/o Joshua Elmerbrink | 3.650% |
| Polycomp Trust Company f/b/o Kathy Eimerbrink | 3.650% |
| Provident Trust Group, FBO Lynda Ann Mercurio Solok | 3.650% |
| Quest Trust Co. FBO Elizabeth Ly ESA #2420661 | 0.365% |
| Quest Trust Co. FBO Ken Ly ESA #2420561 | 0.365% |
| Richard Banach | 2.370% |
| Yellow Hat Capital | 7.300% |
| | 100.000% |

**EXHIBIT G**

**LIQUIDATION ANALYSIS**

**Platform II Lawndale LLC**
**Case 22-07668**
**Liquidation Analysis**

| | Liquidation Value | |
|---|---|---|
| **Assets** | | |
| Cash | $0.00 | |
| Deposits of Money | $140,000.00 | |
| Lawndale Storage Facility | $7,250,000.00 | Based on 3d Party Offer |
| Other property, including equipment and maintenance tools | $1,000.00 | |
| Breach of contract claim against CubeSmart (estimated) | $3,750,000.00 | |
| **Total Assets** | $11,141,000.00 | |
| **Secured and Priority Obligations** | | |
| GreenLake Debt | ($11,811,163.16) | GreenLake Debt w/o Default Interest |
| Cook County Treasurer Real Estate Taxes | ($385,625.09) | |
| **Total Secured and Priority Obligations** | ($12,196,788.25) | |
| **TOTAL** | ($1,055,788.25) | |