IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Platform II Lawndale LLC, | ) | Case Number: 22-07668 |
| Debtor, | ) | Hearing Date March 27, 2024 10:30 a.m. |
| | ) | Judge Deborah L. Thorne |

**NOTICE OF SCOTT KRONE; MERCURY CAPITAL MANAGEMENT, AN INDIVIDUAL RETIREMENT ACCOUNT; AND YELLOW HAT CAPITAL LLC'S MOTION TO RECONSIDER IN PART ORDER DISMISSING BANKRUPTCY CASE**

**TO:**

Smith, Gambrell & Russell LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Phone: (312) 360-6000
Facsimile: (312) 360-6520
atoosley@sgrlaw.com
COUNSEL FOR GREENLAKE REAL ESTATE FUND

Patrick S Layng

**Electronic Service List**
USTPRegion11.ES.ECF@usdoj.gov

Gregory J. Jordan
Mark Zito
Jordan & Zito LLC
350 North LaSalle Drive, Suite 1100
Chicago IL 60654
(312) 854-7181 (Telephone)
gjordan@jz-llc.com
mzito@jz-llc.com

Dan Wen
Horwood Marcus & Berk Chartered
dwen@hmblaw.com

Konstantine T. Sparagis
Law Offices of Konstantine Sparagis P C
gsparagi@yahoo.com

PLEASE TAKE NOTICE: that on **MARCH 27, 2024 at 10:30 am**, I will appear the Hon. Judge Deborah L. Thorne, or any judge sitting in that judge's place, **either** in courtroom 682 at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL **or** electronically as described below and present the motion of Scott Krone; Mercury Capital Management, an Individual Retirement Account; and Yellow Hat Capital Llc's Motion to Reconsider in Part Order Dismissing Bankruptcy Case a copy of which is attached to this Notice and hereby served upon you.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode. Meeting ID and passcode.

**The meeting ID is: 160 9362 1728**
**NO PASSCODE REQUIRED**

The meeting ID and passcode can also be found on the judge's page on the court's web site.

If you object to this motion and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

/s/ Keevan D. Morgan

**CERTIFICATE OF SERVICE**

I, Keevan D. Morgan, an attorney, caused a copy of this Notice of Filing and the aforementioned Motion to be served upon the above addressees by filing the same electronically with the Bankruptcy Court on March 13, 2024.

/s/ Keevan D. Morgan

Keevan D. Morgan, 1958844
kmorgan@morganandbleylimited.com
Morgan & Bley, Ltd.
900 W. Jackson Blvd.
Suite 4 East
Chicago, Illinois 60607
312.243.0006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| In re: | ) | Chapter 11 |
|---|---|---|
| Platform II Lawndale LLC, | ) | Case Number: 22-07668 |
| Debtor, | ) | |
| | ) | Judge Deborah L. Thorne |

**MOTION TO RECONSIDER IN PART ORDER DISMISSING BANKRUPTCY CASE**

Now come Scott Krone; Mercury Capital Management, an Individual Retirement Account; and Yellow Hat Capital LLC ("Plan Investors"), and move this Honorable Court to amend its order dismissing this Bankruptcy Case [Docket No. 211] entered on February 14, 2024 to delete paragraphs 2 and 3 thereof. In support of this Motion, the Plan Investors state as follows:[1]

**I. Synopsis**

The Court dismissed this Bankruptcy Case, ostensibly "with prejudice." However, two provisions of the Dismissal Order create confusion as to the actual status of the dismissal, this Court's jurisdiction, and ownership of certain funds as of the date of dismissal. Therefore, in order to correct manifest errors of law and fact and to prevent manifest injustice and avoid the already expanding confusion, Paragraphs 2 and 3 of the Dismissal Order should be deleted and the case simply dismissed with prejudice.

**II. Facts**

1. The Debtor owns real estate improved with a self-storage facility (the "Property"). The Debtor filed bankruptcy to save the Property from foreclosure. During the Chapter 11 case, the Debtor obtained a loan to take out the foreclosing lender and make other payments under its proposed reorganization plan (the "Plan"). The order confirming the Plan [Docket 153]was entered on October 26, 2023, and attached the Plan, which specifically provided that:

---

[1]Movants are not all of the Plan Investors, more of whom may later join in this Motion

> The plan filed by Platform II Lawndale LLC on September 15, 2023 ((CM/ECF 114) is confirmed ***effective on the funding of the loan to Platform II Lawndale LLC required to make the initial distribution*** to GreenLake Real Estate Fund, LLC. [emphasis added]

2. Under the Plan, the Plan Investors were to lose their existing equity interests in the Debtor but purchase new equity interests (the "Plan Investments"). Article IV of the Plan, "Treatment of Impaired Claims and Equity Interests" specifically provided that upon confirmation:

> (A)(2) The investors who have contributed ***new monies to fund the Plan*** shall hold the Debtor's membership interests as reflected in Exhibit F."[emphasis added]

3. The Plan Investors deposited their "new monies"for their new equity interests, which interests were to be issued contingent upon (A) the take-out loan and first payment to GreenLake and the Plan taking effect, and the issuance of their new equity interests, neither of which occurred.

4. After the Plan failed, on December 20, 2023, GreenLake moved to Convert or Dismiss the case (the "Dismissal Motion"). [Docket 172] The Dismissal Motion requested the following relief:

> WHEREFORE, GreenLake respectfully requests that this Court enter an order (i) dismissing this bankruptcy case pursuant to section 1112(b)(1) of the Bankruptcy Code or, in the alternative, converting this case to a case under chapter 7; (ii) enter an order that the dismissal will be subject to the reappointment of the Receiver in the Foreclosure Case, that the Debtor not spend the funds on hand ***and that the funds be turned over to the Receiver***; and (iii) granting such other and further relief as the Court deems just and proper. [emphasis added]

The Dismissal Motion requested that it be heard on shortened notice and stated:

> 42. Notice of this Motion has been provided to (i) the Debtor's counsel; (ii) the Debtor; (iii) the Office of the United States Trustee; (iii) all parties who have requested service of pleadings in the Debtor's chapter 11 case; and (iv) all creditors listed on the Debtor's creditor matrix for which addresses were provided on the attached service list.

Although Plan Investor Scott Krone was given notice that in context was obviously in his capacity as the Debtor's Manager, neither he nor any of the other Plan Investors was given notice of the

Dismissal Motion, and hence no notice that GreenLake intended to ask the Court on shortened notice to turn over their funds to the Receiver.

5. The Dismissal Motion, which sought relief on behalf of the Receiver to be awarded all funds in the Debtor's possession—including the Plan Investments—was not brought by the Receiver, but by GreenLake.

6. On February 14, 2024, the Court entered an order (the "Dismissal Order") [Docket 211]granting the Dismissal Motion, including the following relief: "2. The above-captioned bankruptcy is dismissed with prejudice, but shall stay active until such time as the court-appointed receiver is re-appointed in the state court foreclosure filed by GreenLake against, inter alia, the Debtor in the Circuit Court of Cook County Illinois, Chancery Division, Case No. 2020 CH 02969; 3. Upon the reappointment of the receiver, all funds held in any of the Debtor's bank accounts shall be turned over to the receiver."

7. On March 4, 2024, GreenLake brought a Motion for Rule to Show Cause (the "Rule Motion") [Docket 213] why the Debtor should not be held in contempt of the Dismissal Order. Among other things, GreenLake's Rule Motion specifically noted that: "12. ***Because the closing did not occur***, on December 20, 2023, GreenLake filed a Motion to Dismiss the bankruptcy case, or alternatively, to convert it to a Chapter 7 liquidation." [emphasis added]

8. The Rule Motion also made the following statements:

> 16. The receiver was reappointed in the Foreclosure Action on the bond was approved on February 22, 2024. A copy of the Receiver's bond is attached hereto as Exhibit B.
>
> 17. The Receiver immediately reached out to Debtor's counsel in the state court case and to the bank where the Debtor-in-Possession accounts were held. (Toosley Verification, ¶17).

> 18. It was at that point that the Receiver learned that the Debtor took all of the funds out of its Debtor-in-Possession accounts and that there were no funds to be distributed to the Receiver as ordered by the Court on February 14, 2024. (Toosley Verification, ¶18).
>
> 19. Demand has been made by the Receiver on Debtor's counsel to turn over the funds without success. (Toosley Verification, ¶19).

9. As was the Dismissal Motion, the Rule Motion was brought by GreenLake, not the Receiver. The Rule Motion did not affirmatively disclose that no notice of the Dismissal Motion was given to the Plan Investors. The Rule Motion was not served upon the Plan Investors.

10. The Rule Motion did not disclose that approximately 95% of the funds on hand with the Debtor at the time the Dismissal Order was entered were "new monies" delivered to the Debtor by the Plan Investors "to fund the Plan."

11. On March 12, 2024, the undersigned lawyer for the Plan Investors wrote to Adam Toosley, GreenLake's counsel, asking the following question:

> I am going to appear tomorrow on behalf of what for the sake of convenience, I will call Plan Investors. It appears that these are what the Plan describes as "(A)(2) The investors who have contributed new monies to fund the Plan shall hold the Debtor's membership interests as reflected in Exhibit F."
>
> Before I appear and file any papers, I wanted to give you the opportunity to explain to me in whatever way you wish why it is that your client, GreenLake, believes that the funds contributed by Plan Investors are funds to which the Receiver is entitled, as opposed to the Plan Investors being entitled to them. Exhibit 1.

Mr. Toosley sent the following answer to the question:

> When the issue was brought up before Judge Thorne, she said that she wanted all of the funds turned over to the Receiver and then the issue decided as to where the funds should go in the state court case after additional investigation was performed.
>
> We are entitled to an accounting here and we were robbed of that opportunity when the court order was violated. Exhibit 2.

## III. Argument

A. <u>The Plan Investments Never Were and Are Not Property of the Debtor's Estate</u>.

*i. The relevant Plan provisions except out the Plan Investments from the Debtor's property.*

Whose property the Plan Investments are is not a close question, because those funds were deposited with the Debtor for the specific purpose of funding the Plan subject to the condition of a take-out loan that never happened mooting the specific purpose. The specific purpose was: " (A)(2) The investors who have contributed ***new monies to fund the Plan*** shall hold the Debtor's membership interests as reflected in Exhibit F."[emphasis added] The condition was: "The plan filed by Platform II Lawndale LLC on September 15, 2023 ((CM/ECF 114) is confirmed ***effective on the funding of the loan to Platform II Lawndale LLC required to make the initial distribution*** to GreenLake Real Estate Fund, LLC. [emphasis added] There is no legal theory upon which investors who post funds with a Chapter 11 Debtor to be used for a specific purpose if a plan is confirmed are not entitled to their money back if the contemplated plan if never made effective. If the Dismissal Order providing that all funds—including the Plan Investors' funds—are to be given to a state court receiver even though the Plan was never made effective—is not modified to return those monies to the Plan Investors, it is not hyperbolic to worry whether the bankruptcy system can survive, because the market for plan-tied investor money will be destroyed.

ii. *When called upon, not even GreenLake's counsel could articulate a legal argument as to why the Plan Investments are not the Plan Investors' property.*

As quoted above, before filing this Motion, the Plan Investors' lawyer wrote to GreenLake's counsel inquiring as to whether there was any basis for concluding that the Plan Investments were property to which the Receiver was entitled, as opposed to the Plan Investors' property. The response from GreenLake's counsel did not even attempt to articulate a basis that the funds were

not the Plan Investors' property, but instead merely stated that the Bankruptcy Judge thought that the Foreclosure Case Judge should decide the issue. However, there cannot even be an "issue" to decide unless there is a legal argument to be made to support one side's claim in opposition to another side's claim. There has to be a case or controversy, but in this matter there cannot be a case or controversy because not even GreenLake can enunciate a legal basis for dispute. GreenLake's belief that the Debtor may owe it "an accounting" of some unexpressed nature does not bring into question, and provides no answer, as to why the Receiver should take possession of the ***third-party*** Plan Investors' money deposited with the Debtor for a specified purpose and subject to a specified condition that did not occur. Legal window-dressing aside, the only real purposes for the Receiver taking the funds into his possession is to pay his fees, maintain the Debtor's property, and/or pay same over to GreenLake. None of those things under the cover of a state court foreclosure case is provided for in any way by the Plan pursuant to which the Plan Investments were to be made, and giving those funds to the Receiver amounts to the Debtor having taken them under false pretenses in the first place. A litigant may not use the bankruptcy court system for such sleight of hand.

*iii. In similar circumstances, funds identified to be utilized by a debtor for a particular purpose are not the Debtor's property and may only be used for the stated purpose.*

In similar circumstances, bankruptcy law has long held that funds that are to be utilized by a debtor only for a specific purpose are not the Debtor's property. In *In re Kenosha Liquidation Corp.*, 158 B.R. 774 (1993), a Chapter 7 trustee brought an adversary proceeding against a creditor and guarantor seeking to avoid an allegedly preferential transfer. The Bankruptcy Court, held that a payment from the debtor to a creditor with funds lent to the debtor by guarantors of the debt pursuant to an express, though verbal, understanding that debtor would use funds solely to repay the

obligation to the creditor under a promissory note guaranteed by guarantors was not an avoidable as preference, under the "earmarking doctrine."

> The earmarking doctrine occurs when a new creditor provides funds to the debtor and specifies that those funds shall be used to pay an old creditor. If the effect of the "transfer" is merely that one creditor is substituted for another, then "no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed."

*Id.* at 777. The *In re Kenosha* case goes through the history of the doctrine, noting its continued expansion to situations where the new creditor lends money to the debtor who then pays the old creditor and the funds still never become property of the debtor's estate. *Id.* at 778. This is true even if the debtor exercises some amount of control over the funds. *Id.* at 781. Neither did it matter that the funds passed through the debtor's checking account, on deposit there for time. *Id.* at 782-783.

At least in the case of earmarking, and at least early in the development of the principle, a principled argument could be made that the disputed funds were property of the estate. But in the present case, there was never any sort of competing creditor issues. Rather, the Plan Investments were solicited based upon their ***possible*** specific role in a ***possibly*** to-be-confirmed Chapter 11 plan. The Plan Investors did not owe the Debtor any money in such capacity and did not purchase anything from the Debtor. Rather, their potential investments were merely deposited with the Debtor to be on the ready to participate for a particular purpose if the Plan was made effective, which never happened. Again without hyperbole, "Thanks, Suckers" is not a principle of bankruptcy law.

*iv. The Dismissal Motion was filed in the form it was to create mischief in the Foreclosure Case.*

The ultimate question for the Plan Investors is how to correct a situation where under the rubric of a motion to dismiss the bankruptcy case, their "new monies to fund the Plan" were ordered to end up in the pocket of a state court receiver. The answer to that question begins with the Motion

to Dismiss itself, which could have raised the two pertinent issues in about two sentences by noting the Plan Funding had failed, which meant the Debtor could not reorganize and therefore the case should be dismissed. GreenLake mentioned conversion only because it had to under the Bankruptcy Code, while advocating only dismissal.

Instead of the simple couple of paragraphs necessary to obtain dismissal, the Dismissal Motion was a lengthy historical swipe by GreenLake for the Debtor's perceived slights to GreenLake. The Dismissal Motion started off with 11 paragraphs bashing the Debtor for ancient history beginning in mid-2022 before the Bankruptcy Case was filed. [¶¶ 3-13]. The Dismissal added three more paragraphs bashing the Debtor for violating with cash collateral orders. [¶¶ 18-20] Next came six more paragraphs of Debtor bashing asserting that the case was just a two-party dispute between GreenLake and the Debtor. [¶¶ 21-26] The next bash was that the case was filed on the eve of foreclosure [¶ 27], followed by another bash observing that the Property is the Debtor's sole or main asset [¶ 28]. The Dismissal Order then returned to the "two-party dispute" bash. [¶29] The next bashes were that the Debtor has insufficient operating capital [¶ 30] and that the bankruptcy case was filed to stay pending litigation against it [¶ 31-34]. Next came six paragraphs advocating dismissal, as opposed to conversion. [¶¶ 35-40] GreenLake requested shortened notice. [¶¶ 41-42]

All of the foregoing bashing was irrelevant to the Dismissal Motion, but even if it were relevant, GreenLake could not advocate for its relevance because it was all water under the dam called to the Court's attention by a creditor who was barred by judicial estoppel from asserting any of it. The Seventh Circuit has described its view of judicial estoppel in detail:

> Judicial estoppel is a flexible equitable doctrine designed to prevent "the perversion of the judicial process." *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990). The doctrine protects the courts from being " 'manipulated by chameleonic litigants who

> seek to prevail, twice, on opposite theories.'" *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir.1999) (quotations omitted); *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir.1998) ("the purpose of the doctrine ... is to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant"). It may be raised by any party, regardless of whether the party was prejudiced by the inconsistency, or by the court on its own motion. See *In re Cassidy*, 892 F.2d at 641. Because the doctrine is a "matter of equitable judgment and discretion," we review a district court's application of the doctrine for an abuse of that discretion. *In re Knight–Celotex, LLC*, 695 F.3d 714, 721 (7th Cir.2012).
>
> The application of judicial estoppel is "not reducible to any general formulation of principle," though the inquiry is typically informed by several factors. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quotation omitted). The Supreme Court has identified three considerations to help guide the inquiry: (1) whether "a party's later position must be clearly inconsistent with its earlier position;" (2) whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750–51, 121 S.Ct. 1808 (quotations omitted). We have emphasized that these are not rigid requirements but "general guideposts that must be considered in the context of all the relevant equities in any given case." *In re Knight–Celotex, LLC*, 695 F.3d at 722.

*Grochocinski v. Mayer Brown Rowe &Amp; Maw, LLP*, 719 F.3d 785, 794-795 (7th Cir. 2013).

***Here, none of the bashing about the past could be asserted by GreenLake because GreenLake voted to confirm the Debtor' Plan of Reorganization*** [Docket No. 135; "Chapter 11 Ballot of Greenlake Real Estate Fund LLC. Holder of a Class 1 claim in the amount of $11,324,138.16 votes to Accept Plan of Reorganization Filed by Adam Toosley on behalf of Greenlake Real Estate Fund, LLC. (Toosley, Adam) (Entered: 10/17/2023)"], and GreenLake received a benefit by taking the position that the Debtor's Plan should be confirmed because the Debtor's Plan was in fact confirmed, even if subject to a condition subsequent in the form of the closing of the take-out loan.

Because none of the alleged past Debtor imperfections were relevant to the simple issue of whether the Debtor any longer had the means to confirm a Plan, the bashing allegations had to have

been made serve a different purpose. The Plan Investors submit that the purpose was to convince the Bankruptcy Court that the Debtor was a bad actor, and therefore it should dismiss the case in name only until the Investors' funds could be transferred to the Receiver, who has no right to them.

Notably, GreenLake also filed the Rule Motion supported by the Affidavit of attorney Toosley. Paragraph 17 of Mr.Toosley's Affidavit discloses that in chasing the Plan Investors' money, immediately after the Receiver was reappointed in the Foreclosure Case, Mr. Toosley "reached out" not only to the Debtor's counsel in the Foreclosure Case, but also "to the bank where the Debtor-in-Possession accounts were held." [Toosley Aff. ¶ 17] This Court requires that a lawyer certify with every paper filed that the "redaction rules" have been complied with in order to keep confidential things confidential. Except by subpoena, a creditor's lawyer directly contacting the Debtor's bank was not within bounds, to say the least, but not well thought through mistakes can be made if a creditor's lawyer thinks the debtor has been sufficiently painted as tainted.

*v. GreenLake has in fact used the Court's orders to create mischief in the Foreclosure Case.*

On March 12, 2024, in the Foreclosure Case, whatever its intent, GreenLake attempted to turn this Court's Dismissal Order into a hard and fast finding that the Debtor had improperly utilized GreenLake's money in the Bankruptcy Case by returning it to its rightful owners, the Plan Investors. In that hearing, attorney Toosely represented to the Foreclosure Court that the Debtor's Manager, Scott Krone, was not trustworthy—even though GreenLake had just recently voted to confirm the Debtor's Plan which continued Mr. Krone's fiduciary leadership of the Debtor—because Mr. Krone allegedly misappropriated $285,000 from the Debtor by returning the Plan Investors' money to them instead of turning it over to the Receiver.

B. The Dismissal Order and the Dismissal Order Are not Jurisdictionally Consistent.

GreenLake convinced the Court to enter orders that are internally inconsistent and inconsistent with each other as well, all for the purpose of glombing onto the Plan Investors' money to which GreenLake has no right. For instance, the Dismissal Order provides that:

> 2. The above-captioned bankruptcy ***is dismissed with prejudice, but shall stay active until such time as the court-appointed receiver is re-appointed in the state court foreclosure*** filed by GreenLake against, inter alia, the Debtor in the Circuit Court of Cook County Illinois, Chancery Division, Case No. 2020 CH 02969; 3. Upon the reappointment of the receiver, all funds held in any of the Debtor's bank accounts shall be turned over to the receiver. [emphasis added]

The Dismissal Order is in that regard symptomatic of the confusion between state and federal jurisdiction, and is similar to a stay termination motion that provides both that the automatic stay is terminated and orders a debtor to surrender the subject collateral. Such orders allow a secured creditor to have its cake and eat it, too. Here, the case is dismissed—with prejudice yet—but in reality is not dismissed at all, because the Bankruptcy Court can be used by GreenLake to continue to try to maneuver assets for the benefit of a creditor or even all creditors even though it has ostensibly divested itself of jurisdiction. GreenLake was under no obligation to move to dismiss the case, but if it wanted the case dismissed, it should live with what it wished for and go fight it out in foreclosure court, not ask the Bankruptcy Court to still control assets in the hope that GreenLake would end up with all of them to the detriment of everyone else involved in the case. GreenLake could have refrained from moving to dismiss the case and let the Bankruptcy Court sort out all the property instead of playing both ends against the middle.

This same problem is present regarding the Rule Motion. That motion—which it must be stressed, ***was not even served upon the Plan Investors*** whose money is at issue whether or not they prevail—and was heard on shortened notice to boot, has thus far caused the Debtor's Manager to

be issued a Rule to Show Cause why he should not be held in contempt of court for returning the Plan Investors' money to its rightful owners instead of sending it to a state court receiver acting hand in glove with GreenLake to gain possession of those funds from whose possession they are highly unlikely ever to emerge if the Receiver latches on to them, because the state court judge is unlikely to be familiar with the intricacies of the Bankruptcy Code and GreenLake will "interpret" this Court's orders for the state court judge as having accepted the historical bashing, denominated the Debtor as a bad actor, and as having found that the third-party Plan Investors who are not even parties to the Foreclosure Case do not own their own "new monies to fund the Plan" that was never made effective.

C. Even If the Plan Investments Are Arguably Property of the Estate, That Issue Must Be Decided by the Bankruptcy Court.

*i. The Plan Investments may not be recovered except by adversary proceeding.*

In any event, the Rule Motion alleges that the Investors' money is gone from the Debtor's control. In that case, while 11 U.S.C. §§ 547, Preferences, and 548, Fraudulent transfers and obligations, govern a bankruptcy estate's recovery of pre-bankruptcy transfers, 11 U.S.C. § 549, Postpetition transactions, governs the recovery of unauthorized transactions after the bankruptcy case is filed. Section 549 provides in pertinent part as follows:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate-
>
> (1) that occurs after the commencement of the case; and
> (2)
>
> (B) that is not authorized under this title or by the court.

Section 549 also provides that:

> (d) An action or proceeding under this section may not be commenced after the earlier of-

(1) two years after the date of the transfer sought to be avoided; or

(2) the time the case is closed or dismissed.

The Dismissal Order purports to provide that the bankruptcy case is dismissed with prejudice. But it also provides that the case shall "remain active." This is further jurisdictional confusion. But in neither case is there authority to make what amounts to a recovery under §549 through a contempt motion such as the one oddly brought on its face by GreenLake for the benefit of the Receiver.

In turn, Bankruptcy Rule of Procedure 7001 provides in pertinent part as follows:

> Rule 7001. Scope of Rules of Part VII
> An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:
>
> (1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002;
>
> (2) a proceeding to determine the validity, priority, or extent of a lien ***or other interest in property***, but not a proceeding under Rule 3012 or Rule 4003(d); [emphasis added]

In light of the jurisdictional confusion, an adversary proceeding for declaratory judgment by the Plan Investors to declare them the sole owners of the Plan Investments appears to be the only option if this Motion is denied or earlier if other circumstances mandate that they file same.

*ii. Even if there is a dispute over ownership, the Dismissal Order cuts out all creditors except GreenLake and without underlying authority to do so, forces them to apply to a State foreclosure court to press their claims.*

The Dismissal Motion set up the attack on the Plan Investors' money through bashing the Debtor as set forth above. But GreenLake was very clever in its presentation to make sure that the only creditor who could benefit from its Dismissal Motion was GreenLake. In that regard, the Dismissal Motion states that:

> GreenLake believes the Debtor's sole asset is the Property and income derived therefrom. If the case were converted to chapter 7, GreenLake would likely seek relief from the automatic stay to pursue its remedies against the Property in the pending Foreclosure Action. The chapter 7 trustee would essentially be left with an empty estate, with virtually nothing to administer for the benefit of the few remaining creditors. Accordingly, GreenLake submits that dismissal is in the best interest of creditors and the estate under the circumstances. [¶ 39]

GreenLake's argument sounds plausible, but is just another push to get its hands on the Plan Investors' "new monies to fund the Plan." In arguing for dismissal, GreenLake tried to appear high minded, arguing that dismissal was better than conversion because no one else could benefit but GreenLake so the unsecured creditors should be saved the trouble of a Chapter 7 case. However, the apparent high mindedness is a mirage. Ironically, if justice is served and the Plan Investments are returned to the Plan Investors, then GreenLake is correct that a Chapter 7 would serve no purpose. However, if the Plan Investments do not belong to the Plan Investors, then it does not follow that only GreenLake should benefit if the Plan Investments are taken from the Plan Investors, as opposed to all the other creditors in the Bankruptcy Case.

**IV. Legal Standard**

Motions to reconsider are generally treated under F.R.C.P. 60 incorporated by Fed.R.Bankr.P. 9024. Rule 60(b) provides in pertinent part that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons… (1) mistake, inadvertence, surprise, or excusable neglect… (2) newly discovered evidence… (5) … applying prospectively is no longer equitable…(6) any other reason that justifies relief…

The four basic grounds on which a motion to reconsider may be granted are "(1) to correct manifest errors of law or fact upon which the judgment is based; (2) to allow the movant to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) where there is an intervening change in controlling law." *In re Edwards*, 247 B.R. 318, 320 (Bankr. M.D. Fla.

2000). Pursuant to Rule 60, courts have broad discretion to revisit their prior orders and to correct inequities so long as the relief requested generally fits within one of the enumerated sections of Rule 60. *In re Gonzalez*, 490 B.R. 642, 652 (B.A.P. 1st Cir. 2013) ("Bankruptcy courts have broad discretion in deciding motions for relief under Rule 60(b).

**V. Conclusion**

Paragraphs 2 and 3 of the Dismissal Order provide as follows:

> 2. The above-captioned bankruptcy is dismissed with prejudice, but shall stay active until such time as the court-appointed receiver is re-appointed in the state court foreclosure filed by GreenLake against, inter alia, the Debtor in the Circuit Court of Cook County Illinois, Chancery Division, Case No. 2020 CH 02969.
>
> 3. Upon the reappointment of the receiver, all funds held in any of the Debtor's bank accounts shall be turned over to the receiver."

Based upon the foregoing facts and arguments, and in order to correct manifest errors of law and fact and to prevent manifest injustice and avoid the already expanding jurisdictional confusion, Paragraphs 2 and 3 of the Dismissal Order should be deleted and a new paragraph added ordering the Debtor to return the Plan Investments to the Plan Investors so that the "new monies to fund the Plan" are returned to their rightful owners.

**VI. Request for Relief**

Wherefore, the Plan Investors pray that the Court enter an order deleting Paragraphs 2 and 3 of the Dismissal Order and adding a new paragraph thereto ordering the Debtor to return the Plan Investments to the Plan Investors, and for such other and further relief in the Plan Investors' favor as is fair and just.

Scott Krone; Mercury Capital Management, an Individual Retirement Account; and Yellow Hat Capital LLC

By: /s/Keevan D. Morgan
Their Attorney

Keevan D. Morgan (1958844); kmorgan@morganandbleylimited.com
Morgan & Bley, Ltd.
900 W. Jackson Blvd.; Suite 4 East
Chicago, Illinois 60607
Tel: 312.243.0006