UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| PLATFORM II LAWNDALE LLC, | ) | Case No: 22-07668 |
| Debtor. | ) | Hon. Deborah L. Thorne |

## DEBTOR'S RESPONSE TO ORDER FOR RULE TO SHOW CAUSE

Platform II Lawndale LLC ("**Debtor**"), by and through its undersigned counsel at The Sterling Law Office LLC, pursuant to the Court's Order for Rule to Show Cause entered on March 6, 2024 (CM/ECF 217) respectfully submits this response to GreenLake Real Estate Fund LLC's ("**GreenLake**") Motion for Rule to Show Cause (the "**Motion**") (CM/ECF 213), and in support, attaches the Declaration of Scott Krone hereto as **Exhibit A**, and states as follows:

### I. INTRODUCTION

On February 14, 2024, this Court dismissed this bankruptcy case with prejudice and ordered, *inter alia*, that "[u]pon the reappointment of the receiver [in the state court foreclosure], all funds held in any of the Debtor's bank accounts shall be turned over to the receiver." (CM/ECF 211).

GreenLake's Motion for Rule to Show Cause argues in a hyperbolic fashion without any relevant or supporting facts, that, following dismissal of the bankruptcy case, Debtor "took all of the funds out its Debtor-in-Possession accounts" in violation of the Court's February 14, 2024 Order. (Motion, ¶ 15). In addition to being an untrue statement, Debtor did not unjustifiably take all funds out of its accounts. Debtor utilized a portion of the funds in the accounts to (1) pay Special Counsel's compensation in the amounts approved by this Court; (2) return investments made solely for and in connection with the failed chapter 11 plan, as detailed in previous filings with this Court;

1

and (3) fund Debtor's ongoing operating expenses following dismissal of the bankruptcy case.

Ultimately, Debtor turned over funds to the receiver appointed in the state court foreclosure. Because Debtor has not violated any specific or unequivocal command of the Court, there are no grounds to find Debtor in contempt or award any of the relief sought by GreenLake in its Motion for Rule to Show Cause.

## II. RESPONSE TO ALLEGATIONS IN GREENLAKE MOTION

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**Response**: Admitted.

2. The statutory predicates for the relief requested herein are 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9020 as well as Local Bankruptcy Rule 9020-1.

**Response**: Admitted.

### Background

3. On July 11, 2022, on the eve of a state-court ordered foreclosure sale (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the "*Court*").

**Response**: Such fact is not relevant to the present Motion before the Court, and as such Debtor objects. To the extent a response is required, and notwithstanding the objection, Debtor admits the facts set forth in Paragraph 3.

4. During the course of this case, Debtor operated its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2

**Response**: Debtor admits the facts set forth in Paragraph 4.

5.      GreenLake is a secured creditor holding a valid, first-priority, perfected security interest in certain commercial property owned by the Debtor, commonly known as 1750 North Lawndale Avenue, Chicago, Illinois 60647 (the "*Property*"), as well as, *inter alia*, certain leases, rents, income, proceeds, issues and profits related to the Property (hereinafter referred to as "*Cash Collateral*"). See Verification of Adam C. Toosley attached hereto as Exhibit 1, ¶3.

**Response**: Paragraph 5 states a legal conclusion to which no response is necessary. Stating further, GreenLake's rights relative to the Property have yet to be adjudicated by the state court.

6.      Prior to the Petition Date, GreenLake filed a state court foreclosure action (the "*Foreclosure Action*") against, *inter alia*, the Debtor in the Circuit Court of Cook County Illinois, Chancery Division, Case No. 2020 CH 02969.  (Toosley Verification, ¶4).

**Response**: Debtor admits the facts set forth in Paragraph 6.

7.      On or about September 18, 2020, the Circuit Court of Cook County appointed Howard Samuels as the receiver (the "*Receiver*") over the Property.  (Toosley Verification, ¶5). The appointment of the Receiver fully perfected GreenLake's assignment of the rents from the Property under Illinois law.  See, e.g., *Comerica Bank-Illinois v. Harris Bank Hinsdale*, 284 Ill. App. 3d 1030, 1033 (1996); *BMO Harris Bank N.A. v. Joe Contarino, Inc.*, 2017 IL App (2d) 160371, ¶ 44.

**Response**: Debtor admits that Howard Samuels was appointed receiver over the Property. The balance of Paragraph 7 states facts not relevant to the present Motion before the Court, and as such Debtor objects. Stating further, the balance of Paragraph 7 states a legal conclusion to which no response is necessary.

8.      On July 21, 2022, the Debtor filed a Motion seeking authority to use GreenLake's cash collateral (ECF No. 11) and offering adequate protection to GreenLake consisting of

payments equal to the amount of interest due on the principal balance of the loan. GreenLake objected to the use of cash collateral (ECF No. 18), but the Court granted, in part, the use of cash collateral by order entered on July 28, 2022 (ECF No. 21). (Toosley Verification, ¶6).

**Response**: Such fact is not relevant to the present Motion before the Court, and as such Debtor objects. To the extent a response is required, and notwithstanding the objection, Debtor admits the facts set forth in Paragraph 8.

9. Subsequently, between July of 2022 and January of 2023, the Debtor obtained interim cash collateral orders based on budgets which were to provide adequate protection payments to GreenLake. (Toosley Verification, ¶7). However, starting in February 2023, the Debtor failed to make adequate protection payments (of any amount) to GreenLake. (Toosley Verification, ¶8).

**Response**: Such facts are not relevant to the present Motion before the Court, and as such Debtor objects, and makes no answer.

10. The cash collateral orders entered by the Court for February through April of 2023 all were based on budgets that required adequate protection payments be made to GreenLake (the "Violated Cash Collateral Orders") [ECF 58, 68 and 78]. (Toosley Verification, ¶9).

**Response**: Such facts are not relevant to the present Motion before the Court, and as such Debtor objects. Debtor further objects to GreenLake's characterization of the Court's Orders as the Court's Orders speak for themselves.

11. On October 26, 2023, a Chapter 11 Plan was approved by the Court, but the effective date was subject to a separate closing occurring between the Debtor and a third-party lender. (Toosley Verification, ¶10). It was originally represented that the closing would occur by mid-November 2023. (Toosley Verification, ¶11).

**Response**: Debtor admits the facts set forth in Paragraph 11.

4

12. Because the closing did not occur, on December 20, 2023, GreenLake filed a Motion to Dismiss the bankruptcy case, or alternatively, to convert it to a Chapter 7 liquidation. [ECF 172].

**Response**: Debtor admits the facts set forth in Paragraph 12.

13. On January 18, 2024, the Court entered an order granting relief from stay to allow for the reappointment of the Receiver in the Foreclosure Action. [ECF 193].

**Response**: Debtor denies the facts set forth in Paragraph 13.

14. On February 14, 2024, the Court granted GreenLake's request to dismiss the bankruptcy. [ECF 211].

**Response**: Debtor admits the facts set forth in Paragraph 14.

15. In the February 14, 2024 dismissal order, the Court also ruled: "Upon the reappointment of the receiver, all funds held in any of the Debtor's bank accounts shall be turned over to the receiver." [ECF 211].

**Response**: Debtor admits the facts set forth in Paragraph 15.

16. The receiver was reappointed in the Foreclosure Action on the bond was approved on February 22, 2024. A copy of the Receiver's bond is attached hereto as Exhibit B.

**Response**: Debtor admits the facts set forth in Paragraph 16.

17. The Receiver immediately reached out to Debtor's counsel in the state court case and to the bank where the Debtor-in-Possession accounts were held. (Toosley Verification, ¶17).

**Response**: Debtor admits that Receiver reached out to Debtor's counsel relative to the state court case on February 23, 2024. Debtor lacks sufficient knowledge or information as to the truth of the allegation in Paragraph 17 that Receiver immediately reached out to the bank where the Debtor-in-Possession accounts were held.

18.  It was at that point that the Receiver learned that the Debtor took all of the funds out of its Debtor-in-Possession accounts and that there were no funds to be distributed to the Receiver as ordered by the Court on February 14, 2024. (Toosley Verification, ¶18).

**Response**: Debtor lacks knowledge to when and what the Receiver may or may not have learned. Stating further, Debtor denies the remaining facts set forth in Paragraph 18.

19.  Demand has been made by the Receiver on Debtor's counsel to turn over the funds without success. (Toosley Verification, ¶19).

**Response**: Debtor denies the facts set forth in Paragraph 19.

20.  This case has been continued to March 6, 2024 for a hearing on a remaining fee petition.

**Response**: Such fact is not relevant to the present Motion before the Court, and as such Debtor objects. To the extent a response is required, and notwithstanding the objection, Debtor admits the facts set forth in Paragraph 20.

### III.  ADDITIONAL FACTS ESTABLISHING NO CAUSE FOR ORDER OF CONTEMPT AGAINST DEBTOR

1.  On December 7, 2022, counsel for Debtor transmitted a draft proposed plan of reorganization to counsel for GreenLake, under which Debtor proposed a resolution of debts owed to GreenLake and other creditors. **(Exh. A, Krone Aff., ¶ 4)**

2.  The proposed plan contemplated the contribution of new monies by investors, subject to funding of the third-party loan. **(Exh. A, Krone Aff., ¶ 5)**

3.  On March 28, 2023, Debtor filed the initial Plan of Reorganization. (CM/ECF 73).

4.  On September 15, 2023, Debtor filed its Amended Plan of Reorganization (the "**Amended Chapter 11 Plan**") (CM/ECF 114), under which Debtor would close on a new loan with a third-party lender to make payments to GreenLake and other creditors.

6

5.  On October 26, 2023, this Court approved the Amended Chapter 11 Plan, "effective on the funding of the loan to Platform II Lawndale LLC required to make the initial distribution to GreenLake Real Estate Fund, LLC."  (CM/ECF 153).

6.  Under the Amended Chapter 11 Plan, investors who contributed new monies to fund the proposed Amended Chapter 11 Plan (the "**Plan Investors**") would hold membership interests. (CM/ECF 114, Chapter 11 Plan, p. 15).

7.  Subject to funding of the third-party loan and the Amended Chapter 11 Plan taking effect, the Plan Investors deposited the following sums (the "**Plan Investments**") as of December 1, 2023:

| Date of Contribution | Plan Investor | Amount |
|---|---|---|
| 12/22/2022 | Northern Trust | $33,667.00 |
| 1/4/2023 | Mercury Capital IRA | $28,000.00 |
| 1/9/2023 | Gillespie | $9,000.00 |
| 1/17/2023 | Banach | $10,941.78 |
| 1/17/2023 | Eleven Vales | $16,833.00 |
| 1/27/2023 | Davis | $7,500.00 |
| 1/18/2023 | Cama SDIRA | $2,494.88 |
| 3/20/2023 | CT Infinity | $4,490.77  [$5k on statement] |
| 11/3/2023 | Yellow Hat | $67,334.00 |
| 11/9/2023 | Banach | $10,941.78 |
| 11/10/2023 | Eleven Vales | $16,833.00 |
| 11/30/2023 | Provident Trust | $77,313.50 |
|  | Total | **285,349.71** |

**(**Exh. A, Krone Aff., ¶ 6)

8.  As of December 20, 2023, the third-party loan had not funded, and as such, the Amended Chapter 11 Plan had not taken effect. Exh. A, **(**Krone Aff., ¶ 7).

7

9. On December 20, 2023, GreenLake filed its Motion to Dismiss. (CM/ECF 172).

10. On January 23, 2024, the Court entered its Order continuing the matter to February 14, 2024 for ruling on any open fee applications and for entry of a final order on GreenLake's Motion to Dismiss, ordering Debtor to file, *inter alia*, an accounting of funds received from the Plan Inventors for the failed Amended Chapter 11 Plan. (CM/ECF 193).

11. On February 13, 2024, Debtor filed its statement of Equity Contributions Received to Fund Its Plan of Reorganization (the "**Contribution Statement**") reflecting the amounts deposited by the Plan Investors. (CM/ECF 205).

12. On February 14, 2024, the Court entered its order granting Special Counsel's requested compensation and directing Debtor to pay Special Counsel (Neal, Gerber & Eisenbach) compensation and expenses totaling $24,642.72 (CM/ECF 210) along with compensation and expenses approved previously totaling $39,917.06 (CM/ECF 89).

13. On February 14, 2024, the Court also entered an order dismissing this bankruptcy case with prejudice (the "**Dismissal Order**"), while further ordering that the case:

> 2. . . .shall stay active until such time as the court-appointed receiver is re-appointed in the state court foreclosure filed by GreenLake against, inter alia, the Debtor in the Circuit Court of Cook County Illinois, Chancery Division, Case No. 2020 CH 02969;
>
> 3. Upon the reappointment of the receiver, all funds held in any of the Debtor's bank accounts shall be turned over to the receiver."

(CM/ECF 211).

14. Following the dismissal of the bankruptcy case, on February 14, 2024, Debtor issued check number VV110 to Special Counsel in the amount of $39,917.06, and such check cleared on February 15, 2024. (Exh. A, Krone Aff., ¶ 8).

15. On February 15, 2024, the Plan Investors' funds totaling $285,349.71, previously identified in the filed Contribution Statement (CM/ECF 205), were withdrawn from Debtor's bank accounts to return the Plan Investors. (Exh. A, Krone Aff., ¶ 9).

16. On February 15, 2024, Debtor issued check number VV111 to Special Counsel in the amount of $24,642.72, and such check cleared on February 20, 2024. (Exh. A, Krone Aff., ¶ 10).

17. During the period between the dismissal of the bankruptcy case and the appointment of the Receiver, Debtor continued to pay operating expenses from its accounts. (Exh. A, Krone Aff., ¶ 11).

18. The Receiver was reappointed in the Foreclosure Action and the bond was approved on February 22, 2024. (Motion for Rule, ¶ 16).

19. On March 5, 2024, Debtor wired $15,640.08 to the Receiver, which resulted in $1,365.55 remaining in the Debtor's bank account, to cover payments for utilities for the Property. (Exh. A, Krone Aff., ¶ 12)

20. On March 15, 2024, the Receiver transferred $5,932.60 back to Debtor to facilitate payment of additional expenses for the Property. (Exh. A, Krone Aff., ¶ 13).

**IV. LEGAL STANDARD**

21. Contempt requires a court to find that the party violated an unambiguous, specific command. *NLRB v. Neises Constr. Corp.*, 62 F.4th 1040, 1052-53 (7th Cir. 2023); *See also D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 460 (7th Cir. 1993) (ambiguity necessitating extrinsic evidence of intent ruled out the possibility that the respondent has violated the unequivocal command of a court order); *Stotler and Co. v. Able,* 870 F.2d 1158, 1163 (7th Cir.1989) ("To hold a party in contempt, the district court must be able to point to a decree from

the court which set[s] forth in specific detail an unequivocal command which the party in contempt violated.").

22. A party can only be held in contempt for behavior clearly prohibited by a court order "within its four corners." *D. Patrick,* 8 F.3d 455 at 460.

23. The Supreme Court has held that disputes about civil contempt must be resolved objectively. See, e.g., *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804, 204 L. Ed. 2d 129 (2019). Specifically, if there is an objectively reasonable basis for concluding that Debtor's conduct might be lawful, there are no grounds to find it in contempt or to impose sanctions. *In re Bowens*, 656 B.R. 883 (Bankr. N.D. Ill. 2024) citing *Taggart*, 139 S. Ct. at 1799.

24. A party seeking a civil contempt order bears the burden of proving facts warranting such relief by clear and convincing evidence. *United States Sec. and Exch. Comm'n v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). It must also be found that the offending party knowingly violated a specific order of the court. *In re Johnson,* 148 B.R. 532, 538 (Bankr. N.D.Ill. 1992).

V. **ARGUMENT**

Debtor has not violated any specific or unequivocal command of the Court. Accordingly, there are no grounds to find Debtor in contempt or award any of the relief sought by GreenLake in its Motion for Rule to Show Cause.

**1. Objectively reasonable bases exist for concluding that Debtor's conduct was lawful.**

The Dismissal Order contained no express prohibition of conduct, and was ambiguous regarding the actual status of the bankruptcy case. Indeed, the Dismissal Order, drafted by GreenLake's counsel ambiguously states that "[t]he above-captioned bankruptcy is **dismissed with prejudice, but shall stay active** until such time as the court-appointed receiver is re-appointed in the state court foreclosure." (CM/ECF 211) (emphasis added). Nothing in the

Dismissal Order expressly or impliedly imposes a freeze on Debtor's funds, restricts the Debtor from returning the conditionally deposited Investors Funds, or states what monies were required to be remitted to the then to-be-appointed Receiver.

Given the dismissal of the case with prejudice, it was objectively reasonable for Debtor conclude that it was lawful for Debtor to utilize funds in its accounts to (1) pay Special Counsel's compensation in the amounts previously approved by this Court; (2) return investments made solely for and conditionally deposited in connection with the failed Amended Chapter 11 Plan; and (3) fund Debtor's ongoing Property operating expenses.

Despite having full knowledge that the Investor Funds were conditionally deposited to fund the Amended Chapter 11 Plan, GreenLake's counsel now seeks to improperly use a specious contempt proceeding to make up for its ambiguously drafted order.

### 1. Payments to Special Counsel

By GreenLake's logic, Debtor is to return "all funds" removed from the account, including the payments of $39,917.06 and $24,642.72 that were paid to Special Counsel. It was reasonable, however, for Debtor to pay such amounts when such amounts were expressly approved and ordered by the Court to be paid. (CM/ECF 210)

### 2. Return of Investments for Failed Chapter 11 Plan

The Plan Investors had deposited funds subject to funding of the third-party loan and the Plan taking effect. Those funds were not property or funds of Debtor. On March 13, 2024, the Plan Investors filed a Motion to Reconsider in Part Order Dismissing Bankruptcy Case (the "**Motion to Reconsider**"). (CM/ECF 220). The Motion seeks to clarify the Court's February 14, 2024 Dismissal Order and sets forth numerous rationales for why the Plan Investments could not be viewed as being part of "Debtors' funds" to be turned over to the Receiver in the Foreclosure

Action. Those arguments are incorporated herein by reference as if fully set forth herein.

Because the Plan Investments were not Debtor's funds, it was objectively reasonable for Debtor to return those funds (solely intended for the failed Amended Chapter 11 Plan in the bankruptcy case) and not include those funds in the amounts turned over to the Receiver in the state court foreclosure proceeding.

Moreover, based in the four-corners of the Court's February 14, 2024 Order, there is nothing prohibiting Debtor from returning the Investor Funds, which were deposited in expectation of the Amended Chapter 11 Plan proceeding. Given that there was no unambiguous specific command from the Court, Debtor cannot be held in contempt for returning the funds which rightfully belonged to the Investors. *See NLRB*, 62 F.4th at 1052-53; *D. Patrick.,* 8 F.3d at 460; *Stotler,* 870 F.2d at 1163.

Accordingly, Debtor cannot be held in contempt for returning the Investor Funds, which were conditionally deposited based on the effectiveness of the Amended Chapter 11 Plan that never occurred.

### 3. Payment of Operating Expenses

Insomuch as the Bankruptcy case was **dismissed with prejudice**, there was also no prohibition in the Court's February 14, 2024 Order which unambiguously and specifically prohibited Debtor from paying Property operating expenses. As such, Debtor cannot be held in contempt resulting from the payment of Property operating expenses.

## VI. CONCLUSION

WHEREFORE, Debtor respectfully requests that this Court find no cause shown for issuance of a contempt order against Debtor, dismiss the contempt proceeding, and enter such other relief as the Court deems necessary.

Respectfully submitted,

PLATFORM II LAWNDALE LLC

By: /s/ Kevin A. Sterling
   Kevin A. Sterling (ARDC No. 6216907)
   THE STERLING LAW OFFICE LLC
   112 S. Sangamon, Suite 101
   Chicago, Illinois 60607
   Ph: (312) 670-9744
   kevin@thesterlinglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2024, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: /s/ Kevin A. Sterling
   Kevin A. Sterling

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| PLATFORM II LAWNDALE LLC, | ) | Case No: 22-07668 |
| Debtor. | ) | Hon. Deborah L. Thorne |

**DECLARATION OF SCOTT KRONE**

I, Scott Krone, state and affirm as follows:

1. My name is Scott Krone, I am over 18 years old, and these facts are true and based on my personal knowledge.

2. I am the Manager for Platform II Lawndale LLC ("Debtor") and have been the client representative in the above-captioned bankruptcy proceeding from the outset of the case.

3. I have reviewed Debtor's Response to Order for Rule to Show Cause, and the admissions and denials contained in the Response are true and correct.

4. On December 7, 2022, Debtor's attorney transmitted a draft proposed plan of reorganization to counsel for GreenLake, under which Debtor proposed a resolution of debts owed to GreenLake and other creditors.

5. The proposed plan contemplated the contribution of new monies by investors, subject to funding of the third-party loan.

6. Subject to funding of the third-party loan and the Chapter 11 Plan taking effect, the Plan Investors deposited the following sums (the "**Plan Investments**") as of December 1, 2023:

1

| Date of Contribution | Plan Investor | Amount |
|---|---|---|
| 12/22/2022 | Northern Trust | $33,667.00 |
| 1/4/2023 | Mercury Capital IRA | $28,000.00 |
| 1/9/2023 | Gillespie | $9,000.00 |
| 1/17/2023 | Banach | $10,941.78 |
| 1/17/2023 | Eleven Vales | $16,833.00 |
| 1/27/2023 | Davis | $7,500.00 |
| 1/18/2023 | Cama SDIRA | $2,494.88 |
| 3/20/2023 | CT Infinity | $4,490.77  [$5k on statement] |
| 11/3/2023 | Yellow Hat | $67,334.00 |
| 11/9/2023 | Banach | $10,941.78 |
| 11/10/2023 | Eleven Vales | $16,833.00 |
| 11/30/2023 | Provident Trust | $77,313.50 |
|  | Total | **285,349.71** |

7. As of December 20, 2023, the third-party loan had not funded, and as such, the Chapter 11 Plan had not taken effect.

8. Following the dismissal of the bankruptcy case with prejudice, on February 14, 2024, Debtor issued check number VV110 to Special Counsel in the amount of $39,917.06, and that check cleared on February 15, 2024.

9. On February 15, 2024, the Plan Investors' funds totaling $285,349.71, previously identified in the filed Contribution Statement (CM/ECF 205), were withdrawn from Debtor's bank accounts to return to the Plan Investors.

10. On February 15, 2024, Debtor issued check number VV111 to Special Counsel in the amount of $24,642.72, and that check cleared on February 20, 2024.

11. During the period between the dismissal of the bankruptcy case and the appointment of the Receiver, Debtor continued to pay operating expenses from its accounts.

12. On March 5, 2024, Debtor wired $15,640.08 to the Receiver, which resulted in $1,365.55 remaining in the Debtor's bank account, to cover payments for utilities for the Property.

13. On March 15, 2024, the Receiver transferred $5,932.60 back to Debtor to facilitate payment of additional expenses for the Property.

I, Scott Krone, pursuant to 28 U.S.C. § 1746, declare and certify under penalty of perjury that the foregoing statements set forth in this Declaration are true and correct.

Executed on April __9__, 2024         _____
                                      Scott Krone