UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 22-07668 |
| | ) | |
| PLATFORM II LAWNDALE LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Deborah L. Thorne |

### GREENLAKE'S RESPONSE TO THE PLAN INVESTORS' MOTION FOR RECONSIDERATION

GreenLake Real Estate Fund LLC ("*GreenLake*"), by and through its undersigned counsel, and for its Response to the Motion for Reconsideration (the "*Motion*") filed by the Plan Investors,[1] states as follows:

#### INTRODUCTION

The purported "Plan Investors"—which include the Debtor's managing member who was the one who violated the Court's order for turnover—have not stated a legitimate basis for the Court to reconsider the portion of its dismissal order related to the turnover of funds to the state court receiver. As the Court is aware, no rulings were made on who is entitled to the funds that were in the Debtor's bank accounts but at the time of the dismissal, the Court simply stated that the Circuit Court of Cook County should be the deciding entity because the previously filed foreclosure case would continue while the bankruptcy case was being dismissed. The Motion is a thinly veiled attempt by Mr. Krone (the manager of the Debtor) to not only ask the Court to approve

---

[1] GreenLake refers to the Movants as "Plan Investors" because that is what they called themselves in the Motion even though it disagrees that the three moving parties are, in fact, "Plan Investors." As said in more detail in this Response, from the limited documents and information received from the Debtor, most of the parties who provided funds to the Debtor did so to keep the bankruptcy going and make adequate protection payments to GreenLake. They were not investing in a "plan" and even the plan (which never became effective) only discussed new monies post-confirmation. Most of these "investors" primarily provided funds from December 2022-March 2023—well before any plan was contemplated. Even further, Scott Krone provided no funds during the case and should not be considered a "Plan Investor."

the Debtor's violation of an order of the Court, but to "refund" payments made—*not to fund a plan*—but to keep the bankruptcy alive and make adequate protection payments to GreenLake at the beginning of the case.

At best, these "investments" made by certain parties during the Bankruptcy Case (especially the ones from December 2022 to March 2023) were "loans" to the Debtor. And, these "loans" were obtained by the Debtor without approval of the Court. If the Debtor had asked for approval of the Court, then GreenLake would have been given an opportunity to object or respond. Instead, the Debtor secretly obtained these "loans," and is now trying to pay the "lenders" (which it refers to as Plan Investors) back out of GreenLake's cash collateral payments. As the limited documents and information produced in the case show, most of the money "spent" by the Debtor after the Court's dismissal order was used to pay back these loans and not for any investment in a "plan."

As such, and more fully detailed below, there is no basis for the Court to reconsider any portion of its dismissal order and the Motion should be denied.

### RESPONSE TO THE "SYNOPSIS"

At the beginning of the Motion, the Plan Investors included what they called a "Synopsis." There, the Plan Investors claim that the Court's dismissal of the case with prejudice created confusion for which the Motion was necessary to correct "manifest errors of law and fact and to prevent manifest injustice and avoid the expanding confusion." However, the remainder of the Motion goes well beyond simply the designation of the dismissal order "with prejudice," and instead, the Plan Investors ask the Court to do something that it said it simply would not do—rule on the merits of whether the funds in the Debtor's debtor-in-possession accounts are part of GreenLake's cash collateral. The Debtor, instead of following the Court's order, went ahead and

stole the funds from the Debtor's debtor-in-possession accounts.  GreenLake had, and has, viable arguments that any funds fronted by third-parties to make adequate protection payments should not be "refunded," and the Debtor's Chapter 11 Plan and Disclosure Statement made no reference whatsoever to the return of any these funds (especially those that were collected before the confirmation date in late October 2023).  For these reasons, the Motion should be denied.

### RESPONSE TO THE FACTS SECTION

In general, the Plan Investors' Motion in the Facts Section outlines the history surrounding the dismissal order, but includes hyperbolic statements not supported by the record as well as multiple misstatements.  Although counsel who filed the Motion was not involved in the proceedings, a simple review of the filed documents would show how the statements are, at best, misleading.  The more egregious misstatements will be addressed below.

Paragraph 1 of the Synopsis states that the Debtor obtained a loan to take out the foreclosing lender and make payments under a plan.  That simply never happened.  As the Court is aware, and after the Court continued the case to around 10 post-plan confirmation status hearings, the loan never came to fruition.  Even later in the Motion, the Plan Investors acknowledged this fact.

In Paragraph 2 of the Synopsis, the Plan Investors discussed the Plan's provision in Article IV that the investors who contribute new monies shall hold membership interests as reflected in Exhibit F.  However, the Disclosure Statement filed at the time of the Plan stated in Section IV(A)(1): "No Person holding an Equity Interest will receive anything of value, including an interest in the Reorganized Debtor, as a result of any contribution made before the Effective Date." [ECF 113].  An identical provision is in the Plan in Section IV(A)(1).  [ECF 114].  That provision also provided that investors who contributed "new monies" post effective date would get new equity interests, but clearly stated that any investors who made contributions before the Effective

Date <u>would get nothing of value</u>.  Here, by improperly paying back the "investors" who loaned money to the Debtor in late 2022 and early 2023, they clearly received something of value and did so to GreenLake's detriment.

In Paragraph 4 of the Synopsis, the Plan Investors highlight the request that GreenLake made to turn over funds to the state court foreclosure receiver and that notice was not sent to the Plan Investors.  However, what is conveniently left out is that as of December 20, 2023 (when the motion to dismiss was filed), the Debtor had stopped filing operating reports and GreenLake had no clue that any funds were received from third-party investors after the plan confirmation date in late October 2023.  How could GreenLake have known to send a copy of the motion to dismiss to parties it did not know even existed?  Additionally, Scott Krone (who is one of the Plan Investors) is on the Creditor Matrix <u>and was sent a copy of the Dismissal Motion</u> by undersigned counsel. [Dkt. 168].  Again, saying that the "Plan Investors" were not provided notice is a misstatement, as the one identified "Plan Investor" in the schedules was sent a copy by mail.

In Paragraph 9 of the Synopsis, the Plan Investors make the strange statement that "As was the Dismissal Motion, the Rule Motion was brought by GreenLake, not the Receiver."  When the Dismissal Motion was filed in December 2023, the Receiver had not yet been re-appointed by the Circuit Court of Cook County and would not have anything to do with the bankruptcy proceeding.  And, because there was/is an argument that at least some of the funds held by the Debtor are or were GreenLake's cash collateral, it made sense for GreenLake to be the one to file the motion when the funds were stolen by the Debtor.  Even further, as is the ordinary course in Cook County, the Receiver was not appointed counsel by the Circuit Court.

In Paragraph 10 of the Synopsis, the Plan Investors state that "approximately 95% of the funds on hand with the Debtor at the time of the Dismissal Order were entered by "new monies"

delivered by the Plan Investors." That is simply not true. After October 2023, the Debtor had no authorized use of cash collateral but was collecting rents. The October 2023 bank accounts showed that there were $79,000 in the two Debtor-in-possession accounts (Exhibit 1) and $44,000 was improperly taken by the Debtor at the end of October 2023. Thereafter, on February 12, 2024, the Debtor put back the $44,000 that was taken, thereby meaning that <u>before any "new" monies were collected to fund the Plan</u>, there was $123,000 in the debtor-in-possession accounts, but only around $15,000 was turned over to the Receiver. The Debtor also was collecting rents in November and December 2023 and January and February 2024. The Debtor's February 13, 2024 filing with the Court also shows that the "equity contributions" made were mainly made well in advance of any Plan (Exhibit 2). As a matter of fact, the chart filed on February 13, 2024 shows monies advanced mostly from December 2022 to March of 2023—when the Debtor was making adequate protection payments to keep the bankruptcy alive. These are not "new monies" to fund a plan when the plan was not even filed until September 2023. The only "new monies" listed by the Debtor are $77,313.50 for Provident Trust (not one of the instant movants), some portion of $77,313.50 for Yellow Hat (the amount paid in November 2023 is not broken down), Banach (not one of the instant movants) and Eleven Vales (not one of the instant movants). (Exhibit 2). The fact that the Debtor needed investors to make adequate protection payments to keep the bankruptcy going is important here but is not "new" monies brought in to fund a plan. If the Court were to order that these December 2022-March 2023 amounts could be paid out of the monies held by the Debtor, that would mean taking them from GreenLake's adequate protection and thereby circumventing the prior orders that required these payments to be made. Even further, when the bankruptcy was started, there was around $85,000.00 in the Debtor's accounts. However, when monies were eventually turned over to the Receiver, there was only $15,000.00. That was

absolutely GreenLake's cash collateral, and paying back investors who loaned monies to made adequate protection payments to GreenLake's detriment is or was not warranted. This also is seen by the actual cash collateral order entered in this case where the Court ruled:

> To adequately protect Greenlake for the Debtor's use of Cash Collateral under this Order, and provide Greenlake with adequate protection concerning any decrease in the value of its interest in the Pre-Petition Collateral resulting from the stay imposed under §362 of the Bankruptcy Code, or the use of such property by the Debtor, **Greenlake shall be granted to the extent not heretofore granted, a replacement lien on the Debtor's** rents, **accounts** and accounts receivables (but not including causes of action, if any, of the estate arising under §§544, 545, 546, 547, 548, 549, 550, or 552 of the Bankruptcy Code), **wherever located (which, in the case of presently owned property, is already encumbered by the Pre-Petition Liens of Greenlake) to secure the Indebtedness to the extent of any diminution in value of the Pre-Petition Collateral (the "Post-Petition Liens"),** subject only to valid and enforceable liens and security interests existing on said property, assets, or rights of the Debtor at the time of the commencement of the Case or, in the case of property, assets, or rights acquired after the Petition Date, at the time the Debtor's estate acquires the property, assets, or rights.

[ECF 21]. Clearly, GreenLake was granted a lien on the Debtor's accounts to allow for the use of cash collateral as well.

## ARGUMENT

### RULE 60(B) DOES NOT APPLY

As the Court has previously noted "[t]echnically, a 'Motion to Reconsider' does not exist under the Federal Rules of Civil Procedure." *In re Webster Place Athletic Club, LLC*, 606 B.R. 752, 757 (Bankr. N.D. Ill. 2019), citing *GHSC Assocs. Ltd. P'ship v. Wal-Mart Stores, Inc.*, 29 F. App'x 382, 384 (7th Cir. 2002). As the Seventh Circuit also has said, a Motion to Reconsider may be granted when:

> [T]he Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (citing *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D.Ill.1982), aff'd, 736 F.2d 388 (7th Cir. 1984)). A manifest error is the wholesale disregard, misapplication or failure to recognize controlling precedent. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (discussing manifest error in context of Rule 59). Rule 60(b) "provide[s] extraordinary remedies reserved for the exceptional case." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 521 (7th Cir. 2015) (punctuation omitted).

Instead, the Plan Investors cite to Fed. R. Civ. P. 60(b) and say that this case fits within either "mistake, inadvertence, surprise or excusable neglect," "newly discovered evidence," "apply prospectively is no longer equitable" or "any other reason that justifies relief." There is no "newly discovered evidence", so it is assumed that the Plan Investors are saying that the Court made a mistake. However, it is not simply a "mistake" that could form the basis for a reconsideration. Here, there is no "manifest errors of law or fact" and there was no "error of apprehension." The Court simply decided that the issues over who is entitled to what should be decided by the Circuit Court of Cook County as it desired to close the bankruptcy estate.

### THE PLAN INVESTORS' MOTION SHOULD BE DENIED AS THERE IS NO COLORABLE ARGUMENT FOR THE COURT TO RECONSIDER ITS RULING

The Plan Investors make a few arguments to support its Motion: (1) the "Plan Investments" were not part of the Debtor's estate; (2) this situation is akin to "earmarking"; (3) the dismissal motion was filed to "create mischief" in the Foreclosure Case; (4) notice was not provided to the

Plan Investors of the requested dismissal; (5) the monies can only be recovered into the Bankruptcy Estate by way of an adversary proceeding; (6) the Court could not have kept the case "active" to allow for the Receiver to be appointed; and (7) the dismissal order forces the "creditors" to apply to the Circuit Court of Cook County to get their money back.

### THE "PLAN INVESTMENTS" WERE PART OF THE DEBTOR'S ESTATE AS LOANS THAT WERE NOT APPROVED

The Plan Investors make the argument that the Plan Investments did not become a part of the Debtor's estate and therefore, presumably, the Court lacked the jurisdiction to order the funds in the Debtor's accounts to be turned over to the state court receiver. However, even if that was true for the "new" monies received post-confirmation, that argument is not true for the funds obtained by the Debtor to make cash collateral payments to GreenLake during the course of the case.

Section 364(a) of the Bankruptcy Code allows for ordinary course loans to be made by a Debtor, as long as the lender agrees to be repaid as an administrative claimant. Under Section 364(b), the Court must approve the loan transaction. Here, it appears that the vast majority of the parties that were repaid provided loans to the Debtor to make adequate protection payments to GreenLake, but they were not repaid as administrative claimants and the transactions were never approved by the Court under Section 364(b). A similar issue was addressed by the Kansas Bankruptcy Court where a loan was repaid by a debtor after the loan was not authorized:

> In this case, however, Lodge America repaid the promissory note with estate property on November 8, 1995. Langer therefore received payment in advance of other administrative expense creditors. He also received priority over other administrative expense creditors without their having had an opportunity to object to the loan and its repayment terms. Even if the court were to have found that this loan was made in the ordinary course of Lodge America's business, which it has not, such a finding would not justify immunizing the repayment transfer from avoidance under § 549(a)(2)(B). The reach of § 364(a) does not extend to authorizing this loan or the transfer made to repay it. It only authorizes a loan given

in exchange for an administrative expense claim, subject to Code priorities and timing.

*In re Lodge Am., Inc.*, 239 B.R. 580, 585 (Bankr. D. Kan. 1999), aff'd, 259 B.R. 728 (D. Kan. 2001). See also, *In re Nilhan Developers, LLC*, 1:20-CV-3491-RWS, 2021 WL 4516367, at *11 (N.D. Ga. Sept. 30, 2021), aff'd, 21-13820, 2022 WL 3275175 (11th Cir. Aug. 11, 2022) (affirming decision to not allow for a priority claim for the debtor's insiders who made loans to the debtor without court approval); *In re Living Hope Southwest Medical Services, LLC*, 450 B.R. 139, 150 (Bankr.W.D.Ark.2011) (postpetition loan made by an insider to a debtor in possession private hospital that was not approved in advance under Section 364(a) would not be retroactively approved in the absence of a substantial showing under the applicable vertical and horizontal tests that establishes it was made in the ordinary course and a showing of extraordinary circumstances necessary to establish cause for the failure to secure advance approval).

Here, the Debtor's own operating agreement identifies that these investor payments are loans in Section 8.5:

> <u>Loans by Members</u>. If, at any time or from time to time, the Managers determine that it is necessary or advisable for the Members to make loans to the Company (all such loas being collectively referred to as "Member Loans), they shall notify the Members, of the amount which they have determined the Company should borrow from the Members. Each Member shall have the right, but not the obligation, to lend such Member's pro rata share of any such desired borrowing based upon such Member's percentage Interest, provided, that if some Members do not make Member Loans, then other Members may make Member Loans in proportion to the percentage Interests of the Members who agree to make Member Loans…Member Loans shall not constitute an increase in the Member's Capital Account or percentage interest. All Member Loans shall be repaid according to the priority established for cash distributions in Section 12.1 and 13.1.

(A true and accurate copy is attached hereto as Exhibit "3"). Section 12.1 only applies if the property is sold or there is new financing <u>that satisfies any existing indebtedness</u> and Section 13.1 is the distribution upon dissolution or liquidation, where, once again, the Debtor's Members are not to be paid out on the Member Loans until after all of the liabilities to the Debtor are discharged.

(Exhibit 3). Here, these Member Loans (called Plan Investments) are getting paid in violation of the Debtor's own operating agreement.

### THIS SITUATION IS NOT AKIN TO "EARMARKING" ESPECIALLY AS IT RELATES TO THE PAYMENTS MADE TO FUND ADEQUATE PROTECTION PAYMENTS

It is unclear what the Plan Investors are arguing as it relates to earmarking. This Court has discussed the earmarking doctrine as follows:

> The earmarking doctrine may apply where funds are given to a debtor which are intended for a particular party. The proper application of the earmarking doctrine involves consideration of four essential elements: (1) existence of an agreement between the debtor and the new creditor for repayment of an antecedent debt; (2) the performance of this agreement by which the old creditor receives the agreed consideration; (3) the debtor's lack of dispositive control over the transferred property; and (4) the transfer's impact on the estate, namely whether the transfer depleted the debtor's estate.

*In re Golfview Developmental Ctr., Inc.*, 309 B.R. 758, 774–75 (Bankr. N.D. Ill. 2004) (internal citations omitted). Here, the "old creditor" (GreenLake) never received the "agreed consideration." The Earmarking Doctrine does not apply and the Plan Investors have not cited to any cases that stand for the proposition that it can be applied (or something akin to it) when the former creditor does not actually receive the funds. Here, although the Plan was not consummated, it was not consummated not due to anything that GreenLake did, or did not, do. To say that pre-confirmation investments made to pay GreenLake adequate protection should be paid back under this analysis is not correct or equitable.

### THE DISMISSAL MOTION WAS NOT FILED TO "CREATE MISCHIEF" IN THE FORECLOSURE CASE

On Page 10 of the Motion, the Plan Investors—without any citation to any record or other evidence--"sling mud" at undersigned counsel by saying that he told the judge in the Foreclosure Case that Mr. Krone was not trustworthy. The Plan Investors' counsel should know better to simply take his client's word for what happened, and the Court cannot, and should not, consider

anything that is said without any actual citation to any record or admissible evidence to support this statement.

As a matter of fact, the request to have the funds turned over to the receiver in the Dismissal Motion was to avoid exactly what happened here—the funds being taken before a court could decide who has the rights to them.

### NOTICE WAS NOT PROVIDED TO THE PLAN INVESTORS OF THE REQUESTED DISMISSAL BECAUSE THEY DID NOT FILE APPEARANCES IN THE CASE

The Plan Investors harp on the fact that GreenLake did not send the Dismissal Motion to these unknown "Plan Investors." However, none of these Plan Investors filed any sort of appearance or request for notice in the case, and at no point did the Debtor tell GreenLake the identity of any of these investors. The Debtor also did not raise this concern even though one of the very movants herein (Mr. Krone) was at the hearing(s) on the Dismissal Motion.

### THE PLAN INVESTORS CAN BRING A BREACH OF CONTRACT CLAIM AGAINST THE DEBTOR

The Plan Investors argue that the only mechanism for determining the interests of the Plan Investors is through an adversary proceeding and the Court should not have required them to participate in the Foreclosure Case to get repaid. That is simply not true, especially for the investors who provided unauthorized loans to the Debtor to make adequate protection payments. Those parties in particular can assert whatever claim they want against the Debtor (breach of contract) now that the Bankruptcy Case has been dismissed. There is no provision that requires it to be decided in this case via an adversary proceeding post-dismissal.

### THE COURT WAS WITHIN ITS AUTHORITY TO ORDER WHAT IT DID

The Plan Investors take issue with the fact that the Court dismissed the case subject to the funds in the Debtor's accounts being turned over to the state court receiver. However, there is precedent for doing so in the Northern District of Illinois. For example, in the *Randhurst Crossing*

case, the Court held the dismissal of the case in abeyance to allow for the reappointment of a receiver to maintain the "status quo." *U.S. Bank Nat'l Ass'n v. Randhurst Crossing LLC*, 2018 IL App (1st) 170348, ¶ 18, 105 N.E.3d 132, 139. The September 8, 2015 order entered by Judge Cassling is also attached hereto as Exhibit "4." In that order, Judge Cassling ordered that all rents and receipts in the Debtor's account generated post-petition would be turned over to a state court receiver. (Exhibit 4). The main difference between the facts here and in the *Randhurst Crossing* matter is that no receiver was in place before the bankruptcy was filed so there was a distinction being made between the pre-petition accounts and the post-petition accounts. Regardless, there is precedent for a court in a Chapter 11 case making a dismissal of a matter contingent upon funds in the debtor's accounts being turned over to a state court receiver (as the judge did here). This is not a basis for a reconsideration of the dismissal order.

**WHEREFORE**, GreenLake Real Estate Fund LLC respectfully requests that this Court enter an order denying the Motion for Reconsideration and granting such other and further relief as the Court deems just and proper.

Dated:  April 10, 2024    **GREENLAKE REAL ESTATE FUND LLC**

By:  /s/ Adam C. Toosley
One of Its Attorneys

Adam C. Toosley
Smith, Gambrell & Russell LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois  60606
Phone:  (312) 360-6000
Facsimile: (312) 360-6520
atoosley@sgrlaw.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Case No. 22-07668 |
| | ) | |
| PLATFORM II LAWNDALE LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Deborah L. Thorne |

# **CERTIFICATE OF SERVICE**

I, Adam C. Toosley, certify that I served a copy of *Greenlake's Response to the Plan Investors' Motion for Reconsideration*, on each entity shown on the attached list at the address shown and by the method indicated on the list on April 10, 2024, on or before 5:00 p.m.

/s/ Adam C. Toosley

Smith, Gambrell & Russell LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois  60606
Phone:  (312) 360-6000
Facsimile: (312) 360-6520
atoosley@sgrlaw.com

COUNSEL FOR GREENLAKE REAL ESTATE FUND

**SERVICE LIST**
**Electronic Service List**

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Gregory J. Jordan
Mark Zito
Jordan & Zito LLC
350 North LaSalle Drive, Suite 1100
Chicago IL 60654
(312) 854-7181 (Telephone)
gjordan@jz-llc.com
mzito@jz-llc.com

Dan Wen
Horwood Marcus & Berk Chartered
dwen@hmblaw.com

Konstantine T. Sparagis
Law Offices of Konstantine Sparagis PC
gsparagi@yahoo.com

Keevan D. Morgan
Morgan & Bley, Ltd.
900 W. Jackson Blvd.
Chicago, IL 60607
kmorgan@morganandbleylimited.com

Kevin A Sterling
The Sterling Law Office
112 South Sangamon Street, Suite 101
Chicago, IL 60607
kevin@thesterlinglaw.com