UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 22-07668 |
| | ) | |
| PLATFORM II LAWNDALE LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Deborah L. Thorne |

## **REPLY AS TO THE MOTION FOR RULE TO SHOW CAUSE**

GreenLake Real Estate Fund LLC ("*GreenLake*"), by and through its undersigned counsel,

and for its Reply after the Court previously granted a Rule to Show Cause against Platform II

Lawndale LLC (the "*Debtor*"), states as follows:

## **INTRODUCTION**

The Debtor's Response misses the mark. First, and foremost, the Court has already granted

GreenLake's Motion for a Rule to Show Cause (the "Motion"). This briefing schedule was set at

the return date for where the Debtor was to show cause why it should not be held in contempt for

violating a previous order. The Response is an attempt to relitigate the very issues that the Court

already ruled upon on March 6, 2023 when it said "The Debtor is ordered to appear in person, by

and through a corporate representative, before this Court on March 13, 2024 at 11:00 a.m., 219 S.

Dearborn St., Courtroom 682, Chicago, IL 60604, to show cause why it should not be held in

contempt for violation of this Court's February 14, 2024 order, specifically related to the funds that

were not turned over to the Receiver under this court's February 14, 2024 Order." [Dkt. 217].

Despite the fact that this schedule was not set to relitigate the merits of the February 14,

2024 order, it is also unreasonable to claim that the Court's order did not direct all of the funds in

the Debtor's accounts when the Debtor's principal was physically in the courtroom when the Court

ruled on these funds that were taken from the Debtor's accounts, and clearly identified that they

were to be turned over to the state court receiver to allow for the judge in that case to decide who

they belong to.  To that end, the case was only dismissed subject to that order which meant that

the Debtor—who had no use of cash collateral for months leading up to the dismissal—was also

in violation of the prior orders in this case.

Even further, the Debtor has continued to only provide partial information to the Court.  At

the March 13, 2024 hearing, and upon undersigned counsel's request to the Court, the Court said

that the Debtor should fully account for the missing money.  Instead, the Response contains no

actual facts or information showing when the funds were distributed from the Debtor's accounts,

to whom they were transferred and how much was actually transferred.  Yet, at the same time, the

Debtor (and separately, a group of so-called "Plan Investors") asks the Court to rule that these

funds are not part of the Debtor's estate and should not have been part of any order.  In other

words, they are asking the Court to reconsider the prior ruling that the judge preceding over the

state court matter would decide what to do with the funds.  The fact that these crucial facts are

missing is something that should not go unnoticed because, for other payments made post-

dismissal, the details are included in the Response.  Why would the Debtor not provide the very

information that was discussed when the briefing schedule was set?

For these reasons, the Motion should be granted and the Debtor ordered to put the funds

back into the account and turn them over to the state court receiver.  At the very least, the Debtor

should be ordered to properly account for these funds with documentary proof as to who was paid

and when.  The Response also skirts the issue as to whether these parties have even ever been

repaid.

## BACKGROUND FACTS

The Court is aware of the history of this case.  After a plan was confirmed in late October 2023, and after many post-confirmation court hearings, the case was dismissed because the closing of a refinance contemplated by the plan did not occur.  Prior to the dismissal, GreenLake realized that the Debtor had (allegedly, mistakenly) taken $44,000 out of the Debtor's bank accounts without court approval.  It was only after GreenLake's counsel brought it to the attention of the Court that the funds were returned.

GreenLake filed a Motion to Dismiss, or Alternatively, to Convert the instant case due to the failure of the refinance to take place.  That motion was continued to February 14, 2024 where the Court heard arguments from the parties.  At the February 14, 2024 hearing, GreenLake and the Debtor argued about the alleged $295,000 in "plan investments" that apparently were taken out of the Debtor's accounts.  These "plan investments" were never disclosed during the course of the bankruptcy case, and the Debtor was allowed to use GreenLake's cash collateral based on these investments being used to make adequate protection payments.  During that hearing, undersigned counsel brought up the fact that there was a good chance that exactly what happened here would happen—that the funds in the Debtor's account would disappear by the time that they are turned over to the state court receiver.  (A copy of the February 14, 2024 hearing transcript is attached hereto as Exhibit "1", Page 18, lines 3-10 and 18-25 and Page 19, lines 1-9).  Even the Debtor's counsel said that there was "virtually no way that there's $295,000 in investor funds in [the Debtor's accounts] because of the fact that the Debtor ran positive and cash flow positive it wasn't making its cash collateral payments."  (Exh. 1, Page 20, lines 21-25).  During that hearing, undersigned counsel further argued to the Court:

> But, like I said, it's just we --we're not in a -- our client just did not want these funds
> to disappear, is what we assume will happen as soon as -- because this was, you

SGR/70707608.1

> know, theoretically part of this proceeding. And, like I said, we're learning now
> allegedly that they weren't cash collateral. They were equity infusions.
>
> But to Mr. Jordan's point, they haven't made an adequate protection payment in a
> year. The property was cash flow positive. So, how can there only be 10,000? The
> difference between 305 and 295, like, that doesn't logical sense as to how that
> could possibly happen. But, you know, I'm learning all of this in the last 24 hours.

(Exh. 1, Page 25, lines 13-25 and Page 26, line 1). Then, when asked if these were new investors

coming on as the new financing was approached, Debtor's counsel said "**No, they're all—they're**

**just existing investors who are putting in additional funds to maintain their interest in**

**Platform**." (Exh. 1, Page 26, lines 13-16). At the end of the hearing, the Court ruled that the

bankruptcy was to be dismissed with prejudice and said, with respect to these funds:

> That may not really make sense. I mean, you have every right to argue its not
> yours—or its not his when—you know, before the state court. So, that makes it
> cleaner for the state court.

(Exh. 1, Page 47, lines 2-6).

GreenLake's Motion for Rule to Show Cause was filed on March 4, 2024. [Dkt. 213].

That motion was granted on March 6, 2024 and the Court set the hearing on the rule to show cause

for March 13, 2024. [Dkt. 217]. At that hearing, new counsel for the Debtor asked for additional

time as he was just retained, and the Court and undersigned counsel were both promised specific

facts about the accounting of the funds that were not turned over to the Receiver. Instead, the

Debtor filed a Response that provides no actual details as to where the funds went (other than to

the Debtor's real estate tax counsel).

## **ARGUMENT**

### A. **"CONTRIBUTIONS" MADE BETWEEN DECEMBER 2022 AND MARCH 2023 WERE NOT TO FUND A PLAN**

Although GreenLake argued this extensively in its Response to the "Plan Investors"

Motion for Reconsideration, it bears repeating:  the "contributions" to the Debtor made in late

4

2022 and early 2023 were not to fund a plan—they were used to cover the shortfall every month between the Debtor's income and the Debtor's liabilities. Those liabilities included GreenLake's adequate protection payments—which conveniently stopped at the same time that the Debtor stopped obtaining these cash infusions. If the Debtor is allowed to now repay these cash infusions, then the practical effect would be to rob GreenLake of its prior adequate protection payments.

The Debtor's own plan supports this proposition. On Page 15 of the Plan [Dkt. 114], the Debtor identified the following:

1. Each of the Debtor's members hold an Equity Interest due to pre-petition contributions. No Person holding an Equity Interest will receive anything of value, including an interest in the Reorganized Debtor, as a result of any contribution made before the Effective Date.

2. The investors who have contributed new monies to fund the Plan shall hold the Debtor's membership interests as reflected in Exhibit F.

In other words, the Debtor identified that only the parties listed on Exhibit F were "Plan Investors" and the parties that provided investments before the date of the plan would not "receive anything of value." Interestingly, many of these "Plan Investors" are not listed on Exhibit F, including Northern Trust, Mercury Capital IRA, Banach and Davis. How can they be classified as "Plan Investors" when the Debtor's own filing admitted that they were not parties "who have contributed new monies to fund the Plan" and Debtor's own previous counsel admitted on the record that they were "just investors who are putting in additional funds to maintain their interest in Platform."

Even further, under the mortgage at issue in this case, whenever any entity pledged monies to the Debtor, those funds were to be part of what was pledged to GreenLake and the mortgage precluded payments to the Mortgagor (Debtor) or any affiliates. On Page 12 of the Mortgage (Section 3.21), Platform agreed that at all times, it would be a "Single Purpose Entity." (A true and accurate copy of the Mortgage is attached hereto as Exhibit "2.") In accordance with that same document, on Page 5, the term "Single Purpose Entity" was defined to identify that, as a

5

Single Purpose Entity, the Debtor agreed that it "has not and will not have any assets other than those related to the Mortgaged Property." (Exh. 2). As such, the Debtor's only "assets" were to be those that related to the Mortgaged Property—which is GreenLake's collateral.

Under that same document, "Affiliate" was defined, in part, as any party or owners who have any ownership or financial interest in the Debtor. (Exh. 2, Section 1.26(a)). Under Section 3.15, without GreenLake's approval, the Debtor was precluded from many any direct or indirect payment to any of the Debtor's Affiliates. These "Plan Investors" are parties that have an ownership interest in Debtor, and under Sections 3.15 and 1.26(a) of the mortgage, were not entitled to be paid the funds. This is yet another example of the failure of the Debtor to follow the terms of the contracts/agreements.

## B. GreenLake's Motion Did Not Object to the Payment of Tax Counsel or Reasonable Expenses

In the Response, the Debtor misunderstands GreenLake's argument generally. GreenLake has never objected to the payment of real estate tax counsel, and the Court's order specifically allowed for the payment to that attorney. The issue that GreenLake has is with the additional (possible) payments of $295,000 to these "plan investors" despite the fact that the Court clearly stated that the issue of where those funds would be distributed was to be decided by the foreclosure judge.

Similarly, if there were reasonable expenses that needed to be paid, GreenLake would have not objected to those payments being made. However, here, no request was even made to pay those bills. Even after the Court precluded the use of cash collateral starting in December of 2023, GreenLake told the Court that it did not object to the payment of critical vendors such as utilities and non-Debtor related employees. This argument is a red herring. The Motion was solely based

SGR/70707608.1

on the alleged payment of $295,000 to investors despite the fact that the state court judge was to rule on who was entitled to those funds.

### C. THE RESPONSE STILL IS MISSING CRITICAL INFORMATION

In the Response, Mr. Krone attaches a declaration that provides no actual facts about the alleged repayments to the "Plan Investors."  When were these parties paid?  How were they paid?  What amounts were they paid?  Which investors were paid what amounts? The fact that these facts are conspicuously missing is alarming and made worse by the fact that the payments to real estate tax counsel are identified by exact amounts and check numbers in Mr. Krone's declaration. Even after the reappointment of the receiver in the state court case, the Debtor has refused to provide these details or actual bank records.  If the Court is not willing to order the return of the funds, at the very least, the Motion should be entered and continued until such time as this detail be ordered to be provided.

Even further, the "math" just does not add up.  The property generated in the neighborhood of $30-$35,000.00/month in rents.  The Debtor was in possession from July of 2022 to February of 2024.  Clearly, GreenLake's cash collateral was being used (the rents) to pay the few adequate protection payments that were made and once it became too difficult to go to the investors and ask for more money, the adequate protection payments stopped.  Why is GreenLake being punished multiple times—first by having adequate protection payments made out of its cash collateral receipts, second by not being told about this alleged "arrangement" to repay loans made by investors in the Debtor, third, by repaying these loan investors thereby stripping the monies that should have been set aside as the rent collection amounts and finally, leaving GreenLake with a property that did not have real estate taxes paid on the Debtor's watch and having the taxes sold.

**WHEREFORE**, GreenLake respectfully requests that this Court enter an order (i) holding

SGR/70707608.1

the Debtor in contempt of court for violation of February 14, 2024 Order; (ii) requiring all funds improperly taken be immediately returned; (iii) granting of fees to GreenLake; (iv) alternatively, to require the Debtor to fully account for the funds taken out of the Debtor's accounts before ruling on the motion; and (v) granting such other and further relief as the Court deems just and proper.

Dated:  April 24, 2024                         **GREENLAKE REAL ESTATE FUND LLC**


By:____/s/ Adam C. Toosley_____
        One of Its Attorneys

Adam C. Toosley
Smith, Gambrell & Russell LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois  60606
Phone:  (312) 360-6000
Facsimile: (312) 360-6520
atoosley@sgrlaw.com

SGR/70707608.1

## CERTIFICATE OF SERVICE

I, Adam C. Toosley, certify that I served a copy of this Reply as to the Motion for a Rule to Show Cause, on each entity shown on the attached list at the address shown and by the method indicated on the list on April 24, 2024, on or before 5:00 p.m.


/s/ Adam C. Toosley

Smith, Gambrell & Russell LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois  60606
Phone:  (312) 360-6000
Facsimile: (312) 360-6520
atoosley@sgrlaw.com

COUNSEL FOR GREENLAKE REAL ESTATE FUND

### SERVICE LIST
### Electronic Service List

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Dan Wen
Horwood Marcus & Berk Chartered
dwen@hmblaw.com

Keevan D. Morgan on behalf of Interested Party Mercury Capital Management
kmorgan@morganandbleylimited.com

Konstantine T. Sparagis on behalf of Interested Party Marble Leadership Partner, Inc. 401k Plan
gsparagi@yahoo.com,
Gus@konstantinelaw.com;Morgan@konstantinelaw.com;Drew@konstantinelaw.com

Kevin A Sterling on behalf of Debtor 1 Platform II Lawndale LLC
kevin@thesterlinglaw.com

SGR/70707608.1