```
                                                                    1

           IN THE UNITED STATES BANKRUPTCY COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION



 Platform II Lawndale, LLC,      )   No. 22 B 07668
                                 )   Chicago, Illinois
                                 )   1:15 p.m.
                       Debtor.   )   June 5, 2024



          TRANSCRIPT OF PROCEEDINGS BEFORE THE
              HONORABLE DEBORAH L. THORNE



 APPEARANCES:

 For the Debtor:         Mr. Kevin Sterling;

 For Greenlake:          Mr. Adam Toosley;






 Prepared By:            Amy Doolin, CSR, RPR
                         U.S. Courthouse
                         219 South Dearborn
                         Room 661
                         Chicago, IL  60604.
```

1 THE CLERK: Platform II Lawndale, LLC.
2 MR. TOOSLEY: Good afternoon again,
3 Your Honor. Adam Toosley for Greenlake.
4 MR. STERLING: And good afternoon,
5 Your Honor. Kevin Sterling on behalf of Platform II
6 Lawndale, LLC.
7 THE COURT: No other appearances?
8 MR. TOOSLEY: I think this is it.
9 MR. STERLING: Yes. Mr. Morgan
10 indicated to me earlier today that he would not be
11 appearing on this case.
12 MR. TOOSLEY: His motion was denied
13 originally, so that's --
14 So last Wednesday I did receive the
15 February bank statements that we had talked about
16 when we were here last time, and it did show a
17 withdrawal after the case was dismissed, which we all
18 knew that it existed. It didn't show necessarily who
19 it went to or how it went to it.
20 But I understand based on a
21 subsequent -- or a previous email from Mr. Sterling
22 that there was a cashier's check issued to an
23 investor fund generally. So based on all of that
24 information, it does appear that the money was taken
25 and the full amount given to the investors. That's

1 the best that we can adduce from the information that
2 we now have. And it does look like that initial
3 withdrawal happened within days of the dismissal
4 order being entered.
5 　　　　　So, I think they've now complied with
6 the request for the accounting in accordance with
7 Your Honor's last order. I think, you know, from our
8 perspective -- and I understand Your Honor's
9 frustration with the fact that this is still
10 pending -- I think the only issue would be whether or
11 not you would entertain an actual sanction being
12 issued for the violation, and we go about getting
13 that in front of you.
14 　　　　　I don't want to do any more discovery.
15 I don't want to do anything else. I mean, I just --
16 I would like to -- we have a foreclosure sale in less
17 than two weeks in the state court case. So, you
18 know, I'd like to try to wrap this up as quickly as
19 possible, and I think Your Honor would as well.
20 　　　　　MR. STERLING: Well, I -- Your Honor,
21 I believe we have a fully briefed motion regarding
22 the contempt. For the reasons I stated in court last
23 time, I don't think that a contempt or a sanction
24 order is appropriate.
25 　　　　　To the extent that Mr. Toosely's

1 client has incurred fees, they could -- arguably that
2 would be subsumed within the foreclosure if there was
3 a deficiency judgment. So I think piling on a
4 sanction award for the reasons I stated in my prior
5 brief and because I don't know that they are
6 foreclosed from collecting under their loan
7 documents, I don't think it's appropriate in this
8 particular matter, especially considering what we
9 perceive as the non-clear mandate within the court's
10 order.
11        THE COURT: Well, I beg to differ with
12 you on that. But I guess my question is and what
13 I've tried to -- I mean, I was prepared to do an
14 order today, which I won't enter, but do you --
15        Mr. Toosley, the money that went to
16 the investors -- I mean, and the reason I ordered it
17 all to go to the receiver is because I wanted the
18 receiver in the state court to figure out what was
19 rent and what was investor money.
20        And my understanding from your client
21 is that they're looking for that investor money.
22 There may have been some way back in the history of
23 this case, but that money.
24        And so are you confident that the
25 money that went to the investors was not your rents?

1                    MR. TOOSLEY:  No, I think it is our
2  rents.
3                    THE COURT:  Okay.
4                    MR. TOOSLEY:  A hundred percent
5  because we do have proof that there was about half of
6  it or so came in after the plan to fund the plan.
7  The other half came in as much as almost a year
8  before the plan was even presented to the court.  So
9  it couldn't have been an investment in the plan.  It
10 was to pay cash collateral.
11                   And, obviously, the rents here were
12 not sufficient to make adequate protection payments,
13 so they literally took all the money that has been
14 given to us to pay back those people who had a loan
15 that wasn't approved by the court.
16                   THE COURT:  Right.
17                   MR. TOOSLEY:  So I do believe that
18 somewhere around half of the amount for sure is our
19 cash collateral.  I just -- the case has been
20 dismissed, and I'm concerned and confused as to how
21 to do --
22                   THE COURT:  Well --
23                   MR. TOOSLEY:  -- this, you know --
24                   THE COURT:  -- so this is where -- and
25 I've spent a fair amount of time looking at this.

1        MR. TOOSLEY:  Right.
2        THE COURT:  Mr. Krone was the manager
3 of the debtor.  He appeared throughout it.  He is
4 self-identified as the manager and the client
5 representative.  And that was in docket number 1 and
6 docket number 228.  And I recognized him, therefore,
7 as the person in control under Federal Rule of
8 Bankruptcy Procedure 9001(5).
9        So, the order I entered -- and I have
10 the authority under Section 105 of the Bankruptcy
11 Code to enforce my orders.  And the Seventh Circuit
12 and the Supreme Court of the United States have been
13 quite clear that I have the authority to enforce my
14 order.  My order was that all of the funds in the
15 debtor's account as of the date of my dismissal be
16 turned over to the state court receiver.  They
17 weren't.
18        Now, the reason I wanted the
19 accounting and that I thought that Greenlake was
20 entitled to it was to know what that money was.  How
21 much, what it was.  If Greenlake subsequently felt
22 that the money turned over was investor funds that
23 they weren't making a claim to, sobeit.  But that's
24 why I wanted the accounting.
25        Now, I'm gathering from what you're

1 saying is you've kind of gotten the accounting. At
2 least got bank statements to see what money left.
3         MR. TOOSLEY: Correct.
4         THE COURT: But my order was all the
5 money be turned over. And I still have jurisdiction
6 to do that, to enforce that. I think that's very
7 clear. So we don't have that answer. I don't think
8 there needs to be a lot of discovery. We need to
9 know where that money came from and where it went
10 back to.
11         It's like I said, I think we could do
12 this in an afternoon if we saw the bank statements
13 and where it went. I mean, I don't think there --
14 we're not talking about something that needs a lot of
15 discovery from either side. It was rents or it
16 wasn't rents. And, actually, I wanted the state
17 court to figure that out.
18         MR. STERLING: Your Honor, if I may,
19 in our response brief, pursuant to the first time
20 that I appeared before Your Honor on this matter,
21 Your Honor directed us to identify the sources of the
22 money. And we did that within the context of our
23 response. We provided detailed records, including
24 the dates on which the deposits came in from the
25 investors and back-up showing where those deposits

1 came.
2 So, to that end, we answered that
3 question. Subsequently you asked us to tell us where
4 the money went, and we've provided that to Mr.
5 Toosley. If he's got an argument to make, I think he
6 could still make that in state court, and not --
7 THE COURT: Well, Mr. Toosley.
8 MR. STERLING: And just to clarify,
9 Your Honor, paragraph 3 of your dismissal order on
10 February 14th says upon reappointment of the
11 receiver, all funds held in the debtor's account
12 shall be turned over to the receiver.
13 And as I indicated the last time, the
14 measuring date of what funds on the date that the
15 receiver was appointed. It doesn't say all funds as
16 of the dismissal. It just says upon appointment of
17 the receiver all funds held in any of the debtor's
18 bank accounts.
19 THE COURT: So I know the moment I
20 entered that order the debtor moved the money. That
21 was not in the spirit of the order. We've had this
22 argument before.
23 MR. STERLING: Okay.
24 THE COURT: My order said all funds
25 held by the debtor. I didn't mean to have some kind

1 of splicing so, okay, I've got two days or three days
2 before the receiver comes. I'm going to take all the
3 money. That was not -- this case was one that I have
4 had -- I could be criticized for having way too much
5 patience and allowing it to exist as long as I did in
6 this court. I think Mr. Toosley could be criticized
7 for allowing it to happen so long in this court.
8             But at any rate, the idea was the
9 debtor has money today. I'm dismissing the case. I
10 want the state court and the receiver to make sure.
11 And I think it was quite clear. Mr. Krone was here.
12 And if he ran out went to the bank to start issuing
13 checks to the investors, that was certainly in
14 violation of my order.
15             And I understand where you're coming
16 from, but I want to ask Mr. Toosley a couple of
17 questions.
18             MR. TOOSLEY: Sure.
19             THE COURT: I mean, I'm very happy to
20 end this case if he's got everything he needs and if
21 you want to fight it down the street. No problem
22 with that.
23             But at this point, I don't feel that
24 my order was complied with, and I am ready to hold
25 Mr. Krone in contempt for failure to do that. And

1 the penalty for that would be at least to pay Mr.
2 Toosely's legal fees from the date of that order
3 through the present and going on.  And I would retain
4 jurisdiction.
5 　　　　　　　Now, maybe that's not necessary.  I
6 mean, I don't know, Mr. Toosely, how hard you --
7 whether you feel like you've gotten information to
8 know what were rents and what were investor funds.
9 And if you want to fight that down the street, I am
10 very happy to have the judge take care of it down
11 there.  But I do feel that my order was violated.
12 　　　　　　　MR. TOOSLEY:  And I agree with you
13 entirely.  I think the answer is still -- there's a
14 legal component to it, right?  They have just
15 unilaterally assigned this as an investor fund when,
16 as we identified in our briefs, this isn't an
17 investor fund when you needed it to pay our adequate
18 protection because the rents weren't.
19 　　　　　　　So to me there's a factual component
20 as far as where this money went that I still don't
21 know as we sit here today only because it was written
22 to just random PIIC Investor Fund that Mr. Krone can
23 identify in a short period of time in front of Your
24 Honor.  But also I think the -- if Your Honor didn't
25 want to do this originally, which is everything we're

1 talking about, having the judge there do it
2 potentially, it's not -- in our argument it's not
3 investor funds unless it happened in November or
4 December. It's rents. It's all -- they took it out
5 of the rents to pay -- it was originally paid to us,
6 so we're kind of being double hit with this by having
7 to allow them to pay back people who loaned money to
8 the company without getting a court order to do so.
9 So, I think there is a factual
10 component that we don't entirely know where this went
11 because it's just a random cashier's check to PIIC
12 Investors. But, also, I don't believe that at least
13 the things that happened in 2022 are plan investor
14 money. It's not.
15 So, I think there is a legal component
16 to it as well. So, to me it's not as
17 straightforward. It's just because we designated and
18 decided to call it plan investor money, it's plan
19 investor money, which is what they're trying to get
20 Your Honor to do.
21 THE COURT: I mean, the debtor was in
22 violation of the cash collateral orders that were my
23 orders all the way through this case. I still have
24 jurisdiction to enforce those orders. If you want to
25 take a look at this in terms of similar cases before

1  the Bankruptcy Court for Northern District of
2  Illinois, you may want to take a look at In re Direct
3  Media, which was a Judge Barnes case.  It was
4  appealed to the district court.  And there that was a
5  cash collateral order all the way through, issues.
6  And some of the similar arguments were made there, as
7  here.
8           I guess, Mr. Toosely, I'm looking for
9  some guidance from you.
10          MR. TOOSLEY:  I would say we can do
11 this in an hour easily if Your Honor had a time.
12          THE COURT:  We'll just set it for a
13 hearing.
14          MR. TOOSLEY:  Yeah.
15          THE COURT:  Let's figure it out.
16          MR. TOOSLEY:  So even on the 26th if
17 you had it at the end of your call when I'm here on
18 the last case, too, but I don't know if that date
19 works.
20          THE COURT:  Let me just look at my
21 calendar and make sure I don't have some meeting or
22 something that afternoon.
23          MR. TOOSLEY:  It sounds like there is
24 a concern.
25          THE COURT:  It's wide open.  Why don't

1 we set it for 2:00 o'clock on the 26th.
2     MR. STERLING: Your Honor, I'm in
3 state court.
4     THE COURT: Okay.
5     MR. STERLING: And I know the next
6 week is the 4th of July.
7     THE COURT: I'm out that week.
8     MR. TOOSLEY: So we'd have to do it
9 the 10th, right?
10     MR. STERLING: I believe, Your Honor,
11 the 10th is a full day for you.
12     THE COURT: No, but it's just a motion
13 call, but, I mean, I think the motion call will be
14 over by say 2:30 or I could actually do it on -- yes,
15 2:30 on July 10th.
16     MR. TOOSLEY: Sounds great.
17     THE COURT: I think Mr. Krone should
18 be present. And if he has -- they should be here
19 because I am -- you know, this is a -- I think under
20 9001(5) is clearly the person that has -- I mean,
21 corporations don't usually have mouths. They operate
22 through people, and that's what 9001(5) is saying.
23     So I'll see everybody at 2:30 on the
24 10th.
25     MR. TOOSLEY: Okay.

1      MR. STERLING: You're ordering
2 Mr. Krone to appear?
3      THE COURT: Yes. I assume the parties
4 can talk if there are any other witnesses.
5      MR. TOOSLEY: I don't think there is.
6      THE COURT: So July 10th at 10:00 --
7 2:30, excuse me.
8      MR. TOOSLEY: Our summer associates
9 are here as well, so I brought them with.
10      THE COURT: I have my externs, too.
11      July 10th is wide open.
12      MR. TOOSLEY: All right. Thank you
13 very much, Your Honor. Have a great holiday.
14      MR. STERLING: Thank you.
15      (End of Audio Recording.)
16
17
18
19
20
21
22
23
24
25

```
 1
 2
 3
 4
 5                      CERTIFICATE
 6
 7           I, AMY DOOLIN, CSR, RPR, do hereby
 8   certify that the foregoing is a true and accurate
 9   transcription of proceedings electronically recorded
10   on June 5, 2024, submitted to D&E Reporting for
11   transcription, and contains all the content contained
12   in said recording and has been transcribed to the
13   best of my ability.
14
15                      _____
                        /s/Amy Doolin, CSR, RPR
16
17
18
19
20
21
22
23
24
25
```