1

1        IN THE UNITED STATES BANKRUPTCY COURT
2          FOR THE NORTHERN DISTRICT OF ILLINOIS
              EASTERN DIVISION
3

4

5   Platform II Lawndale, LLC,      )  No. 22 B 07668
                                     )  Chicago, Illinois
6                                    )  2:30 p.m.
                          Debtor.    )  July 10, 2024
7

8

9        TRANSCRIPT OF PROCEEDINGS BEFORE THE
            HONORABLE DEBORAH L. THORNE
10

11

12  APPEARANCES:

13  For the Debtor:        Mr. Kevin Sterling;

14  For Greenlake:         Mr. Adam Toosley;

15

16

17

18

19

20

21

22  Prepared By:           Amy Doolin, CSR, RPR
                           U.S. Courthouse
23                         219 South Dearborn
                           Room 661
24                         Chicago, IL  60604.

25

2

1        THE CLERK:  Taking up this court's

2   2:30 set matter, Platform II Lawndale, LLC.

3            MR. STERLING:  Good afternoon,

4   Your Honor.  Kevin Sterling on behalf of the

5   debtor.

6            THE COURT:  Good afternoon.

7            MR. TOOSLEY:  Good afternoon, Your

8   Honor.  Adam Toosley for secured creditor Greenlake.

9            THE COURT:  Okay.  Well, I think this

10  is your motion.

11           MR. TOOSLEY:  So, we were here last --

12  I think it was May 15th was the date.  And on that

13  date, Your Honor on our motion issued a rule to show

14  cause against Mr. Krone and asked that he come today

15  to provide testimony to the extent necessary as to

16  the violation.

17           So, I don't think we actually set it

18  for an evidentiary hearing, you know, as far as

19  exhibits or anything like that.  So it was kind of

20  just continued --

21           THE COURT:  Right.

22           MR. TOOSLEY:  -- generally for that

23  purpose.  But today, because originally it was -- you

24  know, obviously, we've briefed this issue on the

25  contempt.  We've had four or five different hearings

3

1   on it.  So I don't want to beat any -- the case has

2   been dismissed for six months now --

3                   THE COURT:  Right.

4                   MR. TOOSLEY:  -- so at the end of

5   the day, you know, I'm hopeful that we can come to

6   some end on the issues.

7                   THE COURT:  I would be with you on

8   that.

9                   MR. TOOSLEY:  I assumed you would.

10                  So, we have -- to give you an update

11  as to what's happened since the last two months or

12  so, we -- the case did, obviously, start back up in

13  state court.  We had our foreclosure sale, and the

14  court date for the confirmation of that sale is set

15  for September.

16                  THE COURT:  Okay.

17                  MR. TOOSLEY:  So everything is

18  proceeding there.  And just for making sure that

19  we're all on full disclosure, the fees that we

20  incurred in relation to this we have rolled into our

21  fee request in the state court case for the

22  deficiency judgment and on the guarantee against Mr.

23  Krone.

24                  So, I just am making -- I know that

25  we mentioned attorney's fees the last two times.

4

1              THE COURT:  Right.

2              MR. TOOSLEY:  And I just -- for

3    full disclosure purposes, I am also asking for

4    those as part of the deficiency to be entered in

5    the state court case just because I don't want

6    that to be --

7              THE COURT:  Right.

8              MR. TOOSLEY:  -- ignored in

9    everybody's head on that front.

10              And that's kind of where we're

11    standing.  Mr. Krone's entity is acting as the

12    property manager for the receiver, so we are still

13    discussing the possibility of potentially working

14    something out.  But at this point everything is

15    proceeding.

16              THE COURT:  So, I guess my question is

17    -- and Mr. Sterling can add in -- the answer to the

18    question that was asked has never been provided in

19    terms of the dollars.

20              What are you looking for?

21              MR. TOOSLEY:  Well, obviously,

22    originally I'd asked that the $285,000 be returned.

23    I think -- you know, to the extent that's the only

24    way that we could ever get to a point of being made

25    whole by this.

5

1          And I know we've said this a few

2    times.  You know, the fight was not as to the full

3    285,000, but Your Honor's position was let's just

4    have the state court judge make the decisions, as

5    opposed to keeping the bankruptcy open.

6              To me it was very clear that that was

7    the intent, as I raised it myself specifically that I

8    was afraid that the funds would dissipate, which is

9    exactly what happened the day after the court order

10   was entered.

11             I, to this date, have no idea where

12   the funds still are.  I received a cashier's check

13   that was written to PIIC Investors that was dated the

14   day after Your Honor had dismissed the case.  And

15   then it was processed about a month later, or

16   something like that.

17             I don't know who PIIC Investors are.

18   I don't know if that's an account that's run by the

19   debtor.  I don't know if -- originally, it was

20   represented that the funds were being used to pay

21   back the investors themselves.  I have not been given

22   any documentation to show that it ever went from

23   that PIIC Investors account or who PIIC Investors

24   are.

25             So, as we stand here today, I still

1    have no idea where the funds actually ended up.  And

2    I know we've talked about the idea of a fraudulent

3    transfer case potentially also being filed, or

4    something like that, in state court after this is all

5    decided.  But, like I said, as far as turning over

6    the funds, I just don't even know where they are

7    because the accountings that have been provided only

8    show the money going out, but not -- like, just one

9    cashier's check for $285,000.

10              THE COURT:  Well, I always thought

11   this was pretty simple, that there -- I know that

12   there was -- although there was never an order

13   approving it, but there had been investor monies that

14   had been raised that were going to be used for the

15   financing.

16              MR. TOOSLEY:  Correct.

17              THE COURT:  And that was my

18   understanding.

19              MR. TOOSLEY:  Correct.

20              THE COURT:  And I had thought that Mr.

21   Krone wanted to return those to the investors.

22              And I don't think that your client

23   ever really claimed that those were their monies.  So

24   to me it was really a matter of transparency, what

25   was taken out.

7

1          Now, I absolutely wanted that to be

2  decided by the state court, but at this point, I just

3  thought there should have been transparency --

4          MR. TOOSLEY:  Right.

5          THE COURT:  -- one place or the

6  other.

7          MR. TOOSLEY:  And I think this was

8  about half -- about half of the 285,000 or so -- I

9  don't remember the exact numbers -- were these new

10 investments that came in post-confirmation in order

11 to fund the plan.  And half of them were

12 pre-confirmation that they claimed to be investors,

13 and we say weren't, that they were our cash

14 collateral.

15         So, that was really where the fight

16 came was to a portion --

17         THE COURT:  Right.

18         MR. TOOSLEY:  -- of the 285,000, which

19 Your Honor again said this isn't going to be before

20 me.  This is all going to be a state court judge

21 determination as to the $285,000 issue.

22         Up until January, they have never

23 even claimed that they were plan investor money.

24 When they filed the monthly operating report for

25 January it was the first time that they had just

1  kind of written 285,000 plan investors.  They have

2  not gotten approval for loans or anything like

3  that.

4           So, all of these issues, Your Honor

5  had said I'm just going to let the state court --

6  just because I am dismissing the case.

7           THE COURT:  Right.

8           MR. TOOSLEY:  And so our claim for the

9  cash collateral portion of it was only to a portion

10 of the 285,000, not to the full 285.  We were willing

11 to concede that the post-confirmation investments

12 that came in could never have been our cash

13 collateral.  Right?

14          So, it was because it was specifically

15 identified in the plan that those people would be

16 providing those --

17          THE COURT:  Right.

18          MR. TOOSLEY:  -- those investments.

19          It was the pre-confirmation all the

20 way back to 2022 that we were saying couldn't have

21 been considered an investment into the plan because,

22 you know, it was a year before the plan was

23 confirmed.

24          So that's -- you know, as it stands

25 here today, the only accounting we have is where the

9

1    $285,000 came from, the number.  And then it was sent

2    to this entity for whatever it is, because it's not a

3    registered company.  PIIC Investors is not registered

4    by the State of Illinois.  I have no idea what that

5    is or -- PIIC would be Platform Investments --

6    Platform II Lawndale.  PIIL -- what did I say -- I

7    know that's -- PIIL is Platform II Lawndale.  What I

8    don't know is where the funds went.

9             THE COURT:  And all my order really

10   says is provide this accounting for the period of

11   January 31st through February 29th, and that has

12   never been forthcoming.

13            MR. TOOSLEY:  They sent me the bank

14   statements --

15            MR. STERLING:  That's not accurate,

16   Your Honor.  We -- if I -- a couple of things.

17            One, despite what counsel has said,

18   there was no rule entered against Mr. Krone.

19            THE COURT:  I'm aware of that.

20            MR. STERLING:  The rule was entered

21   against Platform II -- Platform II Lawndale.

22            THE COURT:  Right.

23            MR. STERLING:  Mr. Krone is here based

24   on Your Honor's order from last time ordering him to

25   appear today.  He is here.

1        The other issue -- the other thing

2   that I take issue with is Mr. Toosley's ever moving

3   interpretation of what this 285 is.  They only claim

4   the rents.  But as we've indicated in our response,

5   as well as the affidavit that was attached or the

6   affidavit that was attached by Mr. Krone or the

7   declaration that was filed back in April when this

8   first became an issue, we identified when -- which --

9   the source of and the amount of all these investor

10  funds.

11         Now, some did come in prior to the

12  plan's approval.  However, the plan was originally

13  presented back in October of '22.  And from that

14  point forward, once the plan was in its conceptual

15  form, Platform II Lawndale started raising money to

16  fund this plan.

17         It was the lender who kept coming back

18  with revisions to the plan.  Ultimately, it did get

19  approved.  And there were more monies that came in

20  afterwards.  But based on this, and the evidence

21  that's before -- evidence that's before the court

22  based on the declaration of Mr. Krone and based on

23  our response, these were to the penny the funds that

24  came in from investors.

25         They can't contradict that.  And we've

1   given them the amount.  They have the bank statements

2   that everything ties out that these were investor

3   funds.

4               We've also provided them with the --

5   the information where the money went.  It went to

6   this investor account that is separate and apart and

7   where the -- the owners of the PIIL Investor account,

8   those are the investors identified here in our

9   response and in Mr. Krone's declaration.  So they

10  have that information.

11              They don't have any evidence that

12  we've done anything improper because I --

13              THE COURT:  Shouldn't it be clear,

14  though, on both sides that this is the money that

15  came in, and this is the money that went to this

16  other account?

17              MR. STERLING:  Each of the investors

18  funded this individually.  However, as I understand

19  it, the investors had a separate entity, this

20  Platform II Investor -- the PIL -- PIIL Investor

21  account.  They're all members of that --

22              THE COURT:  Is that an LLC?

23              MR. STERLING:  I believe it is.

24              MR. TOOSLEY:  I looked this morning.

25  There's no registered LLC with that name.

1           MR. STERLING:  Maybe not in

2  Illinois.

3           THE COURT:  Well, then maybe somebody

4  should just tell Mr. Toosley where it's incorporated.

5  We're not trying to --

6           MR. STERLING:  I'm not trying to be

7  coy here.  I don't know where it was.  But it has

8  a bank account.  It needs to be organized somewhere.

9           THE COURT:  Right.

10          MR. STERLING:  It does not need to

11  be authorized to transact business in the State

12  of Illinois if all it is is owns a membership

13  interest.

14          So, I mean, for him to say it's not

15  an entity, that's -- that's an over-- that's a high

16  -- yet another hyperbolic statement --

17          THE COURT:  Okay.  Well, to me this

18  war should end pretty soon.

19          MR. TOOSLEY:  Agreed.

20          MR. STERLING:  Well, I --

21          THE COURT:  Just like money came in

22  from Mr. Jones, money went back to an account that

23  Mr. Jones has some kind of interest in as an

24  investor.  Were there monies that were there

25  originally that were part of the rents?  I don't

1    really know.  And I --

2              MR. STERLING:  But we've provided this

3    information to Mr. Toosley.

4              MR. TOOSLEY:  I mean, the issue is

5    that, again, they're calling -- they're

6    characterizing them as investors.  But what they're

7    doing is because they had to pay a bunch of other

8    bills, they're saying we're just counting -- we paid

9    all the bills just out of your cash collateral, we

10   didn't pay it out of these other funds, even though

11   they needed those funds to make the adequate

12   protection payments.

13             As we've said, they were not plan

14   contributions.  They were loans that were not

15   approved by the court or else they could not make

16   the adequate protection payments.  They only --

17   they went and they made a few, right?  Then they

18   stopped.

19             They didn't have enough -- the

20   property didn't generate enough cash to make the

21   adequate protection payments, so they did go to other

22   parties, their investors, didn't tell us this, and

23   that's how they got the money.

24             And this plan, Section 15,

25   specifically said that all previous funds that were

14

1  provided got no value in the plan moving forward.

2  So, they basically are repaying people with the plan

3  that was confirmed, which it was --

4                    THE COURT:  Right.

5                    MR. TOOSLEY:  -- would never have saw

6  this money.  All of those pre-confirmation ones were

7  not standing -- the only people who were getting

8  equity in this reorganized debtor were the new -- new

9  money that came in after the fact.

10                    Again, this is an issue why it was

11  supposed to be decided in state court, Judge, so we

12  could do discovery.  We could take a deposition.

13  We could do whatever we needed to do to figure this

14  out.  We are supposed to just take somebody's

15  at-face-value affidavit that doesn't match up with

16  the fact that they just called them plan

17  contributions on their own.

18                    MR. STERLING:  He's not foreclosed

19  from doing that, Your Honor, in state court.  But we

20  are where we are at today.  The money went back to

21  the investors.  Platform II Lawndale does not have

22  control of those funds.

23                    Your Honor suggested, provide the

24  accounting to purge this contempt.  We provided --

25  we provided the accounting.  We provided the

1 statements.  We provided the information that we

2 have.  The problem is that the goalpost keeps moving,

3 and I don't know what to do.  And I don't know how to

4 respond to the court or to Mr. Toosley when I

5 can't -- he can't be satisfied.

6              If he believes that the investor --

7 that this was not -- that these were not rents to

8 which his client has claims over, then -- because he

9 keeps saying, well, they were rents or they were

10 loans or they -- you know, he doesn't know where

11 it -- what -- he doesn't even know what he's saying

12 anymore as far as the characterization of this

13 money.

14              We have been clear since day one

15 as to the characterization of the money.  If he

16 doubts that, let him file his action in state

17 court and bring it up in the state court action

18 because --

19              THE COURT:  Well, I believe the

20 plan -- I'm looking for the order that confirmed it

21 -- that I have probably retained jurisdiction over

22 the plan.  And if, in fact, the plan -- not that I'm

23 really looking to continue this, but there may be --

24 you know, there was -- there was a disclosure

25 statement.

1          MR. STERLING:  If I may, Your

2    Honor, quote from the February 14th transcript

3    after you dismissed the case with prejudice, "so

4    the only jurisdiction I'm retaining is Mr. Jordan's

5    fees."

6          THE COURT:  Well --

7          MR. STERLING:  That's what the --

8          THE COURT:  -- in contravention of

9    what I said in the order confirming the plan that

10   said -- which I don't know.  I'm trying to find it on

11   the docket, but --

12         MR. STERLING:  Well --

13         MR. TOOSLEY:  And I think there's a

14   lot of cherry-picking involved if you're only looking

15   at that one part of the transcript, because,

16   obviously, we spent a lot of time in that hearing

17   about this exact issue.

18         THE COURT:  Right.

19         MR. TOOSLEY:  And your order

20   specifically identified what was going to happen

21   even post-dismissal with these funds.  So, whether

22   you're retaining jurisdiction or not, it's going to

23   have to be to enforce the terms of that order.

24         THE COURT:  Yes.

25         MR. STERLING:  But --

17

1          MR. TOOSLEY:  You have the right to

2    do that.

3          MR. STERLING:  -- the problem is --

4    and I'm not disputing the court's ability to enforce

5    its orders, but as I've pointed out previously, the

6    order says to turn over all funds in the debtor's

7    bank account when the receiver is reappointed.

8          THE COURT:  But that's not what I said

9    that day.  What I meant that day, and it's been very

10   clear and I really don't want to go over this

11   again --

12         MR. STERLING:  But I'm reading --

13         THE COURT:  -- whatever money you have

14   today, that's what's to be turned over to the

15   receiver.  Now, we knew the receiver was not going to

16   be appointed within 45 seconds.  It was going to take

17   a couple of days to go down the street to get the

18   receiver.

19         I certainly feel like I've been very

20   much misinterpreted to say that I was giving the

21   debtor a two-day window or three-day window to take

22   money that they were holding on the day I entered

23   that order.

24         MR. STERLING:  Okay.

25         THE COURT:  And I know that you

18

1  disagree with me, but that was -- that was the order.

2  There was no misunderstanding that day that money

3  should slip out of that account.  It was very clear

4  the state court judge was going to decide.  I didn't

5  know what the answer was.

6         And I don't think that I -- I

7  certainly never intended for the bank to hold on to

8  investor funds.  I don't think Mr. Toosley or his

9  client thought that they should hold on to it.  But

10  the whole idea was let's figure out what are investor

11  funds and what are rents.

12         And while that was being moved down

13  the street to the Daley Center, the money slipped

14  out of the account.  And all this whole exercise

15  has been about is what was that money, and that's

16  the --

17         MR. STERLING:  Understood.

18         THE COURT:  -- that's the question to

19  answer.

20         MR. STERLING:  Understood.

21         Your Honor, and here is where part of

22  the confusion lies.  And now I'm reading from Your

23  Honor's May 1st, 2024, order regarding the motion

24  that was filed by Mr. Morgan related -- this was the

25  investors' motion.

1          THE COURT:  Right.

2          MR. STERLING:  It says -- and I am

3  citing from the last paragraph, full paragraph of the

4  order.  It says, for all these reasons, the court

5  entered an order dismissing the case but required

6  that the state court receiver be in place prior to

7  the effective date of the dismissal order and that

8  all funds held in debtor's accounts be turned over

9  to the state court receiver.

10          Well, the problem there is the order

11  doesn't delay the effectiveness of the dismissal.

12  The actual order itself --

13          THE COURT:  The order said the money

14  held in the debtor's account should be turned over to

15  the receiver.  I didn't -- certainly it would not

16  have made sense for me to say take five or six days

17  and take whatever you want out of the account --

18          MR. STERLING:  I understand.

19          THE COURT:  -- and give the rest to

20  the receiver.

21          MR. STERLING:  I understand.  I

22  understand that there may have not been explicit

23  permission, but there was also --

24          THE COURT:  You weren't there that

25  day.

20

1          MR. STERLING:  I wasn't.  I read the

2   transcripts, though.

3          THE COURT:  Well --

4          MR. STERLING:  And that's all I

5   can --

6          THE COURT:  -- you --

7          MR. STERLING:  But, Your Honor, if I

8   can finish, the issue that's before the court right

9   now is to whether or not there's been a contempt and

10  whether or not that contempt can be purged.  There is

11  no prohibition -- and based on my client's

12  understanding and --

13         THE COURT:  All I'm asking for is

14  an accounting.  There is not -- it says -- my order

15  says, the one I'm looking at that was entered on May

16  15th, the debtor must provide an accounting to

17  Greenlake of all funds held in any debtor account --

18  because I don't know all of the accounts.  I would

19  say that the debtor was not actually providing

20  monthly operating reports -- which were really

21  helpful, putting it mildly -- for the period of

22  January 31 through February 29th.

23         What was in any of the debtor's

24  accounts during that period of time?

25         MR. STERLING:  And we provided those

1   statements to Mr. Toosley.

2            MR. TOOSLEY:  They did send them.

3            THE COURT:  Okay, so maybe we're

4   done.

5            MR. TOOSLEY:  So, you know, like I

6   said, the issue to me is, you know, they keep saying

7   well, we gave it back to the investors, but they

8   won't give us the information to say that.

9            So, at this point, you know, we are --

10  you know, they put it in this PIIC account and then

11  said, well, that's it; we don't have to tell you

12  anything else.

13           So, you know, that was really where

14  this all kind of went --

15           THE COURT:  So you're pushing it all

16  into one account instead of saying we returned it to

17  Mr. Jones or Mrs. Smith.

18           MR. TOOSLEY:  Right.

19           THE COURT:  It's just all in this

20  account.

21           MR. TOOSLEY:  Correct.

22           THE COURT:  Well, it should be --

23  there must be claims against that account.  Just

24  tell -- just provide the transparency, and then you

25  can fight it out down the street.

22

1          But my order said provide that

2  accounting, including the source of funds and bank

3  statements.  The accounting should state to whom or

4  what account funds were transferred during the

5  accounting period.

6              Now, I suppose you could say I said

7  you could put it in a fund, an account with

8  everything in it and not tell anybody, but I think

9  what we were looking for was what happened to the

10  funds, what funds were there.

11             MR. TOOSLEY:  Especially, this is a

12  debtor -- it's a debtor-controlled PIIC account.  It

13  still would be --

14             MR. STERLING:  I don't represent the

15  PIIL, LLC, account, investors account.  And it's not

16  the debtor's account.

17             THE COURT:  I'm not holding you in

18  contempt.

19             MR. STERLING:  No, I understand, but I

20  am just saying it's not controlled by Platform II

21  Lawndale.  It's not the debtor's account because it

22  was instructed by the investors to transfer the

23  monies to this account.

24             THE COURT:  Okay, well, then maybe

25  your client is against the investors.

23

1          MR. STERLING:  I said Mr. Krone is the

2   managing member of this LLC and the investors, so I'm

3   not entirely sure he's subject to the court's

4   jurisdiction.

5          MR. TOOSLEY:  Managing member of

6   Platform --

7          MR. STERLING:  Correct, the debtor.

8          MR. TOOSLEY:  Right.  And he's also an

9   investor under the documents.  He filed -- he was one

10  of the movant's in the motion to reconsider.  So, you

11  know, I think having some clarification from Mr.

12  Krone about his relationship that this PIIL --

13         THE COURT:  Put Mr. Krone on the

14  stand.  You can take his testimony this afternoon if

15  you want.

16         MR. TOOSLEY:  You know, at the end

17  of the day, to me the biggest issue is based on

18  what's gone on -- I mean, obviously, I think I'd be

19  entitled to fees, and we've raised this before.  But

20  I don't want to -- I don't want to spend time on

21  fees, especially if I'm going to be getting it in

22  the state court case.

23         MR. STERLING:  Right.

24         THE COURT:  Yes.

25         MR. TOOSLEY:  And, you know, I asked

24

1  last time about the court considering a six-month ban

2  on refiling, or something like that, as it relates to

3  Platform II as a sanction for this sort of action

4  that had been done.

5             And so if Your Honor would even

6  consider something like that, I could say we could

7  be done, you know, as far as -- you know, I don't

8  care about getting a contempt order on Mr. Krone if

9  we can do this.

10            Again, I'm going after the fees in

11  the state court case.  I think that the finding

12  that the contempt happened and that this is the

13  remedy associated with it would probably be more

14  than sufficient, and then we could be done with

15  it.

16            THE COURT:  I don't really have a

17  problem with that if, you know, Platform II ever

18  wants to be in this court again before me or another

19  judge.

20            MR. TOOSLEY:  Correct.

21            MR. STERLING:  Can I have five minutes

22  to discuss with --

23            THE COURT:  Absolutely.

24            Do you want to -- yes, that's fine.

25  We'll take a recess for five minutes.

1           MR. TOOSLEY:  Thank you.

2           MR. STERLING:  Thank you.

3           THE CLERK:  All rise.  The court is in

4    recess for five minutes.

5               (Brief recess.)

6               (End of Audio Recording.)

26

```
 1

 2

 3                        CERTIFICATE

 4

 5            I, AMY DOOLIN, CSR, RPR, do hereby

 6   certify that the foregoing is a true and accurate

 7   transcription of proceedings electronically recorded

 8   on July 10, 2024, submitted to D&E Reporting for

 9   transcription, and contains all the content contained

10   in said recording and has been transcribed to the

11   best of my ability.

12

13            _____

14                  /s/Amy Doolin, CSR, RPR

15

16

17

18

19

20

21

22

23

24

25
```